Amazon.com Services LLC's Fourth Privilege Log
Amazon.com Services LLC and Gerald Bryson , Case No. 29-CA-261755

GC Exhibit 122

| Date Sent | Bates Label | From | To | CC | BCC | Description | Privilege |
|---|---|---|---|---|---|---|---|
| 4/5/2020 9:16 a.m. | AMZ-BRY000002 to AMZ-BRY_PRIV000005 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Kristin LaRosa, Esq. (Corporate Counsel); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources) | None | Email to Liz Hackett, Esq. for purposes of obtaining legal advice regarding scheduled protest activities on April 6th and prior protest activities. | ATTORNEY-CLIENT |
| 4/5/2020 9:28 a.m. | AMZ-BRY_PRIV000001 | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel); Shannon Wilson (Director, Worldwide Operations); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources) | None | Email from Liz Hackett, Esq. for purposes of providing legal advice regarding scheduled protest activities on April 6th and prior protest activities. | ATTORNEY-CLIENT |
| 4/5/2020 12:31 p.m. | AMZ-BRY_PRIV000001 | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources) | None | Email from Liz Hackett, Esq. for purposes of providing legal advice regarding scheduled protest activities on April 6th and prior protest activities. | ATTORNEY-CLIENT |
| 4/5/2020 1:47 p.m. | AMZ-BRY_PRIV000001 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Kristin LaRosa, Esq. (Corporate Counsel); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources) | None | Email to Liz Hackett, Esq. for purposes of obtaining legal advice regarding scheduled protest activities on April 6th and prior protest activities. | ATTORNEY-CLIENT |
| 4/5/2020 1:58 p.m. | AMZ-BRY_PRIV000001 | Rob Joseph (HR Director, NACF Director, Human Resources) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources) | None | Email to Liz Hackett, Esq. and Rob Joseph for purposes of obtaining legal advice regarding scheduled protest activities on April 6th and prior protest activities. | ATTORNEY-CLIENT |
| 4/7/2020 2:30 p.m. | AMZ-BRY_PRIV000006 to AMZ-BRY_PRIV000016 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Kristin LaRosa, Esq. (Corporate Counsel) | None | Email to Liz Hackett, Esq. with attachments for purposes of obtaining legal advice regarding possible discipline of G. Bryson. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000009 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000010 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000011 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000012 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000013 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000014 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000015 to AMZ-BRY_PRIV000016 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| 4/6/2020 7:46 p.m. | AMZ-BRY_PRIV000017 | Elliott Jones (Employee Relations Manager, North American Fullfillment Centers) | Kristin LaRosa, Esq. (Corporate Counsel); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | None | None | Email to Kristin LaRosa, Esq. for purposes of obtaining legal advice related to possible protected concerted activity. | ATTORNEY-CLIENT |

Amazon.com Services LLC's Fourth Privilege Log

*Amazon.com Services LLC and Gerald Bryson , Case No. 29-CA-261755*

GC Exhibit 122

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/7/2020 8:42 a.m. | AMZ-BRY_PRIV000017 to AMZ-BRY_PRIV000020 | Elliott Jones (Employee Relations Manager, North American Fullfillment Centers) | Kristin LaRosa, Esq. (Corporate Counsel); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | None | None | Email to Kristin LaRosa, Esq. with attachment for purposes of obtaining legal advice regarding possible protected concerted activity. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000018 to AMZ-BRY_PRIV000020 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| 4/9/2020 8:45 a.m. | AMZ-BRY_PRIV000022 to AMZ-BRY_PRIV000024 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Kristin LaRosa, Esq. (Corporate Counsel); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email to Liz Hackett, Esq.  for purposes of obtaining legal advice regarding possible discipline of G. Bryson. | ATTORNEY-CLIENT |
| 4/9/2020 8:59 a.m. | AMZ-BRY_PRIV000022 | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Liz Hackett, Esq. for purposes of providing legal advice regarding possible discipline of G. Bryson. | ATTORNEY-CLIENT |
| 4/9/2020 12:37 a.m. | AMZ-BRY_PRIV000022 | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, North American Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Liz Hackett, Esq. for purposes of providing legal advice regarding possible discipline of G. Bryson. | ATTORNEY-CLIENT |
| 4/9/2020 10:39 a.m. | AMZ-BRY_PRIV000021 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Kristin LaRosa, Esq. (Corporate Counsel); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email to Liz Hackett, Esq. for purposes of providing legal advice regarding possible discipline of G. Bryson and D. Evans. | ATTORNEY-CLIENT |
| 4/9/2020 1:56 p.m. | AMZ-BRY_PRIV000021 | Kristin LaRosa, Esq. (Corporate Counsel) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | None | None | Email from Kristin LaRosa, Esq. for purposes of providing legal advice regarding possible discipline of G. Bryson and D. Evans. | ATTORNEY-CLIENT |

Amazon.com Services LLC's Fourth Privilege Log

*Amazon.com Services LLC and Gerald Bryson , Case No. 29-CA-261755*

GC Exhibit 122

| 4/9/2020 2:06 p.m. | AMZ-BRY_PRIV000021 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel) | None | None | Email to Kristin LaRosa, Esq. for purposes of obtaining legal advice regarding possible discipline of G. Bryson and D. Evans. | ATTORNEY-CLIENT |
|---|---|---|---|---|---|---|---|
| 4/10/2020 3:53 p.m. | AMZ-BRY_PRIV000027 to AMZ-BRY_PRIV000030 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Kristin LaRosa, Esq. (Corporate Counsel); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Rachael Lighty (Regional Ops PR Manager) | None | Email to Liz Hackett, Esq. for purposes of obtaining legal advice regarding possible discipline of G. Bryson. | ATTORNEY-CLIENT |
| 4/10/2020 6:27 p.m. | AMZ-BRY_PRIV000026 to AMZ-BRY_PRIV000027 | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Rachael Lighty (Regional Ops PR Manager) | None | Email from Liz Hackett, Esq. for purposes of providing legal advice regarding the decision to terminate the employment of G. Bryson and discipline of D. Evans and direction from counsel to seek approval from executives and to determine whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |
| 4/11/2020 3:55 p.m. | AMZ-BRY_PRIV000026 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | Kristin LaRosa, Esq. (Corporate Counsel); Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email to K. Cheeseman, copying Kristin LaRosa, Esq. and Liz Hackett, Esq., for purposes of gathering information necessary for the provision of legal advice regarding communications about the discipline of G. Bryson. | ATTORNEY-CLIENT |

Amazon.com Services LLC's Fourth Privilege Log
Amazon.com Services LLC and Gerald Bryson , Case No. 29-CA-261755

GC Exhibit 122

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/11/2020 5:58 p.m. | AMZ-BRY_PRIV000026 | Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | (Corporate Counsel); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Rachael Lighty (Regional Ops PR Manager); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR | None | None | Email to Kristin LaRosa, Esq. and others for purposes of gathering information necessary for the provision of legal advice regarding communications about the discipline of G. Bryson. | ATTORNEY-CLIENT |
| 4/13/2020 2:29 p.m. | AMZ-BRY_PRIV000026 | Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | Kristin LaRosa, Esq. (Corporate Counsel); Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager) | None | Email to B. Campbell and K. Cheeseman, copying Kristin LaRosa, Esq. and Liz Hackett, Esq.,for purposes of gathering information necessary for the provision of legal advice regarding the decision to terminate G. Bryson. | ATTORNEY-CLIENT |
| 4/13/2020 11:37 a.m. | AMZ-BRY_PRIV000025 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | Kristin LaRosa, Esq. (Corporate Counsel); Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, North American Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager) | None | Email to M. Midgley and K. Cheeseman, copying Kristin LaRosa, Esq. and Liz Hackett, Esq., for purposes of gathering information necessary for the provision of legal advice regarding the decision to terminate employment of G. Bryson. | ATTORNEY-CLIENT |
| 4/14/2020 1:00 p.m. | AMZ-BRY_PRIV000025 | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International) | Kristin LaRosa, Esq. (Corporate Counsel); Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager) | None | Email to M. Midgley, K. Cheeseman, and K. Cheeseman copying Kristin LaRosa, Esq. and Liz Hackett, Esq., for purposes of gathering information necessary for the provision of legal advice regarding the decision to terminate employment of G. Bryson. | ATTORNEY-CLIENT |

Amazon.com Services LLC's Fourth Privilege Log
*Amazon.com Services LLC and Gerald Bryson , Case No. 29-CA-261755*

| | | | | | | |
|---|---|---|---|---|---|---|
| 4/16/2020 3:42 p.m. | AMZ-BRY_PRIV000031 to AMZ-BRY_PRIV000033 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel) | Anand Mehta (Director, Operations); Sai Kotha (General Manager, Operations); Christine Hernandez (HR Manager, NACF); Rachael Lighty (Regional Ops PR Manager); Milly Gutierrez (Principal, Employee Relations, Sr Mgr, HR Generalist) | None | Email to Kristin LaRosa, Esq. with attachment for puporses of obtaining legal advice regarding finalization of communication to executives to obtain approval of decision to discipline G. Bryson and D. Evans. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000032 to AMZ-BRY_PRIV000033 | N/A | N/A | N/A | N/A | Attachment accompanying email directed by in-house counsel Kristin LaRosa, Esq. that reflects legal advice. | ATTORNEY-CLIENT |
| 4/16/2020 7:27 p.m. | AMZ-BRY_PRIV000034 to AMZ-BRY_PRIV000035 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel) | Rachael Lighty (Regional Ops PR Manager); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Rob Joseph (HR Director, NACF Director, Human Resources); Christine Hernandez (HR Manager, NACF); Sai Kotha (General Manager, Operations) | None | Email to Kristin LaRosa, Esq. with attachment for purposes of obtaining legal advice regarding communication to executives to obtain approval of decision to discipline G. Bryson and D. Evans. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000035 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| 4/16/2020 8:38 p.m. | AMZ-BRY_PRIV000036 to AMZ-BRY_PRIV000039 | Rachael Lighty (Regional Ops PR Manager) | Kristin LaRosa, Esq. (Corporate Counsel) | Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Kristen Kish (Sr. Comm Mgr, Transportation, Sr Mgr, Public Relations); Heather Knox (Director, NA Ops PR); Lisa Levandowski (Sr PR Manager, Operations, Sr Mgr, Public Relations); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | None | Email to Kristin LaRosa, Esq. with attachment for purposes of obtaining legal advice regarding potential statement about G. Bryson discipline. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000039 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| 4/17/2020 8:28 a.m. | AMZ-BRY_PRIV000040 to AMZ-BRY_PRIV000041 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel); Tyler Grabowski (Human Resources Business Partner) | Payal Desai (Sr HR Business Partner, NACF); Christine Hernandez (HR Manager, NACF); Neha Viswanath (Sr HR Business Partner, NACF) | None | Email to Kristin LaRosa, Esq. and T. Grabowski regarding legal advice regarding communication of discipline to G. Bryson. | ATTORNEY-CLIENT |
| 4/17/2020 2:49 p.m. | AMZ-BRY_PRIV000040 to AMZ-BRY_PRIV000045 | Tyler Grabowski (Human Resources Business Partner) | Kristin LaRosa, Esq. (Corporate Counsel); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Payal Desai (Sr HR Business Partner, NACF); Christine Hernandez (HR Manager, NACF); Neha Viswanath (Sr HR Business Partner, NACF) | None | Email to Kristin LaRosa, Esq. and B. Campbell with attachments for purposes of obtaining legal advice following the communication of decision to terminate employment of G. Bryson. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000042 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000043 to AMZ-BRY_PRIV000044 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000045 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| 4/17/2020 6:05 p.m. | AMZ-BRY_PRIV000046 to AMZ-BRY_PRIV000049 | Rachael Lighty (Regional Ops PR Manager) | Kristin LaRosa, Esq. (Corporate Counsel); Drew Herdener (VP, Global Corporate and Operations Communications) | Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Heather Knox (Director, NA Ops PR); Kristen Kish (Sr. Comm Mgr, Transportation, Sr Mgr, Public Relations); Lisa Levandowski (Sr PR Manager, Operations, Sr Mgr, Public Relations); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | None | Email to Kristin LaRosa, Esq. and D. Herdener with attachment for purposes of gathering information necessary for the provision of legal advice regarding communications about termination of employment G. Bryson. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000049 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |

Amazon.com Services LLC's Fourth Privilege Log
*Amazon.com Services LLC and Gerald Bryson* , Case No. 29-CA-261755

GC Exhibit 122

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/16/2020 3:42 p.m. | AMZ-BRY_PRIV000050 to AMZ-BRY_PRIV000051 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Dave Clark (SVP Worldwide Operations) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Bradley Campbell to Dave Clark (SVP, WW Operations, SVP Operations) with attachment at the direction of Amazon in-house counsel, Liz Hackett, Esq., containing legal advice and for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000051 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| 4/16/2020 3:54 p.m. | AMZ-BRY_PRIV000052 | Dave Clark (SVP, WW Operations, SVP Operations) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Dave Clark (SVP, WW Operations, SVP Operations) to Bradley Campell made at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000049 | N/A | N/A | N/A | N/A | Attachment accompanying email directed by in-house counsel Liz Hackett. | ATTORNEY-CLIENT |
| 4/16/2020 3:58 p.m. | AMZ-BRY_PRIV000052 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Dave Clark (SVP, WW Operations, SVP Operations) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Bradley Campbell to Dave Clark (SVP, WW Operations, SVP Operations) made at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |
| 4/16/2020 4:00 p.m. | AMZ-BRY_PRIV000052 | Dave Clark (SVP, WW Operations, SVP Operations) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Dave Clark (SVP, WW Operations, SVP Operations) to Bradley Campell at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |
| 4/16/2020 3:50 p.m. | AMZ-BRY_PRIV000053 | Dave Clark (SVP, WW Operations, SVP Operations) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Dave Clark (SVP, WW Operations, SVP Operations) to Bradley Campell at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |
| 4/16/2020 3:53 p.m. | AMZ-BRY_PRIV000053 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Dave Clark (SVP, WW Operations, SVP Operations) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Bradley Campbell to Dave Clark (SVP, WW Operations, SVP Operations) at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |
| 4/16/2020 3:58 p.m. | AMZ-BRY_PRIV000054 | Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International) | Dave Clark (SVP, WW Operations, SVP Operations); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Alicia Davis to Dave Clark (SVP, WW Operations, SVP Operations) and Bradley Campbell at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |

Amazon.com Services LLC's Fourth Privilege Log
Amazon.com Services LLC and Gerald Bryson , Case No. 29-CA-261755

GC Exhibit 122

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/16/2020 3:59 p.m. | AMZ-BRY_PRIV000054 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Dave Clark (SVP, WW Operations, SVP Operations); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Bradley Campbell to Dave Clark (SVP, WW Operations, SVP Operations) and Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International) at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |
| 4/16/2020 4:00 p.m. | AMZ-BRY_PRIV000054 | Dave Clark (SVP, WW Operations, SVP Operations) | Dave Clark (SVP, WW Operations, SVP Operations); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Dave Clark (SVP, WW Operations, SVP Operations) to Bradley Campbell and Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International) at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY001309 | N/A | N/A | N/A | N/A | Attachment accompanying email directed by in-house counsel Kristin LaRosa, Esq. that reflects legal advice. | ATTORNEY-CLIENT |
| 4/29/2020 5:19 p.m. | AMZ-BRY001374 | Tyler Grabowski (Human Resources Business Partner) | Rachael Lighty (Regional Ops PR Manager); | Kristin LaRosa, Esq. (Corporate Counsel); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist); Christine Hernandez (HR Manager, NACF) | None | Email to Rachael Lighty, copying Kristin LaRosa, Esq., for purposes of gathering information necessary for the provision of legal advice regarding the termination of G. Bryson's employment | ATTORNEY-CLIENT |
| 4/5/2020 2:20 a.m. | AMZ-BRY_PRIV000056 to AMZ-BRY_PRIV000059 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel) | Anand Mehta (Director, Operations) | None | Email to Kristin LaRosa, Esq. for purposes of obtaining legal advice regarding scheduled protest activities on April 6th and prior protest activities. | ATTORNEY-CLIENT |
| 4/9/2020 1:42 p.m. | AMZ-BRY_PRIV000061 | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Liz Hackett, Esq. for purposes of providing legal advice regarding possible discipline of G. Bryson and D. Evans. | ATTORNEY-CLIENT |
| 4/9/2020 3:15 p.m. | AMZ-BRY_PRIV000061 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Kristin LaRosa, Esq. (Corporate Counsel); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International) | None | Email from Liz Hackett, Esq. for purposes of obtaining legal advice regarding possible discipline of G. Bryson and D. Evans. | ATTORNEY-CLIENT |

Amazon.com Services LLC's Fourth Privilege Log

*Amazon.com Services LLC and Gerald Bryson , Case No. 29-CA-261755*

GC Exhibit 122

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/9/2020 3:27 p.m. | AMZ-BRY_PRIV000060 to AMZ-BRY_PRIV000061 | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International) | None | Email from Liz Hackett, Esq. for purposes of providing legal advice regarding possible discipline of G. Bryson and D. Evans. | ATTORNEY-CLIENT |
| 4/9/2020 5:15 p.m. | AMZ-BRY_PRIV000060 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Kristin LaRosa, Esq. (Corporate Counsel); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International) | None | Email to Liz Hackett, Esq. for purposes of obtaining legal advice regarding possible discipline of G. Bryson and D. Evans. | ATTORNEY-CLIENT |
| 4/9/2020 5:27 p.m. | AMZ-BRY_PRIV000060 | Ryan Smith (Director, NACF AR Operations, Director, Regional Operations) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Kristin LaRosa, Esq. (Corporate Counsel); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International) | None | Email to Liz Hackett, Esq. and Bradley Campbell for purposes of obtaining legal advice regarding possible discipline of G. Bryson and D. Evans. | ATTORNEY-CLIENT |
| 4/9/2020 5:32 p.m. | AMZ-BRY_PRIV000060 | Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations) | Kristin LaRosa, Esq. (Corporate Counsel); Anand Mehta (Director, Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Rachael Lighty (Regional Ops PR Manager); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email to Liz Hackett, Esq. and others for purposes of obtaining legal advice regarding possible discipline of G. Bryson and D. Evans. | ATTORNEY-CLIENT |
| 4/9/2020 8:52 a.m. | AMZ-BRY_PRIV000065 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Anand Mehta (Director, Operations) | None | None | Email from Bradley Campbell to Ryan Smith and Anand Mehta at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |
| 4/9/2020 8:57 a.m. | AMZ-BRY_PRIV000065 | Ryan Smith (Director, NACF AR Operations, Director, Regional Operations) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist); Anand Mehta (Director, Operations) | None | None | Email from Ryan Smith to Bradley Campbell and Anand Mehta at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |

Amazon.com Services LLC's Fourth Privilege Log
Amazon.com Services LLC and Gerald Bryson , Case No. 29-CA-261755

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/14/2020 8:26 a.m. | AMZ-BRY_PRIV000066 to AMZ-BRY_PRIV000164 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources) | None | None | Email to Liz Hackett, Esq. and Shannon Wilson with attachments for purposes of obtaining legal advice regarding possible discipline of G. Bryson. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000068 to AMZ-BRY_PRIV000076 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000077 to AMZ-BRY_PRIV000087 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000088 to AMZ-BRY_PRIV000091 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000092 to AMZ-BRY_PRIV000164 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| 4/15/2020 6:08 a.m. | AMZ-BRY_PRIV000165 to AMZ-BRY_PRIV000182 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Henry Darcie (VP, HR - WW Operations, VP Human Resources) | Kristin LaRosa, Esq. (Corporate Counsel); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources) | None | Email to Liz Hackett, Esq. and Henry Darcie with attachments for purposes of obtaining legal advice regarding possible discipline of G. Bryson. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000171 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000172 to AMZ-BRY_PRIV000173 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000174 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000175 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000176 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000177 to AMZ-BRY_PRIV000178 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000179 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000180 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000181 to AMZ-BRY_PRIV000182 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of obtaining legal advice. | ATTORNEY-CLIENT |
| 4/15/2020 9:46 p.m. | AMZ-BRY_PRIV000183 | Henry Darcie (VP, HR - WW Operations, VP Human Resources) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Kristin LaRosa, Esq. (Corporate Counsel); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources) | None | None | Email to Liz Hackett, Esq. and others for purposes of obtaining legal advice regarding possible discipline of G. Bryson. | ATTORNEY-CLIENT |
| 4/16/2020 2:47 a.m. | AMZ-BRY_PRIV000183 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Henry Darcie (VP, HR - WW Operations, VP Human Resources) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Kristin LaRosa, Esq. (Corporate Counsel); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources) | None | Email to Henry Darcie, copying Liz Hackett, Esq. and Kristin LaRosa, Esq., for purposes of obtaining legal advice regarding possible discipline of G. Bryson. | ATTORNEY-CLIENT |

Amazon.com Services LLC's Fourth Privilege Log
*Amazon.com Services LLC and Gerald Bryson* , Case No. 29-CA-261755

GC Exhibit 122

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/16/2020 12:03 p.m. | AMZ-BRY_PRIV000189 to AMZ-BRY_PRIV000190 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources) | None | None | Email to Liz Hackett, Esq. and Shannon Wilson for purposes of obtaining legal advice regarding the possible termination of G. Bryson's employment. | ATTORNEY-CLIENT |
| 4/16/2020 12:57 p.m. | AMZ-BRY_PRIV000189 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Joshua Teeter (Director, Human Resources);  Rob Joseph (HR Director, NACF Director, Human Resources) | None | None | Email to Liz Hackett, Esq. and others for purposes of obtaining legal advice regarding possible termination of G. Bryson's employment. | ATTORNEY-CLIENT |
| 4/16/2020 3:35 p.m. | AMZ-BRY_PRIV000189 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Joshua Teeter (Director, Human Resources);  Rob Joseph (HR Director, NACF Director, Human Resources); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources) | None | None | Email to Liz Hackett, Esq. and others with attachment for purposes of obtaining legal advice regarding possible termination of G. Bryson's employment. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000191 to AMZ-BRY_PRIV000192 | N/A | N/A | N/A | N/A | Attachment accompanying email directed by in-house counsel Liz Hackett, Esq. that reflects legal advice. | ATTORNEY-CLIENT |
| 4/16/2020 3:50 p.m. | AMZ-BRY_PRIV000193 | Dave Clark (SVP, WW Operations, SVP Operations) | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | Email from Dave Clark (SVP, WW Operations, SVP Operations) to Bradley Campbell and Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International) at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |
| 4/16/2020 3:54 p.m. | AMZ-BRY_PRIV000193 | Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International) | Dave Clark (SVP, WW Operations, SVP Operations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | None | Email from Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International) at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |

Amazon.com Services LLC's Fourth Privilege Log
*Amazon.com Services LLC and Gerald Bryson*, Case No. 29-CA-261755

GC Exhibit 122

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/18/2020 2:59 p.m. | AMZ-BRY_PRIV000193 | Dave Clark (SVP, WW Operations, SVP Operations) | Dave Clark (SVP, WW Operations, SVP Operations); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | None | Email from Dave Clark (SVP, WW Operations, SVP Operations) at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | ATTORNEY-CLIENT |
| 4/18/2020 3:58 p.m. | AMZ-BRY_PRIV000193 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Allyson Hoffman (Director, Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | None | None | Email from Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) at the direction of Amazon in-house counsel, Liz Hackett, Esq., for the purpose of determining whether executives approved of decision and whether they had questions that required further legal advice regarding the recommended decision. | |
| 4/17/2020 3:30 p.m. | AMZ-BRY_PRIV000195 | Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | Kristin LaRosa, Esq. (Corporate Counsel); Rachael Lighty (Regional Ops PR Manager) | Kristen Kish (Sr. Comm Mgr, Transportation, Sr Mgr, Public Relations); Heather Knox (Director, NA Ops PR); Lisa Levandowski (Sr PR Manager, Operations, Sr Mgr, Public Relations); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | None | Email to Kristin LaRosa, Esq. for purposes of obtaining legal advice regarding potential statement about G. Bryson discipline. | ATTORNEY-CLIENT |
| 4/17/2020 3:34 p.m. | AMZ-BRY_PRIV000195 | Rachael Lighty (Regional Ops PR Manager) | Kristin LaRosa, Esq. (Corporate Counsel); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | Kristen Kish (Sr. Comm Mgr, Transportation, Sr Mgr, Public Relations); Heather Knox (Director, NA Ops PR); Lisa Levandowski (Sr PR Manager, Operations, Sr Mgr, Public Relations); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | None | Email to Kristin LaRosa, Esq. for purposes of obtaining legal advice regarding potential statement about G. Bryson discipline. | ATTORNEY-CLIENT |
| 4/17/2020 6:09 p.m. | AMZ-BRY_PRIV000198 | Drew Herdener (VP, Global Corporate and Operations Communications) | Kristin LaRosa, Esq. (Corporate Counsel); Rachael Lighty (Regional Ops PR Manager) | Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Heather Knox (Director, NA Ops PR); Kristen Kish (Sr. Comm Mgr, Transportation, Sr Mgr, Public Relations); Lisa Levandowski (Sr PR Manager, Operations, Sr Mgr, Public Relations); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | None | Email to Kristin LaRosa, Esq. and R. Lighty for purposes of gathering information necessary for the provision of legal advice regarding communications about termination of employment G. Bryson. | ATTORNEY-CLIENT |

GC Exhibit 122

Amazon.com Services LLC's Fourth Privilege Log
*Amazon.com Services LLC and Gerald Bryson* , Case No. 29-CA-261755

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 4/17/2020 6:09 p.m. | AMZ-BRY_PRIV000198 | Rachael Lighty (Regional Ops PR Manager) | Drew Herdener (VP, Global Corporate and Operations Communications); Kristin LaRosa, Esq. (Corporate Counsel); Rachael Lighty (Regional Ops PR Manager) | Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Heather Knox (Director, NA Ops PR); Kristen Kish (Sr. Comm Mgr, Transportation, Sr Mgr, Public Relations); Lisa Levandowski (Sr PR Manager, Operations, Sr Mgr, Public Relations); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | None | Email to Kristin LaRosa, Esq. and D. Lighty for purposes of gathering information necessary for the provision of legal advice regarding communications about termination of employment G. Bryson. | ATTORNEY-CLIENT |
| 9/9/2019 | AMZ-BRY008013 to AMZ-BRY008015 | Linda Prisciando | Ethics Escalation Line | N/A | N/A | Information reflecting legal advice from Lauren Howard, Esq. (Corporate Counsel) regarding potential discipline of Aaron West. | ATTORNEY-CLIENT |
| 9/17/2019 | AMZ-BRY008021 to AMZ-BRY008022 | Linda Prisciando | Ethics Escalation Line | N/A | N/A | Information reflecting legal advice from Lauren Howard, Esq. (Corporate Counsel) regarding potential discipline of Aaron West. | ATTORNEY-CLIENT |
| 5/26/2021 7:33 a.m. | AMZ-BRY008753 | Christine Hernandez (HR Manager, NACF) | Christopher Murphy (Amazon outside counsel) | None | None | Attorney-client communication between client (Christine Hernandez) to Christopher Murphy, Esq. (Amazon outside counsel) regarding NLRB hearing and document response. | ATTORNEY-CLIENT ATTORNEY WORK PRODUCT |



# UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD

**AMAZON.COM SERVICES LLC**

    **and**                                                       **Case No. 29-CA-261755**

**GERALD BRYSON, AN INDIVIDUAL**

### GENERAL COUNSEL'S OPPOSITION TO RESPONDENT'S REQUEST FOR SPECIAL PERMISSION TO APPEAL AND RESPONDENT'S APPEAL OF THE ADMINISTRATIVE LAW JUDGE'S ORDERS REQUIRING RESPONDENT TO PRODUCE SUBPOENAED DOCUMENTS AND REQUEST FOR EXPEDITED REVIEW

Pursuant to Section 102.26 of the National Labor Relations Board ("Board") Rules and Regulations, Counsel for the Acting General Counsel hereby opposes the Appeal of Respondent Amazon.com Services LLC ("Respondent") of certain orders of Administrative Law Judge Benjamin Green ("ALJ") requiring Respondent to comply with Subpoena *Duces Tecum* No. B-1-1BUGMIX issued to Respondent by the General Counsel ("GC Subpoena") and Subpoena *Duces Tecum* No. B-1-1C9GVF7 issued to Respondent by Charging Party Gerald Bryson ("Charging Party Subpoena"). As explained below, Respondent has failed to demonstrate any grounds for the Board to reverse the ALJ's orders under the applicable standard of review, and the Appeal must be denied accordingly. Moreover, Counsel for the Acting General Counsel requests that the Board expedite its review of Respondent's Appeal because resolution of the administrative hearing has been postponed indefinitely, pending the resolution of this Appeal.

## I.    BACKGROUND AND PROCEDURAL HISTORY

The matter currently pending before the ALJ concerns whether Respondent suspended and discharged employee Gerald Bryson on April 17, 2020 for his conduct while engaged in protected



GC Exhibit 123

concerted activity intended to pressure Respondent to implement meaningful health and safety practices at its Staten Island, New York warehouse to protect its employees in light of the coronavirus pandemic, or whether Respondent's discharge of Bryson was unlawfully motivated and its proffered defenses are pretext.  Respondent contends that it fired Mr. Bryson for using intemperate language during an argument with a co-worker who disagreed with his protest activity, while the General Counsel asserts that Respondent harbored virulent animus against employees engaged in protected concerted protests, which motivated Respondent to seize upon this incident as pretext for permanently removing an outspoken employee from its workforce.

On March 1, 2021, Counsel for the Acting General Counsel issued and duly served upon Respondent's Custodian of Records the GC Subpoena at issue herein. (Resp. Exh. G).[1]  Since that date – over three months ago – Respondent has relentlessly delayed its production of subpoenaed materials, produced documents in unusable forms, including documents that were almost entirely redacted, and withheld relevant evidence in defiance of the ALJ's orders denying Respondent's petition to revoke and compelling Respondent to comply with the GC Subpoena.  Similarly, the Charging Party Subpoena was duly issued to Respondent's Custodian of Records on April 13, 2021, yet Respondent has delayed production and withheld documents, despite the ALJ's orders requiring Respondent to comply.

The hearing in this case initially opened on March 29, 2021, whereupon the ALJ granted a five-week postponement to May 3, 2021 based upon Respondent's representations that it would not be able to produce the subpoenaed records in a timely fashion.  (GC Exh. 1)[2]  Respondent failed to produce a substantial portion of the documents required under the GC Subpoena and

---

[1] References to exhibits attached to Respondent's Appeal shall be designated as "(Resp. Exh. ___)."

[2] Counsel for the Acting General Counsel attaches hereto additional exhibits for the Board's consideration, including select portions of the hearing transcript, which are designated herein as "(GC Exh. ___)."



Charging Party Subpoena by May 3, but Counsel for the Acting General Counsel nonetheless elected to begin the presentation of evidence in its case-in-chief and ultimately reserved closing its case-in-chief while subpoenaed documents from Respondent remained withheld.  Respondent then presented evidence in support of its case and reserved closing its case until Counsel for the Acting General Counsel and the Charging Party rested their respective case-in-chief.  Throughout the proceeding, Respondent produced documents in dribs and drabs, often not in native format, not usable and/or highly redacted.  As noted in Respondent's Appeal, documents responsive to the GC Subpoena and the Charging Party Subpoena remain outstanding and have yet to be produced. Respondent's failure to produce documents required by the subpoenas in compliance with ALJ orders have grinded the proceedings in this case to a halt indefinitely.

Not only has Respondent failed and refused to produce records responsive to the subpoenas, several critical documents it has produced, including Chime messages and OneNote files created by Respondent officials, are so heavily redacted that it is difficult for Counsel for the Acting General Counsel to decipher meaningful context of the communications contained in the documents. (Resp. Exh. N(1)-(5); Resp. Exh. O).  The documents are simply unusable.  For the majority of these redactions, Respondent does not assert any privilege, but rather Respondent decided unilaterally to redact information which Respondent itself deemed not relevant or responsive to the subpoenas.

After Counsel for the Acting General Counsel objected to Respondent's redactions, the ALJ issued an order on May 19 requiring Respondent to produce unredacted versions of the Chime messages for *in camera* inspection by the ALJ. (GC Exh. 2).  The ALJ noted in his order requiring *in camera* review that Respondent is not entitled to unilaterally redact portions of responsive documents based on its own, unverified claim that those portions of the documents are irrelevant.



However, the ALJ acknowledged that unlike a single letter or email, documents such as Chime instant messages may contain both responsive, relevant information, as well as information concerning subject matter unrelated to the case. The ALJ reasonably determined that the only conceivable way to resolve whether the redactions were proper was for the ALJ to review the documents *in camera* in unredacted form.  Respondent produced the documents for *in camera* inspection, and on May 20, the ALJ issued his Order requiring Respondent to produce certain Chime messages without redactions, while permitting Respondent to maintain other redactions. (Resp. Exh. B).

The hearing resumed thereafter on May 24, and Respondent failed to produce the unredacted Chime messages in stark defiance of the ALJ's Order.  Respondent's counsel at that time stated on the record that Respondent would promptly file a special appeal of the ALJ's decision ordering production of the unredacted Chimes "either tonight or tomorrow morning" – i.e., either May 24 or 25. (GC Exh. 3).  Despite having "a veritable army" of attorneys representing Respondent on this case, as Respondent noted during the proceeding (GC Exh. 4), Respondent failed to file its request for special permission to appeal until June 5, 2021 – twelve days later. Respondent offered no justification for its failure to timely file its special appeal and offered no explanation for this inordinate delay.

On May 24, Respondent also moved for the ALJ to reconsider his prior rulings denying the Respondent's petitions to revoke the GC Subpoena and the Charging Party Subpoena. (Resp. Exh. M).  The ALJ orally denied these motions on the record on May 24 and 25, holding that the documents remained relevant to determining Respondent's motivation for discharging employee Bryson, despite Respondent's Third Amended Answer in which it finally admitted that Bryson was engaged in protected concerted activities as alleged in the Complaint. (Resp. Exh. A, E).



Respondent's counsel again represented that a special appeal of this ruling was imminent, yet no appeal was filed until June 5. Again, Respondent offered no explanation or justification for failing to file a timely special appeal.

The last hearing date was May 27, 2021. At the close of the hearing that day, the ALJ urged Respondent to file its special appeal to the Board regarding these document production issues "as soon as is earthly possible." (GC Exh. 5). The ALJ ordered Respondent to quickly file its appeal so as to not cause undue delay of the proceedings, as the case has stalled to a standstill, as neither the Charging Party nor Counsel for the Acting General Counsel could close their respective case until the document production issues are resolved, Respondent has produced the remaining documents that it has been withholding, and the Charging Party and Counsel for the Acting General Counsel can determine whether to call additional witnesses based on the remaining documents that Respondent has doggedly been refusing to turn over.

Respondent's tactic of causing undue delay in its document production and its inexcusable delay in filing this appeal of the ALJ's Orders has caused the hearing to be postponed indefinitely, pending resolution of Respondent current Appeal.

## II.   RESPONDENT'S APPEAL WAS UNTIMELY FILED – PERPETUATING ITS PATTERN OF CAUSING UNDUE, UNJUSTIFIABLE DELAYS IN THIS PROCEEDING AND IN OBTAINING RESOLUTION FOR CHARGING PARTY BRYSON

Section 102.26 of the Board's Rules and Regulations requires that a party seeking special permission from the Board to appeal a decision of an administrative law judge must file such a request for special appeal "*promptly and within such time as not to delay the proceeding*" (emphasis added). Respondent's June 5 filing of the instant Appeal clearly breaches this requirement. Without explanation, without justification and without any legitimate basis, Respondent filed its special appeal more than two weeks after the ALJ issued his May 20 order



requiring that Respondent produce unredacted documents responsive to the GC Subpoena. Indeed, the ALJ had issued each of the orders which Respondent now appeals by May 24, yet Respondent inexplicably delayed filing its Appeal.

Respondent delayed its filing fully knowing that the proceeding had been postponed indefinitely in order for Respondent to pursue its special appeal to the Board. The ALJ urged Respondent to initiate its Appeal as soon as possible, and Respondent's counsel made false representations to the Court that its Appeal would be forthcoming immediately. (GC Exh. 3; GC Exh. 5). Continuing the pattern of causing delay, and content to drag the proceeding out as long as possible, Respondent failed to comply with the requirement of Section 102.26 to file this Appeal "promptly" and instead waited some 12 days after the ALJ's rulings to bring this matter to the Board. At no time did Respondent contact the parties or the Judge to offer any reason for its inordinate delay.

The only explanation Respondent has bothered to offer for this delay is that some of the ALJ's orders that are the subject of the Appeal were made orally on the record at the hearing, and Respondent claims that it filed this Appeal promptly after receiving the relevant transcripts. Any assertion by Respondent that it needed the hearing transcript before filing this Appeal is specious and false. There was no obligation for Respondent to wait for hearing transcripts to file this Appeal. Respondent essentially admitted that it did not need the transcript in order to file its Appeal when its counsel stated on the record on May 24th that Respondent would file its special appeal by May 25. (GC Exh. 3). When that date came and passed with no repercussions for Respondent, it decided to delay the matter further, using the lack of a transcript as a convenient excuse. In truth, Respondent had no need to wait for hearing transcripts to file the Appeal, as the ALJ's rulings on these document production issues were crystal clear by May 25 at the latest. As



Respondent has noted, it retains "a veritable army" of attorneys to sit in on the hearing and otherwise work on its defense. Surely, at least some of the attorneys in Respondent's "army" took notes of the Judge's Orders. Furthermore, if Respondent had any doubt as to what the ALJ ordered or otherwise wanted to have the ALJ's determinations in writing, then it could have, after the hearing closed, requested that the ALJ reiterate his rulings in writing by email. Respondent declined to promptly obtain clarification of the Judge's ruling for two reasons: first, postponing the resolution of this matter works to Respondent's advantage, as it keeps Charging party Bryson from gaining reinstatement ever longer; and second, Respondent's claim that it needed the transcript in order to file this Appeal of the Judge's order is simply not true.

The Charging Party is clearly prejudiced by this unnecessary delay. Mr. Bryson remains out of work and has been unemployed for over a year since Respondent unlawfully discharged him for engaging in protected concerted protests to improve workers' safety during the pandemic. Each day that Respondent is permitted to prolong this proceeding is a day that Mr. Bryson's remedy remains deferred and denied. The General Counsel is likewise prejudiced by Respondent's delay, as it causes the record in this case to be held open indefinitely and jeopardizes Counsel for the General Counsel's ability to call or re-call witnesses when the hearing ultimately resumes. The longer the case is delayed, the more likely it will be that witnesses scatter or otherwise become unavailable. For that reason, Counsel for the Acting General Counsel respectfully requests that the Board expedite its review of Respondent's Appeal so that the hearing in this matter may proceed.

Respondent was obligated to present its Appeal to the Board as soon as possible after the ALJ issued his orders in question. Respondent's failure to do so has unnecessarily delayed the



continuation of the proceeding and prejudiced the Charging Party and the General Counsel. Accordingly, the Appeal should be denied as untimely under Section 102.26.

### III.  THE ALJ DID NOT ABUSE HIS DISCRETION IN ORDERING RESPONDENT TO COMPLY WITH THE SUBPOENAS AND PRODUCE UNREDACTED DOCUMENTS

#### A.  <u>Standard of Review</u>

The Board evaluates a party's request for special permission to appeal an administrative law judge's ruling under a "highly deferential abuse-of-discretion" standard.  *Meadowlands Hospital Med. Center*, 2014 WL 722108 at fn. 2 (NLRB, Feb. 25, 2014).  As the Board has explained, abiding by that highly deferential standard "is essential to permit the judge to fulfill his duty under Sec. 102.35 of the Board's Rules and Regulations to 'regulate the course of the hearing.'" *Id.*; see also *Fluor Daniel, Inc.*, 353 NLRB 133 (2009) (rejecting special appeal upon finding the judge's ruling did not reflect abuse of discretion).

Conspicuously, Respondent's Appeal omits ***any*** reference whatsoever to the appropriate standard of review.  Respondent's glaring omission is telling because Respondent is simply unable to establish that the ALJ abused his discretion in ordering Respondent to comply with the GC Subpoena and the Charging Party Subpoena, including by removing certain redactions from responsive documents.  Instead, the ALJ's orders are well grounded in the law and the needs of this case, and there is no basis for the Board to take the extraordinary step of intervening at this interlocutory stage.

#### B.  <u>The Subpoenaed Documents in the GC Subpoena and the Charging Party Subpoena Are Relevant and Necessary to Establish Respondent's Unlawful Motivation for Discharging Mr. Bryson and Must Be Produced Pursuant to the ALJ's Order</u>

As noted above, the central issue at the heart of this case is Respondent's motivation for suspending and discharging Charging Party Gerald Bryson almost immediately after he engaged



in a series of concerted protests challenging Respondent's failure to provide health and safety measures to protect its employees from COVID-19.  Respondent contends that the case should be analyzed under the line of Board cases applying *NLRB v. Burnup & Sims*, 379 U.S. 21 (1964) and asserts that such an analysis renders moot any evidence concerning Respondent's animus against the Charging Party's protected concerted activities, including evidence that may be obtained through Respondent's compliance with the GC Subpoena and the Charging Party Subpoena. However, contrary to Respondent's faulty argument, there has been no formal ruling by the ALJ that *Burnup & Sims* applies here, nor could there be such a ruling at this stage, as there no adequate basis for such a determination.

The Board most recently stated that *Burnup & Sims* applies only in situations where "an employer disciplines an employee for allegedly engaging in misconduct during the course of [protected concerted] activity, and the General Counsel contends that the employee did not, in fact, engage in misconduct." *KOIN-TV*, 370 NLRB No. 68 at fn. 1 (NLRB, Jan. 7, 2021).  Conversely, the Board held that where an employer issues discipline against an employee for misconduct that the employee engaged in during the course of protected concerted activity, the lawfulness of that adverse employment action shall be evaluated under *Wright Line*, 251 NLRB 1083 (1980), not *Burnup & Sims*. *Id.* (citing *General Motors LLC*, 369 NLRB No. 127 (2020)).

In the instant case, Counsel for the Acting General Counsel does <u>not</u> contend that Charging Party Bryson did not engage in any misconduct.  The record evidence makes clear that Mr. Bryson and a co-worker mutually directed foul language and personal insults toward one another during a heated argument they had while Mr. Bryson was engaged in protected concerted activity, and that Respondent typically disciplines – but does not terminate – employees who engage in such conduct.  Because Counsel for the Acting General Counsel does not dispute that Mr. Bryson


GC Exhibit 123

engaged in misconduct, the Board's holding in *KOIN-TV* implies that *Burnup & Sims* simply does not apply here. Rather, *KOIN-TV* and *General Motors* clearly indicate that the appropriate framework for analyzing a case such as this is *Wright Line*. Under *Wright Line*, evidence concerning the employer's knowledge of and animus against its employees' protected activities is undoubtedly relevant and subject to production under subpoena.

At this stage of the litigation, however, it is impossible for the Parties or the ALJ to know with certainty how the Board will ultimately analyze this case. For that reason, it is important for Counsel for the Acting General Counsel and the Charging Party to be able to pursue evidence that would tend to support alternative theories of violation under the *Burnup & Sims* or the *Wright Line* analytical framework. Accordingly, it is certainly appropriate – and not an abuse of discretion – for the ALJ to order production of subpoenaed materials that may help establish Respondent's knowledge of and animus against the Charging Party's protected concerted activities.

The portions of the GC Subpoena and Charging Party Subpoena for which the ALJ ordered production, and which are the subject of the current Appeal, seek materials that may reveal evidence establishing Respondent's knowledge of Mr. Bryson's protected activity, as well as Respondent's animus toward employees engaged in such activity. While Respondent has admitted in its Third Amended Answer that Mr. Bryson engaged in protected concerted activity as alleged in the Complaint, it has not admitted to having knowledge of that fact before Respondent terminated him. Indeed, Respondent's initial denial that Mr. Bryson was engaged in protected concerted activity suggests that Respondent may attempt to argue that it lacked knowledge of the Charging Party's protected activity at the time it decided to suspend and discharge him. Evidence that may establish when Respondent acquired knowledge of the Charging Party's concerted activity is certainly relevant to whether Respondent's defense is pretext and must be produced in



accordance with the ALJ's order.  Likewise, Respondent has not admitted to harboring animus against employees who, like Mr. Bryson, engaged in concerted protests over the company's response to the COVID-19 outbreak.  Evidence establishing Respondent's animus is critically important to evaluating the motivation underlying Respondent's adverse actions against the Charging Party in this case, which again is the central question in dispute.

As the ALJ noted in his order requiring production of documents under the Charging Party Subpoena, the Board follows a "broad discovery-type standard of relevance with regard to subpoena requests." (Resp. Exh. L).  That is because Section 11(1) of the National Labor Relations Act ("Act") grants the Board wide-ranging authority to subpoena evidence "that relates to any matter under investigation," while Section 102.31(b) of the Board's Rules and Regulations requires production of subpoenaed materials as long as they relate to any matter in question or can provide background information or lead to other potentially relevant evidence. See *Perdue Farms*, 323 NLRB 345, 348 (1997), aff'd. in relevant part 144 F. 3rd 830, 833-834 (D.C. Cir. 1998) (information need only be "reasonably relevant").   Given this liberal standard of relevance, the ALJ certainly did not abuse his discretion by ordering Respondent to produce subpoenaed documents that are potentially relevant to the central questions involved in this litigation concerning the timing of Respondent's knowledge of the Charging Party's protected activities and its animus toward employees engaged in such activities.  The Board must therefore deny Respondent's Appeal of the ALJ's orders declining to revoke the GC Subpoena and the Charging Party Subpoena and requiring Respondent to produce the subpoenaed materials.

### C. **Respondent Is Not Permitted to Unilaterally Redact Portions of Responsive Documents and Must Produce Unredacted Documents in Accordance with the ALJ's Order**

Respondent also appeals the ALJ's orders requiring Respondent to produce documents responsive to the GC Subpoena in unredacted or less-heavily redacted form.  Simply because the

GC Exhibit 123

disputed documents are not traditional emails or letters, but rather consist of Chime instant messages and "OneNote" files, Respondent cynically attempts to confuse the Board about the nature of these documents and the appropriateness of Respondent's decision to unilaterally redact significant portions of them.  Respondent focuses its argument on the theoretical possibilities of a Chimes communication and a OneNote file, without regard to the true nature of the specific documents Respondent seeks to conceal in this case.  Contrary to Respondent's vague assertions, the documents at issue here do not involve ongoing communications between individuals over the course of months or years.   Rather, each of the Chime messages in question contain communications by and between Respondent officials on a single day and reference protected activities that Charging Party Bryson engaged in with other employees.  The OneNote file at issue contains the notes of Respondent's Human Resources Manager regarding employees engaged in protected concerted activities, including Mr. Bryson.  These documents are not akin to an individual's entire email account or an entire file cabinet, as Respondent dubiously asserts.  They are discrete documents containing the thoughts and/or communications of responsible Respondent officials regarding matters that are highly relevant to the determination of this case.  The files are much more similar to individual emails or notes, portions of which may not be redacted on relevance grounds.

Even if the Chimes and OneNote documents at issue here are dissimilar to more traditional documents, which they are not, the ALJ considered this distinction in his May 20 Order requiring Respondent to remove certain redactions following the ALJ's *in camera* review of the Chimes messages.  When ordering the *in camera* inspection, the ALJ addressed Respondent's contention that the Chimes were "more like a verbal conversation" and observed that "it can be difficult to determine where one conversation ends and another conversation begins." (GC Exh. 2).  The ALJ



thus fully considered and evaluated the arguments Respondent now presents to the Board. However, the ALJ found that the message threads all begin and end on a single date and determined that they are "not particularly lengthy," making it "perfectly reasonable to expect these threads to constitute a single, complete communication subject to production." (*Id*.)  The ALJ's analysis in this regard is sound.

After reviewing the Chimes documents *in camera*, the ALJ ordered that Respondent remove only certain redactions, while permitting Respondent to maintain others. (Resp. Exh. B). The fact that the ALJ upheld some of Respondent's redactions decidedly belies Respondent's unfounded assertion that the ALJ improperly applied a "*per se* rule prohibiting redactions of nonresponsive and/or irrelevant information."  The ALJ's May 20 Order clearly shows that the ALJ agrees that, under certain circumstances, unrelated information contained in a message thread may be properly redacted, despite what Respondent would disingenuously have the Board believe.

In addition, Respondent takes completely out of context the statement in the ALJ's Order regarding his evaluation of the relevance or responsiveness of each document.  Respondent claims in its Appeal that the ALJ "did not even evaluate the relevance or responsiveness of each message." In truth, however, the ALJ's Order shows that he *did* in fact evaluate the relevance and responsiveness of each of the disputed Chime messages, and he stated in his Order that he did not make such evaluations out of context. (Resp. Exh. B).  Respondent's selective omission of that critical portion of the ALJ's ruling further illustrates the disingenuousness of the arguments supporting Respondent's Appeal.

Respondent also deliberately misstates the ALJ's statement in the Order that certain redacted information must be produced because it "may be useful" in this case.  Respondent argues that, by making this statement, the ALJ somehow "rewrote" the GC Subpoena and the Charging

13



Party Subpoena.  This nonsensical assertion is yet again false.  The ALJ's May 20 Order in no way expands the scope of either subpoena, but rather compels compliance with the subpoenas as written. The subpoenas each specifically call for Respondent to produce documents in their entirety "without abbreviation, redaction, deletion or expurgation." (Resp. Exh, G-H).  Read in context of the entire Order, and in consideration of the authority relied upon by the ALJ, the ALJ's statement about the potential usefulness of the redacted information clearly references the potential relevance of the withheld information insofar as the redacted portions may shed light on or provide context to the portions Respondent decided to disclose.

The ALJ's May 20 Order regarding redactions properly relies upon *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 451–52 (D. Minn. 2011). In that case, the District Court held that "Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request." *Id.* at 451 (citing several District Court cases).  The *Bartholomew* Court astutely noted that it is rare to find any document that contains only relevant information, and "irrelevant information within a document that contains relevant information may be highly useful to providing context for the relevant information."

This holding of the District Court is directly applicable to the current situation.  From the face of the redacted Chimes messages, it is apparent that the redactions effectively strip the documents of essential context and render them virtually undecipherable.  Consider, for example Exhibit N(1) attached to Respondent's Appeal.  In that document, Respondent has redacted literally all substantive content, except for an isolated photograph of what appears to be an employee engaged in protected concerted activity. (Resp. Exh. N(1)).  Whether one of the Respondent officials who participated in this communication requested this photo or made comments about the employee depicted while engaged in protest activity cannot be gleaned due to



Respondent's wholesale redactions. The other documents in question similarly reflect widespread redactions that render the disclosed portions completely out of context. (Resp. Exh. N(2) – N(5)). Clearly, the redactions deprive the documents of necessary context – and strip the documents of any meaning or use – which is why the ALJ properly ordered that many redactions be removed after having carefully considered what was needed to provide proper context to each document.

The ALJ, therefore, did not abuse his discretion when, on May 20, after careful *in camera* review, he Ordered Respondent to produce unredacted or less-heavily redacted Chimes messages. The ALJ likewise did not abuse his discretion by ordering Respondent to produce an unredacted version of the OneNote file at issue in this Appeal, as the ALJ's ruling in that regard is premised on the principle, espoused in his May 19 order for *in camera* inspection, holding that documents produced in response to a subpoena request may not be unilaterally redacted to the extent the producing party believes that portions of the document are irrelevant. (GC Exh. 2). Thus, with respect to both the OneNote file and the Chimes messages, the ALJ properly determined that Respondent may not decide for itself what is or is not relevant and may not selectively withhold portions of subpoenaed documents. Respondent failed to meet its burden of showing that the ALJ abused his discretion and, accordingly, Respondent's request for permission to appeal and its appeal should be denied, and the ALJ's orders should be upheld accordingly.

## IV.  THE BOARD SHOULD DISPOSE OF THIS APPEAL EXPEDITIOUSLY IN ORDER TO AVOID FURTHER DELAY OF THE PROCEEDING

Counsel for the Acting General Counsel respectfully urges the Board to expedite its review of Respondent's request for special permission to appeal the ALJ's rulings. As described above, Respondent Appeal is frivolous, yet it is being used by Respondent to delay indefinitely the conclusion of the hearing before the ALJ. Meanwhile, the Charging Party continues to languish in the absence of a remedy for Respondent's unlawful actions against him, and the conclusion of

GC Exhibit 123

the hearing remains in doubt.  The Board should, as expeditiously as possible, rule upon Respondent's Appeal, so that the hearing in this matter may finally conclude and the Parties may move toward a resolution of this dispute.

## V.    CONCLUSION

Based on the foregoing, Counsel for the Acting General Counsel respectfully requests that Respondent's Appeal be denied in its entirety on an expedited basis and that Respondent be ordered to produce the documents called for by the GC Subpoena and the Charging Party Subpoena in unredacted form, as ordered by the ALJ.

Dated:  June 11, 2021

Matthew A. Jackson
Evamaria Cox
Counsel for the Acting General Counsel
National Labor Relations Board, Region 29
Two Metro Tech Center
Suite 5100
Brooklyn, NY 11201-3838

Attachments

GC Exhibit 123

GC Exhibit 1

GC Exhibit 123

OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services LLC,          Case No.   29-CA-261755

and

Gerald Bryson,

          An Individual.


_____

_____



Place: Brooklyn, New York (via Zoom Videoconference)

Dates: March 29, 2021

Pages: 1 through 38

Volume: 1

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885



GC Exhibit 123

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

AMAZON.COM SERVICES LLC,          Case No.   29-CA-261755

and

GERALD BRYSON,

                An Individual.

The above-entitled matter came on for hearing via Zoom
videoconference, pursuant to notice, before **BENJAMIN W. GREEN**,
Administrative Law Judge, at the National Labor Relations
Board, Region 29, 2 Metro Tech Center, 5th Floor, Brooklyn, New
York 11201, on **Monday, March 29, 2021, 10:05 a.m.**



1    Counsel has.

2         JUDGE GREEN:  Okay.  Okay.  I think -- I think we're

3    situated to go forward.  If you run into problems, we have a

4    month and you can contact me.  Just reach out to me by email if

5    we have to, you know, if we have to deal with anything by

6    conference call, we -- we can do it again.  Again, you know,

7    start -- start with JFK8, and, youknow, the sooner you get --

8    you produce, the sooner the Respondent produces it, the sooner

9    the General Counsel can say that's enough.

10        MS. COX:  Correct.  But Your Honor, if I may, today was

11   supposed to be the production of paragraphs 9 through 15.

12   Yesterday, Respondent decided unilaterally that those documents

13   would be produced April 5th.  And it's a blatant breach of our

14   agreement and it's an attempt to thwart and delay this process.

15   Those documents should have been produced today.  That was the

16   agreement that we have verballyand inwriting, that Respondent

17   wrote on March 6th -- 16th on an email, on which you were

18   copied.  They're saying that they were in agreement --

19        JUDGE GREEN:  They understand, but --

20        MS. COX:  -- to opening the record today for the

21   production of documents that are not at issue.

22        JUDGE GREEN:  Okay.  Let me just ask the Respondent.

23        So what's the status of those documents?

24        MR. MURPHY:  Well, so frankly, there was a subsequent

25   email from -- from Ms. Cox, indicating that documents would be



GC Exhibit 123

1       MS. COX:  Yeah.  I don't know if you have a preference or

2   a practice with respect to that?

3       JUDGE GREEN:  Yes.  I don't have any problem with using N

4   word.

5       MR. MURPHY:  Okay.

6       JUDGE GREEN:  You know, if that's the word, you can use N

7   word.

8       MS. COX:  Okay.  Thank you.

9       JUDGE GREEN:  So May 4th, I still technically have a trial

10  date on May 4th in another matter.  I still expect it to

11  settle.  I'm going to give them another week or so to see if it

12  settles.  If it doesn't, you know, I might have to -- we might

13  have to be off on May 4th, which would mean May 3rd and then

14  continuing May 5th.  I'll give you as much notice as possible

15  if that's going to be the case.

16      Do you want to make opening statements now?  Or do you

17  want to make opening statements later?

18      MS. COX:  Later.

19      JUDGE GREEN:  Okay.  And I take it same from Mr. Murphy?

20      MR. MURPHY:  Yes.

21      JUDGE GREEN:  You don't have to, but let me tell you that

22  you can submit opening statements in writing if you would like.

23  Do you know whether there's going to be a sequestration order

24  request?

25      MS. COX:  I'd say yes, Your Honor.



GC Exhibit 123

1      JUDGE GREEN:  Okay.  Okay.  And the only thing else I'll

2  tell you is that to the extent you're having verbal

3  conversation regarding the production of subpoenaed documents,

4  I mean, please do try to confirm in writing, in email, so we

5  have documentation of what's being requested by the General

6  Counsel and what's being done by the Respondent.

7      And unless we have anything else, I'm going to close the

8  record today, and we can move on.

9      MS. COX:  No.  Nothing else from General Counsel.

10     MR. MURPHY:  Nothing, Your Honor.  Thank you.

11     JUDGE GREEN:  Okay.  So very good.  So we'll go off the

12  record, and I will be issuing you all a Zoom invite sooner

13  rather than later this time, for May 3rd.

14  **(Whereupon, the hearing in the above-entitled matter was**

15  **recessed at 10:55 a.m. until Monday, May 3, 2021 at 9:30 a.m.)**

16

17

18

19

20

21

22

23

24

25



GC Exhibit 123

GC Exhibit 2



GC Exhibit 123

**UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
DIVISION OF JUDGES
NEW YORK BRANCH OFFICE**

**AMAZON.COM SERVICES LLC**

        **and**                                   **Case   29-CA-261755**

**GERALD BRYSON, AN INDIVIDUAL**

<u>**ORDER ON IN CAMERA INSPECTION OF
REDACTED SUBPOENAED DOCUMENTS**</u>

The General Counsel seeks the production of certain subpoenaed documents without redaction and the Respondent opposes this request.  The Respondent produced certain Amazon Chime instant message threads with extensive redactions.  The General Counsel entered those redacted threads into evidence as General Counsel Exhibits 65 to 69.  The duration and number of messages in each threads are as follows:

| Exhibit | Message Count | Earliest Item | | Latest Item | |
|---------|---------------|---------------|------|-------------|------|
| | | Date | Time | Date | Time |
| GC 65 | 35 | 03/30/2020 | 6:04:27 | 03/30/2020 | 18:00:59 |
| GC 66 | 43 | 03/25/2020 | 8:44:31 | 03/25/2020 | 15:11:16 |
| GC 67 | 143 | 04/07/2020 | 5:48:07 | 04/07/2020 | 15:18:24 |
| GC 68 | 27 | 04/08/2020 | 5:20:14 | 04/08/2020 | 06:24:12 |
| GC 69 | 71 | 03/25/2020 | 06:11:03 | 03/25/2020 | 17:20:36 |

The General Counsel is entitled to receive complete documents and not just portions of those documents.  Documents produced in response to a subpoena or discovery request may not be unilaterally redacted to the extent the producing party believes that portions of the documents are irrelevant.  See *Engage Healthcare Communications, LLC v. Intellishpere, LLC*, 2017 WL 3624262 (D.N.J. Apr. 26, 2017), report and recommendation adopted, 2017 WL 3668391 (D.N.J. Aug. 23, 2017) and cases cited therein.   The entirety of an individual letter or email can be easily identified.  However, texts or instant messaging are more difficult.  As a mode of communication, messaging is more like a verbal conversation and it can be difficult to determine where one conversation ends and another conversation begins.

Here, we know the chat threads contain information responsive to a subpoena because the Respondent produced them.  Further, the threads are not particularly lengthy.  Accordingly, it would be perfectly reasonable to expect these threads to constitute a single, complete communication subject to production.  I note also that the threads are not numerous.  In the interest of caution, I have indicated that I am willing to review the unredacted message threads to determine whether they constitute a complete responsive document.  I see no other way of determining whether the redactions were proper and will not leave it to the Respondent to make unilateral decisions regarding the same.



GC Exhibit 123

Accordingly, it is HEREBY ORDERED that the Respondent produce to me, no later than May 20, 2021, at 12:00 p.m., the unredacted versions of General Counsel Exhibits 65 to 69 for in camera review.

.                               Dated:        May 19, 2021
                                              New York, New York

                                              *S/ Benjamin W. Green*
                                              _____
                                              Benjamin W. Green
                                              Administrative Law Judge

Served by email as follows:

Zainab N. Ahmad, Esq. ([Zahmad@gibsondunn.com](mailto:Zahmad@gibsondunn.com))

Nicole A. Buffalano, Esq. ([nicole.buffalano@morganlewis.com](mailto:nicole.buffalano@morganlewis.com))

Evamaria Cox, Esq. ([Evamaria.Cox@nlrb.gov](mailto:Evamaria.Cox@nlrb.gov))

Elizabeth H. DeVleming, Esq. ([Elizabeth.DeVleming@nlrb.gov](mailto:Elizabeth.DeVleming@nlrb.gov))

David Gaston, Esq. ([David.Gaston@nlrb.gov](mailto:David.Gaston@nlrb.gov))

Matthew Jackson, Esq. ([Matthew.Jackson@nlrb.gov](mailto:Matthew.Jackson@nlrb.gov))

Frank Kearl, Esq. ([frank.kearl@maketheroadny.org](mailto:frank.kearl@maketheroadny.org))

Christopher J. Murphy, Esq. ([christopher.murphy@morganlewis.com](mailto:christopher.murphy@morganlewis.com))

Kelcey J. Phillips, Esq. ([kelcey.phillips@morganlewis.com](mailto:kelcey.phillips@morganlewis.com))

Nancy Reibstein, Esq. ([Nancy.Reibstein@nlrb.gov](mailto:Nancy.Reibstein@nlrb.gov))

Richard Rosenblatt, Esq. ([richard.rosenblatt@morganlewis.com](mailto:richard.rosenblatt@morganlewis.com))

Jennifer Mott Williams, Esq. ([jennifer.williams@morganlewis.com](mailto:jennifer.williams@morganlewis.com))

GC Exhibit 123

GC Exhibit 3

GC Exhibit 123

OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services, LLC,          Case No.   29-CA-261755

                    Employer,

and

Gerald Bryson,

            Petitioner.

_____

_____

Place: Brooklyn, New York (Via Zoom Videoconference)

Dates: May 24, 2021

Pages: 1653 through 1771

Volume: 1

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885



GC Exhibit 123

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**REGION 29**

| | |
|---|---|
| In the Matter of: | |
| AMAZON.COM SERVICES, LLC, | Case No.   29-CA-261755 |
| Employer, | |
| and | |
| GERALD BRYSON, | |
| Petitioner. | |

The above-entitled matter came on for hearing, via Zoom
videoconference, pursuant to notice, before **BENJAMIN GREEN**,
Hearing Officer, at the National Labor Relations Board, Region
29, Two Metro Tech Center North, 5th Floor, Brooklyn, NY 11201,
on **Monday, May 24, 2021 at 10:05 a.m.**



GC Exhibit 123

1   sure that everybody gets on as expeditiously as possible.

2   If -- if -- if we have to do Mr. -- Ms. Hernandez the day after

3   or Wednesday, I don't think that that -- I don't think that

4   harms or prejudices the General Counsel.  I think, if anything,

5   it's to the contrary that oftentimes respondents want to hear

6   the -- the full evidence come in from the General Counsel

7   before they put anything on.  But if you -- if you prefer to go

8   forward, I don't see any problem doing that.

9       MR. MURPHY:  Yeah.  I mean, we're -- we're ready to go.

10      JUDGE GREEN:  Okay.  So let's go.

11      MS. COX:  But, Judge, as a side issue, the petition to

12  revoke raises relevancy issues as to Ms. Hernandez's testimony.

13      JUDGE GREEN:  We're not there yet.  We haven't -- she's --

14  hasn't even been asked a question.  You know, I mean, to the

15  extent that there's a -- some kind of petition to revoke to the

16  extent that it -- the Respondent's taking the position that

17  Ms. Hernandez can't be called, that is going to be rejected if

18  that satisfies you.  Whether there is some kind of relevancy

19  issue, we'll find out, and there will be objections during the

20  course of her testimony.

21      MS. COX:  Thank you, Judge.

22      MR. KEARL:  And has there been any resolution on the

23  unredacted CHIMEs?  I know we were waiting --

24      MR. MURPHY:  Mr. Kearl, thank you very much for bringing

25  that up.  I apologize for not mentioning that at the outset,



GC Exhibit 123

1    Your Honor.  We are going to be taking a special appeal from

2    your ruling on the redaction/unredaction issue.

3        JUDGE GREEN:  Okay.  So just do it as soon as you can.

4        MR. MURPHY:  Yeah.  We're going to file it either tonight

5    or tomorrow morning.

6        JUDGE GREEN:  Okay.  That is fine.  You are entitled.

7        MR. KEARL:  And, sorry.  One last thing.  You had -- you

8    had said, also, Mr. Murphy, that the goal was to complete all

9    of the production of documents last week.  I got some

10   documents, but I believe there's still some outstanding

11   paragraphs.  Are we still waiting on some paragraph 19

12   documents?

13       MR. MURPHY:  Yeah.  So the -- so some of the paragraph 19

14   documents are addressed in -- in connection with the petition

15   to revoke, and I don't know if you've had a chance to review

16   the entire thing, but --

17       MR. KEARL:  I -- I have.  So the -- so the idea is that

18   now there's a petition to revoke on the order from over a month

19   ago?

20       MR. MURPHY:  I -- I wouldn't characterize it as that.  I

21   think we characterize it as a motion to reconsider, you know,

22   based -- based -- based on the developments in the case, and --

23   and the -- the -- the Burnup & Sims issue.  But --

24       MR. KEARL:  Okay.  So I can expect no further production

25   until that petition to revoke is resolved?



www.escribers.net | 800-257-0885

GC Exhibit 123

GC Exhibit 4

GC Exhibit 123

OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services, LLC,          Case No.   29-CA-261755

          Employer/Respondent,

and

Gerald Bryson,
          An Individual.


_____

_____


Place: Brooklyn, New York (via Zoom videoconference)

Dates: May 3, 2021

Pages: 233 through 392

Volume: 4

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885



GC Exhibit 123

## UNITED STATES OF AMERICA

## BEFORE THE NATIONAL LABOR RELATIONS BOARD

## REGION 29

| | |
|---|---|
| In the Matter of: | |
| AMAZON.COM SERVICES, LLC, | Case No.   29-CA-261755 |
| Employer/Respondent, | |
| and | |
| GERALD BRYSON, | |
| An Individual. | |

The above-entitled matter came on for hearing, via Zoom
Videoconference, pursuant to notice, before **BENJAMIN W. GREEN**,
Administrative Law Judge, at The National Labor Relations
Board, Region 29, Two Metro Tech Center North, 5th Floor,
Brooklyn, New York 11201, on **Monday, May 3, 2021, 10:00 a.m.**

1   morning, but I think as of last night, it was somewhere around

2   4,000 pages of documents and counting, which, in my experience

3   before the Board, that's a awful lot of information.  And that

4   required a lot of culling of stuff that was nonresponsive

5   because again, this world of electronic discovery, you -- you

6   start wide, then you start whittling down, and it takes a lot

7   of time.

8       We've been telling the Region and Your Honor for at least

9   a month that there was no conceivable way that we could meet

10  all of these document demands by May 3rd.  We're trying, and

11  we're working on it, and I have a veritable army of lawyers and

12  e-data personnel assisting with the project.

13      And while in a utopian world, we would've completed the

14  process with a snap of our fingers; that, of course, is not the

15  world in which any of us are living, particularly in the

16  context of a pandemic.  We live in a world where we have said

17  time and again that this is -- if this were civil lita --

18  litigation, that this would take months, and months, and

19  months.  And if the document production takes months, and

20  months, and months, the production of the privilege log takes

21  even longer, because you have to get the documents.  You --

22  you've got to have them harvested by your e-data people.  They

23  got to have them transmitted, they're searched, they're

24  reviewed, and they're redacted.  And then there's a

25  corresponding produ -- produ -- preparation of a privilege log,



GC Exhibit 123

GC Exhibit 5

GC Exhibit 123

OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services, LLC,          Case No.   29-CA-261755

                      Employer,

and

Gerald Bryson,

                  Petitioner.

_____

_____

Place: Brooklyn, New York (Via Zoom Videoconference)

Dates: May 27, 2021

Pages: 1908 through 2042

Volume: 15

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885



# GC Exhibit 123

**UNITED STATES OF AMERICA**

**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

**REGION 29**

| | |
|---|---|
| In the Matter of: | |
| AMAZON.COM SERVICES, LLC, | Case No.   29-CA-261755 |
| Employer, | |
| and | |
| GERALD BRYSON, | |
| Petitioner. | |

The above-entitled matter came on for hearing, via Zoom videoconference, pursuant to notice, before **BENJAMIN GREEN**, Hearing Officer, at the National Labor Relations Board, Region 29, Two Metro Tech Center North, 5th Floor, Brooklyn, NY 11201, on **Thursday, May 27, 2021 at 9:33 a.m.**.



1    want to make sure I'm clear.  Did Respondent file an extension

2    of time on the opposition to our Bannon Mills motion?  Because

3    we didn't get one.

4       JUDGE GREEN:  No.  But I'm not -- no.  But I'm telling you

5    I'm not -- I'm not rejecting it on that basis.  I'm not

6    rejecting it on the basis of timeliness.

7       MR. KEARL:  And I -- I -- I have one question as well.

8    There was as subpoena that was served on Make the Road several

9    weeks back, and I filed the petition to revoke, and I got an

10   email from Respondent saying they were going to withdrawal, but

11   I never got confirmation.  Can we --

12      MR. MURPHY:  Yes.  It's -- it's such a hanging thread,

13   Mr. Kearl.  Yeah.  That -- that subpoena was withdrawn

14   consistent with the email that we sent you, so --

15      MR. KEARL:  Okay.  But then that's both the subpoena that

16   was emailed to me and the subpoena that --

17      MR. MURPHY:  Yes.  Yes.  Yes.

18      MS. COX:  I have one other issue, Judge.  So as you know,

19   Respondent was supposed to file a special appeal, and we

20   proceeded without those documents.  I just want to know when

21   that special appeal is going to be filed.  My understanding was

22   yesterday.  We have no idea whether we'll close or not --

23   whether --

24      JUDGE GREEN:  Well, you're not -- right.  I mean, I'm

25   assuming you're not closing until at the earliest we get a



GC Exhibit 123

1    response to any special appeal.

2        MS. COX:  Right.  But if they don't file, then --

3        JUDGE GREEN:  Yes.  I -- right.  So Mr. Murphy, do we have

4    a date -- do we have a date?  Do you have at least an estimate?

5        MR. MURPHY:  We -- we -- we -- we -- we spoke briefly

6    about this at the very opening of the hearing, Judge, and --

7    and if you've like me to consult with the folks that are

8    working on that and -- and communicate by email with you and

9    the parties as to when that'll be filed, I'm -- I'm happy to do

10   that.

11       JUDGE GREEN:  Okay.  I -- I don't think we're going to get

12   a very quick turnaround necessarily on that from the Board.  At

13   least -- maybe we will.  Maybe we will, but that's not really

14   my experience.  They're busy.

15       Any-who -- anyway -- as -- as soon as -- as is earthly

16   possible, please file that.

17       MR. MURPHY:  We will.  So are we done with the testimony

18   at this point?

19       JUDGE GREEN:  I believe so.  Am I correct about that?

20       MS. COX:  At this time, yes, Judge.

21       JUDGE GREEN:  Okay.  So unless anybody has anything else,

22   we're -- we're going to be off the record.  And -- and as a

23   practical matter, we're going to be postponed indefinitely

24   until a special appeal is ruled upon by the Board, I think.

25       Am I right that the -- the -- I'm right that the only





GC Exhibit 124

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD

AMAZON.COM SERVICES LLC )
)
)
and ) Case 29-CA-261755
)
GERALD BRYSON, an Individual. )

**RESPONDENT'S REPLY TO COUNSEL FOR THE ACTING GENERAL COUNSEL'S OPPOSITION TO RESPONDENT'S REQUEST FOR SPECIAL PERMISSION TO APPEAL AND APPEAL OF THE ADMINISTRATIVE LAW JUDGE'S ORDERS DENYING RESPONDENT'S MOTIONS FOR RECONSIDERATION, REFUSING TO REVOKE CHARGING PARTY SUBPOENA B-1-1C9GVF PARAGRAPH 4, AND REQUIRING RESPONDENT TO UNREDACT CERTAIN DOCUMENTS**

## INTRODUCTION

Counsel for the Acting General Counsel's ("CAGC") Opposition to Respondent's Request for Special Permission to Appeal and Appeal ("Special Appeal") is long on invective, baseless accusations of delay, and mischaracterizations of law and fact,[1] but short on responding to the substance of Respondent's Special Appeal. As explained below, Respondent timely filed its Special Appeal and has established that the ALJ's Subpoena Orders and Redaction Orders contravene applicable legal precedent.

At this point, there is very little in dispute: everyone agrees the Charging Party, Gerald Bryson, was engaged in protected concerted activity in March and April 2020, and everyone

---

[1] Much of the CAGC's briefing focuses on baseless attacks on Respondent and its counsel, none of which is relevant to the Special Appeal and all of which has been and is being addressed by the ALJ on the CAGC's pending Motion for *Bannon Mills* sanctions, to which Respondent already has responded. Nonetheless, to set the record straight, the CAGC ignores much factual context, including that the CAGC served the bulk of its production requests just two weeks before the trial in this case began and the ALJ expressly asked the CAGC whether it wanted to proceed with a hearing or wait until after Respondent could produce all documents. In total, the CAGC's and Charging Party's subpoena requests have required Respondent and its counsel to devote over 1,700 hours to review millions of records. Respondent has reasonably and diligently attended to its obligations, and has already produced over 8,750 pages of documents over 15 days of hearing. Again, this case involves a single Charging Party at a single location. Suffice it to say, Respondent disagrees with the CAGC's distortion of the discovery proceedings in its Opposition.



GC Exhibit 124

agrees Bryson was caught on video during this activity verbally attacking a female coworker, calling her, among other things, a "gutter bitch" and "drug addict," and stating Respondent hires the "scum of the earth" on a megaphone in front of their colleagues, then doubling down on his profane and abusive insults in a Facebook live video. The only question now at issue is whether Respondent held an honest, good faith belief that Bryson engaged in the misconduct that is borne out in the video recordings in the record, and whether Respondent would have terminated Bryson for this misconduct even absent his protected concerted activity. None of the remaining unproduced documents, including the redacted Chime messages or OneNote notes, are relevant to these narrow issues. Nothing in the CAGC's Opposition refutes Respondent's arguments in its Special Appeal demonstrating the ALJ's Orders requiring Respondent to produce additional documents are contrary to applicable law. The Board should grant Respondent's Special Appeal and reverse the ALJ's Orders compelling production and unredaction.

I.   **RESPONDENT FILED ITS SPECIAL APPEAL PROMPTLY, ONE DAY AFTER RECEIVING THE HEARING TRANSCRIPT.**

The CAGC's assertion that Respondent's Special Appeal is untimely is simply false. Respondent filed its Special Appeal on June 5, 2021[2] – one day after Respondent received the May 27 hearing transcript, which contained one of the ALJ's oral rulings that is being appealed. *See* Special Appeal, Exh. A, at 1916:23-1918:20. A copy of the court reporter's June 4 email transmitting the May 27 transcript is attached as Exhibit A (attachments to the email omitted). The CAGC's arguments in support of its claims of untimeliness and undue delay have no factual basis.

First, the CAGC's assertion that Respondent failed to explain the timing of its Special Appeal ignores the fact that both Respondent's Request for Special Permission and

---

[2] All dates herein refer to 2021 unless otherwise specified.



Respondent's Special Appeal clearly stated Respondent filed the Special Appeal promptly after receiving the May 27 transcript.  *See* Request, at 2 fn. 1; Special Appeal, at 2 fn. 2.  Respondent received the May 27 transcript on June 4, and filed its Special Appeal one day later, on Saturday, June 5.  This one-day "delay" was reasonable and cannot establish lack of timeliness.

Second, the CAGC's assertion that "the ALJ had issued each of the orders which Respondent now appeals by May 24" (CAGC Opposition, at 6) again ignores the content of Respondent's Request for Special Permission to Appeal and Appeal, both of which clearly state that two of the four orders Respondent is appealing were issued *after* May 24: the ALJ's Subpoena Reconsideration Order, which the ALJ issued orally on the record on May 24, and orally clarified on the record on <u>May 25</u>; and the ALJ's OneNote Redaction Order, which the ALJ issued orally on the record on <u>May 27</u>.  The CAGC's suggestion that Respondent's appeal of orders issued on May 25 and May 27 is somehow untimely because it was not filed on May 24 or 25 is absurd.

Third, the CAGC's ignores the context of Respondent's counsel's statement at the May 24 hearing regarding filing its Special Appeal on May 24 or 25.  At that time, Respondent's counsel was referring to the ALJ's Chime Redaction Order, which was issued in writing on May 20.  However, on May 24 the ALJ orally denied Respondent's Motion for Reconsideration of certain prior subpoena rulings, and orally clarified that Order on the record on May 25.  Respondent (despite having ordered daily transcripts) did not receive the official transcripts from those hearings until May 27th and 28th.  Copies of the court reporter's May 27 and 28 emails transmitting the May 24 and 25 transcripts are attached as Exhibits B and C, respectively (attachments to the emails omitted).  By that time, the ALJ had also issued a fourth ruling that Respondent intended to appeal – the OneNote Redaction Order, which the ALJ issued orally on



the record on May 27.  Respondent received the hearing transcript reflecting that ruling on June 4.  Given that all four of the ALJ's Orders that are the subject of Respondent's Special Appeal involve the same core issues – the responsiveness of the subpoenaed documents in light of the narrowed scope of the disputed issues in this case, and the proper legal analytical framework applicable to the redaction of nonresponsive and/or irrelevant material from Chime message threads and OneNote files – Respondent consolidated all of its appeals into a single consolidated Special Appeal rather than file piecemeal.  Respondent's approach represents a more efficient use of the Board's, and the parties', resources because it permits the Board to address these related issues at the same time, rather than requiring the Board to address these issues four separate times in four separate appeals.

Fourth, Respondent reasonably waited for the May 24, 25, and 27 hearing transcripts before filing its Special Appeal.  The CAGC's claim that Respondent "essentially admitted it did not need the transcript in order to file its Appeal" (Opposition, at 6) again lacks appropriate context.  As explained above, Respondent's counsel at that time was referring only to the ALJ's May 20 written Chime Redaction Order, and not the ALJ's subsequent oral rulings.  While Respondent did take notes at the hearing, Respondent was entitled to wait for the official transcript to verify the accuracy of its notes.[3]  Moreover, Respondent was not required to file its Special Appeal without attaching the actual Orders it was appealing, which were reflected in the official transcripts prepared by the court reporter, and Respondent seriously doubts the CAGC would have agreed to permit the Board to rely on Respondent's unofficial notes as the ALJ's

---

[3] The CAGC's references to Respondent's "veritable army" of attorneys is completely irrelevant.  Respondent's counsel made this comment to describe the Herculean efforts it undertook to respond to the CAGC's onerous and late document production demands.  Tr. at 245:24-247:8 (relevant transcript excerpts are attached as Exh. D).  Despite the resources Respondent has been required to expend in connection with the CAGC's unprecedented production demands in this single alleged Charging Party case, Respondent still managed to promptly file its Special Appeal one day after receiving the necessary hearing transcript.


GC Exhibit 124

official ruling.  Finally, Respondent ordered daily transcripts from the court reporting service, but it had no control over when those transcripts were delivered.  Respondent filed its Special Appeal one day after receiving the remaining necessary transcript, on a Saturday.

Out of nowhere, the CAGC now claims Respondent should have demanded email "rulings" from the ALJ and appealed those instead.  This argument is baseless.  The ALJ issued official oral rulings on the record, and these rulings were captured by the court reporter in the official hearing transcripts.  It would be illogical for Respondent to demand the ALJ also prepare email "rulings" when the official transcript was forthcoming, nor would the ALJ have been required to issue such rulings at Respondent's request.  Unsurprisingly, the CAGC does not cite any Board rule, case, or other legal precedent supporting the proposition that a party is required to seek an email version of an ALJ's oral ruling on the record in order for an appeal to be considered "prompt."

Finally, the CAGC's broad assertions of prejudice are meritless.  It is the Respondent who will be prejudiced if it is obligated to continue producing nonresponsive documents – on top of the over 8,750 documents *already* produced in this case – based on the CAGC's unreasonable and legally irrelevant demands.  In addition, the CAGC's claims are belied by its own actions in this case, including its several-month delay in serving its subpoenas and its opposition to Respondent's Motion for Leave to File a Third Amended Answer (in which Respondent admitted key facts that significantly narrowed the disputed issues in this case, *see* Tr. at 1657:5-12; 1657:21-25).  It is also disingenuous for the CAGC to claim prejudice from the filing of Respondent's Special Appeal, when the CAGC attempted to derail this case by moving to consolidate it with an unrelated case from Region 19 on May 17, 2021, after the hearing in this case had already proceeded for 11 days.  As the ALJ recognized on the record



GC Exhibit 124

and in his Order denying the Motion to Consolidate, the CAGC's consolidation of these cases would have resulted in substantial delay.  S*ee* Special Appeal, Exh. F (ALJ Order denying the CAGC's Motion to Consolidate), at 3 (noting "the Seattle case does not appear to be significantly interrelated with the New York case and consolidation would delay disposition of the latter"), 4 (noting the trial in this case had "already proceeded for 11 days on the record" and was "nearly complete"); Tr. at 1644:6-8; 1648:25-1649:5.  The CAGC's claims of delay must be viewed in light of its continued insistence on litigating undisputed and/or irrelevant issues, even after being admonished repeatedly by the ALJ to cease doing so.  S*ee e.g.*, Tr. at 1794:1-1795:10.[4]  Given the CAGC's own actions in this case, it can hardly claim a genuine concern about delay.

## II.     THE ALJ'S SUBPOENA AND REDACTION ORDERS ARE CONTRARY TO THE RECORD IN THIS CASE AND APPLICABLE LAW.

### A.     The Remaining Documents Responsive to the CAGC and Charging Party Subpoenas Are No Longer Relevant to Any Question at Issue in This Case.

The CAGC's contention in Section III.B of its Opposition that "the central issue at the heart of this case is Respondent's motivation for suspending and discharging Charging Party Gerald Bryson" (CAGC Opposition, at 8) is not supported by the law or the record.  The CAGC's contention that it is entitled to documents related to Respondent's knowledge of Bryson's protected concerted activities or alleged animus toward them is both legally wrong and directly contrary to the ALJ's repeated and unappealed rulings that evidence of motivation or animus is not relevant to this case based on the development of the record and Respondent's

---

[4] The ALJ has also stated off the record that due to his preexisting commitments, he likely will not realistically be able to resume this hearing in the immediate future.  This fact, known to the CAGC, is additional proof that the CAGC's complaints about "delay" are meritless.



GC Exhibit 124

admissions in its Third Amended Answer.  Tr. at 1968:6-1969:23; 1971:17-21; 1971:23-1972:1; 1972:5-13; 1972:25-1973:8; 1794:1-1795:12; 1756:20-1758:1; 1671:24-1672:23.

First, Respondent admitted knowledge in its Third Amended Answer, meaning that issue is no longer in dispute.  To justify its continued pursuit of more documents, the CAGC misleadingly claims Respondent did not admit to having knowledge of Bryson's protected concerted activity before terminating him.  However, this admission was obviously implicit in Respondent's admission of knowledge.  An employer does not have the legally requisite knowledge to establish a violation of the Act if the employer did not know of an alleged discriminatee's protected concerted activity before taking adverse action.  But just in case it was not already clear from Respondent's admission: Respondent does not dispute that it had knowledge of Bryson's protected concerted activities when it terminated him.  The CAGC's argument should be rejected out of hand.

Second, the ALJ has already ruled on the legal framework applicable to this case, which the CAGC's Opposition ignores.  For example, when the CAGC persisted on May 25 in attempting to introduce evidence of animus, the ALJ could not have been clearer in precluding such evidence:

> No. We're -- *we don't need animus in this case*.  Listen, people, you might not like it.  I don't really understand why you don't like it, but the fact is that the Respondent's admission did significantly reduce the scope of this proceeding.  To the extent that the Respondent is admitting that Mr. Bryson engaged in protected concerted activity and his altercation with Ms. Evans occurred during the protected activity, for either -- for either analysis, that had the effect of significantly reducing the scope of this – the scope of this litigation.  *And the fact that we have the – the altercation on tape rendered a great deal of additional evidence -- not irrelevant, just useless*.

Tr. at 1794:1-12 (emphasis added).  When the CAGC protested this ruling and suggested that it would file a special appeal, the ALJ invited it to do so.  *Id*. at 1797:7-11.  The CAGC failed to



challenge that ruling and, therefore, is bound by it at this stage of the proceeding.  The CAGC's

attempts to collaterally attack the ALJ's ruling through its Opposition must fail.

The record contains several virtually identical colloquies between the CAGC – seeking

to present evidence of motivation – and the ALJ – clearly ruling it out and inviting a special

appeal on the issue, including his May 27 rulings:

> [My] ruling -- is that as far as I can tell, given the respondent's amended answer and
> admission with regard to the fact that the altercation occurred in the context of protected
> concerted protests, that this is – this is a *Burnup & Sims* case.  General Counsel hasn't
> been able to articulate any scenario in which it's not a *Burnup & Sims* case and which
> it's *Wright Line*.  But even if it were *Wright Line*, I don't see how a *Wright Line* prima
> facie case wouldn't be established.
>
> \*   \*   \*
> But, frankly, I see no way that this case gets to *Wright Line*.  And so we've been at this a
> long time, and I'm – you know, I've – I've heard, I've considered where we're at, and I
> believe that the litigation has been appropriately limited to what I just indicated.  And if
> you -- if you want to take a special appeal from that, you certainly can.· It looks like
> we're going to have a -- you know, we're going to have a gap anyway because the
> respondent's taking a special appeal with the subpoena issue.  You know, if you want to
> take a – a special appeal to this, you know, do it now, and therefore, you know, they'll
> probably both be dealt with in· the same time frame.· And if we have to -- you know, if
> we have to come back, we can deal with both at the same time.
>
> \*   \*   \*
>
> I'm not interested in animus regarding it [protected concerted activity] because we're –
> we're really past the point where animus is relevant.
>
> \*   \*   \*
> The respondent is admitting that they discharged Mr. Bryson for conduct he engaged in
> while he was engaged in protected concerted activity. So the whole issue of animus is
> not – it's not just not relevant …
>
> \*   \*   \*
> I'm making determinations as we go, and the General Counsel's attorney can certainly
> make an assertion as to why certain things are relevant.  But saying that they're trying to
> establish protected concerted activity or animus with regard to protected concerted
> activity, as far as I'm concerned, we're past that.  So that's a determination I'm making.
> And you can take a special appeal of that.  But that's -- I'm making rulings on that basis.

8



GC Exhibit 124

Tr. at 1968:6-14; 1969:11-23; 1971:17-19; 1971:23-1972:1; 1972:25-1973:8.  Because the

CAGC has chosen not to file a special appeal, the propriety of the ALJ's evidentiary rulings on

this issue are not before the Board.  Similarly, the CAGC's commentary and speculation about

whether and how the analysis of *Burnup & Sims*, 379 U.S. 21 (1964), applies in this case is not

before the Board and will not be unless this case reaches the Board on exceptions on that issue

from the as yet unwritten decision of the ALJ.[5]

Accordingly, the CAGC's attempt to defend the ALJ's Orders on the ground that it is

entitled to documents relating to Respondent's knowledge of the Charging Party's protected

concerted activity (which it has admitted) or alleged animus (which the ALJ has ruled out in an

unappealed ruling) are meritless.

### B.     The ALJ's Redaction Orders Are Contrary to Applicable Law.

Rather than engage on the merits, the CAGC simply states Respondent's explanation of

the Chime and OneNote technologies "attempts to confuse the Board."  CAGC Opposition, at

---

[5]     As the application of *Burnup & Sims* to this case is not before the Board in this (or any other) special appeal, the Board should refrain from speculating on its application to this case before the record closes and before the ALJ issues a decision.  Without waiving this position, the Respondent must correct the CAGC's incorrect statement of the rule in *Burnup & Sims*.  In a *Burnup & Sims* case, there are three discrete elements of proof.  *First*, the CAGC must prove that the employee in question suffered an adverse employment action as a result of conduct occurring during protected concerted activity.  *Second*, assuming the CAGC meets this initial burden, the respondent must establish that it held an honest, good-faith belief that the employee engaged in serious misconduct.  *Third*, assuming the respondent demonstrates such a good-faith belief, the CAGC must prove the serious misconduct never occurred.  *See Shamrock Foods Co. v. NLRB*, 346 F.3d 1130 (D.C. Cir. 2003).  An employer's motive or animus is irrelevant under *Burnup & Sims* because there is no dispute over why the employer terminated the employee – the only issue is whether the conduct for which the employer terminated the employee remained protected or was sufficiently serious so that it lost protection of the Act.  *See NLRB v. Burnup & Sims*, 379 U.S. 21, 23 (1964) (applying analysis where employer terminated employee for "misconduct arising out of a protected activity,"); *see also Shamrock Foods Co.*, 346 F.3d at 1136 (*Wright Line* "is inapplicable to cases … in which the employer has discharged the employee because of alleged misconduct in the course of protected activity" because "[i]n such cases, *Burnup & Sims* makes clear that the employer's 'motive is not at issue,' and that the only question is whether the misconduct actually occurred").

The CAGC's speculation about the impact of *Nexstar Broadcasting, Inc. d/b/a KOIN-TV*, 370 NLRB No. 68 (2021) and *General Motors, LLC*, 369 NLRB No. 127 (2020) should be disregarded, as this issue is not before the Board here.  Here, as the ALJ has stated, there is no dispute regarding the first or the third elements (the CAGC has met its burden on the first element, but cannot do so on the third) based on the record in this case.  Tr at 1756:20-1758:1.  As the ALJ has further stated, the second element, whether Respondent had an honest, good-faith belief that Bryson engaged in serious misconduct, is not yet settled.  *Id.*  Thus, the resolution of this case depends on the ALJ's conclusions relating to the second *Burnup & Sims* element.


GC Exhibit 124

12.  The CAGC fails to provide any substantive explanation of why it thinks that the Board would be so easily confused or why it believes Respondent's explanation of the Chime and OneNote technologies is incorrect or why its position is inconsistent with applicable legal precedent.  Respondent is not attempting to confuse the Board (nor could it), and its explanation that Chime message threads and OneNote files are more akin to an entire email account or filing cabinet, and not a single-subject email or traditional paper document, is based on case law specifically addressing OneNote and other similar technologies.  *See In re Onglyza (Saxagliptin) and Kombiglyze XR (Saxagliptin and Metformin) Products Liability Litigation*, No. 5:18-MD-2809-KKC, 2020 WL 4912294, *5 (E.D. Ky. Aug. 19, 2020) ("[f]iles from apps like OneNote, Evernote, etc. are vastly different from an individual email"); *Gates v. Rohm & Haas Co.*, No. 06-1743, 2007 WL 295416 (Jan. 29, 2007) (permitting redactions of non-responsive material in notebooks); *Texas Brine Co. v. Dow Chemical Co.*, No. 15-1102, 2018 WL 655692, *8 (E.D. La. Feb. 1, 2018) (permitting redactions of nonresponsive/irrelevant rows in an Excel chart).  The ALJ's Redaction Orders, which treated Chime messages and OneNote notes as single-subject emails or documents, are contrary to this case law and incorrect as a matter of law.

The CAGC fails to address this case law in any meaningful way or cite any cases from any forum supporting its claim that Chime message threads and OneNote files should be treated as single-subject emails or documents.  Instead, the CAGC simply asserts the redacted material is needed to provide context.  However, properly viewing Chime messages and OneNote notes as separate documents, there is no legal authority that requires Respondent to produce nonresponsive and/or irrelevant messages or notes simply because the CAGC thinks they might be relevant.



In addition, the CAGC's claim that the ALJ found the redacted Chime messages and OneNote notes would provide context for responsive, relevant material has no basis in the record.  The ALJ's Chime Redaction Order made a generalized conclusion that a subpoenaed party must produce nonresponsive irrelevant information within a document where it "provides context."  Special Appeal, Exh. B, at 1.  But the ALJ did not find that the specific material redacted in the Chimes that were the subject of the Chime Redaction Order would provide context.  As to the remaining Chime message threads and the OneNote file, the ALJ did not even conduct an *in camera* review of the redacted material, much less find that material would provide context.  And it would not.

Nor do the CAGC's speculative claims about needing the redacted Chime messages and OneNote notes for context provide a basis for requiring Respondent to unredact nonresponsive and/or irrelevant material.  The sole example the CAGC cites concerns a photograph contained in a Chime message that it claims it was unable to understand.  Tr., at 1177:14-18; Special Appeal, Exhibit N(1).[6]  However, that photograph and the reason(s) it was taken and forwarded were the subject of extensive witness testimony that provided all of the context the CAGC now complains it lacks.  Tr at 1586:14-19; 1587:9-1588:14 (witness who took picture explaining how he was in a breakroom and took a picture on his phone, after which he pasted it into a running Chime thread with a colleague).  Thus, the CAGC has already obtained all the information it now claims it needs to obtain through the redacted Chime messages.  The ALJ, who heard the testimony, did not at any point suggest the testimony was inaccurate or in conflict with the redacted Chime messages after he reviewed the unredacted messages.  More

---

[6] Exhibits N(1) through N(5) to Respondent's Special Appeal correspond to the CAGC's Exhibits as follows: Exh. N(1) corresponds to GC-65; Exh. N(2) corresponds to GC-66; Exh. N(3) corresponds to GC-67; Exh. N(4) corresponds to GC-68; and Exh. N(5) corresponds to GC-69.



importantly, however, the redacted parts of the Chime messages do not contain the contextual information for which the CAGC claims a needed, and the portions of the Chime thread the ALJ ordered Respondent to unredact are unrelated to the photograph.[7]  Tellingly, the CAGC does not cite to any other specific documents or material it was allegedly unable to understand because of redactions.  The CAGC's attempt to defend the ALJ's Redaction Orders on the ground that it is entitled to unredacted Chime messages and OneNote notes because they might provide context was not relied on by the ALJ, is not supported by legal precedent or the record, and the Board should reject it.

     **C.**    **Respondent Does Not Oppose The CAGC's Request for Expedited Review.**

While, as discussed above, the CAGC's claims of prejudice are exaggerated and largely self-created, Respondent does not oppose the CAGC's request for expedited review.

<div align="center">

**CONCLUSION**

</div>

For the foregoing reasons and the reasons set forth more fully, Respondent respectfully requests the Board grant its Special Appeal and reverse (1) the ALJ's May 24 and 25, 2021 Subpoena Reconsideration Order; (2) the ALJ's May 24, 2021 Subpoena Clarification Order ; (3) the ALJ's May 20, 2021 Chime Redaction Order; and (4) the ALJ's May 27, 2021 OneNote Redaction Order.

Date: June 25, 2021               Respectfully submitted,

                                   */s/ Christopher J. Murphy*
                                   Christopher J. Murphy
                                   Morgan, Lewis & Bockius LLP
                                   1701 Market Street
                                   Philadelphia, PA 19103-2921

---

[7] As stated in Respondent's Special Appeal, and reiterated here, Respondent is willing to provide unredacted copies of the Chime messages and OneNote files at issue to the Board so that it can conduct an *in camera* review, pursuant to an appropriate protective order.


GC Exhibit 124

Phone: +1.215.963.5601
Fax: +1.215.963.5001
christopher.murphy@morganlewis.com

Nicole Buffalano
Morgan, Lewis & Bockius LLP
300 South Grand Avenue, Twenty Second Floor
Los Angeles, CA 90071-3132
Phone: +1.213.612.7443
Fax: +1.213.612.2500
nicole.buffalano@morganlewis.com

*Attorneys for Respondent*
*Amazon.com Services LLC*



## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Respondent Amazon's  Reply to the Counsel for the Acting General Counsel's Opposition to Respondent's Request for Special Permission to Appeal and Appeal of the Administrative Law Judge's Orders Denying Respondent's Motion for Reconsideration, Refusing to Revoke Charging Party Subpoena B-1-1C9GVF Paragraph 4, and Requiring Respondent to Unredact Certain Documents was served on June 25, 2021 via electronic mail upon the following:

Evamaria Cox
Counsel for the Acting General Counsel
National Labor Relations Board, Region 29
Two Metro Tech Center, Suite 5100
Brooklyn, NY 11201
Evamaria.Cox@nlrb.gov

Frank Kearl
Charging Party's Legal Representative
Make the Road New York
161 Port Richmond Ave.
Staten Island, NY 10302
frank.kearl@maketheroadny.org

Judge Benjamin Green
National Labor Relations Board Administrative Law Judge
National Labor Relations Board Division of Judges
26 Federal Plaza, 41st Floor, Suite 41-120
New York, NY 10278
Benjamin.Green@nlrb.gov

Date: June 25, 2021                     */s/ Lauren Emery*
                                        Lauren Emery
                                        Morgan, Lewis & Bockius LLP
                                        1111 Pennsylvania Avenue, NW
                                        Washington, DC 20004
                                        Phone: +1.202.739.5203
                                        Fax: +1.202.739.3001
                                        lauren.emery@morganlewis.com

                                        *Attorney for Respondent*
                                        *Amazon.com Services LLC*

GC Exhibit 124

# EXHIBIT A



GC Exhibit 124

**From:** Reporting Sales <reportingsales@escribers.net>
**Sent:** Friday, June 4, 2021 2:35 PM
**To:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>; Phillips, Kelcey J. <kelcey.phillips@morganlewis.com>; reportingsales@escribers.net
**Subject:** eScribers TRANSCRIPT & INVOICE - AMAZON -- NLRB29C-00219-Copy 1

[EXTERNAL EMAIL]

Hello,


Attached please find the verbatim transcript and the corresponding invoice in the matter of AMAZON, case number 29-CA-261755, hearing date(s) May 27, 2021; .


If a refund is due to you, it will be  credited back to your credit card account.


Please do not hesitate to contact me if you have any questions or need anything further.



Regards,
Jennifer Lindeman



eScribers, LLC
Phone: 1-800-257-0885, ext 7
Email: reportingsales@escribers.net
7227 N 16th Street
Suite 207
Phoenix, AZ 85020


▫

GC Exhibit 124

# EXHIBIT B



GC Exhibit 124

**From:** Reporting Sales <reportingsales@escribers.net>
**Sent:** Thursday, May 27, 2021 3:54 PM
**To:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>; Bagley, Claire E.
<claire.bagley@morganlewis.com>; reportingsales@escribers.net
**Subject:** eScribers TRANSCRIPT & INVOICE - AMAZON -- NLRB29C-00215-Copy 1

[EXTERNAL EMAIL]

Hello,


Attached please find the verbatim transcript and the corresponding invoice in the matter of AMAZON, case number 29-CA-261755, hearing date(s) May 24, 2021.


If a refund is due to you, it will be  credited back to your credit card account.


Please do not hesitate to contact me if you have any questions or need anything further.



Regards,
Jennifer Lindeman





eScribers, LLC
Phone: 1-800-257-0885, ext 7
Email: reportingsales@escribers.net
7227 N 16th Street
Suite 207
Phoenix, AZ 85020

.

GC Exhibit 124

# EXHIBIT C



GC Exhibit 124

**From:** Reporting Sales <reportingsales@escribers.net>
**Sent:** Friday, May 28, 2021 2:52 PM
**To:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>; Bagley, Claire E.
<claire.bagley@morganlewis.com>; reportingsales@escribers.net
**Subject:** eScribers TRANSCRIPT & INVOICE - AMAZON -- NLRB29C-00217-Copy 1

[EXTERNAL EMAIL]

Hello,


Attached please find the verbatim transcript and the corresponding invoice in the matter of AMAZON, case number 29-
CA-261755, hearing date(s) May 25, 2021; .


If a refund is due to you, it will be  credited back to your credit card account.


Please do not hesitate to contact me if you have any questions or need anything further.



Regards,
Jennifer Lindeman





eScribers, LLC
Phone: 1-800-257-0885, ext 7
Email: reportingsales@escribers.net
7227 N 16th Street
Suite 207
Phoenix, AZ 85020

.

GC Exhibit 124

# EXHIBIT D



GC Exhibit 124

OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services, LLC,        Case No.  29-CA-261755

        Employer/Respondent,

and

Gerald Bryson,
            An Individual.


_____

_____


Place: Brooklyn, New York (via Zoom videoconference)

Dates: May 3, 2021

Pages: 233 through 392

Volume: 4

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885



**Page 245**

1 that Your Honor doesn't want to cross, I would think the Region
2 doesn't want to cross, and we certainly don't want to cross,
3 whether Your Honor actually has the privilege, has -- has --
4 has the authority to make the determinations about the
5 privilege and to compel production with regard to privileged
6 documents. No one -- no one wants to deal with the issue right
7 now, if we can avoid it, of whether the Region is going to have
8 to -- if -- if -- if we're going to require the Region to go to
9 the District Court. We don't know what we would do, but we
10 don't think anybody should have to make that decision at this
11 point, because it's just premature.
12    Turning to the merits of their challenge, the first
13 argument they make is that the log is late. The log is not
14 late. If anything, the log was early. You know, there are --
15 the parties talked last week about the fact that typically,
16 document production in a -- a Board ULP hearing such as this,
17 doesn't even start until the first day -- it's certainly not
18 required until the first day, and correspondingly, nor would
19 be -- there would be a -- a privilege log that's required
20 before the first day.
21    For some reason, you know, unbeknownst to us, the Region
22 seems to believe that it's entitled to preferential treatment
23 in this case. No one has explained to us why that is.
24 Nonetheless, we've already produced, I believe, I've -- I've
25 lost count because I think we even produced more stuff this

**Page 246**

1 morning, but I think as of last night, it was somewhere around
2 4,000 pages of documents and counting, which, in my experience
3 before the Board, that's a awful lot of information. And that
4 required a lot of culling of stuff that was nonresponsive
5 because again, this world of electronic discovery, you -- you
6 start wide, then you start whittling down, and it takes a lot
7 of time.
8    We've been telling the Region and Your Honor for at least
9 a month that there was no conceivable way that we could meet
10 all of these document demands by May 3rd. We're trying, and
11 we're working on it, and I have a veritable army of lawyers and
12 e-data personnel assisting with the project.
13    And while in a utopian world, we would've completed the
14 process with a snap of our fingers; that, of course, is not the
15 world in which any of us are living, particularly in the
16 context of a pandemic. We live in a world where we have said
17 time and again that this is -- if this were civil lita --
18 litigation, that this would take months, and months, and
19 months. And if the document production takes months, and
20 months, and months, the production of the privilege log takes
21 even longer, because you have to get the documents. You --
22 you've got to have them harvested by your e-data people. They
23 got to have them transmitted, they're searched, they're
24 reviewed, and they're redacted. And then there's a
25 corresponding produ -- produ -- preparation of a privilege log,

**Page 247**

1 but that takes longer because there's an extra step. We've got
2 to consult with our client, because (audio interference) can't
3 always be assured that we know what communications are
4 attorney/client privilege or are not. And so we had to build
5 in that extra step, and we worked hard to do that. And again,
6 we've already produced a log a week before this hearing was
7 scheduled to start. And we will supplement that, as our
8 production efforts continue.
9    And the log is a typical privilege log that's routinely
10 used in litigation.
11    JUDGE GREEN: So let me just -- let me just jump in a
12 little bit here. I -- I have a couple of questions. I don't
13 know if the -- it's proper for -- to be asked of you or one of
14 the other lawyers who's been on the case longer.
15    So how many documents are we dealing with? The privilege
16 log, how -- how many documents are claimed to be privileged, as
17 in number of pages, not just number of documents?
18    MR. ROSENBLATT: I cannot tell you the number of pages.
19 If I remember correctly, it's somewhere in the 30, maybe, if
20 I'm remembering correctly, somewhere around 36 documents, but
21 that -- that doesn't mean we were only looking at 36 documents.
22 Obviously, we have this massive production.
23    JUDGE GREEN: No, no, I understand. So -- I understand.
24 So if -- this isn't -- this isn't hundreds of pages, right?
25 This is --

**Page 248**

1    MR. ROSENBLATT: It's 55 pages, Your Honor; it's just a
2 rough --
3    JUDGE GREEN: Okay, all right.
4    MR. ROSENBLATT: As -- as -- as it stands.
5    JUDGE GREEN: Okay, and -- and you were talking about the
6 log being late. Let -- let me just ask the Respondent about
7 this. You know, I -- I guess the question is, there were
8 certain paragraphs of the -- of the subpoena that had privilege
9 log -- privileged documents that -- privileged documents were
10 responsive. And I think those include, we established on the
11 record in prior days, 12, 14, and 18. I think that 12 and 14
12 were subject to production on April 6th, and 18 was subject to
13 production on April 19th.
14    I guess my -- my first question is, why wasn't the
15 privilege log produced at the same time that the documents were
16 produced.
17    MR. ROSENBLATT: Your Honor, as is typical with a
18 privilege log, there's still determinations to be made about
19 certain documents that require consultation with our clients,
20 to make certain assessments of that.
21    JUDGE GREEN: Okay.
22    MR. ROSENBLATT: And we can't do it prematurely because we
23 run a serious risk of waiver. So what we do is we work with
24 our client and we provide the privilege log. But if I may,
25 Your Honor, the --



GC Exhibit 124

OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services, LLC,          Case No.   29-CA-261755

     Employer/Respondent,

and

Gerald Bryson,

     An Individual.

_____

_____

Place: Brooklyn, New York (via Zoom Videoconference)

Dates: May 13, 2021

Pages: 1172 through 1349

Volume: 9

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885

PROCEEDINGS

JUDGE GREEN: Okay. So we are back in a matter of Amazon.com Services, LLC, case 29-CA-261755. It's May 13th, 2021. And during an off-the-record discussion, we established that Mr. Kearl is not going to present any independent evidence at this time. And it sounds as though the General Counsel and the Charging Party have nothing more to present at this time.

However, given that the production of subpoenaed documents is ongoing, that might require the Charging Party and the -- the General Counsel to resume their case, and -- and neither is closing. So also on -- in an off-the-record discussion, I understood from Mr. Matthew Jackson that he has something he wants to address regarding the subpoenaed records.

MR. JACKSON: Thank you, Your Honor. So before we proceed any further, it's necessary to call your attention to another very serious subpoena noncompliance issue on the part of the Respondent here. So very late in the day yesterday, Amazon counsel sent counsel for the Acting General Counsel a series of documents, it purports to be responsive to paragraph 19 of the initial JC subpoena which, as you may recall, seeks production of critically relevant information pertaining to internal communications of the Respondent regarding employee protected, concerted activities that Gerald Bryson was engaged in.

As I'm sure you also recall, Your Honor, just the other day, admonished Respondent for redacting nonprivileged

materials from responsive documents it produced to the counsel for the Active (sic) General Counsel, and specifically ordered Amazon to produce the unredacted documents.

Your Honor's order was undeniably clear and premised on the fact that Respondent cannot be permitted to unilaterally decide what is and is not relevant and subject to production. But despite your clear order, Judge, Respondent last night produced a series of heavily redacted copies of what appeared to be Chime messaging communications between Amazon officials, responsive to paragraph 19 of the first subpoena.

So I'm going to share my screen at this time. And I'm going to mark for identification certain documents. Just bear with me for a moment. Okay. Now, I've just shared my screen, sir. This is a document that I've marked for identification as General Counsel -- GC Exhibit 65.

It appears to be a Chime communication between Christine Hernandez and Tyler Grabowski, dated 30th of March. And as you can see, Your Honor, it is almost entirely redacted. I'm going to mark for identification anoth -- GC Exhibit 66

(General Counsel Exhibit Number 66 Marked for Identification).

JUDGE GREEN: I'm sorry. I didn't realize -- I missed that you marked that. You marked that as GC-65?

MR. JACKSON: 6-5. Correct, Your Honor.

JUDGE GREEN: Okay. Hold on just one moment. Go ahead.

MR. JACKSON: Thank you. So now I'm going to share my

screen and again present Your Honor with document I've marked for identification as GC Exhibit 66 -- 6-6. This appears to be another Chime communication between a person named Pooja Desai and Christine Hernandez, dated March 25, 2020.

And as -- again, as I scroll through, Your Honor, you can see that almost the entirety of the document is redacted. I'm going to share my screen again and present Your Honor with a document I've marked as Exhibit 67.

It appears to be a Chime communication between Pooja Desai and Christine Hernandez, dated April 7th, 2020. And as I scroll through the document you'll see that, again, almost the entirety of the document is redacted.

JUDGE GREEN: So let me ask you, are there more like this?

MR. JACKSON: Yeah, I have two more. If you don't need to see them, then I -- I won't bother, but --

JUDGE GREEN: I don't. I don't need -- I don't need to see them because I can't read them.

MR. JACKSON: I under --

JUDGE GREEN: But just going to put tags for -- those are going to be 68 and 69?

MR. JACKSON: So it's 6 -- GC-65 through 69. I've -- they're uploaded into SharePoint, and I've marked them for identification.

JUDGE GREEN: Okay. So 60 -- 68 is a chat with who?

MR. JACKSON: 68 is and a chat Pooja Desai --

JUDGE GREEN: That's right. That's good enough.

MR. JACKSON: And then 69 -- 69 is a -- a chat between Elliott Jones --

JUDGE GREEN: Okay.

MR. JACKSON: -- Milly Gutierrez, and Lisa Stowbridg (sic), S -- excuse me, Strowbridg, S-T-R-O-W-B-R-I-D-G (sic).

JUDGE GREEN: Okay?

MR. JACKSON: So Your Honor, I -- I -- I -- I should say that in conjunction with the production of these documents, Amazon counsel sent us a letter explaining, in essence, that they have unilaterally determined that the redaction portions of these documents are not relevant in the case, without further explanation.

And therefore -- and therefore, Amazon is not going to produce them. Judge, this is completely unacceptable and stands in direct contravention of your explicit order. (Indiscernible, simultaneous speech).

JUDGE GREEN: Okay. So do we have --

MR. JACKSON: -- an unmistakable strategy here, Judge.

JUDGE GREEN: -- do we have the Respondent's -- why -- why is it redacted?

MS. BUFFALANO: So we've -- you know, Mr. Jackson mentions that we were instructed to produce unredacted personnel related documents, right, which we did yesterday. These are -- so let me back up a step. I think understanding what Chime is, is

GC Exhibit 124

UNITED STATES OF AMERICA

BEFORE THE NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

AMAZON.COM SERVICES LLC,          Case No.   29-CA-261755

      Employer/Respondent,

and

GERALD BRYSON,

        An Individual.


The above-entitled matter came on for hearing, via Zoom

videoconference, pursuant to notice, before BENJAMIN W. GREEN,

Administrative Law Judge, at the National Labor Relations

Board, Region 29, Two Metro Tech Center North, 5th Floor,

Brooklyn, NY 11201, on Monday, May 17, 2021, 10:14 a.m.



GC Exhibit 124

of employees who entered the main office on May -- March 25 to raise their COVID-19 concerns, correct?
A I'm aware of that now.
Q And you were aware at the time that employees were featured in news articles in which their concerns about Amazon's response to the pandemic was raised, correct?
A I don't remember.
Q Would you agree that your job duties included communicating with other Amazon officials about employee protest activity?
A No.
Q But you did communicate with other Amazon officials about employees' protest activities; isn't that right?
MS. BUFFALANO: Objection. Official.
MR. JACKSON: Okay.
Q BY MR. JACKSON: You did, in fact, communicate with other members of HR leadership about employee protest activity, correct?
A I don't remember anything specific. I mean, I know that -- I mean, obviously, you mentioned there were the two events that happened. Part of HR's job and the leadership's job is health and safety of employees maintaining policies/procedures are being upheld. So if it was something that was impacted by that, I could see that being part of a conversation or a discussion, but I don't remember anything

specific.
Q You knew that Gerald Bryson was among the employees who participated in the March 30th protest, correct?
A I know that now, but I'm not sure when I was made aware of that.
Q And you knew that Mr. Bryson spoke with certain media outlets about the reasons for his protest activity; isn't that right?
MS. BUFFALANO: Asked and answered.
JUDGE GREEN: Overruled.
MR. JACKSON: It hasn't been asked.
JUDGE GREEN: Overruled.
Q BY MR. JACKSON: Mr. Grabowski, you knew that Mr. Bryson spoke with certain media outlets about the reasons for his protest activity, correct?
A I don't know that, or at least not that I remember.
Q On the day of the March 30th protest, you communicated with Christine Hernandez about the protest; isn't that right?
A I don't remember.
Q Well, let me show you a document that might refresh your recollection.
A Thank you.
Q Okay. Now, extremely hard to decipher anything from this document, but this is a timed communication between yourself and Christine Hernandez on March 30th, 2020, correct?

A Yes.
Q And the only information that is not redacted from this four-page document is a photograph of Christian Smalls engaged in protest on March 30th; isn't that right?
A Yes.
Q Does this reflect -- refresh your recollection about you communicating with Christine Hernandez about the March 30th protest on the day it was happening?
A A little bit, yes.
Q Okay. Do you know who Derrick Palmer is?
A Yes.
Q Is Derrick Palmer depicted in this photo?
A No.
Q Okay. Now, so you sent this photo of Christian Smalls engaged in protest on March 30th to Christine Hernandez, correct?
A Yes.
Q Did you take the photo?
A Yes.
Q Can you describe what the contents of your communications with Ms. Hernandez were reflected in this document?
A I don't remember talking about anything specific. I don't even really know if that conversation is all -- is it all from March 30th?
Q I believe you could tell from the document itself. Let's

look.
You know, this keeps happening to me. I can't -- here it is. All right. So --
A It is.
Q I believe that -- yes. So this -- this conversation occurred entirely on March 30th, correct? You can tell from the document?
A Yes, 6 a.m. to 6 p.m.
Q Okay. Who told you to take this photo?
A No one did.
Q So you don't remember the contents of that conversation you had with Ms. Hernandez?
A So if I'm remembering right, I -- I don't know that there was any context, like, right before or right after that picture was sent. It might have been a different conversation, but I don't think -- if I recall correctly, we weren't speaking about the picture or the event.
So when that picture was taken, I was walking the building, just engaging with the employees, and at that time it was lunch. So the breakrooms were being utilized. And during that time period, we had members of leadership in the breakrooms during lunch to encourage employees and enforce social distancing because it was something where -- I don't believe at the time we had our social distancing team implemented. So each break, there would be members of the

leadership there.
So I was in the third-floor breakroom. And there were employees that were starting to gather near the windows just to kind of look at what was happening. And after speaking to them and encouraging them to separate and social distance, I remember looking out the window and just seeing the parking lot had more people than we had I think seen in a break time just like spread out or, like, looking at what was happening. And I think just with it being something out of the ordinary or unusual, like, I took a picture and sent it to Christine. But I don't remember there being any context on that conversation in the Chime messages or in person. It was more so of, like, I haven't seen anything like this in our parking lot before. Took a picture and sent it.
Q You -- you had never seen anything like the March 30th protest; that's what you're saying?
A I mean, like a group of individuals that spread out and, like, I guess, watching. And there were people on their phones taking pictures in the parking lot from what I remember. It wasn't something that I had seen before.
Q What other photos have you sent Christine Hernandez?
A None that I specifically remember regarding either of those days.
Q Regarding anything?
MS. BUFFALANO: Relevance.

JUDGE GREEN: Sustained.
THE WITNESS: Christine has been my --
MS. BUFFALANO: Don't answer that, Tyler.
JUDGE GREEN: So if I sustain an objection--
THE WITNESS: Oh.
JUDGE GREEN: -- don't answer it.
THE WITNESS: Sorry about that.
MR. JACKSON: Judge, I would just like to state the GC's position on your ruling there. I believe it's in error because evidence regarding the unusual nature of Mr. Grabowski and Ms. Hernandez's conduct reflect Respondent's animus.
JUDGE GREEN: The question, as far as I understood it was, have you ever sent any pictures to Ms. Hernandez about anything ever, and that I'm sustaining. The -- I think the -- the answer actually was relevant and narrowed the question, but if you have -- you have additional questions that are relevant to this case, then I'll -- I'll hear it.
Q BY MR. JACKSON: Have you sent Christine Hernandez pictures of employees engaged in other -- any other activity?
MS. BUFFALANO: Objection. Relevance.
JUDGE GREEN: Sustained. If you want to ask him about protest activity or some other activity that's similar to this?
MR. JACKSON: No, thank you, Judge.
Q BY MR. JACKSON: All right. So I want to talk a little bit about your findings in your investigation of the incident

involving Ms. Evans and Mr. Bryson. During your investigation, you learned that Ms. Evans initiated the verbal interaction with Mr. Bryson, correct?
A I believe that Ms. Evans was talking to a member of the security team about how she didn't know an event was happening outside, which is when Mr. Bryson then made a comment to her regarding what she was talking about.
Q Okay. So --
MR. JACKSON: Judge, I would ask you to direct the witness to answer yes or no questions with yes/no.
JUDGE GREEN: That was responsive. It was not a --
Q BY MR. JACKSON: All right. So --
JUDGE GREEN: -- yes or no question --
Q BY MR. JACKSON: So --
JUDGE GREEN: -- either.
Q BY MR. JACKSON: So your testimony, Mr. Grabowski, is that you believe, based on your investigation, that it was Mr. Bryson who initiated the verbal interaction with Evans, correct?
A I believe based on the investigation that Mr. Bryson was the first one that made a comment towards Mr. Evans -- or towards Ms. Evans in their interaction.
Q And what is that based on?
A The witness statements collected and speaking with the individuals themselves.

Q Okay. That's not exactly what you told Geoff Gilbert-Differ, is it?
A I don't remember what I told Geoff.
Q Well, you told Geoff that Ms. Evans was outside smoking a cigarette on her break while there were protesters making comments about Amazon should close down. Dimitra made a comment speaking positive about Amazon, stating that it allowed associates the opportunity to continue working and earning a check. So Dimitra Evans made a comment in response to Gerald Bryson's protest and activity; isn't that correct? That's what you told Mr. Differ?
MS. BUFFALANO: Do you want to show him the document? This isn't a memory test.
JUDGE GREEN: No, he -- he doesn't have to show him the document, but you do have to tell us all what the document is.
MR. JACKSON: Okay. I'm -- I'm referring to Respondent's 105.
Q BY MR. JACKSON: Do you recall making that statement to Geoff Gilbert-Differ?
A No.
Q Okay. Please read the document and let me know if it refreshes your recollection.
A I read it.
Q So isn't it true that Dimitra Evans initiated the verbal interaction with Gerald Bryson?

Page 1644

1  given our -- what may be the standard, that animus in one case
2  will have any effect in the determination in this case.  And
3  ultimately, if they weren't -- cases weren't consoled --
4  nothing's stopping the board from effectively consolidating
5  and -- and acting upon them together, once they -- once they
6  get up there.  And if we do consolidate, we're going to get a
7  significant delay on a case that we're -- we're very close to
8  finishing.  And so I have problems with it.  And I -- I'm --
9  you know, I have to re -- I just got this and I -- I have to
10  read the cases that are cited in it, and we have to give the
11  Respondent an opportunity to respond.  But you know, this isn't
12  the type of slam dunk consolidation that happens before we get
13  to trial or before we get significantly through trial.
14     MS. REIBSTEIN:  Okay.  Would you like me to share your
15  concerns with the acting General Counsel?
16     JUDGE GREEN:  Yes.
17     MS. REIBSTEIN:  Okay.  I will do that.  Okay.  Your Honor,
18  what was footnote 2 in the case?
19     JUDGE GREEN:  It just -- that was -- that was the portion
20  in which the -- the board used one case as evidence in the
21  other case.
22     MS. REIBSTEIN:  Okay.
23     JUDGE GREEN:  They weren't consolidated, but the Board
24  just said, okay, well, we're using the ULBs in that case as
25  evidence of finding a violation in this case.

Page 1645

1     MS. REIBSTEIN:  Okay.
2     JUDGE GREEN:  And it's just a fluke that it -- that's
3  coming, you know, it happened to be actually in the press at
4  the same time as this one.at the same time as this one.
5     MS. REIBSTEIN:  Okay.  I will take it --
6     JUDGE GREEN:  Okay.
7     MS. REIBSTEIN:  I'll reach out to the acting General
8  Counsel this afternoon.
9     JUDGE GREEN:  You know, if I had my druthers, what we
10  would do -- and -- and -- and now that we have -- you know, we
11  have -- we have a motion on bena -- Bannon-Mills, as well.  And
12  the Respondents -- at -- well, the General Counsel's asking me
13  not to -- basically, not to allow the Respondent to put on any
14  more evidence.  So I'm not sure that we want to rush the
15  Respondent in order to put on a bunch of evidence, when the
16  General Counsel's taking a position they shouldn't be allowed
17  to do it.  You know, if -- if I had my druthers, we would take
18  this week to deal with Bannon-Mills.  We would not consolidate.
19  We would fit -- as Mur -- as Mr. Murphy suggested, we would --
20  we would proceed on Monday to finish hopefully, by Wednesday of
21  next week.  You know, that's -- just -- just really, I mean,
22  having just received this -- these motions, that to me seems
23  the best way to go about doing this.
24     MS. REIBSTEIN:  Well, we had intended to call Christine
25  Hernandez, 611C.  So a Bannon-Mills motion wouldn't -- I mean,

Page 1646

1  we could use Wednesday.  We had all stippled Wednesday.  A
2  Bannon-Mills motion --
3     JUDGE GREEN:  Yeah, but my -- my problem --
4     MS. REIBSTEIN:  -- wouldn't take you with that --
5     JUDGE GREEN:  Right.  My problem is that I really don't
6  feel as though I can force the Respondent to go forward, as
7  long as we have this motion to consolidate.  I just don't think
8  that's fair or viable.  I -- I don't -- I just -- I don't -- I
9  don't -- I don't see how -- that working that way.  So I mean,
10  I -- I think that the -- I think what we have to do here is
11  that the General -- the -- the Resp -- the Region should get
12  back with maybe Seattle and the acting General Counsel to
13  discuss this further.  We need to -- you know, I think in the
14  meantime, I'd like to hear from the Respondent.  I assume
15  you're opposing consolidation.  I guess I should have asked you
16  that from the start.
17     MR. MURPHY:  Are you -- are you asking me, Your Honor?
18     JUDGE GREEN:  Yeah.  Yes.
19     MR. MURPHY:  Yes.  We're -- yes, we're opposed.
20     JUDGE GREEN:  Okay.  So you know, how fast do you think
21  you can get me something in writing on that?
22     MR. MURPHY:  I -- I --
23     JUDGE GREEN:  I'm thinking Thursday.
24     MR. MURPHY:  Thursday?  We could do Thursday, close of
25  business.

Page 1647

1     JUDGE GREEN:  Okay.  That's good.  If we don't hear back
2  from the -- from the Region pulling it.
3     MR. MURPHY:  And then, and -- and then, Judge we -- and --
4  and I guess you know, I'm assuming that there may be special
5  appeals from whatever decision you make on that --
6     JUDGE GREEN:  I doubt -- I don't know.  I don't know.  I
7  mean, if the re -- if I -- if I refuse it -- well, I -- let me
8  put it this way.  I take it that if I grant it, there will be a
9  special appeal.
10     MR. MURPHY:  Yes.
11     JUDGE GREEN:  If I refuse it, we'll see.  We don't know
12  yet.
13     MR. MURPHY:  All right.
14     JUDGE GREEN:  I think what -- that's fair to say.
15     MR. MURPHY:  Okay.
16     JUDGE GREEN:  And we'll -- we'll deal with that when the
17  time comes.  In the meantime, I'm going to be looking this week
18  at Bannon -- at -- closely at the Bannon-Mills motion.
19     MR. MURPHY:  And you know what?  I apologize, Judge.  I
20  was just getting an email from -- well, you can see her typing,
21  Ms. Buffalano.  She -- she has those conflicts that she
22  identified.  Is there any way we can get till -- till Friday
23  to -- to respond on the motion to consolidate?
24     JUDGE GREEN:  Yes.
25     MR. MURPHY:  Thank you.



Page 1648

1      JUDGE GREEN:  Are you going to -- are -- are you -- do --
2   are you planning on -- on opposing the Bannon-Mills in writing,
3   or -- or no?
4      MR. MURPHY:  Yes, we are.
5      JUDGE GREEN:  Okay.
6      MR. MURPHY:  And I don't know what you'd -- well, what
7   you -- I mean, I don -- I don't know what your plan or outline
8   for that would be, but we'd -- we'd want more time than through
9   the end of the week on that.  Not even having --
10     MS. REIBSTEIN:  Well, I'm not
11  (Indiscernible, simultaneous speech) Your Honor, I mean --
12     MR. MURPHY:  Other than seeing -- other than judging it by
13  its length, Your Honor.  But --
14     JUDGE GREEN:  Yeah.  Okay.
15     MS. REIBSTEIN:  You've been angling for -- for delays for
16  a really long time.  You -- and also say that you have armies
17  of people working on this.  But you --
18     JUDGE GREEN:  Okay.  But that's -- there -- as long as
19  I'm -- as long as I'm letting the Respondent put on evidence,
20  then Bannon-Mills is -- it's not necessarily critical for them.
21  You know, I mean, I think that we could deal with the consol --
22  I -- what -- what's of -- what's of immediate importance is to
23  deal with the motion to consolidate and -- and deal with
24  whether we're going to be continuing with the case on Monday.
25  Because if the motion -- if the motion to consolidate is

Page 1649

1   granted, I do not envision continuing on Monday.  Or -- or for
2   really -- it's going to take some time.  It's going to take
3   some time for the Respondent to evaluate that case.  And I
4   really don't have any concept of what the delay is going to be,
5   but it's going to be a significant delay.  So I think we have
6   to resolve that first, and then deal with the Bannon-Mills
7   issues second.  And I think we can go forward with testimony,
8   regardless -- as we've been doing already, regardless of
9   whether we have a -- a final resolution of the Bannon-Mills
10  issue.  So the upshot is yeah, I mean, maybe Wednesday of next
11  week on the Bannon-Mills, but -- you know, I mean, if you
12  wan -- end up wanting more time, I don't think that's
13  necessarily a problem, as long as we can go forward on Monday.
14     MR. MURPHY:  Okay.
15     JUDGE GREEN:  That's it.
16     MR. KEARL:  I -- I would just like to say that I
17  haven't -- I would have the need next Wednesday to finish by 5
18  p.m. at the latest.  But --
19     JUDGE GREEN:  I'm making a note of it.  So I guess, if
20  anything happens.  Most notably, if -- if the Region decides,
21  or the Gener -- acting General Counsel decides that they are --
22  do not want to consolidate, you know, please let us know, and
23  obviously, that change -- changes matters dramatically.
24     MS. REIBSTEIN:  You -- you'll be the first to know, Judge.
25     JUDGE GREEN:  Okay.  And -- and in the meantime, I'd like

Page 1650

1   people to -- I'd like people to reserve next week.  Keep --
2   keep next week on the calendar, Monday to Wednesday.
3      MR. MURPHY:  And Judge, if -- if we do complete our
4   production this week, as we anticipate, that may impact our
5   position on Bannon-Mills.
6      JUDGE GREEN:  Okay.
7      MR. MURPHY:  All right?
8      JUDGE GREEN:  Okay.  All right.  Thank you --
9      MS. COX:  Judge Green?
10     JUDGE GREEN:  -- very -- yes, go ahead.
11     MS. COX:  I'm sorry.  Before we go off, we asked the
12  Respondent to produce Christine Hernandez.  I understand that
13  depending on the consolidation, we may or may not proceed on
14  the 24th.  But in the even that we do proceed on the 24th, I
15  just want to ask again, Respondent never got back to me this
16  weekend, if they'll make her available or if we need a
17  subpoena.
18     MR. MURPHY:  Yeah, you should subpoena her.
19     MS. COX:  Okay.  Thank you.
20     MR. MURPHY:  Uh-huh.
21     MS. COX:  Judge Green, we need a subpoena.
22     JUDGE GREEN:  Yeah.  Okay.  So you're authorized to a
23  subpoena.  Does -- when you serve it, just send me the date of
24  service and the number.
25     MS. COX:  Thank you.

Page 1651

1      MR. MURPHY:  And -- and Ms. Cox, we'll accept service of
2   that subpoena.
3      MS. COX:  Thank you.
4      JUDGE GREEN:  Okay.  So we'll -- we're going to be off the
5   record.
6      If people need me during the week for anything, you can
7   email me.  Okay.  Thank you.
8   (Whereupon, the hearing in the above-entitled matter was
9   recessed at 3:40 p.m. until Monday, May 24, 2021 at 10:00 a.m.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25



GC Exhibit 124

OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services, LLC,        Case No.   29-CA-261755

                   Employer,

and

Gerald Bryson,

                 Petitioner.

_____

_____

Place: Brooklyn, New York (Via Zoom Videoconference)

Dates: May 24, 2021

Pages: 1653 through 1771

Volume: 1

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885

# GC Exhibit 124

1657..1660

1 P R O C E E D I N G S

2 JUDGE GREEN: All right. So it's Amazon.com Services,

3 LLC, Case number 29-CA-261755, and it's May 21st -- oh, May

4 24th, 2021. We're back on the record.

5 So I -- I -- you know, I -- I looked a little bit through

6 the -- actually, the opposition to the motion to amend. I was

7 a little confused by it. It sounds like the Respondent's

8 moving to amend to admit the PCA. No?

9 MR. MURPHY: That's correct, Your Honor.

10 JUDGE GREEN: Okay. So why would the Respondent -- the

11 General Counsel -- why would the General Counsel seek to oppose

12 that?

13 MR. JACKSON: Judge, we don't oppose Respondent admitting

14 the obvious. We oppose the -- the implications that were

15 alluded to in the -- in the motion, which Your Honor will see

16 once you get a chance to review it. And I believe that this is

17 really a cynical ploy by this company to avoid, you know,

18 discovery of -- of relevant information --

19 JUDGE GREEN: Okay. That's --

20 MR. JACKSON: -- regarding --

21 JUDGE GREEN: No. That's -- that's -- no. No. Listen.

22 To the extent we can make this matter more efficient and reduce

23 the number of disputes that we have to deal with, that's a good

24 thing; and to the extent that the Respondent's going to admit

25 certain facts is a -- is a good thing. It's not -- you know,

1 and -- and listen. I've read enough of the response to -- to

2 understand that the General Counsel is not taking the position

3 that this case is exclusively being litigated on the basis of

4 Burnup & Sims. And -- and you're entitled. You know, it's not

5 my position at this point to say what the General Counsel's

6 theories should be, and I have to let you litigate your

7 theories.

8 However, there is nothing stopping the Regional Director

9 or the acting General Counsel from saying if it is their belief

10 that this is a Burnup & Sims case and don't need to waste

11 anybody's time litigating anything else.

12 Now, maybe you're not doing that. And okay, that's fine.

13 I'll let you litigate it under alternative theories -- Burnup &

14 Sims and Wright Line -- but this is something that the General

15 Counsel should be thinking about, which is whether we need to

16 spend more time on a case that has already spent -- that has

17 already involved a tremendous amount of litigation for a single

18 discharge, and a single discharge without a lot of dispute, so

19 that's that.

20 So I -- I haven't read enough of the amend -- of the

21 amended motion to amend. I can't imagine that I would deny it,

22 but I would have to read on it before I rule on it one way or

23 the other. Is there anything else?

24 MR. MURPHY: Your Honor, you know, if -- if -- I mean, I

25 think the motion could be granted for the reasons you stated.

1 It would -- it would also streamline the testimony going

2 forward because we would have conceded that legal issue.

3 JUDGE GREEN: Yeah. But I can't -- like I said, I

4 can't -- I can't force the parties to just litigate this case

5 under Burnup & Sims. If -- if -- and I didn't read enough -- I

6 didn't read enough of the motion to set -- to find out whether

7 that's what the Respondent actually wants.

8 MR. MURPHY: If I may -- sorry to interrupt, Your Honor.

9 JUDGE GREEN: Yeah. Sure.

10 MR. MURPHY: That's not -- that's not specifically stated

11 in our -- in our --

12 JUDGE GREEN: Okay.

13 MR. MURPHY: -- motion for relief to amend. But that --

14 in -- in the other pleading that we filed this morning, that --

15 that is stated in -- in -- essentially in those terms. And we

16 think it's appropriate for the counsel -- for the General

17 Counsel to say whether this is or is not a Burnup & Sims case.

18 And -- and if it's not, you know, tell us why because that --

19 that will facilitate the litigation of the case, as well. You

20 know, I -- I -- I think that when we started this case, you

21 know, you made certain decisions based on an understanding

22 of -- of the facts that were likely to emerge, and one which we

23 sort of shared at the time. And -- and the case has come in

24 very differently. And -- and I think if we went in a -- in a

25 time machine back to mid-April when you were ruling on the

1 subpoenas and the Valasco video was part of the record, you'd

2 be making different decisions. And -- and that -- and so you

3 know, if this is not a Burnup & Sims case, the General Counsel

4 should say so. If -- if it is, they should say so, and --

5 and -- and we should stop with all the hidden ball tricks

6 and -- and -- and let's just litigate the case with two parties

7 that know what the legal theory is.

8 JUDGE GREEN: Okay. So let me just ask you. I -- I

9 just -- do we only have Mr. Campbell today? Is that the only

10 person we have? I -- that's the only person we have, we're

11 thinking?

12 MR. MURPHY: Yes, Your Honor.

13 JUDGE GREEN: And is that the end of the Respondent's

14 case, or are you planning to put on more?

15 MR. MURPHY: Well, in -- in some respects, it'll depend on

16 the resolution of --

17 JUDGE GREEN: Okay. All right. So let me just ask you --

18 MR. MURPHY: Are you asking me, Judge?

19 JUDGE GREEN: Yeah.

20 MR. MURPHY: I'm not --

21 JUDGE GREEN: Yes. I'm asking you.

22 MR. MURPHY: Okay. It's hard to tell because you're --

23 JUDGE GREEN: Sorry. I know.

24 MR. MURPHY: Yeah.

25 JUDGE GREEN: I know. I --



Page 1669

1 sure that everybody gets on as expeditiously as possible.
2 If -- if -- if we have to do Mr. -- Ms. Hernandez the day after
3 or Wednesday, I don't think that that -- I don't think that
4 harms or prejudices the General Counsel. I think, if anything,
5 it's to the contrary that oftentimes respondents want to hear
6 the -- the full evidence come in from the General Counsel
7 before they put anything on. But if you -- if you prefer to go
8 forward, I don't see any problem doing that.
9     MR. MURPHY: Yeah. I mean, we're -- we're ready to go.
10     JUDGE GREEN: Okay. So let's go.
11     MS. COX: But, Judge, as a side issue, the petition to
12 revoke raises relevancy issues as to Ms. Hernandez's testimony.
13     JUDGE GREEN: We're not there yet. We haven't -- she's --
14 hasn't even been asked a question. You know, I mean, to the
15 extent that there's a -- some kind of petition to revoke to the
16 extent that it -- the Respondent's taking the position that
17 Ms. Hernandez can't be called, that is going to be rejected if
18 that satisfies you. Whether there is some kind of relevancy
19 issue, we'll find out, and there will be objections during the
20 course of her testimony.
21     MS. COX: Thank you, Judge.
22     MR. KEARL: And has there been any resolution on the
23 unredacted CHIMEs? I know we were waiting --
24     MR. MURPHY: Mr. Kearl, thank you very much for bringing
25 that up. I apologize for not mentioning that at the outset,

Page 1670

1 Your Honor. We are going to be taking a special appeal from
2 your ruling on the redaction/unredaction issue.
3     JUDGE GREEN: Okay. So just do it as soon as you can.
4     MR. MURPHY: Yeah. We're going to file it either tonight
5 or tomorrow morning.
6     JUDGE GREEN: Okay. That is fine. You are entitled.
7     MR. KEARL: And, sorry. One last thing. You had -- you
8 had said, also, Mr. Murphy, that the goal was to complete all
9 of the production of documents last week. I got some
10 documents, but I believe there's still some outstanding
11 paragraphs. Are we still waiting on some paragraph 19
12 documents?
13     MR. MURPHY: Yeah. So the -- so some of the paragraph 19
14 documents are addressed in -- in connection with the petition
15 to revoke, and I don't know if you've had a chance to review
16 the entire thing, but --
17     MR. KEARL: I -- I have. So the -- so the idea is that
18 now there's a petition to revoke on the order from over a month
19 ago?
20     MR. MURPHY: I -- I wouldn't characterize it as that. I
21 think we characterize it as a motion to reconsider, you know,
22 based -- based -- based on the developments in the case, and --
23 and the -- the -- the Burnup & Sims issue. But --
24     MR. KEARL: Okay. So I can expect no further production
25 until that petition to revoke is resolved?

Page 1671

1     MR. MURPHY: There is a footnote in the -- in the paper
2 that indicates that if -- if you and the counsel for the
3 general -- counsel for the acting General Counsel will accept
4 documents with the redactions that we would have proposed
5 independent of Judge Green's order, then we'll produce those
6 and -- and we can move on. If -- if there's a intention to --
7 on your part or counsel for the acting General Counsel's part
8 to pursue unredactions consistent with the -- the last set,
9 then -- then I think we're going to go through the special
10 appeal process.
11     MR. KEARL: I mean, I think absent seeing the redacted
12 documents, it's hard to take a position. Would you be willing
13 to produce those documents so that we can --
14     MR. MURPHY: You know what, before I -- I -- before I make
15 a commitment on that, let's -- if -- if -- if we can take a
16 short break, I can get that answer quickly.
17     JUDGE GREEN: Okay. Off the record.
18     (Off the record at 10:25 a.m.)
19     JUDGE GREEN: Okay. So just to confirm what was discussed
20 off the record, we don't have a resolution to that subpoena
21 issue. The parties will deal with that up later.
22     I started to discuss what I was thinking during the break
23 regarding this issue regarding the -- the Respondent's motion
24 to amend the answer, and I just want to give the parties a
25 heads up as to where I am on the issue.

Page 1672

1     As far as I can tell, if the Respondent is willing to
2 admit that the altercation in question arose to of the
3 protected activity of Mr. Bryson, then that, essentially,
4 raises the prima facie elements of -- of a Wright Line case
5 satisfied. You know, you have -- you have protected concerted
6 activity, you have knowledge, and you don't need animus or any
7 kind of nexus establishing animus. So the prima facie case
8 will be satisfied, and I'm going to make my evidentiary rulings
9 accordingly.
10     I do think there is an issue regarding the second element
11 of Burnup & Sims, which has been the subject of some confusion,
12 I think, in the case law. But I think that it can be -- the
13 second element or the second step can be described as whether
14 the Respondent had an honest, good-faith belief that Bryson
15 engaged in such serious misconduct as to warrant discharge.
16 And the -- the General Counsel is entitled to try to reply in
17 honest and good-faith belief. And I suppose that that could --
18 you could get into things such as 15 reasons, disparate
19 treatment, and other -- other evidence designed to attack the
20 Respondent's decisions and establish that it was not an honest
21 and good-faith belief. And so I'll -- I'll be making my
22 evidentiary rulings according with -- accordingly with regard
23 to that element as well.
24     Okay. And so with that, and without further ado, why
25 don't we move on to Mr. Campbell?



Page 1753

1 insulted him or brought up anything about him personally in the
2 statement or in -- in all of their time together in the
3 exchange; however, Mr. Bryson, from the minute that he was
4 engaged, started personally attacking her, going down a path
5 including potential drug usage, track marks, dark circles under
6 her eyes, talking about her appearance, talking about her being
7 scum of the earth, asking where -- where the fentanyl is. And
8 then even after -- and calling her a B, which we've confirmed.
9     And then even after she retreats, he just continued that
10 behavior, and he continued that behavior all through the social
11 media broadcast and then continued to attack her even into when
12 we were interviewing him sometime later for the investigation.
13 **Q.   Okay. Did you review comparators for Ms. Evans's first**
14 **written warning?**
15 A.   I did not.
16 **Q.   And why not?**
17 A.   We had reviewed the -- we had reviewed the comparators I
18 think for the some more -- some more severe infractions, and
19 I -- I trust my team and my team's expertise. And in that
20 case, when Christine explained to me why she felt it was too
21 severe, I -- I -- I aligned with her.
22 **Q.   Okay.**
23     MS. BUFFALANO: So can we take just a moment while I just
24 make sure we don't have anything else for this witness?
25     JUDGE GREEN: Yes. Off the record.

Page 1754

1     (Off the record at 2:25 p.m.)
2     JUDGE GREEN: Okay. So just to sum up, the General
3 Counsel has objected to going forward without certain documents
4 that are -- that are referenced in Footnote 3 of the
5 Respondent's most recent petition to revoke. They're -- and
6 we're talking about CHIMEs documents. So there are CHIMEs --
7 they're -- I guess we're talking about the redacted CHIMEs
8 documents that were the subject of my recent order and some
9 additional CHIMEs documents. And -- and the additional
10 outstanding documents, the Respondent is taking the same
11 position that it -- it includes nonresponsive portions, meaning
12 portions that are not responsive to a subpoena paragraph.
13     MR. MURPHY: Yes. Parts of -- yes. Portions that are not
14 responsive.
15     JUDGE GREEN: Now -- okay. So -- but do those include
16 responsive portions? Have you -- you know, have you redacted
17 those, as well, and -- and produced them or no?
18     MR. MURPHY: We have not produced them.
19     JUDGE GREEN: So why not just produce the redacted
20 portions the same as the ones that you produced before?
21     MR. MURPHY: Well, I -- I -- I guess we're -- we're
22 reluctant to produce them without an agreement that they won't
23 be subject to the same sort of -- of -- of -- of process that
24 we went through, then -- which is subject to the special
25 appeal.

Page 1755

1     JUDGE GREEN: No. I mean, they would be. I think they
2 would be subject to the special appeal. You know, we'll get --
3 we'll get something back from the Board saying either, you
4 know, the original order was right, or they'll say the original
5 order was wrong and the stuff should not -- that that stuff
6 shouldn't remain redacted. And then these other CHIMEs will be
7 treated the same way. The -- the -- those CHIMEs will remain
8 redacted, the same as the -- the -- those that are subject to
9 the special appeal. In other words, you've got basically a
10 test case. The ones that are -- the -- the ones that I already
11 ruled on.
12     MS. REIBSTEIN: Your Honor, I haven't heard any valid
13 reason for not having turned over even the redacted CHIMEs
14 because, you know, we may or may not present them to Your Honor
15 for in camera review like we did before. But there's -- you
16 know, once again, Respondent is deciding for itself what it --
17     JUDGE GREEN: Well, the Board is going to have their say
18 on this, right. The Board is going to have their say. But I
19 guess I don't -- to the extent that the Respondent doesn't
20 have -- doesn't think that the entire CHIMEs are nonresponsive,
21 I'm not sure -- I -- I'm not sure I understand why they
22 wouldn't be produced in redacted form as the same as --
23     MS. REIBSTEIN: Well, because that's what they've been
24 doing all along, just deciding for themselves what they want to
25 turn over and what they don't --

Page 1756

1     JUDGE GREEN: So that --
2     MS. REIBSTEIN: -- in defiance of your order.
3     MR. MURPHY: Yeah. Judge -- Judge, that's -- that's a
4 massive, massive mischaracterization of what we've done.
5 We've -- we -- we've -- we -- we -- we have a dispute about a
6 small number of CHIMEs, and these documents are the subject of
7 the petition -- it's a petition to revoke and also a -- a
8 petition to have you reconsider the -- the relevance
9 determinations that you made at the very outset of the case
10 before any of this evidence came in. And -- and -- and in the
11 document, we -- we -- we identify the -- the -- the parts of
12 the record in which you said that -- that the -- that -- that
13 the subpoena provisions were enforced because they were
14 relevant to protected concerted activity. And -- and -- and
15 you know, we --
16     JUDGE GREEN: Right. No, I get that. I understand that.
17 That -- I understand. So let's just -- let's just for a
18 moment -- I mean, the -- the General Counsel, as far as I can
19 tell, doesn't want to go forward, so we're not going to.
20     So let's -- let's just assume for the moment that this is
21 a Burnup & Sims case. You know, the Respondent is saying that
22 it is. The General Counsel really isn't saying that it isn't.
23 So nobody's actually saying that this is not a Burnup --
24 Burnup -- Burnup & Sims case.
25     And if it is a Burnup & Sims case, as far as I understand,

Page 1757

1 there's -- there is some dispute regarding how that type of
2 evaluation, analysis works, but you have basically three steps.
3     The first is you determine that the -- there's an
4 altercation or misconduct that arises out of or during the
5 protected concerted activity, and we have that as far -- we
6 have that stipulated now.
7     And the second is that the -- Respondent presents an
8 honest belief that the alleged discriminatee engaged in serious
9 misconduct warranting discharge.  And if that is satisfied,
10 then you go to the third element, which is the General Counsel
11 then must show that either it -- the discriminatee did not
12 actually engage in any misconduct or at least did not engage in
13 such serious misconduct as to lose the protection of the act,
14 right.
15     And the third element is -- that's just going to be the --
16 that's just going to be the videos.  And we know that
17 there's -- we know that -- that -- that Mr. Bryson engaged in
18 an altercation.  It's not going to be that he engaged in -- in
19 no alleged misconduct.  It's going to be whether -- whether he
20 engaged in such serious misconduct that that conduct loses the
21 protection of the act.
22     But that's -- from an evidentiary standpoint, that's just
23 going to be the videos.  As far as I can tell, the only thing
24 we've got left here is the employer's honest belief that
25 Mr. Bryson engaged in such serious misconduct as to warrant

Page 1758

1 discharge.
2     And so you know, what evidence could that be?  I mean, it
3 can be an email.  It can be an email saying something to the
4 effect of, well, generally we don't discharge people who are
5 engaged in activity outside the plant on their own time.  But
6 in this case, we're making an exception for the protesters
7 because we want to get rid of them.  That's one.
8     And that's -- that -- and that is the bulk as far as I
9 understand it of the subpoenaed documents.  I mean, what's left
10 of the subpoenaed documents, that's the type of evidence that
11 they're designed to look for.
12     Now, 19 -- you know, GC 19 -- GC subpoena number 19 and
13 the same for the -- for the Charging Party, I -- yeah.  I guess
14 that that actually could cover that type of statement.  And so
15 those documents are probably still subject to production.
16     And so, yeah.  I mean, I -- I -- you know, I haven't -- I
17 literally was just reading this again.  You know, I -- we got
18 this this morning.  I haven't really had a lot of time to
19 produce it, but that's my initial reaction is that 19 is still
20 going to be subject -- request 19 is still going to be subject
21 to production.  I have much more doubts about whatever the
22 other one was.  I think it was 27 regarding the appeals.  I
23 really don't see how the appeals are going to be useful.
24     MS. COX:  Judge Green, those were produced.  We have no
25 issue with that --

Page 1759

1     JUDGE GREEN:  Okay.
2     MS. COX:  -- with those two paragraphs.
3     JUDGE GREEN:  So -- but -- so -- okay.  So now we've got
4 the -- we've got the CHIMEs, and that -- that could arguably
5 contain some -- some statements which are relevant to this
6 analysis even if it's just limited -- limited to Burnup & Sims.
7     Having said that, I mean, you know, I -- I don't know.
8 It -- are -- are those documents covered by your special
9 appeal?  I don't really know.  I guess I don't think so, but
10 why --
11     MS. COX:  Well, Judge, you haven't ruled yet on those
12 documents because they haven't been produced.
13     JUDGE GREEN:  Well, I ruled on documents like that.  I've
14 ruled on the CHIMEs, and I -- and I've rule -- you know, that's
15 the -- that is -- that same reasoning is going to apply to any
16 other CHIMEs that are out there, but it's -- it's going to be
17 the subject to a special appeal.
18     MS. REIBSTEIN:  But, Your Honor -- but, you know, there's
19 like a lot of things up in the air.  If -- my understanding is
20 that in Footnote 3 of Respondent's -- I guess it was like a
21 motion to amend where they attach an -- an argument -- an
22 unrelated argument that we should be precluded from putting on
23 evidence.  It's in that Footnote 3 where other unredacted --
24 other redacted CHIMEs that they have not turned over because
25 they decided that this is a Burnup & Sims --

Page 1760

1     JUDGE GREEN:  Okay.  So --
2     MS. REIBSTEIN:  -- case, and so they're not relevant.  So
3 we -- we -- they haven't even turned those over.
4     JUDGE GREEN:  Let me cut to the chase.  You know, from my
5 perspective, the additional CHIMEs should be redacted in the
6 same way that the original CHIMEs were redacted.  And then --
7     MS. REIBSTEIN:  And handed over to us.
8     JUDGE GREEN:  And then -- yes.  And then -- well, yeah.
9 They should be produced and redacted for them, and then they
10 will all be the subject of the special appeal.
11     MS. REIBSTEIN:  Correct.  That makes sense.  But the first
12 step is that they are -- they're ordering them to turn those
13 over --
14     JUDGE GREEN:  Yeah.
15     MS. REIBSTEIN:  -- as the --
16     JUDGE GREEN:  They should be produced and redacted.
17     MS. REIBSTEIN:  Yes.  Okay.
18     MS. COX:  And not just CHIMEs.  Whatever other documents
19 are being withheld under the same --
20     JUDGE GREEN:  But it's only -- it really only becomes an
21 issue --
22     MS. COX:  Yeah.
23     JUDGE GREEN:  -- with regard to CHIMEs because in almost
24 every other instance you can tell what the complete document
25 is.  The reason why CHIMEs are a problem and -- and probably

Case 1:22-cv-01479-DG-SJB   Document 5-10   Filed 03/17/22   Page 87 of 131 PageID #: 4259


OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services, LLC,          Case No.   29-CA-261755

                       Employer,

and

Gerald Bryson,

                    Petitioner.

_____

_____

Place: Brooklyn, New York (Via Zoom Videoconference)

Dates: May 25, 2021

Pages: 1772 through 1859

Volume: 13

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885



Page 1792

1  A   Yes.

2  Q   Who did you share the Facebook Flowers post with?

3  A   I believe I shared it with Rob Joseph and Allyson Hoffman.

4  Q   And how did you share it with Mr. Joseph and Ms. Hoffman?

5      MS. BUFFALANO:  Objection.  Relevance.

6      JUDGE GREEN:  Overruled.

7      MS. BUFFALANO:  Can I just -- these were not -- if -- if

8  this is a Bannon Mills attempt, I don't think these people were

9  on our list of -- of custodians.

10     JUDGE GREEN:  I don't know that it -- yeah.  I don't -- I

11 don't know that it's necessarily related to a Bannon Mills

12 request so much as the identification of -- of documents that

13 could contain certain information.

14     MS. BUFFALANO:  Okay.  But -- but we have produced the

15 Facebook post, so there's no question that we had the Facebook

16 post, so I'm just confused as to why it matters.

17     JUDGE GREEN:  Well, I mean, I'm -- I'm assuming that

18 they're looking for those -- the communications regarding these

19 posts.

20     MS. COX:  And, Judge, I --

21     MS. BUFFALANO:  Okay.  But my point is if those people

22 were not on the custodian list, then they wouldn't have

23 their --

24     JUDGE GREEN:  No.  I know.  But I'm not -- I understand.

25     MS. COX:  I'm not limited to custodian lists.

Page 1793

1      JUDGE GREEN:  Right.

2      MS. COX:  I'm not.

3      JUDGE GREEN:  It's overruled.  Let -- let's proceed.

4  Q   BY MS. COX:  Okay.  So my question was, oh:  how did you

5  share the Facebook post -- Facebook Flowers video with

6  Mr. Joseph and Allyson Hoffman?

7  A   I can't recall.

8  Q   And why did you share the Facebook Jordan Flowers video

9  with Rob Joseph and Allyson Hoffman?

10     MS. BUFFALANO:  Objection.  Relevance.

11     JUDGE GREEN:  What's the relevance?

12     MS. COX:  Judge, I have a right to develop this witness's

13 credibility and get --

14     JUDGE GREEN:  What's the relevance?  What's the relevance?

15     MS. COX:  It's relevant to who was involved in this

16 discharge.

17     JUDGE GREEN:  Okay.  So --

18     MS. BUFFALANO:  You didn't ask him whether they were

19 involved in the discharge, and there's no evidence to suggest

20 that they were.

21     MS. COX:  Well, I can develop these questions.

22     JUDGE GREEN:  Okay.  So --

23     MS. COX:  It may not be -- it may not be --

24     JUDGE GREEN:  So sustained.

25     MR. KEARL:  It also shows animus potentially.

Page 1794

1      JUDGE GREEN:  No.  We're -- we don't need animus in this

2  case.  Listen, people, you might not like it.  I don't really

3  understand why you don't like it, but the fact is that the

4  Respondent's admission did significantly reduce the scope of

5  this proceeding.  To the extent that the Respondent is

6  admitting that Mr. Bryson engaged in protected concerted

7  activity and his altercation with Ms. Evans occurred during the

8  protected activity, for either -- for either analysis, that had

9  the effect of significantly reducing the scope of this -- the

10 scope of this litigation.  And the fact that we have the -- the

11 altercation on tape rendered a great deal of additional

12 evidence -- not irrelevant, just useless.  And so we have a

13 fairly narrow -- we have a barely -- fairly narrow issue before

14 us.  And I would like the parties to try and focus on it.

15     MS. COX:  Judge Green --

16     MS. REIBSTEIN:  Your Honor, they're -- they're -- we have

17 the right to put on a Rightline (phonetic) case and animus.  If

18 you're precluding us, then we'll have to take a special appeal.

19     JUDGE GREEN:  Okay.  Then you take a special appeal.

20     MS. REIBSTEIN:  Because the -- the-- the Burnup and Sims

21 analysis --

22     JUDGE GREEN:  The prima facie -- the -- the prima facie

23 Rightline case is essentially made as a result of the factual

24 admission.  It's -- it's -- it's essentially made.  There is

25 some overlap in Burnup & Sims and Rightline at the second step

Page 1795

1  in the sense that -- to the extent there's an honest belief on

2  the part of the Respondent that -- that misconduct warranted

3  discharge, there is probably some evidentiary overlap with the

4  -- with the Rightline affirmative defense.  But that is where

5  we're at.  That is -- that is really the only thing that's left

6  in light of the evidence that has come in and the Respondent's

7  admission.  And -- and we're simply not going to boob around

8  aimlessly in -- in -- with regard to other evidence that's not

9  in this -- at least in the same ballpark.  We're not.  We're

10 not doing it.

11     You can -- you can take a special appeal.  We've already

12 got one.  I have no problem with special appeals.  But --

13     MS. REIBSTEIN:  I'm -- I'm not clear about what you're --

14     JUDGE GREEN:  Go ahead.  And -- and --

15     MS. REIBSTEIN:  I'm not clear about what you're limiting

16 us to.

17     JUDGE GREEN:  Okay.  Well, you're not -- you're not

18 conducting the -- this questioning.  So do we have another

19 question?  This -- this argument is over.

20     MS. REIBSTEIN:  Well, Your Honor, I'm not clear what

21 you're limiting us to.

22     JUDGE GREEN:  Okay.  I'm not -- I'm not -- there is no

23 objection right now.  There is -- there is only questions at

24 this -- to the extent that there's question, go.  Go ask the

25 questions, and the Respondent will object, and I'll make my



Page 1796

1  rulings.
2      MS. REIBSTEIN:  The other thing is that much of the
3  questioning has to go -- has to do with credibility.
4      JUDGE GREEN:  There is no --
5      MS. REIBSTEIN:  We have the right to impeach this
6  witness's credibility.
7      JUDGE GREEN:  So Ms. -- Ms. Reibstein, to a great extent,
8  my decision is subjected to novo review, except with regard to
9  credibility.  So I'm telling you what I want to hear and what I
10  don't want to hear.  And I -- I don't -- you know, and -- and
11  we're going to continue with the questioning.  The Respondent
12  can object, and we can discuss it from there.
13      MS. COX:  Okay.
14  Q  BY MS. COX:  What time did you share the Facebook video
15  post with Ms. Hoffman and Mr. Joseph?
16      MS. BUFFALANO:  Objection.  Relevance.
17      JUDGE GREEN:  What's the relevance?
18      MS. COX:  Judge Green --
19      JUDGE GREEN:  If you know.  Do you know what the relevance
20  is?
21      MS. COX:  Yes, Judge.  We're developing this witness's
22  credibility.  We're looking for animus.  Animus has not been --
23      JUDGE GREEN:  Okay.  So -- all right.
24      MS. COX:  It's even admitted.
25      JUDGE GREEN:  Sustained.

Page 1797

1      MR. KEARL:  Judge Green, can I ask a question.  If -- if
2  we proceed along a more narrow Burnup & Sims analysis and
3  there's a subsequent decision that this should have been on
4  Rightline, is my client going to be prejudiced by not having
5  this evidence on the record for a subsequent reevaluation under
6  Rightline?
7      JUDGE GREEN:  It -- it could be remanded.  The -- the --
8  the idea that after nearly three weeks of record testimony this
9  case is going to be remanded for a lack of evidence seems to me
10  extremely unlikely, but, yes, that's a possibility, and you can
11  certainly take special appeals of whatever rulings I make.
12  Q  BY MS. COX:  Mr. Campbell, Amazon was concerned with the
13  publicity around the protest, right?
14      MS. BUFFALANO:  Vague as to concerned.
15      JUDGE GREEN:  Overruled.
16      THE WITNESS:  Can you repeat the question, please?
17  Q  BY MS. COX:  Amazon was concerned with the publicity
18  around the protest, correct?
19  A  I -- I don't think -- I can't answer that yes or no.  I
20  don't think I'm the person that can state that Amazon as an
21  organization was concerned over the publicity.
22  Q  But you testified that Ms. Leity sent you this Facebook
23  video, right?
24  A  Yes.
25  Q  Okay.  And Ms. Leity's job relates to Amazon's public

Page 1798

1  image, correct?
2      MS. BUFFALANO:  Objection.  Foundation.
3  Q  BY MS. COX:  You work with Ms. Leity, correct?
4  A  Yes.
5  Q  So you know what Ms. Leity does for work?
6  A  Yes.
7  Q  Okay.  So my question was:  it's Ms. Leity's job to
8  protect Amazon's public image, correct?
9  A  I can't answer exactly what Rachel's job responsibilities
10  and -- and the specifics of her role are.
11  Q  Ms. Leity is not involved in the discipline of employees,
12  correct?
13  A  Correct.
14  Q  Ms. Leity's job does not involve granting employees
15  vacation, correct?
16  A  Correct.
17  Q  Ms. Leity's job does not involve disciplining employees
18  for time off task, correct?
19  A  Correct.
20  Q  Okay.  So what do you know about Ms. Leity's job?
21  A  My partnership with PR, it's a common occurrence to be
22  sent a -- a -- not a Facebook Live post, but a post, an article
23  from any media outlet that's specifically mentioning JFK 8 or
24  any one of my sites.  It would be just as common to get
25  something in Baltimore or anywhere.  The reason that we have

Page 1799

1  that relationship is often our associates are highlighted in
2  those articles, our associates are providing information that
3  give me insight into the engagement and the job satisfaction,
4  and several things that -- that I would go back and react on.
5  Q  And in this case, employees were not satisfied with their
6  job, correct?
7  A  If we're -- if we're speaking about the Facebook Live
8  video specifically, I don't know that Mr. Bryson ever discussed
9  his job satisfaction within that video, but he primarily
10  discussed Ms. Evans and personally attacked her and used vulgar
11  language even in the Facebook post and continued to verbally
12  attack all of our associates by a statement that Amazon is
13  hiring scum of the earth.
14  Q  And isn't it also true that Mr. Bryson in the Facebook
15  post said that there were 27 confirmed cases at his job?
16  A  I don't recall the specific number from the Facebook post.
17  Q  Okay.  I will show you the Facebook post.
18      MS. BUFFALANO:  Is the specific number from the Facebook
19  post really relevant?
20      MS. COX:  It's relevant to -- it's relevant to
21  Mr. Bryson's job satisfaction.  He was dissatisfied with his
22  job, and Mr. Campbell --
23      MS. BUFFALANO:  The witness is responding to his idea of
24  what job meant.
25      JUDGE GREEN:  Okay.  Listen, it's -- it's General



GC Exhibit 124

OFFICIAL REPORT OF PROCEEDINGS

BEFORE THE

NATIONAL LABOR RELATIONS BOARD

REGION 29

In the Matter of:

Amazon.com Services, LLC,          Case No.   29-CA-261755

                     Employer,

and

Gerald Bryson,

                   Petitioner.

              _____

              _____

Place: Brooklyn, New York (Via Zoom Videoconference)

Dates: May 27, 2021

Pages: 1908 through 2042

Volume: 15

OFFICIAL REPORTERS
eScribers, LLC
E-Reporting and E-Transcription
7227 North 16th Street, Suite 207
Phoenix, AZ 85020
(602) 263-0885



GC Exhibit 124
1968..1971

---

**Page 1968**

1 whether this is Bannon Mills -- I'm sorry --

2     JUDGE GREEN:  No.  Sustained.  You want to go there, you

3 can take a special appeal.

4     MR. JACKSON:  Your Honor, can we clarify your ruling on

5 this point, sir?  What is your ruling?

6     JUDGE GREEN:  My -- my ruling is -- is that as far as I

7 can tell, given the respondent's amended answer and admission

8 with regard to the fact that the altercation occurred in the

9 context of protected concerted protests, that this is -- this

10 is a Burnup & Sims case.  General Counsel hasn't been able to

11 articulate any scenario in which it's not a Burnup & Sims case

12 and which it's Wright Line.  But even if it were Wright Line, I

13 don't see how a Wright Line prima facie case wouldn't be

14 established.

15     What you're dealing with really now is the Burnup & Sims

16 second element, which is whether the employer had an honesty

17 belief that Mr. Bryson engaged in misconduct which warranted

18 discharged.  And there -- there's probably some evidentiary

19 overlap between that analysis and the Wright Line affirmative

20 defense.  And so you -- you probably have some overlap in terms

21 of evidence.  But that's -- that's where we're at.

22     And -- and the third -- the third aspect of the Burnup &

23 Sims basically gives the -- the -- the General Counsel a second

24 bite of the apple.  You know, to the extent the respondent can

25 establish they would have discharged Mr. Bryson regardless of

---

**Page 1969**

1 his protected concerted activity, or they had an honest belief

2 that he engaged in misconducted that warranted discharged,

3 under Burnup & Sims you get another shot to say, well, it

4 doesn't -- it doesn't matter.  He didn't engage in such serious

5 misconduct as to lose protection in the act.

6     But that -- that third element is just going to be

7 determined by Board members looking at the video and

8 determining whether it's -- whether it's protected or not.  So

9 really what you're left with is the second element of Burnup &

10 Sims and perhaps the affirmative defense of Wright Line.

11     But, frankly, I see no way that this case gets to Wright

12 Line.  And so we've been at this a long time, and I'm -- you

13 know, I've -- I've heard, I've considered where we're at, and I

14 believe that the litigation has been appropriately limited to

15 what I just indicated.  And if you -- if you want to take a

16 special appeal from that, you certainly can.  It looks like

17 we're going to have a -- you know, we're going to have a gap

18 anyway because the respondent's taking a special appeal with

19 the subpoena issue.  You know, if you want to take a -- a

20 special appeal to this, you know, do it now, and therefore, you

21 know, they'll probably both be dealt with in  the same time

22 frame.  And if we have to -- you know, if we have to come back,

23 we can deal with both at the same time.

24     MS. REIBSTEIN:  Your Honor, I have a question that needs

25 some clarification, please.  So the Burnup & Sims, one of the

---

**Page 1970**

1 prongs is, you know, a good-faith belief that Mr. Bryson

2 engaged in conduct -- serious conduct that warranted --

3     JUDGE GREEN:  That -- that is actually -- yeah.  I mean,

4 that is a broad statement of what the -- the second element is.

5 It's a broad statement in terms of allowing evidence to come

6 in.  In this -- no, go ahead.

7     MS. REIBSTEIN:  The -- the -- the problem is like, you

8 know, it's evident from the record that Mr. Bryson engaged in

9 certain conduct.  You know, he called Ms. Evans a -- a bitch

10 and made comments about her -- what -- what appeared to him to

11 be her drug use.

12     So the problem is that, you know -- the -- the -- the

13 question then is that was it serious enough to warrant

14 discharge.  We can't --

15     JUDGE GREEN:  Correct.

16     MS. REIBSTEIN:  We can't litigate serious enough without

17 evidence of, you know, disparate treatment, and you know --

18     JUDGE GREEN:  No.  Yeah.  You know, I'm not saying --

19     MS. REIBSTEIN:  And that I fear -- I fear that that's what

20 you're precluding us from doing.

21     JUDGE GREEN:  No.  I haven't been -- I have not been

22 precluding that.  So that's what I was saying, that this is a

23 pretty broad ((audio interference) of what the second element

24 is, and then I'm saying that it could arguably include stuff

25 like that, like disparate treatment, existing reasons,

---

**Page 1971**

1 circumstantial evidence that the employer didn't have an honest

2 belief that it -- that the discharge was warranted.  So I'm

3 allowing all that.

4     MS. REIBSTEIN:  Uh-huh.  Also -- also -- you know, also,

5 what would be relevant to that analysis would be the nature of

6 their investigation that they conducted.

7     JUDGE GREEN:  Yeah.  Absolutely.  I mean, that's the --

8 that's the bulk of it to me.

9     MS. REIBSTEIN:  Yeah.  So just to be clear -- forgive me

10 if I'm being dense, but like what is it that you are precluding

11 us from so that we know what --

12     JUDGE GREEN:  I'm not interested in -- I'm not interested

13 in protected concerted activity that -- that -- I'm really not

14 interested in protected concerted activity being that it

15 occurred because we have an admission that it occurred.

16     MS. REIBSTEIN:  Right.

17     JUDGE GREEN:  I'm not interested in animus regarding it

18 because we're -- we're really past the point where animus is

19 relevant.  Animus is -- is -- it's effectively established

20 by -- by virtue of -- it's not -- animus is the wrong thing to

21 say.  It -- it's their --

22     MR. MURPHY:  Motivation.

23     JUDGE GREEN:  The respondent is admitting that they

24 discharged Mr. Bryson for conduct he engaged in while he was

25 engaged in protected concerted activity.  So the whole issue of

---

Page 1972

1  animus is not -- it's not just not relevant under the --
2      MS. REIBSTEIN: Except for -- except for -- as you -- as
3  you correctly pointed out, there is some overlap. And -- and
4  the evidence of --
5      JUDGE GREEN: On the second element. To the extent that
6  they -- to the extent that the -- the respondent would argue in
7  a Wright Line case that Mr. Bryson would have been discharged
8  regardless of his protected concerted activity, then that's
9  going -- there's overlap between that and the second element of
10  Burnup & Sims. And that -- that could include things like
11  disparate treatment and shifting reasons.
12      You know, I mean, but -- but -- so that's all -- that's
13  all fair game.
14      MS. REIBSTEIN: But also, with respect to you, you know -- I
15  mean, like so, so severely cutting of anything that touches on
16  protected activity --
17      JUDGE GREEN: Yeah. But we --
18      MS. REIBSTEIN: Well, wait, Your Honor. Wait. Let me
19  finish, please. It -- you know, sometimes like in
20  cross-examination, you know, the cross-examiner has the right
21  to sort of develop testimony and to lead up to something. And
22  with respect to whether or not there was protected activity,
23  there -- there is some overlap into -- I just lost my train of
24  thought. I'm sorry.
25      JUDGE GREEN: Really, I'm willing -- I'm -- I'm making

Page 1973

1  determinations as we go, and the General Counsel's attorney can
2  certainly make an assertion as to why certain things are
3  relevant. But saying that they're trying to establish
4  protected concerted activity or animus with regard to protected
5  concerted activity, as far as I'm concerned, we're past that.
6  So that's a determination I'm making. And you can take a
7  special appeal of that. But that's -- I'm making rulings on
8  that basis.
9      MS. REIBSTEIN: But so -- some evidence about -- I
10  don't know -- monitoring --
11      MR. MURPHY: Judge, Judge, we have -- we have a witness
12  on -- on the stand.
13      JUDGE GREEN: Yeah.
14      MR. MURPHY: And --
15      JUDGE GREEN: Really.
16      MR. MURPHY: Yeah.
17      JUDGE GREEN: I mean, we're trying -- yes. I mean --
18      MR. MURPHY: And -- and -- and the counsel for the General
19  Counsel now this is their third witness in -- in the last ten
20  minutes.
21      JUDGE GREEN: I'm trying -- I'm -- maybe I'm talking about
22  it too much, but I'm trying to talk about it in order to -- to
23  compel two parties to narrow the scope of -- of litigation and
24  to get you to understand why what you're asking is not
25  necessary at this stage. I think we've discussed it. To the

Page 1974

1  extent that I can explain it, I think I've tried to explain it.
2      MS. REIBSTEIN: Thank you, Your Honor.
3      JUDGE GREEN: Okay.
4  Q  BY MS. COX: Ms. Hernandez, you know Pooja Desai, correct?
5  A  Yes.
6  Q  And in March and April of 2020, she was a catalogue
7  associate, correct?
8  A  I'm sorry, a what associate?
9  Q  Catalogue associate.
10  A  She was my human resource business partner.
11  Q  Does Ms. Desai go by any other names?
12  A  No.
13      MR. MURPHY: Objection.
14      JUDGE GREEN: Okay.
15      MS. COX: What's the objection?
16      JUDGE GREEN: We got the answer.
17      MS. COX: Well, Judge, she's not in the organizational
18  chart.
19      JUDGE GREEN: Okay. So you got the answer. The answer
20  was no. So let's move on.
21  Q  BY MS. COX: And Ms. Desai reported to you in March and
22  April of 2020, correct?
23  A  Correct.
24  Q  And what were -- what were her duties with respect to --
25  I'll -- I'll withdraw that.

Page 1975

1  So on March 25th, 2020, you -- you directed Ms. Desai --
2  or you gave Ms. Desai the names of the employees that were in
3  the managers meeting, correct?
4      MR. MURPHY: Objection. Relevance.
5      JUDGE GREEN: Overruled.
6      THE WITNESS: Repeat the question.
7  Q  BY MS. COX: On March 25th, 2020, you gave Ms. Desai the
8  names of the employees who -- who protested in the managers
9  meetings, correct?
10  A  On March 25th?
11  Q  Yes, 2020.
12  A  In what way did I provide names of individuals who
13  interrupted the production meeting?
14  Q  I'm asking you. Did you?
15  A  We did some research to find out who they were.
16  Q  Correct. And what did that research involve?
17  A  We had to look at the cameras in the office to see who the
18  individuals were that interrupted the production meeting since
19  we didn't know who they were. I didn't know who they were. It
20  was literally, what, my second, third week back into the
21  building, so I didn't know anyone, so I was not familiar with
22  the associates. I didn't know the associates to see faces,
23  then we used our phone tool system that we used to -- with our
24  badges with pictures, that's how they identify people in the
25  building, their whereabouts, and what buildings they work in



GC Exhibit 125

# UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD

**AMAZON.COM SERVICES LLC**

    **and**                                  **Case No. 29-CA-261755**

**GERALD BRYSON, AN INDIVIDUAL**

### GENERAL COUNSEL'S MOTION TO STRIKE RESPONDENT'S REPLY TO THE ACTING GENERAL COUNSEL'S OPPOSITION TO RESPONDENT'S REQUEST FOR SPECIAL PERMISSON TO APPEAL AND APPEAL OF CERTAIN ADMINISTRATIVE LAW JUDGE'S ORDERS

On June 5, 2021[1], pursuant to Section 102.26 of the National Labor Relations Board's Rules and Regulations, Amazon.com Services LLC (Respondent) filed an Appeal of the Administrative Law Judge's Orders denying Respondent's Motion for Reconsideration, Refusing to Revoke Charging Party Subpoena B-1-1C9GVF Paragraph 4, and Requiring Respondent to unredact certain documents (Appeal).

On June 11, pursuant to Section 102.26, which explicitly allows for the filing of an opposition to an appeal within seven days of receipt, Counsel for the Acting General Counsel (CAGC) timely filed its opposition to Respondent's Appeal (Opposition).

Although Section 102.26 does not provide for the filing of a reply to an opposition to an appeal, on June 25—fourteen days after CAGC filed its Opposition—Respondent filed a Reply. Respondent's Reply is not permitted under Board Rules, is procedurally defective and must be stricken.

---

[1] All dates herein refer to 2021 unless otherwise specified.



GC Exhibit 125

## I.     RESPONDENT'S REPLY IS PROCEDURALLY IMPROPER UNDER SECTION 102.26 OF THE BOARD'S RULES AND REGULATIONS

Respondent's Reply to Counsel to Counsel for the Acting General Counsel's Opposition is procedurally improper and is not permitted under Section 102.26 of the Board's Rules and Regulations.

Respondent filed its Appeal pursuant to Section 102.26 of the Board's Rules and Regulations.  Section 102.26 unambiguously sets forth which types of motions and appeals parties can file and deadlines for filing them.  In that regard, Section 102.26 first provides for the filing of:

> Requests to the Board for special permission to appeal from a ruling of the Regional Director or of the Administrative Law Judge, together with the appeal from such ruling, must be filed in writing promptly and within such time as not to delay the proceeding, and must briefly state the reasons special permission may be granted and the grounds relied on for the appeal

Next, Section 102.26 clearly permits the filing of oppositions to appeals and requires that "any statement in opposition . . . . . .must be filed within 7 days of receipt of the appeal . . . . . ."

In marked contrast to Respondent's request to file an appeal, in which it carefully cited the Board Rules pursuant to which it was permitted to file, Respondent conspicuously failed to cite any legal authority or Board Rule permitting it to file the Reply.  That is because the Board's Rules do not provide for Respondent's reply submission.

While detailing which motions, appeals and oppositions to those filings are permitted under Section 102.26, that Section makes no mention of replies to statements in opposition, such as the reply filed by Respondent.  Section 102.26's silence regarding the filing of replies compels the


GC Exhibit 125

conclusion that it does not permit the filing of replies to statements in oppositions.[2]  Furthermore, no other section of the Board's Rules and Regulations permit a reply to an opposition to a special appeal.  It is important to note that in its Reply, Respondent conspicuously fails to refer to any section of the Rules which permit it to file this Reply.  Accordingly, Respondent's Reply is procedurally improper, and the Board must therefore strike the Reply.

## II.    RESPONDENT'S REPLY IS TIME BARRED UNDER SECTION 102.24(c) OF THE BOARD'S RULES AND REGULATIONS

Counsel for the Acting General Counsel maintains that special appeals from administrative law judge's orders are governed by Section 102.26 of the Board's Rules and Regulations. Nevertheless, should it be argued that Respondent's Reply is governed by Section 102.24(c), it is time barred.  Section 102.24(c) of the Board's Rules and Regulations requires that a party filing a reply to an opposition to its motion do so ***within 7 days of receipt of the opposition*** (emphasis added).  Respondent's June 25 filing of the instant Reply is clearly untimely.  Pursuant to 102.24(c) Respondent was obligated to file the Reply seven days after CAGC's June 11 Opposition. Respondent filed its Reply 14 days after CAGC's Opposition.  Respondent's failure to file its Reply on or before June 18 renders the filing untimely under Section 102.24(c).  Based on the foregoing, Respondent's Reply should be stricken as it is time barred.

## 1.    RESPONDENT INCORRECTLY REPRESENTS IN ITS REPLY THAT THE ADMINISTRATIVE LAW JUDGE RULED THAT *BURNUP & SIMS* IS THE SOLE APPLICABLE LEGAL FRAMEWORK IN THIS CASE

---

[2] Section 102.26 references Section 102.46.  Section 102.46 contemplates reply briefs but only to exceptions to an administrative law judge's decision after the proceeding has been transferred to the Board.  Here, the Administrative Law Judge has not issued a decision on the merits of the case.  Therefore, Section 102.46 is inapplicable.



GC Exhibit 125

In the event that the Board considers the arguments set forth in the Reply, CAGC maintains that contrary to Respondent's self-serving and wishful claim, the Administrative Law Judge (ALJ) did not determine that *Burnup & Sims*, 379 U.S. 21 (1964) is the sole applicable legal framework in this case.

At pages 6-9 of its Reply, Respondent relies on cherry-picked excerpts of comments made by the ALJ to bolster its incorrect assertion that the ALJ limited Counsel for the CAGC to advancing its case solely under a *Burnup & Sims* theory and that the ALJ precluded CAGC from presenting evidence under a *Wright Line*, 251 NLRB 1083 (1980) analysis. In its desperate attempt to avoid producing certain subpoenaed documents, Respondent argues, conveniently, that Counsel for the Acting General Counsel is not entitled to subpoenaed documents relating to knowledge of or animus toward protected concerted activities.

Respondent misrepresents the Judge's statements. Contrary to what Respondent would like the Board to believe, the Administrative Law Judge repeatedly informed the parties that CAGC *was* permitted to litigate the case under alternate theories and expressed his view that there is evidentiary overlap between the *Burnup & Sims* and *Wright Line* theories. Contrary to the Respondent's incorrect representations, the Administrative Law Judge consistently considered the overlap between Respondent's defenses under *Wright Line*, 251 NLRB 1083 (1980) and the elements of *Burnup & Sims*, as evidenced by the ALJ's statements on the record, as follows:

> JUDGE GREEN: . . . . . I've read enough of the response to -- to understand that the General Counsel is not taking the position that this case is exclusively being litigated on the basis of Burnup & Sims. And -- and you're entitled. You know, it's not my position at this point to say what the General Counsel's theories should be, and I have to let you litigate your theories. . . . . I'll let you litigate it under alternative theories -- Burnup & Sims and Wright Line -- but this is something that the General Counsel should be thinking about, which is whether we need to spend more time on a case that has already spent -- that has already involved a tremendous amount

4



GC Exhibit 125

of litigation for a single discharge without a lot of dispute, so that's that.   Tr.[3] 1658:1-7; 1658:13-19 (relevant transcript excerpt attached as GC Ex.[4] 1).

JUDGE GREEN: . . . . . .To the extent that the Respondent is admitting that Mr. Bryson engaged in protected concerted activity and his altercation with Ms. Evans occurred during the protected activity, for either -- for either analysis, that had the effect of significantly reducing the scope of this -- the scope of this litigation. And the fact that we have the -- the altercation on tape rendered a great deal of additional evidence -- not irrelevant, just useless. . . . . . Tr. 1794:5-12 (GC Ex. 2).

JUDGE GREEN: . . . . . There is some overlap in Burnup & Sims and Rightline[sic][5] at the second step in the sense that -- to the extent there's an honest belief on the part of the Respondent that -- that misconduct warranted discharge, there is probably some evidentiary overlap with the -- with the Rightline affirmative defense. . . . . Tr. 1794:24-25—1795:1-4. *Id*.

. . . . . .What you're dealing with really now is the Burnup & Sims second element, which is whether the employer had an honesty belief that Mr. Bryson engaged in misconduct which warranted discharged. And there -- there's probably some evidentiary overlap between that analysis and the Wright Line affirmative defense. And so you -- you probably have some overlap in terms of evidence. . . . .  Tr. 1968:15-21.  (GC Ex. 3)

But that -- that third element is just going to be determined by Board members looking at the video and determining whether it's -- whether it's protected or not. So really what you're left with is the second element of Burnup & Sims and perhaps the affirmative defense of Wright Line**.** Tr. 1969:6-10. *Id*.


Based on the above, the record makes it clear that the Administrative Law Judge did not preclude Counsel for the Acting General Counsel from litigating this case under alternative theories of *Wright Line* and *Burnup & Sims*.  Therefore, Respondent's claims that the ALJ ruled that the Counsel for the Acting General Counsel was precluded from proffering evidence of Respondent's animus and that therefore Respondent need not produce the subpoenaed documents

---

[3] Herein, Transcript page citations are referred to "Tr. __:" followed by the page number followed by the line numbers after the colon.

[4] Counsel for the Acting General Counsel attaches hereto additional exhibits for the Board's consideration
 which are designated herein as "(GC Ex. ___.)"

[5] CAGC will move to correct the transcript in various places where needed to read, "Wright Line".



at issue is entirely without merit. Respondent must produce the subpoenaed documents, and the Appeal denied.

>    **2.    RESPONDENT'S FAILURE TO ARTICULATE ITS REASONS FOR TERMINATING THE CHARGING PARTY REVEALS ITS MOTIVE FOR ADVANCING THE APPLICATION OF THE *BURNUP & SIMS* FRAMEWORK**

Under *Burnup & Sims*, an employer may lawfully discipline an employee for engaging in misconduct during the course of protected activity—but only if it has a good-faith and correct belief that such misconduct occurred.  The initial burden is on the General Counsel to establish that the employee was discharged for conduct occurring during the course of protected activity. The burden then shifts to the employer to show that it held an honest belief that the employee engaged in serious misconduct.  Once the employer establishes that it held an honest belief in the employee's serious misconduct, the burden shifts to the General Counsel to affirmatively show that the misconduct did not in fact occur.

In its Reply and throughout the hearing, Respondent has vigorously sought to restrict Counsel for the Acting General Counsel's case solely to the *Burnup & Sims* framework, believing that this framework will shield Respondent from the overwhelming evidence of Respondent's animus toward the Charging Party and his protected concerted activity that would prove Respondent's unlawful conduct under *Wright Line*.

However, *Burnup & Sims* is not the appropriate analysis for the particular facts herein for several reasons.  First, Counsel for the Acting General Counsel has not claimed that the Charging Party did not engage in any misconduct, but rather contends that the evidence establishes that under *Wright Line*, the Charging Party's conduct would have been tolerated or, at most, would have warranted a lesser discipline had he not been engaged in protected activity.

GC Exhibit 125

In addition, Respondent itself has made *Burnup & Sims* inapplicable.  Respondent devised the strategy of refusing to identify the conduct for which it claims to have fired the Charging Party. Instead, Respondent has hinted at vague, ever-shifting reasons for which it might, possibly have fired the Charging Party, making it impossible for the CAGC to meet the *Burnup & Sims* burden of affirmatively showing that the misconduct did not occur.  How can CAGC show that conduct did not occur if Respondent refused to identify the conduct for which it fired the Charging Party? Under these circumstances, CAGC simply cannot affirmatively show that the Charging Party's unspecified misconduct did not occur.  Therefore, Respondent's strategic decision to refuse to identify the conduct for which it fired the Charging Party and its insistence on the application of *Burnup & Sims*, are simply desperate attempts to avoid having to produce subpoenaed documents and conceal its unlawful conduct.

## III.  CONCLUSION

Based on the foregoing, Counsel for the Acting General Counsel respectfully requests that Respondent's Reply be stricken in its entirety.

Dated:  July 1, 2021

                                                        */s/ Evamaria Cox*_____
                                                        Evamaria Cox
                                                        Matthew Jackson
                                                        Counsel for the Acting General Counsel
                                                        National Labor Relations Board
                                                        Region 29
                                                        Two MetroTech Center, 5/Fl.
                                                        Brooklyn, New York 11201

Attachments

7

GC Ex. 1     GC Exhibit 125

1  and -- and listen.  I've read enough of the response to -- to

2  understand that the General Counsel is not taking the position

3  that this case is exclusively being litigated on the basis of

4  Burnup & Sims.  And -- and you're entitled.  You know, it's not

5  my position at this point to say what the General Counsel's

6  theories should be, and I have to let you litigate your

7  theories.

8       However, there is nothing stopping the Regional Director

9  or the acting General Counsel from saying if it is their belief

10 that this is a Burnup & Sims case and don't need to waste

11 anybody's time litigating anything else.

12      Now, maybe you're not doing that.  And okay, that's fine.

13 I'll let you litigate it under alternative theories -- Burnup &

14 Sims and Wright Line -- but this is something that the General

15 Counsel should be thinking about, which is whether we need to

16 spend more time on a case that has already spent -- that has

17 already involved a tremendous amount of litigation for a single

18 discharge, and a single discharge without a lot of dispute, so

19 that's that.

20      So I -- I haven't read enough of the amend -- of the

21 amended motion to amend.  I can't imagine that I would deny it,

22 but I would have to read on it before I rule on it one way or

23 the other.  Is there anything else?

24      MR. MURPHY:  Your Honor, you know, if -- if -- I mean, I

25 think the motion could be granted for the reasons you stated.


www.escribers.net | 800-257-0885

GC Ex. 2      GC Exhibit 125

1    JUDGE GREEN:  No.  We're -- we don't need animus in this

2    case.  Listen, people, you might not like it.  I don't really

3    understand why you don't like it, but the fact is that the

4    Respondent's admission did significantly reduce the scope of

5    this proceeding.  To the extent that the Respondent is

6    admitting that Mr. Bryson engaged in protected concerted

7    activity and his altercation with Ms. Evans occurred during the

8    protected activity, for either -- for either analysis, that had

9    the effect of significantly reducing the scope of this -- the

10   scope of this litigation.  And the fact that we have the -- the

11   altercation on tape rendered a great deal of additional

12   evidence -- not irrelevant, just useless.  And so we have a

13   fairly narrow -- we have a barely -- fairly narrow issue before

14   us.  And I would like the parties to try and focus on it.

15   MS. COX:  Judge Green --

16   MS. REIBSTEIN:  Your Honor, they're -- they're -- we have

17   the right to put on a Rightline (phonetic) case and animus.  If

18   you're precluding us, then we'll have to take a special appeal.

19   JUDGE GREEN:  Okay.  Then you take a special appeal.

20   MS. REIBSTEIN:  Because the -- the-- the Burnup and Sims

21   analysis --

22   JUDGE GREEN:  The prima facie -- the -- the prima facie

23   Rightline case is essentially made as a result of the factual

24   admission.  It's -- it's -- it's essentially made.  There is

25   some overlap in Burnup & Sims and Rightline at the second step



GC Ex. 2       GC Exhibit 125

1    in the sense that -- to the extent there's an honest belief on

2    the part of the Respondent that -- that misconduct warranted

3    discharge, there is probably some evidentiary overlap with the

4    -- with the Rightline affirmative defense.  But that is where

5    we're at.  That is -- that is really the only thing that's left

6    in light of the evidence that has come in and the Respondent's

7    admission.  And -- and we're simply not going to boob around

8    aimlessly in -- in -- with regard to other evidence that's not

9    in this -- at least in the same ballpark.  We're not.  We're

10   not doing it.

11        You can -- you can take a special appeal.  We've already

12   got one.  I have no problem with special appeals.  But --

13        MS. REIBSTEIN:  I'm -- I'm not clear about what you're --

14        JUDGE GREEN:  Go ahead.  And -- and --

15        MS. REIBSTEIN:  I'm not clear about what you're limiting

16   us to.

17        JUDGE GREEN:  Okay.  Well, you're not -- you're not

18   conducting the -- this questioning.  So do we have another

19   question?  This -- this argument is over.

20        MS. REIBSTEIN:  Well, Your Honor, I'm not clear what

21   you're limiting us to.

22        JUDGE GREEN:  Okay.  I'm not -- I'm not -- there is no

23   objection right now.  There is -- there is only questions at

24   this -- to the extent that there's question, go.  Go ask the

25   questions, and the Respondent will object, and I'll make my



Case 1:22-cv-01479-DG-SJB   Document 5-11   Filed 03/17/22   Page 103 of 131 PageID #: 4275

1   whether this is Bannon Mills -- I'm sorry --

2   JUDGE GREEN:  No.  Sustained.  You want to go there, you

3   can take a special appeal.

4   MR. JACKSON:  Your Honor, can we clarify your ruling on

5   this point, sir?  What is your ruling?

6   JUDGE GREEN:  My -- my ruling is -- is that as far as I

7   can tell, given the respondent's amended answer and admission

8   with regard to the fact that the altercation occurred in the

9   context of protected concerted protests, that this is -- this

10  is a Burnup & Sims case.  General Counsel hasn't been able to

11  articulate any scenario in which it's not a Burnup & Sims case

12  and which it's Wright Line.  But even if it were Wright Line, I

13  don't see how a Wright Line prima facie case wouldn't be

14  established.

15      What you're dealing with really now is the Burnup & Sims

16  second element, which is whether the employer had an honesty

17  belief that Mr. Bryson engaged in misconduct which warranted

18  discharged.  And there -- there's probably some evidentiary

19  overlap between that analysis and the Wright Line affirmative

20  defense.  And so you -- you probably have some overlap in terms

21  of evidence.  But that's -- that's where we're at.

22      And -- and the third -- the third aspect of the Burnup &

23  Sims basically gives the -- the -- the General Counsel a second

24  bite of the apple.  You know, to the extent the respondent can

25  establish they would have discharged Mr. Bryson regardless of

**GC Ex. 3 — GC Exhibit 125**

1    his protected concerted activity, or they had an honest belief

2    that he engaged in misconducted that warranted discharged,

3    under Burnup & Sims you get another shot to say, well, it

4    doesn't -- it doesn't matter.  He didn't engage in such serious

5    misconduct as to lose protection in the act.

6        But that -- that third element is just going to be

7    determined by Board members looking at the video and

8    determining whether it's -- whether it's protected or not.  So

9    really what you're left with is the second element of Burnup &

10   Sims and perhaps the affirmative defense of Wright Line.

11       But, frankly, I see no way that this case gets to Wright

12   Line.  And so we've been at this a long time, and I'm -- you

13   know, I've -- I've heard, I've considered where we're at, and I

14   believe that the litigation has been appropriately limited to

15   what I just indicated.  And if you -- if you want to take a

16   special appeal from that, you certainly can.  It looks like

17   we're going to have a -- you know, we're going to have a gap

18   anyway because the respondent's taking a special appeal with

19   the subpoena issue.  You know, if you want to take a -- a

20   special appeal to this, you know, do it now, and therefore, you

21   know, they'll probably both be dealt with in  the same time

22   frame.  And if we have to -- you know, if we have to come back,

23   we can deal with both at the same time.

24       MS. REIBSTEIN:  Your Honor, I have a question that needs

25   some clarification, please.  So the Burnup & Sims, one of the



**GC Exhibit 126**

<div align="center">

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

</div>

| | | |
|---|---|---|
| AMAZON.COM SERVICES LLC | ) | |
| | ) | |
| | ) | |
| and | ) | Case 29-CA-261755 |
| | ) | |
| GERALD BRYSON, an Individual. | ) | |

<div align="center">

**RESPONDENT'S OPPOSITION TO COUNSEL FOR THE ACTING
GENERAL COUNSEL'S MOTION TO STRIKE RESPONDENT'S REPLY TO
COUNSEL FOR THE ACTING GENERAL COUNSEL'S OPPOSITION TO
RESPONDENT'S SPECIAL APPEAL**

</div>

Counsel for the Acting General Counsel's ("CAGC") Motion to Strike Respondent's

Reply to the CAGC's Opposition to Respondent's Special Appeal ignores Board authority that,

in fact, permits the filing of the reply brief the CAGC seeks to strike.[1]  After asking the Board to

*strike* Respondent's June 25, 2021 Reply Brief, CAGC then goes on to *respond substantively* to

Respondent's reply brief – rendering its frivolous motion an impermissible surreply to such

reply, which (as the CAGC should know) cannot be filed without permission from the Board.

For these reasons, the Board should deny the CAGC's motion to strike in its entirety and

disregard its substantive arguments.

**I.      RESPONDENT'S REPLY IS PROCEDURALLY PROPER**

      **A.      Established Board Caselaw and Guidance Permit Respondent's Reply**

Respondent filed its Special Appeal pursuant to Section 102.26 of the Board's Rules and

Regulations ("Board's Rules").  While Section 102.26 does not expressly provide for reply

briefs, it does not prohibit them either, and the filing of a reply to an opposition to a request for

special permission to appeal is not controversial.  Indeed, as discussed below, it is expressly

---

[1] The CAGC fails to identify the Board Rule its Motion was purportedly filed under.  As discussed in Section II below, the CAGC's motion is actually an impermissible surreply disguised as a motion to strike.

contemplated by the NLRB's published procedural guidelines and E-Filing platform. Moreover, in numerous cases, parties have filed replies to oppositions to requests for special permission to appeal under Section 102.26 of the Board's Rules.  No party disputed the right to do so, and the Board considered the reply in ruling on the special appeal.  *See, e.g.*, *McDonald's USA, LLC*, 368 NLRB No. 134, slip op. at 1 (2019) (Board considered reply briefs filed by General Counsel and respondent; no party challenged right to file either reply); *Lewis Foods of 42nd Street, LLC*, 362 NLRB 1084, 1084 (2015) (Board considered respondent's reply to General Counsel's opposition to respondent's request for special permission to appeal, which General Counsel did not challenge respondent's right to file); *Domsey Trading Corp.*, 325 NLRB 429, 430 (1998) (Board considered respondent's reply to General Counsel's response to respondent's request for special permission to appeal; General Counsel did not challenge respondent's right to file); *see also Michael Cetta, Inc.*, 02-CA-142626, docket available at https://www.nlrb.gov/case/02-CA-142626 (May 3, 2021 docket entry for reply to opposition to request for special permission to appeal; no motion to strike on docket); *Tesla, Inc.*, 32-CA-197020, et al., docket available at https://www.nlrb.gov/case/32-CA-197020 (Sept. 7, 2018 docket entry for reply to opposition to request for special permission to appeal; no motion to strike on docket).

Not only have other counsels for the General Counsel not disputed the right of a party to file a reply in this situation, they have filed such replies themselves.  *See, e.g.*, *McDonald's*, above, slip op. at 1 (General Counsel filed a reply to opposition to General Counsel's request for special permission to appeal); *Fluor Daniel, Inc.*, 353 NLRB 133, 133 (2008)[2] (General

---

[2]  The *Fluor Daniel* decision was issued by a two-Member Board.  This decision is not being cited for its precedential value, but rather as an example of counsel for the General Counsel filing a reply to an opposition to a request for special permission to appeal.

Counsel filed a reply to respondent's opposition to General Counsel's request for special permission to appeal).  This is consistent with the Board's practice generally regarding the filing of replies where the Board's Rules do not expressly prohibit them.  *See, e.g.*, *Utility Workers (Southern California Gas Co.)*, 356 NLRB 1265, 1265 fn. 3 (2011) (denying CAGC's request to strike respondents' reply to opposition to motion to dismiss filed under prior version of Board's Rules and expressly rejecting argument that the Board's (then-applicable) Rules did not contain a provision permitting a reply to an opposition to motion); *Baker Electric*, 330 NLRB 521, 521 fn. 4 (2000) (permitting reply to opposition to motion for summary judgment filed under prior version of Board's Rules pursuant to Board practice permitting the filing of a reply brief although not expressly provided for in the (then-applicable) Rules).[3]  The CAGC's attempt to strike Respondent's Reply here is contrary to well-established Board authority.

Although there is no doubt about the applicable law, Respondent also notes that guidance published by the NLRB's Executive Secretary and instructions on the NLRB's own E-Filing platform further confirm that the CAGC's Motion to Strike is baseless.  Specifically, Appendix B to the Guide to Board Procedures ("Guide"), published by the Board's Office of the Executive Secretary, describes various filings in unfair labor practice cases, and permits replies to oppositions to requests for special permission to appeal any time prior to "Board action":

---

[3] In contrast, when the Board intends to prohibit reply briefs, its Rules state this explicitly.  *See, e.g.* Board's Rules, Sec. 102.35(a)(9) (in cases involving stipulated facts, initial brief and answering brief are permitted but "[n]o further briefs may be filed except by special leave of the Board"); Sec. 102.46(i)(4) (replies to an answering brief to an amicus brief are not permitted); Sec. 102.67(f) and (h) (replies to oppositions to request for review of Regional Director's action and oppositions filed after review is granted are not permitted except upon special leave of the Board); Sec. 102.90 (reply briefs may not be filed except upon special leave of the Board in Sec. 8(b)(4)(D) cases).

**APPENDIX B**
**QUICK REFERENCE GUIDE FOR**
**UNFAIR LABOR PRACTICE FILINGS**

| Document | Rule | Due Date | Answer Date | Reply Due | Means |
|----------|------|----------|-------------|-----------|-------|
| Requests for Special Permission to Appeal | 102.26 | Promptly | 7 days from receipt of appeal | Prior to Board action | E-File |

Guide at 59 (July 2020), *available at*

https://www.nlrb.gov/sites/default/files/attachments/pages/node-174/guide-to-board-procedures-2021-march-2021-final.pdf.  As illustrated below, where reply briefs are *not* permitted,

Appendix B of the Guide states that expressly.  *See id.* at 60 (stating that replies to oppositions

to briefs following Board acceptance of stipulation of facts under Sec. 102.35(a)(9) of the

Board's Rules are "[n]ot allowed except by special permission").

| Briefs following Board acceptance of stipulation of facts | 102.35(a)(9) | As set forth in Order accepting stipulation | 14 days from last date for initial briefs | Not allowed except by special permission | E-File |
|----------|------|----------|-------------|-----------|-------|

Moreover, the NLRB's E-Filing platform also permits parties to file a reply to an

opposition to a request for special permission to appeal.  The E-Filing "Choose and Upload

Document" page prompts a filer to select the type of document they are E-Filing in connection

with a request for special permission to appeal.  A "Reply to Opposition to Request for Special

Permission to Appeal" is specifically listed as one of the options:

4



The NLRB would not have expressly listed a document as a filing option if that document was not permitted to be filed. Given the extent of the contrary authority, the CAGC's motion to strike should be denied.

### B.   <u>Respondent's Reply Is Timely</u>

The CAGC's claim that Respondent was required to file its reply within 7 days of the CAGC's Opposition is similarly erroneous and contrary to express guidance from the Executive Secretary. As explained above, Respondent's special appeal and its accompanying reply were filed pursuant to Section 102.26 of the Board's Rules. As discussed above, parties may file replies to oppositions to requests for special permission to appeal under this Rule. Section 102.26 does not establish a specific deadline in which the reply must be filed; however, the Guide to Board Procedures states that a reply to an opposition to a request for special permission to appeal under Section 102.26 must be filed "[p]rior to Board action. *See* Guide to

Board Procedures, at 59.[4]  Here, the Board had not taken any action on Respondent's special appeal as of June 25, 2021, when Respondent filed its reply.  Therefore, the reply was timely filed.

Inexplicably, the CAGC argues Respondent's reply was untimely under Section 102.24(c) (Motion to Strike, at 3), a section of the Board's Rules that does not apply here. Section 102.24(c) applies only to replies to an opposition to a motion filed under Section 102.24.  The Board should disregard the CAGC's argument because Respondent's special appeal and reply (and the CAGC's opposition) were filed under Section 102.26 of the Board's Rules.  Section 102.24 is inapplicable.

## II.   THE CAGC'S REMAINING ARGUMENTS CONSTITUTE AN IMPERMISSIBLE SURREPLY

The remainder of the CAGC's Motion to Strike is a disguised and impermissible surreply that responds to the substance of the arguments made in Respondent's reply "[i]n the event the Board considers the arguments set forth in [it]."  Motion to Strike, at 4-7.  As a surreply is not permitted here, the Board should disregard the CAGC's substantive arguments.

The Board's general policy is not to permit surreply briefs "except by special leave where circumstances so warrant."  *D.L. Baker, Inc.*, 351 NLRB 515, 515 fn. 3 (2007) (quotation omitted); *Laurel Baye Healthcare of Lake Lanier, LLC*, 346 NLRB 159, 159 fn. 2 (2005) (denying respondent's motion for leave to file surreply because the respondent "failed to show that the circumstances warrant departure from the Board's general practice" of not permitting surreply briefs); *Baker Electric*, 330 NLRB 521, 521 fn. 4 (2000) (rejecting respondent's motion

---

[4] In contrast to filings under Rules that expressly permit replies, where the Board will not rule until after the time for filing such a reply has passed, after the due date for the opposition to a request for special permission to appeal (7 days from receipt of the appeal) has passed, the Board may rule on the request for special permission to appeal at any time.

to file surreply brief, as the Board generally does not permit the filing of surreply briefs and "no circumstances were presented warranting special leave").

Here, the CAGC did not seek special leave of the Board to file a surreply and has not identified even a single circumstance that would warrant one (nor do any exist). Instead, the CAGC attempts to evade the Board's Rules and policies by styling its surreply as a "Motion to Strike." The Board has consistently rejected similar transparent evasions of the Board's Rules and polices through the filing of surreplies disguised as some other type of filing. *See, e.g.*, *D.L. Baker*, above at 515 fn. 3 (striking, "as a disguised surreply," respondent's opposition to the General Counsel's and union's requests for special permission to file a reply to respondent's opposition to the General Counsel's motion to strike attachments to respondent's cross-exceptions brief); *Int'l Longshore and Warehouse Union, Local 8 and 40 (ICTSI Oregon, Inc.)*, 19-CC-100903, 2015 WL 1308542 (unpub. Board order dated Mar. 23, 2015) (denying "Charging Party's Motion to Strike Portions of Respondents' Reply Brief or, in the alternative, to File a Surrebuttal" in the interest of administrative finality); *Strategic Technology Institute, Inc.*, 15-CA-094893, 2013 WL 1401043 (unpub. Board order dated Apr. 5, 2013) (finding CAGC's "Opposition to the Respondent's Reply" constituted an "improper surreply brief" in response to the employer's petition to revoke a subpoena duces tecum and striking it from the record). The Board should reject the CAGC's improper efforts here as well.

Because the arguments set forth on pages 4-7 of the CAGC's Motion to Strike constitute an impermissible surreply, the Board should refuse to consider them.[5]

## **CONCLUSION**

For the reasons set forth above, Respondent respectfully requests the Board deny the CAGC's Motion to Strike in its entirety.

Date: July 6, 2021                                    Respectfully submitted,

                                                      */s/ Christopher J. Murphy*
                                                      Christopher J. Murphy
                                                      Morgan, Lewis & Bockius LLP
                                                      1701 Market Street
                                                      Philadelphia, PA 19103-2921
                                                      Phone: +1.215.963.5601
                                                      Fax: +1.215.963.5001

---

[5] The CAGC's attempt to use this Motion to respond substantively to the arguments raised by the Respondent's allegedly (according to the CAGC) impermissible and untimely Reply makes clear that the Motion's real purpose is to file a surreply.  Without waiving the argument that the Board should disregard the CAGC's end-run around the Board's Rules and policies, Respondent responds briefly to the arguments made in the Motion.  First, the CAGC's arguments regarding the legal framework applicable to this case suffer from the same defects as the CAGC's arguments in its Opposition to Respondent's Special Appeal.  The CAGC simply refuses to acknowledge that the ALJ has ruled that *Burnup & Sims*, 379 U.S. 21 (1964) – and not *Wright Line*, 251 NLRB 1083 (1980) or any other purported "alternative legal theor[y]" – applies in this case.  *See* Respondent's Reply, at 7-9, and relevant transcript portions cited therein.

Second, the CAGC's assertions that it is not precluded from continuing to litigate Respondent's knowledge and alleged animus are also contradicted by the ALJ's actual statements.  *See* Respondent's Reply, at 7-9.  The CAGC's reliance on the ALJ's references to "overlap" between the *Burnup & Sims* and *Wright Line* frameworks is disingenuous.  While the ALJ noted both analyses may touch on the question of Respondent's good faith belief that the Charging Party engaged in misconduct, contrary to the CAGC, the ALJ did not in any way indicate evidence regarding knowledge or animus under the *Wright Line* framework is relevant.  *See* Reply, at 7-9.

Third, the CAGC's arguments regarding the appropriate analytic framework are legally and factually incorrect, in addition to being procedurally improper.  The ALJ's ruling that *Burnup & Sims*, 379 U.S. 21 (1964), is the appropriate standard is not before the Board.  The CAGC did not seek to appeal the ALJ's ruling, despite being repeatedly invited by the ALJ to do so.  The CAGC cannot challenge this ruling by injecting it into its Opposition to Respondent's Special Appeal or this so-called "Motion to Strike."

Finally, the CAGC's arguments regarding the reasons for the Charging Party's termination are not appropriately raised here.  Beyond the procedural infirmity, these arguments are factually incorrect.  Throughout this proceeding Respondent has maintained, and the record evidence shows, that Respondent terminated the Charging Party because of his profane and abusive verbal attack against a female coworker.  *See, e.g.*, Special Appeal at 2-3; Reply, at 2.  The CAGC's contention that Respondent has "refused to identify the conduct for which it fired the Charging Party" is completely baseless.  In any event, the CAGC's arguments go to the merits of this case, which are not currently before the Board.  The CAGC's attempt to have the Board pass on the merits of its discharge allegation via a "Motion to Strike" – when the hearing has not yet even concluded and no ALJ decision has been issued – is completely inappropriate.

christopher.murphy@morganlewis.com

Nicole Buffalano
Morgan, Lewis & Bockius LLP
300 South Grand Avenue, Twenty Second Floor
Los Angeles, CA 90071-3132
Phone: +1.213.612.7443
Fax: +1.213.612.2500
nicole.buffalano@morganlewis.com

*Attorneys for Respondent*
*Amazon.com Services LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Respondent Amazon's Opposition to Counsel for the Acting General Counsel's Motion to Strike Respondent's Reply to Counsel for the Acting General Counsel's Opposition to Respondent's Request for Special Permission to Appeal and Appeal was served on July 6, 2021 via electronic mail upon the following:

Evamaria Cox
Counsel for the Acting General Counsel
National Labor Relations Board, Region 29
Two Metro Tech Center, Suite 5100
Brooklyn, NY 11201
Evamaria.Cox@nlrb.gov

Frank Kearl
Charging Party's Legal Representative
Make the Road New York
161 Port Richmond Ave.
Staten Island, NY 10302
frank.kearl@maketheroadny.org

Judge Benjamin Green
National Labor Relations Board Administrative Law Judge
National Labor Relations Board Division of Judges
26 Federal Plaza, 41st Floor, Suite 41-120
New York, NY 10278
Benjamin.Green@nlrb.gov

Date: July 6, 2021
                                        */s/ Lauren Emery*
                                        Lauren Emery
                                        Morgan, Lewis & Bockius LLP
                                        1111 Pennsylvania Avenue, NW
                                        Washington, DC 20004
                                        Phone: +1.202.739.5203
                                        Fax: +1.202.739.3001
                                        lauren.emery@morganlewis.com

                                        *Attorney for Respondent*
                                        *Amazon.com Services LLC*

GC Exhibit 127



United States Government

**NATIONAL LABOR RELATIONS BOARD**

Office of the Executive Secretary

1015 Half Street, SE

Washington, DC 20570

Telephone:  202-273-1949
Fax:  202-273-4270

farah.qureshi@nlrb.gov
www.nlrb.gov

July 7, 2021

Evamaria Cox
Matthew Jackson
Counsels for the Acting General Counsel
National Labor Relations Board
Region 29
Two MetroTech Center, 5/Fl.
Brooklyn, NY 11201

      Re:    <u>Amazon.com Services LLC</u>
             Case 29-CA-261755

Dear Ms. Cox and Mr. Jackson:

On June 5, 2021, the Respondent filed with the Board a Request for Special Permission to Appeal and Appeal of Certain Administrative Law Judge's Orders. Thereafter, Counsels for the Acting General Counsel (CGAC) filed a timely opposition. Subsequently, on June 25, 2021, the Respondent filed a reply to the CGAC's opposition.

The Executive Secretary's Office is now in receipt of the General Counsel's Motion to Strike Respondent's Reply to the Acting General Counsel's Opposition to Respondent's Request for Special Permission to Appeal and Appeal of Certain Administrative Law Judge's Orders, filed with the Board on July 1, 2021.  The Respondent has filed an opposition.

In the motion to strike, CAGC argue that Section 102.26 of the Board's Rules and Regulations does not provide for the filing of a reply brief to an opposition to a request for special permission to appeal. They further assert that even if a reply is permitted under Section 102.24 of the Rules and Regulations, the Respondent's reply is untimely filed as it was filed 14 days after the opposition, not seven days as required under that section.

Contrary to CAGC's assertions, the omission of a reply provision in Section 102.26 does not compel a finding that reply briefs are not permitted.  The Board has long permitted reply briefs where requests for special permission to appeal have been filed. See *McDonald's USA, LLC*, 368 NLRB No. 134 (2019); *Geodis Logistics*, 15-CA-218543 (docket sheet available on public website); *Sysco Detroit LLC*, 07-CA-163131 (docket sheet available on public website).  Moreover, the Board's own *Guide to Board Procedures*, located on the NLRB public website, provides that such replies are

GC Exhibit 127

permitted prior to Board action.  As the Board has not yet acted on the Respondent's Request for Special Permission to Appeal, the Respondent's reply brief, filed on June 25, 2021, is timely and will be forwarded to the Board for consideration.

Accordingly, the motion to strike is **denied**.

Very truly yours,

/s/ Farah Z. Qureshi
Deputy Executive Secretary

cc:  Parties

GC Exhibit 128

# UNITED STATES OF AMERICA
## BEFORE THE NATIONAL LABOR RELATIONS BOARD

**AMAZON.COM SERVICES LLC**

    **and**                                  **Case 29-CA-261755**

**GERALD BRYSON**

## ORDER[1]

On June 5, 2021, the Respondent filed with the Board a request for special permission to appeal from Administrative Law Judge Benjamin W. Green's orders (1) denying the Respondent's motion for reconsideration of the judge's denial of the Respondent's petition to revoke paragraph 19 of the Acting General Counsel's Subpoena Duces Tecum B-1-1BUGMIX and of the Charging Party's Subpoena Duces Tecum B-1-1C9GVF7[2] to the extent they seek documents related to matters not in issue; (2) refusing to revoke paragraph 4 of the Charging Party's subpoena to the extent that it seeks documents related to matters not in issue; (3) directing the Respondent to remove redactions from copies of five "Chime" messages that it produced in response to the above subpoena requests; and (4) directing the Respondent to remove redactions from a copy of a Microsoft OneNote file that it produced in response to the above subpoena requests.  The Respondent has failed to establish that the judge abused his discretion or that his rulings cannot be appropriately addressed at a later stage of the proceeding.  Thus, the Respondent's request for special permission to appeal is denied and the Respondent is ordered to produce the requested information in accordance with the judge's orders.[3]  This denial

---

[1]  The National Labor Relations Board has delegated its authority in this proceeding to a three-member panel.

[2] The Respondent's pleadings mistakenly identify this subpoena as "B-1-1C9GVF."

[3] In denying the Respondent's request for permission to appeal, we do not pass on the Acting General Counsel's argument that the request was untimely.

GC Exhibit 128

is without prejudice to the Respondent's right to renew its objections before the Board on any exceptions that may be filed to the judge's decision, if appropriate.

Dated, Washington, D.C., November 18, 2021.

|  |  |
|---|---|
| LAUREN McFERRAN, | CHAIRMAN |
| MARVIN E. KAPLAN, | MEMBER |
| GWYNNE A. WILCOX, | MEMBER |

**GC Exhibit 129(a)**

| | |
|---|---|
| **From**: | Kish, Kristen [kriskish@amazon.com] |
| **Sent**: | 4/6/2020 1:11:10 PM |
| **To**: | Tagle, John [jtagle@amazon.com]; Cheeseman, Kelly [kellych@amazon.com]; cheeseman-directs@amazon.com |
| **CC**: | opspr-research@amazon.com; Lighty, Rachael [raclig@amazon.com] |
| **Subject**: | RE: FLAG: Recap - Facebook live stream, JFK8 Demonstration |

+ Rachel. Please keep her JFK8 on related comms.

---

**From:** Tagle, John <jtagle@amazon.com>
**Sent:** Monday, April 6, 2020 1:10 PM
**To:** Cheeseman, Kelly <kellych@amazon.com>; cheeseman-directs@amazon.com
**Cc:** opspr-research@amazon.com
**Subject:** FLAG: Recap - Facebook live stream, JFK8 Demonstration

Hi all,

Today, there was a Facebook live stream of the JFK8 demonstration. It appears 10 or fewer people participated, and no employees who clocked in to work took part. The live stream was led by associate Jordan Flowers and was about an hour long. Christian Smalls participated, but was featured less than a minute on camera. Mr. Smalls stated, "Round two, continuing the fight, appreciating everyone that comes out, standing up for a good cause and will continue to fight. This is for all the front-liners - we aren't giving up, stand up with me. Let's go."

The biggest claim repeated during the live stream was that there are 30 confirmed cases at JFK8. Flowers did an interview with a reporter (possibly NY1 which was on site.) The reporter challenged him on the confirmed case count, asking him how he knew. Flowers said management told him to "keep it quiet."

Flowers used the hashtag #jfk8strike during the live stream. So far it has only been used once on Facebook and not at all on Twitter.

We are monitoring and will correct any story inaccuracies after a statement is approved.

Regards,
John

AMZ-BRY008769

GC Exhibit 129(c)

| From: | Strobridge, Lisa [/O=AMAZON/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=LISASTROA95] |
| Sent: | 3/30/2020 8:29:23 AM |
| To: | Gutierrez, Milly [gmilly@amazon.com]; Sciurba, Stephanie [sciurba@amazon.com] |
| CC: | Jones, Elliott [ottjones@amazon.com] |
| Subject: | Updated JFK8 Run of Show |
| Attachments: | Run of Show - JFK8 - 3.30.20_updated.doc |

Hey team,
Updated run of show as of our 9am call.

Lisa Strobridge | Employee Relations Manager
Email: lisastro@amazon.com | P: 904-535-8676
Employee Relations NACF
**employee relations**

**AMZ-BRY009100**

GC Exhibit 129(c)

**JFK8, 3.30.20 Protest ER Support**
**As of 3.30.20**

## Overview

On 3/28/2020, JFK8 leadership received information regarding an associate walk out planned for Monday 3/30/2020 at 11:00 a.m. Social media posts indicate associates will walk out in protest of the site remaining open. Associates continue to express a desire for JFK8 to close and complete a deep clean and sanitize. There is also growing concern from associates around the number of positive COVID-19 cases and their perception Amazon is not notifying them in a timely manner.

On 3/29/20, JFK8 leadership received information that there was a Chime group with roughly 50 associate members, titled, "We Stand Together" to communicate information about the event. HR found notes taped around site by time clocks and restrooms indicating the event would begin at 12:30pm EST on 3/30/20. At 1:18 p.m., leadership was notified that the protest might potentially start with associates pulling a fire alarm within the site. The AM that reported the information informed their PA in their Chime chat that activating a false fire alarm was a Category 1 safety violation according to the Code of Conduct. An article was published on CNBC quoting, PA, Christian Smalls stating that there would be over 100 associates in attendance. The article states he is an organizer for the social activist group Make the Road NY. The CNBC article has been shared across multiple social activist groups through social media, including New York Communities for Change (NYCC) and Make the Road New York.

On 3/30/20, JFK8 leadership in partnership with Legal, ER, PR, IOC, PP, LP, and Regional Ops and HR conducted a protest prep meeting at 9:00 a.m. to review outstanding actions prior to the protest start time. RLPM is on site today for support and will act as POC for any announcements required to ensure SD is enforced in the parking lot if needed. Local PD will be patrolling hourly, with direct contact number for the Sargent on duty patrol. Media articles indicate that the protest will still occur at 12:30 p.m. and may move across the street to the bus stop, which is public property versus staying on-site in the parking lot. There is double coverage for Fire Watch Director on site today and coordination between RME, Safety, and fire watch personnel to ensure quick action and resolution to any fire alarm activation points. The protest virtual support meeting was shifted forward to begin at 11:30 a.m. to allow for a full hour of preparation prior to the suspected start time of 12:30 p.m.

In partnership with Legal, ER, PR, IOC, and Regional Ops and HR, the GM continues to share talking points with the associates outlining JFK8's commitment to comply with all New York State guidelines and providing additional detail around JFK8's cleaning and sanitizing efforts. ER deployed the Protest Response Playbook and is ensuring the site is prepared for an associate walk out. The team conducted a pre-protest meeting on 3/29/20 to review all relevant information and status of playbook actions. The team will reconvene on 3/30/20 at 9:00 a.m. and then again at 11:45 a.m. in preparation for the start of the event.

## Onsite ER Support: (Dates)

**NACF ER**
- No onsite support available due to COVID-19 related travel restrictions

## ER Support Plan and Run of Show

Ahead of the protest, ER will review and confirm Ops, HR, LP and other support function responsibilities before, during, and after the protest. ER will also conduct leadership training with site managers and support leaders. Training will include escalation protocols and expectations, Chime room update expectations (as applicable), and "dos and don'ts" for interacting with anyone outside of the site. The goal of the onsite ER team is to assist regional and site leadership in ensuring no business disruptions or customer impact. At each site, when the

AMZ-BRY009101

GC Exhibit 129(c)

protest commences, the ERP will alert members of the following teams via a previously established working group Chime room: LP, PR, GIP, Legal, Ops, HR, PP and IOC. GIP will initiate a GSOC conference call per their standard procedure.

**(Day 1)        (3/29/20)**
The ER team conducted virtual training for site leadership scheduled to be on site on 3/30/20 during day shift.

**(Protest Day)        (3/30/20)**

09:00 a.m.        ER/Site leadership/Regional partners to conduct Chime call to discuss any outstanding action items from the protest playbook, verify actions with RME/Safety/Fire watch for the day, and identify/address any defects or vulnerabilities

10:00 a.m.        RME, Safety, and Fire Watch coordinate coverage of fire alarm activation stations in zones. Response and resolution time is 10 minutes for any activation to be coordinated by Fire Watch Director. Coverage of zones from 10:00 a.m. through 12:00 p.m.

11:30 a.m.        Virtual Protest Support Kick-Off meeting for JFK8 with the following attendees: Global ERD, NACF ERD, ERPs/ERMs, PR, Public Policy, IOC, LP, Safety, Site Senior team, Regional Ops and HR; POCs identified as decision makers listed below:

| Department | POC | Role |
|---|---|---|
| ER | Milly Gutierrez | ERP |
| Ops | Anand Meta | Regional Ops |
| HR | Bradley Campbell | Regional HR |
| PR | Rachael Lighty | Regional PR |
| PP | Jeff Cleland | Public Policy |
| LP | Geoff Gilbert-Differ | RLPM |
| IOC | David Simons | On-call IOC |

12:30 p.m.        Reported start time of protest activity. ER will immediately escalate to Janet Saura (954-648-1610) any high-risk concerns.  ER Primary POC for JFK8, Milly Gutierrez will serve as the first POC for senior leadership and Lisa Strobridge will support the Incident Commander and working group. ER will provide updates to senior leaders every 30 minutes via the established Chime room.

06:00 p.m.        Event working group will debrief via the established Chime call room. ER will provide an email summary to update distribution list recipients summarizing the day's events.

## Immediate Next Steps and ER Risk Mitigation Strategy

3/30/20 JFK8 Protest preparation commenced on 3/28/20. The JFK8 cross-functional working group consists of Ops, HR, ER, LP, Safety, PR, PP, IOC, GIP and Legal, and the groups communicate daily. Each team has Protest Playbook action items. The latest update is here for review.

The working group will provide new information via established Chime groups to monitor and for comment in real time. Site Ops and HR will monitor associate feedback and GIP will monitor social media activity. Protest prep teams are leveraging the Protest Playbook and IOC Labor Activity Playbook.

AMZ-BRY009102

**Tyler:**

Gerald - This is Tyler calling from Amazon HR, I am here with (insert Ops partner) and wanted to follow up in regards to our discussion last week. The team has concluded the investigation and based on the findings there will be feedback pertaining to your involvement in the incident. (Insert Ops Partner) is going to go over the feedback with you and then we can review any questions you may have.

**(Ops):**

**Details of Incident**

The following feedback pertains to Amazon's Standards of Conduct. Abusive, vulgar, or harassing language to a supervisor, fellow associate, or vendor is prohibited and classified as a Category 2 violation of the Standards of Conduct. Harassment is unwanted conduct that affects one's dignity at work. It is personally offensive and creates an intimidating, hostile, degrading, humiliating or offensive work environment. On 4/6/2020, you were reported to be in violation of this policy by making vulgar and derogatory comments towards another employee.

**Areas of Improvement**

Amazon is committed to providing a work environment that promotes the health, safety, and productivity of its associates. Associates are expected to treat each other, contractors, customers, and visitors with courtesy and professionalism. Amazon will not tolerate abusive, vulgar, or harassing language or behavior. You are expected to be in compliance with the Standards of Conduct policy at all times while working in the Fulfillment Center. These actions result in separation of employment.

**Tyler:**

This termination is a result of a violation of rules and policy and therefore you would not be eligible for rehire. This type of termination is not eligible for the appeals process. Any vacation time you have will be paid out in your final pay check and if you have benefits with Amazon they will be good through the end of the month.

**AMZ-BRY008849**

GC Exhibit 129

# Morgan Lewis

**Kelcey J. Phillips**
Associate
+1.202.739.5455
kelcey.phillips@morganlewis.com

December 2, 2021

**Via Secure File Transfer**
Evamaria Cox
Field Attorney
National Labor Relations Board, Region 29
Two Metro Tech Center, Suite 5100
Brooklyn, NY 11201

Re:     Amazon.com Services LLC Case 29-CA-261755

Dear Ms. Cox:

As you know, this firm represents Amazon.com Services LLC in the above-referenced matter. Attached hereto please find documents bearing Bates stamp number "AMZ-BRY008760" through "AMZ-BRY009102," which are being produced in response to the Counsel for the General Counsel's subpoena *duces tecum* B-1-1BUGMIX and Charging Party's subpoena *duces tecum* B-1-1C9GVF7.

All the enclosed documents are responsive to Paragraph 4 of the Charging Party's subpoena *duces tecum* unless otherwise identified below.

- **Paragraph 11(a) – B-1-1BUGMIX; B-1-1C9GVF7**
  - AMZ-BRY008849
- **Paragraph 11(d) – B-1-1C9GVF7**
  - AMZ-BRY008839 – AMZ-BRY008848

Please contact me should you have any questions.

Sincerely,

*/s/ Kelcey J. Phillips*
Kelcey J. Phillips

cc: Nicole Buffalano, Esq.
Christopher J. Murphy, Esq.
Jennifer Mott Williams, Esq.
Matthew Jackson, Esq.

**Morgan, Lewis & Bockius** LLP

1111 Pennsylvania Avenue, NW
Washington, DC  20004
United States
**T** +1.202.739.3000
**F** +1.202.739.3001

GC Exhibit 130

UNITED STATES GOVERNMENT
**NATIONAL LABOR RELATIONS BOARD**
REGION 29
TWO METRO TECH CENTER STE 5100
FL 5
BROOKLYN, NY 11201-3838

Agency Website: www.nlrb.gov
Telephone: (718)330-7713
Fax: (718)330-7579

December 3, 2021

Hon. Benjamin W. Green
Administrative Law Judge
National Labor Relations Board
26 Federal Plaza, 41st Floor, Suite 41-120
New York, NY 10278

Amazon.com Services, LLC
Case No. 29-CA-261755

Dear Judge Green:

Pursuant to section 102.25 of the Board's Rules and Regulations, Counsel for the General Counsel seeks reconsideration of your ruling to enter Charging Party Exhibit 9 (Third Privilege Log) under a protective order and seal.

As established below, Respondent failed to demonstrate that Charging Party Exhibit 9 warrants a protective order or warrants being placed under seal. Accordingly, Counsel for the General Counsel respectfully requests that Your Honor reverse your ruling with respect to the admission of Charging Party 9 under a protective order and seal.

**Introduction**

Pursuant to your order on Trial Dates and Petition to Partially Revoke Counsel for the Acting General Counsel's Subpoena Duces Tecum, Respondent was initially required to produce a privilege log on "March 29, 2021 or as soon thereafter" as possible. Consistent with its pattern of ignoring deadlines and manufacturing delay, Respondent failed to produce a privilege log until April 26, 2021 – almost one month past your deadline. Also consistent with its pattern of failing to fulfill its obligations to produce documents, Respondent's April 26 privilege log was deficient, as it failed to describe the communications set forth in the log with sufficient particularity and did not include the job titles of individuals named in the log. Tr.[1] 259-261. Your Honor permitted Respondent time to cure its deliberately deficient log and as a result, on April 29, Respondent produced a "revised" privilege log. On May 12th, Respondent supplemented its revised log and produced the Third Privilege Log. At the hearing, the Charging Party introduced the Third Privilege Log (Charging Party Exhibit 9).

---

[1] Tr. means transcript followed by the Transcript page number that is being cited.

Amazon.com Services, LLC                      - 2 -                      December 3, 2021
Case No. 29-CA-261755

Your protective order[2] is limited to personnel records (such as employee disciplines) of employees other than Bryson.  Respondent sought to expand your protective order to apply to the Third Privilege Log.  Respondent argued that the Third Privilege Log should be subject to "the protective order given that it discusses, you know, counsel and what kind of communications there are."  Tr. 1844.  Respondent further requested that the Third Privilege log be placed under seal.  Respondent's reasoning was, "we don't want them to be FOIA-able."  Tr. 1855.  Your Honor agreed to the admission of Charging Party 9 under protective order and seal. Tr. 1854:20-23; 1855:8.

**<u>Respondent Failed to Meet its Burden with Respect to Disclosure of Charging Party Exhibit 9</u>**

Respondent had several burdens to meet in order to obtain a protective order and to seal certain records, burdens that Respondent clearly failed to meet.  In that regard, a party seeking a protective order with respect to disclosure of documents bears the burden of demonstrating "good cause" under Federal Rule of Civil Procedure 26(c) "or that disclosure would cause clearly defined and serious harm."  *Impremedia*, 2015 WL 193732 (2015).  A party seeking to prevent disclosure of a document is required to make a stronger showing to seal a record where documents have been introduced and made part of a formal record given the public's interest in and historical access to judicial records.  *NLRB v. CEMEX, Inc.*, 2009 WL 5184695, at *2 (D. Ariz. Dec. 22, 2009).  A trial judge "may not rubber stamp a stipulation to seal the record."  *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F3d 943, 944-945 (7th Cir. 1999).  Moreover, an administrative protective order designating a document as confidential at the time that it was received into evidence is an insufficient basis for nondisclosure under the Freedom of Information Act (FOIA).  *General. Electric Co. v. U.S. Nuclear Regulatory Com'n*, 750 F2d 1394, 1400 (7th Cir 1984).

With respect to Charging Party 9, not only did Respondent fail to meet its burden, but Respondent did not even bother to attempt to meet its burden.  Respondent has failed to demonstrate "good cause." Respondent failed to demonstrate that disclosure would cause clearly defined and serious harm. Respondent's motion was unsupported by facts whatsoever. Respondent failed to articulate *any* facts that would show that preventing disclosure is necessary "to protect a party or person form annoyance, embarrassment, oppression or undue burden or expense."[3]  Instead, Respondent offered its conclusory claim that the privilege log lists documents that are subject to the attorney-client privilege and Respondent merely expressed its self-serving desire that the document not be subject to FOIA.  Respondent failed to meet its heavy burden in establishing that preventing disclosure is warranted.  In this regard, the Third Privilege Log does not contain any privileged, employment, or peronsally sensitive information at all.  Therefore, there is no appropriate basis to extend the protective order to include Charging Party Exhibit 9.

---

[2] *See e.g.*, Order on the Respondent's Petition to Revoke Charging Party's Subpoena Duces Tecum B-1-1C9GVF7 and Request for Protective Oder dated April 27, 2021.

[3] FRCP 26(c)(1).

GC Exhibit 130

Amazon.com Services, LLC                              - 3 -                      December 3, 2021
Case No. 29-CA-261755

Moreover, even if one were to conclude that that Respondent articulated a valid basis for
the protective order to cover Charging Party 9, Respondent's motion to enter it under seal should
have also been rejected.  The Third Privilege Log does not fall under any FOIA exemption.  *See
e.g.*, Exemption 1 (national security), Exemption 2 (related to internal personnel rules and practices
of an agency), Exemption 3 (prohibitions contained in other status), Exemption 4 (trade secrets
and commercial or financial information obtained forma person where the information is
privileged or confidential), Exemption 5 (inter-agency or intra-agency memorandums or letters
which would not be available by law to a party in litigation with the agency), Exemption 6
(personnel and medical files where disclosure constitutes unwarranted invasion of personal
privacy), Exemption 7 (records or information complied for law enforcement purposes),
Exemption 8 (related to regulation of financial institutions), and Exemption 9 (geological data).[4]
Respondent's mere wish that the document not be subject to FOIA does not make it so.  Thus,
under FOIA, Respondent's Third Privilege Log is not protected from disclosure.  To the contrary,
the public's right to access this exhibit far outweighs Respondent's conclusory claims of privilege.

Based on the foregoing, reversal of your ruling that Charging Party 9 is under protective
order and seal is warranted and necessary.

*/s/ Evamaria Cox*
Evamaria Cox
Counsel for the Acting General Counsel
National Labor Relations Board
Region 29
Two MetroTech Center, 5/Fl.
Brooklyn, New York 11201

---

[4] *See generally*, Freedom of Information Act Manual at
https://www.nlrb.gov/sites/default/files/attachments/pages/node-3614/foia-manual_0.pdf

Amazon.com Services LLC's Fifth Privilege Log
Amazon.com Services LLC and Gerald Bryson , Case No. 29-CA-261755

GC Exhibit 131

| Date Sent | Bates Label | From | To | CC | BCC | Description | Privilege |
|---|---|---|---|---|---|---|---|
| 3/29/2020 8:47 p.m. | AMZ-BRY_PRIV000199 | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Allyson Hoffman (Director, Human Resources); Joshua Teeter (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International) ; Erin Hughes (Director, Humand Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Janet Saura (Director, Employee Relations) (Director, Employee Relations) ; Derrik Atkinson (Regional Sr HRM, NACF) (Regional Sr HRM, NACF) ; Anand Menon (Sr PM, Process Excellence - TA) (Sr PM, Process Excellence - TA) | None | Email to Liz Hackett, Esq. for purposes of obtaining legal advice regarding regarding legal issues pertaining to planned protest on March 20, 2020. | ATTORNEY-CLIENT |
| 3/29/2020 8:51 p.m. | AMZ-BRY_PRIV000199 | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources) | Kristin LaRosa, Esq. (Corporate Counsel); Allyson Hoffman (Director, Human Resources); Joshua Teeter (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International) ; Erin Hughes (Director, Humand Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Janet Saura (Director, Employee Relations) (Director, Employee Relations) ; Derrik Atkinson (Regional Sr HRM, NACF) ; Anand Menon (Sr PM, Process Excellence - TA) (Sr PM, Process Excellence - TA) | None | Email from Liz Hackett, Esq. for purposes of obtaining legal advice regarding legal issues pertaining to planned protest on March 20, 2020. | ATTORNEY-CLIENT |
| 3/29/2020 9:17 p.m. | AMZ-BRY_PRIV000199 | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Kristin LaRosa, Esq. (Corporate Counsel); Allyson Hoffman (Director, Human Resources); Joshua Teeter (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International); Erin Hughes (Director, Humand Resources); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Anand Mehta (Director, Operations); Janet Saura (Director, Employee Relations) (Director, Employee Relations) ; Derrik Atkinson (Regional Sr HRM, NACF) (Regional Sr HRM, NACF) ; Anand Menon (Sr PM, Process Excellence - TA) (Sr PM, Process Excellence - TA) | None | Email to Liz Hackett, Esq. for purposes of obtaining legal advice regarding legal issues pertaining to planned protest on March 30, 2020. | ATTORNEY-CLIENT |

GC Exhibit 131

Amazon.com Services LLC's Fifth Privilege Log

Amazon.com Services LLC and Brian Bryson , Case No. 29-CA-261755

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3/29/2020 6:35 p.m. | AMZ-BRY_PRIV000201 | Dave Clark (SVP Worldwide Operations) | Zane Brown (Vice President, Associate General Counsel, Labor and Employment) | Henry Darcie (VP, HR - WW Operations, VP Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International) | None | Email to Zane Brown, Esq. for purposes of obtaining legal advice regarding legal issues pertaining to planned protest on March 30, 2020. | ATTORNEY-CLIENT |
| 3/29/2020 10:47 p.m. | AMZ-BRY_PRIV000200 | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment) | Henry Darcie (VP, HR - WW Operations, VP Human Resources); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International) | None | None | Email to Liz Hackett, Esq. for purposes of obtaining legal advice regarding legal issues pertaining to planned protest on March 30, 2020. | ATTORNEY-CLIENT |
| 3/29/2020 11:27 p.m. | AMZ-BRY_PRIV000200 | Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International) | Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International); Anand Mehta (Director, Operations); Scott Anderson (VP, NACF AR Operations) (VP, NACF AR Operations) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources) | None | Email conveying legal advice from Liz Hackett, Esq. regarding legal issues pertaining to planned protest on March 30, 2020. | ATTORNEY-CLIENT |
| 3/30/2020 6:26 a.m. | AMZ-BRY_PRIV000200 | Anand Mehta (Director, Operations) | Kristin LaRosa, Esq. (Corporate Counsel); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International); Anand Mehta (Director, Operations); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist); Scott Anderson (VP, NACF AR Operations) (VP, NACF AR Operations) | Shannon Wilson (HR Director, WW Ops. - Director, Human Resources) | None | Email conveying legal advice from Liz Hackett, Esq. regarding legal issues pertaining to protest activities on March 30, 2020 and seeking legal advice from Kristin LaRosa, Esq. (Corporate Counsel). | ATTORNEY-CLIENT |
| 3/30/2020 6:28 a.m. | AMZ-BRY_PRIV000204 | Stephen Hartell (VP, Public Policy) | Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Drew Herdener (VP, Global Corporate and Operations Communications) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Orna Edgar, Esq. (Senior Corporate Counsel); Dave Clark (SVP Worldwide Operations); Leslie Letts (Director WW Operations, Internal Communications); Zane Brown (Vice President, Associate General Counsel, Labor and Employment); Kristin LaRosa, Esq. (Corporate Counsel); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Rachael Lighty (Regional Ops PR Manager); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Kristen Kish (Sr. Comm Mgr, Transportation, Sr Mgr, Public Relations); Heather Knox (Director, NA Ops PR); Lisa Levandowski (Sr PR Manager, Operations, Sr Mgr, Public Relations); Udit Madan (VP, Last Mile Products & Tech) (VP, Last Mile Products & Tech) ; Heather MacDougall (VP - Workplace Health & Safety) (VP - Workplace Health & Safety); Brian Huseman (VP, Public Policy) (VP, Public Policy); Seth Jodi (Director, Policy Comms) (Director, Policy Comms) | None | Email to Kelly Cheesman and Drew Hardener, copying Liz Hackett, Esq.; Orna Edgar, Esq.; and Zane Brown, Esq. for purposes of obtaining legal advice regarding legal issues pertaining to protest activities on March 30, 2020. | ATTORNEY-CLIENT |

# GC Exhibit 131

| | | | | | | |
|---|---|---|---|---|---|---|
| 3/30/2020 6:55 a.m. | AMZ-BRY_PRIV000204 | Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | Stephen Hartell (VP, Public Policy); Drew Herdener (VP, Global Corporate and Operations Communications) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Orna Edgar, Esq. (Senior Corporate Counsel); Dave Clark (SVP Worldwide Operations); Leslie Letts (Director WW Operations, Internal Communications); Zane Brown (Vice President, Associate General Counsel, Labor and Employment); Kristin LaRosa, Esq. (Corporate Counsel); Alicia Boler Davis (VP-Global Customer Fulfillment, VP Operations - International); Rachael Lighty (Regional Ops PR Manager); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Kristen Kish (Sr. Comm Mgr, Transportation, Sr Mgr, Public Relations); Heather Knox (Director, NA Ops PR); Lisa Levandowski (Sr PR Manager, Operations, Sr Mgr, Public Relations); Udit Madan (VP, Last Mile Products & Tech) (VP, Last Mile Products & Tech) ; Heather MacDougall (VP - Workplace Health & Safety) (VP - Workplace Health & Safety), Brian Huseman (VP, Public Policy) (VP, Public Policy), Seth Jodi (Director, Policy Comms) (Director, Policy Comms) | None | Email to Stephen Hartell and Drew Hardener, copying Liz Hackett, Esq.; Orna Edgar, Esq.; and Zane Brown, Esq. for purposes of obtaining legal advice regarding legal issues pertaining to protest activities on March 30, 2020. | ATTORNEY-CLIENT |
| 3/30/2020 12:22 p.m. | AMZ-BRY_PRIV000210 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Leslie Letts (Director WW Operations, Internal Communications); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Kelly Cheeseman (Director, WW Ops External, Director, Public Relations); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International); Erin Hughes (Director, Humand Resources); Milly Gutierrez (Principal, Employee Relations, Sr Mgr, HR Generalist); Rachael Lighty (Regional Ops PR Manager); Janet Saura (Director, Employee Relations) (Director, Employee Relations) | Kristin LaRosa, Esq. (Corporate Counsel); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations) | None | Email to Liz Hackett, Esq. for purposes of obtaining legal advice regarding regarding legal issues pertaining to protest activities on March 30, 2020. | ATTORNEY-CLIENT |
| 3/30/2020 12:33 p.m. | AMZ-BRY_PRIV000210 | Kelly Cheeseman (Director, WW Ops External, Director, Public Relations) | Liz Hackett, Esq. (Associate General Counsel, Labor & Employment); Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist); Leslie Letts (Director WW Operations, Internal Communications); Henry Darcie (VP, HR - WW Operations, VP Human Resources); Shannon Wilson (HR Director, WW Ops. - Director, Human Resources); Maureen Midgley (VP NACF, WW RE & BT, VP Operations - International); Erin Hughes (Director, Humand Resources); Milly Gutierrez (Principal, Employee Relations, Sr Mgr, HR Generalist); Rachael Lighty (Regional Ops PR Manager); Janet Saura (Director, Employee Relations) (Director, Employee Relations) | Kristin LaRosa, Esq. (Corporate Counsel); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations) | None | Email to Liz Hackett, Esq. for purposes of obtaining legal advice regarding legal issues pertaining to protest activities on March 30, 2020. | ATTORNEY-CLIENT |

Amazon.com Services LLC's Fifth Privilege Log
*Amazon.com Services LLC and Gerald Bryson* , Case No. 29-CA-261755

| 3/30/2020  3:57 p.m. | AMZ-BRY_PRIV000215 | Bradley Campbell (Regional Sr HRM, NACF Sr Mgr, HR Generalist) | Christine Hernandez (HR Manager, NACF); Sai Kotha (General Manager, Operations); | Anand Mehta (Director, Operations); Allyson Hoffman (HR Director, NACF Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Erin Hughes (Director, Humand Resources); Milly Gutierrez (Principal, Employee Relations, Sr Mgr, HR Generalist); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations) | None | Email conveying legal advice from Liz Hackett, Esq. regarding legal issues pertaining to protest activities on March 30, 2020 to Amazon employees with need to know advice. | ATTORNEY-CLIENT |
|---|---|---|---|---|---|---|---|
| 3/30/2020  4:16 p.m. | AMZ-BRY_PRIV000215 | Christine Hernandez (HR Manager, NACF) | Tyler Grabowski (Human Resources Business Partner); Marc Zachary (Senior Operations Manager) | Anand Mehta (Director, Operations); Allyson Hoffman (Director, Human Resources); Rob Joseph (HR Director, NACF Director, Human Resources); Erin Hughes (Director, Humand Resources); Milly Gutierrez (Principal, Employee Relations, Sr Mgr, HR Generalist); Ryan Smith (Director, NACF AR Operations, Director, Regional Operations) | None | Email conveying legal advice from Liz Hackett, Esq. regarding legal issues pertaining to protest activities on March 30, 2020 to Amazon employees with need to know advice. | ATTORNEY-CLIENT |
| N/A | AMZ-BRY_PRIV000217 | N/A | N/A | N/A | N/A | Attachment accompanying email for purposes of conveying legal advice. | ATTORNEY-CLIENT |