EXHIBIT F(ii)

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**REGION 29**

| | | |
|---|---|---|
| AMAZON.COM SERVICES LLC, | ) | |
| | ) | |
| and | ) | Case 29-CA-261755 |
| | ) | |
| GERALD BRYSON, an Individual. | ) | |

**RESPONDENT'S PETITION TO REVOKE**
**CHARGING PARTY'S SECOND TRIAL SUBPOENA IN ITS ENTIRETY OR IN PART**

Pursuant to Section 11(1) of the National Labor Relations Act and Section 102.31(b) of the Rules and Regulations of the National Labor Relations Board ("NLRB" or "Board"), Amazon.com Services LLC ("Respondent," "Amazon" or the "Company"), through its undersigned counsel, petitions to revoke the *subpoena duces tecum* (B-1-1C9GVF7) (the "Subpoena") served by Frank Kearl—Staff Attorney at Make the Road NY, and counsel for Gerald Bryson ("Bryson" or the "Charging Party")—upon counsel for Amazon on April 13, 2021.  A copy of the subpoena, and related documents, is attached as **Exhibit 1**.  For the following reasons, Amazon respectfully requests that the Administrative Law Judge ("ALJ") grant this Petition to Revoke ("Petition").

**INTRODUCTION**

This Petition is submitted following the Regional Director of Region 29 of the NLRB's issuance on December 22, 2020 of a Complaint and Notice of Hearing (the "Complaint").  The subpoena underlying this petition was received via email by counsel for Amazon on Tuesday, March 30, 2021. This Petition is timely filed within five business days after the date of service of the subpoena, as required by Section 102.31(b) of the Board's Rules and Regulations.

In Part I of this Petition, Amazon establishes that the subpoena must, respectfully, be revoked in whole or part for the reasons stated in its Petition to Revoke the Charging Party's first subpoena (B-1-1C4SK15).  To preserve the arguments raised in that Petition and in the interest of brevity and avoiding repetition, rather than reproducing the arguments already well expressed in that Petition, Amazon instead incorporates by reference Sections II—V of its Petition to Revoke the Charging Party's first subpoena.[1]

In Part II, Amazon establishes that Subpoena requests 5, 9, 11-14 and 19(b) and (c) specifically should be revoked because those requests relate to claims and legal theories not alleged in the Amended Complaint or even within the Board's jurisdiction, for use by the Charging Party and/or his counsel in various other litigation proceedings initiated against Amazon.

In Part III, Amazon explores further the Charging Party and/or his counsel's ulterior motive to exploit the subpoena power of the Board, by seeking the production of documents not relevant to the limited claim at issue here, or for use in these proceedings, but rather for use in unrelated, non-Board litigation matters adverse to Amazon, in which counsel for the Charging Party concurrently represents adverse litigants.

In Part IV, Amazon argues that in the event that any part of the Charging Party's subpoena is enforced, notwithstanding the range of legal and jurisdictional arguments against enforcement, the document production and use of any produced responsive documents must be governed by an appropriate Protective Order, requiring that any produced documents (i) must be limited to use in these proceedings, (ii) must not be disclosed to any person other than the Charging Party or his counsel unless they are entered into the trial record of this case, and (iii)

---

[1] This Petition to Revoke was e-filed with the Board on April 6, 2021.

must, at the conclusion of the trial, be returned to Amazon or destroyed (with proof of such destruction, via certification or otherwise).

## ARGUMENT

**I.    The Subpoena Should Be Revoked in Whole Or Part For The Reasons Stated In Respondent's Petition To Revoke The Charging Party's First Subpoena.**

The ALJ has said that Respondent should not expect him to revoke subpoena requests that he did not revoke in connection with the litigation over the appropriateness of the CAGC's two subpoenas (B-1-1BUGMIX and A-1-1BUGP0N).  *See* E-mail from Administrative Law Judge Benjamin W. Green to Parties (Apr. 14, 2021) ("To the extent CP subpoena B-1-1C9GVF7 seeks the same documents as GC subpoena B-1-1BUGMIX, we can reasonably anticipate that those documents will not be revoked and the Respondent should be prepared to produce them to both the GC and the Charging Party.").  Given the ALJ's apparent prejudgment of those issues, and in an effort to avoid repetition and duplication, Amazon incorporates by reference its various objections to the production of documents requested in both the CAGC and Charging Party subpoenas.

**II.    The Subpoena Should Be Revoked In Part Because The Charging Party Seeks Information Regarding Individuals Or Legal Theories Not Encompassed By The Amended Complaint.**

Subpoena paragraphs 5, 9, 11-14 and 19(b) and (c) are each improper and immaterial to the issues of this case. Accordingly, production of those documents is not appropriate.

Paragraph 5 of the subpoena seeks the production of "Discrimination/Harassment/ Retaliation Complaint Forms."  Yet, there is no complaint allegation relating to the filing or processing of any such form.  Rather, the Amended Complaint alleges only that Amazon discharged a single discriminatee in violation of Section 8(a)(1).  As such, none of the

3

R Ex. 1

requested forms is relevant here, and by seeking to compel their production, the Charging

Party is, by extension, impermissibly seeking to expand the scope of this matter well

beyond the confines of the complaint allegations.[2]

Paragraphs 9, 11-14 and 19(b) and (c) seek information regarding individuals not

named in the Amended Complaint and on whose behalf Counsel for the Acting General

Counsel ("CAGC") has not alleged a violation of the Act.  Paragraphs 9 and 11-14 seek

information relating to Christian Smalls and Derrick Palmer, while paragraph 19(b) and (c)

seeks information on behalf of Messrs. Smalls and Palmer and Jordan Flowers.

Accordingly, production is not required.

Context reinforces these conclusions.  Indeed, despite serving a comprehensive

subpoena on Amazon several weeks ago, the CAGC did not seek the production of documents

relating to Messrs. Smalls, Palmer or Flowers.  Nor did she seek documents relating to

---

[2] Section 102.31(b) of the Board's Rules and Regulations states, in relevant part, the following:

> The Administrative Law Judge or the Board, as the case may be, *will revoke the subpoena if in their opinion the evidence whose production is required does not relate to any matter under investigation or in question in the proceedings* or the subpoena does not describe with sufficient particularity the evidence whose production is required, or if for any other reason sufficient in law the subpoena is otherwise invalid.

29 C.F.R. § 102.31(b) (emphasis added). To be enforced, a subpoena must be "for a legitimate purpose, the inquiry in question must be reasonably related to the purpose, and the demand for information must not be overly broad, indefinite or otherwise unreasonable." *NLRB v. U.S. Postal Serv.*, 790 F. Supp. 31, 34 (D.D.C. 1992); *see also Drukker Commc'ns, Inc. v. NLRB*, 700 F.2d 727, 730 (D.C. Cir. 1983) ("Although the statute explicitly permits the quashing of subpoenas only for irrelevance or lack of particularity, it does not explicitly exclude other grounds . . . ."). The Board's own Casehandling Manual advises that subpoenas should be "drafted as narrowly and specifically as is practicable." NLRB Casehandling Manual, Part 1, § 11776.

The Board's law is clear that is the General Counsel, not the Charging party, controls the theory of the case. *Zurn/N.E.P.C.O.*, 329 NLRB 484, 484 (1999).("[I]t is well established that the General Counsel's theory of the case is controlling, and that a charging party cannot enlarge upon or change the General Counsel's theory."); *Kimtruss Corp.*, 305 NLRB 710, 711 (1991) ("It is settled that a charging party cannot enlarge upon or change the General Counsel's theory."); *Roadway Express, Inc*, 355 NLRB 197, 201 n.16 (2010) ("The General Counsel controls the theory of the case, which the charging party is powerless to enlarge upon or otherwise change.") *enforced*, 427 F. App'x 838 (11th Cir. 2011) (per curiam); *In re Raley's*, 337 NLRB 719 (2002). ("It is well established that the General Counsel's theory of the case is controlling, and that a charging party cannot enlarge upon or change that theory.")

potential discrimination claims under other federal or state laws not at issue here, or otherwise within the Board's jurisdiction.

Last night at 7:07 pm and with the hearing fast approaching, the CAGC submitted another expansive subpoena request, pursuing, for the first time, production of documents related to Messrs. Smalls and Palmer. The CAGC's abrupt assertion that these documents are sufficiently relevant to require production does not make them so. Evidently, until yesterday, having already submitted a comprehensive subpoena request that was litigated extensively by the parties, the CAGC likewise did not consider any of the documents sought by the Charging Party here to be at all relevant to its case.

The charge in this case was filed almost 10 months ago. Only the Charging Party's name appeared on the charge, and in it, he alleged only violations of the Act occurring on or about April 10, 2020 and April 17, 2020. After a six-month investigation, the original Complaint issued on December 22, 2020, with no mention of Messrs. Smalls, Palmer or Flowers, or potential discrimination claims under other federal or state laws. Three months later, on March 23, 2021, the CAGC gave notice of her intention to amend the original Complaint to add allegations related to the Charging Party's activities on March 25, 2020 and March 30, 2020. Again, there was no mention of those individuals or matters about which the Charging Party seeks document production here, in a belated and improper effort to go outside of the scope of the complaint allegations and inject those individuals and matters into this case. During the parties' extended conference calls with the ALJ and on the record at the opening of the hearing of March 29, 2021 and again on April 19, 2021, the CAGC again made no mention of requiring the documents sought through the Charging Party's subpoena. Clearly, these documents are irrelevant and immaterial to the factual or legal predicates of the CAGC's case.

R. Ex. 1

As such, the identified subpoena paragraphs must, respectfully, be quashed. To conclude otherwise would be to allow the Charging Party to exploit the Board's subpoena power in order to mine for documents that might be relevant to concurrent litigation pending in other forums, over allegations and claims that are not only not at issue here, but not within the Board's jurisdiction.

None of the Charging Party's prior filed responses to Amazon's objections to his first subpoena carry any water here. Initially, the Charging Party concedes, as he must, that "this case concerns the suspension and termination of a single worker," Charging Party's Opp. to Respondent's Petition to Revoke, Apr. 13, 2021, pg. 6, and that the Board's subpoena power extends only to "matter[s] under investigation or in question." 29 U.S.C. § 161(1). Nevertheless, he proceeds to suggest that the requested documents ought to be ordered produced by the ALJ, yet cites only to cases examining the scope of the EEOC's subpoena power.

The Charging Party's conclusory assertion that "Respondent's response to the protected Section 7 actions of Flowers, Palmer, and Smalls could help illuminate the General Counsel's allegations in the Amended Complaint" is not overcome by his admission that "this case concerns the suspension and termination of a single worker," such that nothing else is under investigation or in question here. Therefore, the information requested in paragraphs 9, 11-14 and 19(b) and (c) is at best smoke and mirrors not at all factually or legally relevant to the Charging Party's termination. At worst, it is an obvious and transparent attempt to abuse the Board's subpoena procedure in order to collect documents that might be relevant to pending claims elsewhere. Accordingly, requests for information relating to Flowers, Palmer, and Smalls should be denied, as they are not, by the Charging Party's own indirect admission, under investigation or in question here.

6

The Charging Party's plain attempt to use the subpoena process as a discovery tool for use in legal and administrative proceedings pending elsewhere against Amazon is not made permissible by the Charging Party's assertion that the requested documents may circumstantially establish Amazon's animus toward the Charging Party.  This is a red herring.  Anti-union animus cannot be inferred from the implication of allegations of animus or hostility in cases where no unfair labor practice charges have been filed, or where claims have been filed in other forums asserting claims under non-Board law.  Nor is it reason to allow and invite expansion of the scope of the matter beyond the narrow allegations in the Complaint.

III.    **The Subpoena Should Be Revoked In Part Because The Charging Party Seeks Information For Use In Non-Board Matters Adverse to Amazon.**

Messrs. Smalls and Palmer both have federal court lawsuits pending against Amazon. *Christian Smalls, on his own behalf and on behalf of class of similarly situated African American and Latina/o workers vs. Amazon.com Services, LLC*, Case No. 1:20-cv-5492-RPK-RLM (E.D.N.Y.); *Derrick Palmer, Kendia Mesidor, Benita Rouse, Alexander Rouse, Barbara Chandler, Luis Pellot-Chandler and Deasahni Bernard v. Amazon.com, Inc. and Amazon.com Services LLC*, Case No. 1:20-cv-2468-BMC (E.D.N.Y.).  Mr. Flowers has filed a charge of discrimination with the US EEOC.

Given the nature of their separate and unrelated claims against Amazon, and the fact that the documents sought here do not at all relate to CAGC claims in the Amended Complaint, the only reasonable conclusion to reach is that the Charging Party is seeking production of the documents for ulterior use in pursuit of claims elsewhere.  Of course, Amazon should not be subjected to improper "back door" discovery processes, whereby the Board's subpoena power is exploited to obtain information not relevant to any claim pending

before the ALJ.  As such, paragraphs 9, 11-14 and 19(b), (c)); (b) of the Charging Party's subpoena should be revoked.

## IV.  <u>Enforcement Of Any Part Of The Subpoena Must Be Conditioned On The Entry Of An Appropriate Protective Order.</u>

To the extent that the subpoena is enforced in part or whole notwithstanding that the requested documents are immaterial to the limited issues alleged in the Complaint, the document production and use of any produced responsive documents must be governed by an appropriate Protective Order, requiring that any produced documents must be disclosed only to the Charging Party and his counsel, limited to use in these proceedings, and these proceedings only. Otherwise, unless entered into the trial record of this case, any produced documents must not be disclosed to any other person.  Further, at the conclusion of the trial, any produced documents by Amazon must be returned to Amazon or destroyed (with proof of such destruction, via certification or otherwise).

None of the Charging Party's arguments against entry of a reasonable Protective Order, which would not at all undermine the Charging Party's ability to use any produced responsive documents in the context of these proceedings, have merit.  It would, of course, preclude the Charging Party from using those documents in proceedings elsewhere.  In that regard, the Charging Party's objection to the requested Protective Order is a signal of his and his counsel's intentions.  If the Charging Party had no plans to use or disclose any documents or information produced here for any purpose other than use in these proceedings, there are otherwise no legitimate, case-specific arguments against entry of that Order.  Unsurprisingly, the Charging Party has offered none.

Instead, in an effort to distract from the issue core to the request for a protective order, Amazon's concerns about document misuse, the Charging Party offers bare legal citations and

conclusory assertions.  Nevertheless, Amazon's concerns about document misuse are well-steeped in Board and court precedent.  Indeed, courts have found good cause to issue protective orders in similar contexts to warrant ordering one here to prevent the Charging Party from improperly using a Board trial subpoena to obtain documents for use in unrelated, non-Board cases. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978) ("In deciding whether a request comes within the discovery rules, a court is not required to blind itself to the purpose for which a party seeks information. Thus, when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied."); *Midland-Ross Corp. v. United Steelworkers of America*, 83 F.R.D. 426, 427 (W.D. Pa. 1979) ("[T]he court may deny discovery requests if the . . . information is sought for use in a different proceeding or context . . . .").

Here, Amazon's concerns about document misuse are reinforced by the Charging Party's objection to the requested Protective Order, which will not at all jeopardize or compromise its ability to use produced responsive documents in these proceedings.  The only specific concern expressed in the Charging Party's response to Amazon's initial Petition to Revoke is that "any protective order should not be so broad as to prevent counsel for the Charging Party from disclosing information to discriminatee Bryson."  Charging Party's Opp., pg. 14.  Yet Amazon is requesting no such limitation.  Instead, the requested Protective Order, which would apply both to counsel for the Charging Party and the Charging Party, would prohibit use of produced responsive documents in unrelated, non-Board cases, disclosure of those materials to any other person and require destruction of any produced documents at the conclusion of these proceedings.  Nothing more.

R Ex. 1

## **CONCLUSION**

For the foregoing reasons, Amazon respectfully requests that the Charging Party

subpoena be revoked as set forth above.

Date: April 20, 2021                                     Respectfully submitted,

                                                        */s/ Christopher J. Murphy*
                                                        Christopher J. Murphy
                                                        Senior Attorney
                                                        Morgan, Lewis & Bockius LLP
                                                        1701 Market Street
                                                        Philadelphia, PA 19103-2921
                                                        Phone: +1.215.963.5601
                                                        Fax: +1.215.963.5001
                                                        christopher.murphy@morganlewis.com

                                                        *Attorney for Respondent*
                                                        *Amazon.com Services LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Respondent Amazon's Petition To Revoke

Charging Party's Trial Subpoena In Its Entirety Or In Part was served on April 20, 2021 via

electronic mail upon the following:

Frank Kearl, Esq.
Staff Attorney
Make the Road New York
161 Port Richmond Ave.
Staten Island, NY 10302
frank.kearl@maketheroadny.org

Date: April 20, 2021                    */s/ Kelcey J. Phillips*
                                        Kelcey J. Phillips
                                        Associate
                                        Morgan, Lewis & Bockius LLP
                                        1111 Pennsylvania Avenue, NW
                                        Washington, DC 20004
                                        Phone: +1.202.739.5455
                                        Fax: +1.202.739.3001
                                        kelcey.phillips@morganlewis.com

                                        *Attorney for Respondent*
                                        *Amazon.com Services LLC*

R Ex. 1

# EXHIBIT 1

R Ex. 1



April 13, 2021

<u>**Via Email**</u>
Christopher J. Murphy, Esq.
Morgan, Lewis & Bockius LLP
1701 Market St.
Philadelphia, PA 19103

Nicole Buffalano, Esq.
Morgan, Lewis & Bockius LLP
300 South Grand Ave., 22nd Fl.
Los Angeles, CA 90071

Kelcey Phillips, Esq.
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave. NW
Washington D.C. 20004

Re: Amazon.com Services LLC (Case No. 29-CA-261755)

Dear Mr. Murphy, Ms. Buffalano, and Ms. Phillips:

Enclosed find a subpoena *duces tecum* for records and information relevant to NLRB case no.
29-CA-261755.  If you have any questions, please contact me by phone or email.

Sincerely,

Frank Kearl, Esq.

Staff Attorney
Make the Road NY
frank.kearl@maketheroadny.org
(929) 265-7692

**BROOKLYN**
301 GROVE STREET
BROOKLYN, NY 11237
718 418 7690

**QUEENS**
92-10 ROOSEVELT AVENUE
JACKSON HEIGHTS, NY 11372
718 565 8500

**STATEN ISLAND**
161 PORT RICHMOND AVENUE
STATEN ISLAND, NY 10302
718 727 1222

**LONG ISLAND**
1090 SUFFOLK AVENUE
BRENTWOOD, NY 11717
631 231 2220

**WESTCHESTER**
46 WALLER AVENUE
WHITE PLAINS, NY 10605
914 948 8466

WWW.MAKETHEROADNY.ORG

R Ex. 1



April 13, 2021

**<u>Via Email and Registered Mail</u>**
Custodian of Records
Amazon.com Services LLC
546 Gulf Ave.
Staten Island, NY 10314

Re: Amazon.com Services LLC (Case No. 29-CA-261755)

Dear Custodian of Records:

Enclosed find a subpoena *duces tecum* for records and information relevant to NLRB case no. 29-CA-261755. If you have any questions, please contact me by phone or email.

Sincerely,

Frank Kearl, Esq.

Staff Attorney
Make the Road NY
frank.kearl@maketheroadny.org
(929) 265-7692

cc:    Christopher J. Murphy, Esq. (via email)
Nicole Buffalano, Esq. (via email)
Kelcey Phillips, Esq. (via email)

**BROOKLYN**
301 GROVE STREET
BROOKLYN, NY 11237
718 418 7690

**QUEENS**
92-10 ROOSEVELT AVENUE
JACKSON HEIGHTS, NY 11372
718 565 8500

**STATEN ISLAND**
161 PORT RICHMOND AVENUE
STATEN ISLAND, NY 10302
718 727 1222

**LONG ISLAND**
1090 SUFFOLK AVENUE
BRENTWOOD, NY 11717
631 231 2220

**WESTCHESTER**
46 WALLER AVENUE
WHITE PLAINS, NY 10605
914 948 8466

**WWW.MAKETHEROADNY.ORG**

R Ex. 1

FORM NLRB-31

# SUBPOENA DUCES TECUM

## UNITED STATES OF AMERICA
## NATIONAL LABOR RELATIONS BOARD

To    Custodian of Records, Amazon.com Services, LLC, 546 Gulf Ave., Staten Island, NY 10314

As requested by   Frank Kearl, Esq

whose address is   161 Port Richmond Ave., Staten Island, NY 10302

              (Street)           (City)        (State)    (ZIP)

YOU ARE HEREBY REQUIRED AND DIRECTED TO APPEAR BEFORE   Administrative Law Judge

                           of the National Labor Relations Board

at   Zoom Video Hearing

in the City of   Brooklyn, NY

on   Monday, May 3, 2021             at   10:00 a.m.   or any adjourned

                        Amazon.com Services LLC

or rescheduled date to testify in   29-CA-261755

                        (Case Name and Number)

    And you are hereby required to bring with you and produce at said time and place the following books, records, correspondence, and documents:

## SEE ATTACHMENT

If you do not intend to comply with the subpoena, within 5 days (excluding intermediate Saturdays, Sundays, and holidays) after the date the subpoena is received, you must petition in writing to revoke the subpoena.  Unless filed through the Board's E-Filing system, the petition to revoke must be received on or before the official closing time of the receiving office on the last day for filing.  If filed through the Board's E-Filing system, it may be filed up to 11:59 pm in the local time zone of the receiving office on the last day for filing.  Prior to a hearing, the petition to revoke should be filed with the Regional Director; during a hearing, it should be filed with the Hearing Officer or Administrative Law Judge conducting the hearing.  See Board's Rules and Regulations, 29 C.F.R Section 102.31(b) (unfair labor practice proceedings) and/or 29 C.F.R. Section 102.66(c) (representation proceedings) and 29 C.F.R Section 102.111(a)(1) and 102.111(b)(3) (time computation).  Failure to follow these rules may result in the loss of any ability to raise objections to the subpoena in court.

**B-1-1C9GVF7**

    Under the seal of the National Labor Relations Board, and by direction of the Board, this Subpoena is

Issued at  Brooklyn, NY

Dated:    April 13, 2021



Lauren McFerran, Chairman

**NOTICE TO WITNESS**. Witness fees for attendance, subsistence, and mileage under this subpoena are payable by the party at whose request the witness is subpoenaed.  A witness appearing at the request of the General Counsel of the National Labor Relations Board shall submit this subpoena with the voucher when claiming reimbursement.

## PRIVACY ACT STATEMENT

Solicitation of the information on this form is authorized by the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.*  The principal use of the information is to assist the National Labor Relations Board (NLRB) in processing representation and/or unfair labor practice proceedings and related proceedings or litigation.  The routine uses for the information are fully set forth in the Federal Register, 71 Fed. Reg. 74942-43 (Dec. 13, 2006).  The NLRB will further explain these uses upon request.  Disclosure of this information to the NLRB is mandatory in that failure to supply the information may cause the NLRB to seek enforcement of the subpoena in federal court.

R Ex. 1

Case 29-CA-261755

B-1-1C9GVF7

## RETURN OF SERVICE

I certify that, being a person over 18 years of age, I duly served a copy of this subpoena

☐ by person

☒ by certified mail

☐ by registered mail

☐ by telegraph

(Check
method
used.)

☐ by leaving copy at principal office or place of business at

_____

_____

_____

on the named person on

APRIL 13, 2021

(Month, day, and year)

FRANK KEARL

(Name of person making service)

(COUNSEL FOR CHARGING PARTY)

(Official title, if any)

## CERTIFICATION OF SERVICE

I certify that named person was in attendance as a witness at

1130 BEDFORD AVE. BROOKLYN, NY 11216

on APRIL 13, 2021

(Month, day or days, and year)

CAITLIN CRAGGS

(Name of person certifying)

_____

(Official title)

R. Ex. 1

Re:     Amazon.com Services LLC
        Case No. 29-CA-261755

        Subpoena Number: B-1-1C9GVF7

## ATTACHMENT

## DEFINITIONS AND INSTRUCTIONS

A.    "Document" means any existing printed, typewritten or otherwise recorded material of whatever character, records stored on computer or electronically, records kept on microfiche or written by hand or produced by hand and graphic material, including without limitation, checks, cancelled checks, computer hard drives, discs and/or files and all data contained therein, computer printouts, E-mail communications and records, internal messages on "Chime" or any other text messaging programs, postings and drafts of postings on bulletin boards or digital messaging boards including the Voice of Associates ("VOA") system, any marginal or "post-it" or "sticky pad" comments appearing on or with documents, licenses, files, letters, facsimile transmissions, memoranda, telegrams, minutes, notes, contracts, agreements, transcripts, diaries, appointment books, reports, records, payroll records, books, lists, logs, worksheets, ledgers, summaries of records or telephone conversations, summaries of records of personal conversations, interviews, meetings, accountants' or bookkeepers' work papers, records of meetings or conference reports, drafts, work papers, calendars, interoffice communications, financial statements, inventories, news reports, periodicals, press releases, graphs, charts, advertisements, statements, affidavits, photographs, negatives, slides, disks, reels, microfilm, audio or video tapes and any duplicate copies of any such material in the possession of, control of, or available to the subpoenaed party, or any agent, representative or other person acting on cooperation with, in concert with or on behalf of the subpoenaed party.

B.    "Respondent" means Amazon.com Services LLC.

C.     "Respondent's JFK8 Facility" means Respondent's fulfillment center located at 546 Gulf Avenue, Staten Island, NY 10314.

D.    "Charging Parting" means Gerald Bryson.

E.    "Person" or "persons" means natural persons, corporations, limited liability companies, partnerships, sole proprietorships, associations, organizations, trusts, joint ventures, groups of natural persons or other organizations, or any other kind of entity.

F.    "Period covered by this subpoena" means the period from May 1, 2019 through April 30, 2020 and the subpoena seeks only documents from that period unless another period is specified. This subpoena request is continuing in character and if additional responsive documents come to your attention after the date of production, such documents must be promptly produced.

G.    "Policy" or "Policies" means each rule, procedure, or directive, formal or informal, and each common understanding or course of conduct which was recognized as such by Respondent's present or former officers, agents, employees or other Persons acting or purporting to act on Respondent's behalf, which was in effect at any time during the period

R. Ex. 1

Re:    Amazon.com Services LLC
       Case No. 29-CA-261755

covered by this subpoena and which includes any change of Policy. Policies expressly
include any manual, guideline, rule, work instruction, or similar Document reflecting
Respondent's Policies.

H.    Any copies of documents that are different in any way from the original, such as by
      interlineation, receipt stamp, notation, or indication of copies sent or received, are
      considered original documents and must be produced separately from the originals.

I.    If any document covered by this subpoena contains codes or classifications, all documents
      explaining or defining the codes or classifications used in the document must also be
      produced.

J.    Electronically stored information ("ESI") should be produced in the form or forms in which
      it is ordinarily maintained or in a reasonably usable form or forms (such as text-searchable
      PDF documents). Execution of this subpoena requires a reasonable search of the ESI of all
      individuals ("custodians") who are most likely to possess information covered by this
      subpoena.

K.    For all searches of ESI, records should be maintained documenting each custodian whose
      ESI was searched and all hardware and software systems searched. Records should also
      include who was responsible for the search and the search methodology used including, but
      not limited to, search terms and software tools.

L.    All documents produced pursuant to this subpoena should be presented as they are kept in
      the usual course of business or organized by the subpoena paragraph to which the
      document or set of documents is responsive. Labels referring to that subpoena paragraph
      are to be affixed to each document or set of documents.

M.    This subpoena applies to documents in your possession, custody, or control of Respondent,
      as well as your present or former agents, attorneys, accountants, advisors, investigators, and
      any other persons or companies directly or indirectly employed by or connected with you.
      You are required to conduct a reasonable and diligent search for all requested records
      within your possession, custody or control and to affirmatively advise Counsel for
      Charging Party if no responsive evidence exists.

N.    If a claim of privilege is made as to any document which is the subject of this subpoena, a
      claim of privilege must be expressly made and you must describe the nature of the withheld
      document, communication, or tangible thing in a manner that, without revealing
      information itself privileged or protected, will enable an assessment of the claim to be
      made.

O.    As to any documents not produced in compliance with this subpoena on any ground or if
      any document requested was, through inadvertence or otherwise, destroyed or is no longer
      in your possession, please state:

      a.    the author;
      b.    the recipient;
      c.    the name of each person to whom the original or copy was sent;

R Ex. 1

Re:     Amazon.com Services LLC
        Case No. 29-CA-261755

> d.     the date of the document;
> e.     the subject matter of the document; and
> f.     the circumstances under which the document was destroyed, withheld, or is no
>        longer in your possession.

P.     This request seeks production of all documents described, including all drafts and non-
       identical or distribution copies.

Q.     This request seeks production of responsive documents in their entirety, without
       abbreviation, redaction, deletion, or expurgation.

R.     When used in this subpoena, the term "documents regarding" means all documents that, in
       whole or part, discuss, describe, mention, pertain to, reflect, refer to, or relate to the
       subpoenaed item.

Re:      Amazon.com Services LLC
         Case No. 29-CA-261755

## DOCUMENTS TO BE PRODUCED

1.  Organizational charts and other documents showing Respondent's managerial structure, hierarchy or chain of command for Respondent's JFK8 Facility during the period covered by this subpoena, including documents that show any changes to the reporting protocols and chain of command.

2.  Documents (including but not limited to training materials, manuals, guidelines, cheat sheets, process flow charts, pre-drafted form language, and user support documentation) regarding Policies, procedural standards, and guidelines for Respondent's managers, supervisors, and Human Resources Business Partners related to receiving employee complaints, investigating, reporting, processing, and documenting potential employee misconduct, and taking disciplinary actions including verbal warnings, verbal or written coaching, verbal or written write-ups, suspensions, and/or terminations.

3.  For the time period from March 25, 2020 to April 6, 2020, any documents (including but not limited to notes memorializing conversations, electronic communication, Chime messages or calls, emails, text messages, videos, photographs, memoranda, digital and/or written recordings of personnel statements) regarding communication between Respondent's supervisors, managers, Human Resources Business Partners, or agents and Metro One Loss Prevention Services Group and/or any other third-party security services company, detective agency, or intelligence agency contracted by Respondent concerning, reporting on, or anticipating protests outside Respondent's JFK8 Facility.

4.  Documents (including but not limited to memorandums, handwritten notes, written personnel statements, and communications between Respondent's managers, supervisors, agents, and Human Resources Business Partners) regarding press requests, media coverage, social media posts, videos, and publicity related to the protest activities that took place at Respondent's JFK8 Facility on March 30, 2020 and April 6, 2020.

5.  Documents, including Discrimination/Harassment/Retaliation Complaint forms, submitted to managers, supervisors, or Human Resources Business Partners by any persons alleging discrimination, harassment, or retaliation at Respondent's JFK8 Facility on April 6, 2020.

6.  Documents regarding the nature and scope of the duties, responsibilities, and function of the Human Resources Department/Team, including documents distributed to employees regarding the type of concerns, issues, complaints, or reports that Human Resources reviews, investigates, and/or resolves.

7.  Documents that show the Policies, work rules, work guidelines and/or terms and conditions of employment pertaining to employee conduct and/or misconduct applicable to non-supervisory and non-managerial associates employed at Respondent's JFK8 Facility at any time during the period covered by this subpoena, including documents showing any changes to the rules, the effective dates of any such changes, and a description or statement of the changes.

8.  Documents showing that Respondent distributed to its employees, including Gerald Bryson

R Ex. 1

Re:     Amazon.com Services LLC
        Case No. 29-CA-261755

and Dimitra Evans, and that employees (including Bryson and Evans) received Respondent's Policies, work rules, work guidelines and/or terms and conditions of employment, including the dates that such rules and policies were received by Bryson and Evans.

9.  The complete personnel file(s) excluding confidential medical records for:

    a.  Gerald Bryson
    b.  Dimitra Evans
    c.  Derrick Palmer
    d.  Christian Smalls

10. Documents memorializing the exact words used by, or conduct engaged in by, Gerald Bryson on April 6, 2020, which resulted in Respondent discharging Gerald Bryson in April 2020.

11. Documents regarding any transfers, promotions, or disciplinary actions including discharges, suspensions, memorialization of oral warnings, written warnings, transfers, and demotions taken against the employees set forth below at any point during their employment with Respondent.

    a.  Gerald Bryson
    b.  Dimitra Evans
    c.  Derrick Palmer
    d.  Christian Smalls

12. Documents (including but not limited to human resource memorandums, handwritten notes, investigation reports, written personnel statements, written communication with witnesses, communications between Respondent's supervisors and agents) regarding investigations conducted by Respondent, including documents showing the identities of those who participated in the investigations, the substance of the investigations, and the investigatory findings, regarding the following employees for their conduct between March 25, 2020 and April 6, 2020:

    a.  Gerald Bryson
    b.  Dimitra Evans
    c.  Derrick Palmer
    d.  Christian Smalls

13. Those documents, including but not limited to notes memorializing conversations, electronic communication, Chime messages or calls, emails, text messages, videos, photographs, memoranda, digital and/or written recordings of personnel statements, (i) considered by Respondent and (ii) relied upon by Respondent in issuing the discipline set forth below:

    a.  Christian Smalls termination on March 30, 2020;
    b.  Gerald Bryson suspension on April 10, 2020;
    c.  Derrick Palmer written warning on April 10, 2020;
    d.  Gerald Bryson discharge on April 17, 2020; and
    e.  Dimitra Evans written warning on April 17, 2020.

R Ex. 1

Re:     Amazon.com Services LLC
        Case No. 29-CA-261755

14. Documents, including but not limited to memoranda, notes memorializing conversations, electronic communication, Chime messages or calls, emails, text messages and internal communications, by, between, and among Respondent's managers, supervisors, Human Resources Business Partners, and agents discussing or pertaining to Respondent's deliberations regarding whether to issue discipline, and if so, the type of discipline, to the following employees for their conduct between March 25, 2020 and April 6, 2020:

    a.    Gerald Bryson
    b.    Dimitra Evans
    c.    Derrick Palmer
    d.    Christian Smalls

15. Such electronic documents (including but not limited to video recordings, social media posts, emails, Chime messages or calls, text messages, audio recordings, websites, and photographs) showing or describing the April 6, 2020 incident underlying the disciplinary actions set forth below, including documents or notes reflecting the circumstances and dates under which such recordings, social media posts, emails, text messages, audio recordings, websites, and photographs were accessed, obtained, and maintained.

    a.    Gerald Bryson discharge on April 17, 2020
    b.    Dimitra Evans written warning on April 17, 2020

16. During the period covered by this subpoena, documents showing disciplinary actions, including discharges suspensions, written and oral warnings, issued to employees at Respondent's JFK8 Facility and at its Regional facilities within which Respondent's JFK8 Facility is located, for violations of the sections named below of Respondent's Standards of Conduct, for cursing, abusive, profane, harassing, or vulgar language, including on-and-off duty examples, together with the personnel file of each disciplined employee showing other discipline to that employee:

    a.    Category 1
    b.    Category 2

17. During the period covered by the subpoena, documents showing disciplinary actions, including discharges, suspensions, written and oral warnings, issued to employees at Respondent's JFK8 Facility and at its Regional facilities within which Respondent's JFK8 Facility is located, together with the personnel file of each disciplined employee showing other discipline to that employee.

18. For the period covered by this subpoena, documents showing investigations conducted by Respondent in connection with disciplinary actions issued above in paragraph 17, including documents that reflect the identities of those who participated in the investigation, the substance of the investigation, and the investigatory findings.

19. For the time period from March 1, 2020 to April 30, 2020, documents mentioning, discussing, or pertaining to the Charging Party's discussions with employees or discussions with Respondent's supervisors, managers, Human Resources Business Partners, or agents on behalf of employees regarding COVID-19 safety precautions including:

Re:     Amazon.com Services LLC
        Case No. 29-CA-261755

    a. Internal communications including but not limited to electronic communications, Chime messages or calls, emails, text messages, notes, meeting minutes, meeting handouts, and investigative reports by, between, and among Respondent's supervisors, and/or agents regarding Bryson raising COVID-19 safety concerns at Respondent management meetings;

    b. Internal communications including but not limited to electronic communications, emails, Chime messages or calls, text messages, notes, meeting minutes, meeting handouts, and investigative reports by, between, and among Respondent's managers, supervisors, and/or agents regarding media coverage of Christian Smalls, Derrick Palmer, Jordan Flowers, and/or Bryson protesting;

    c. Internal communications including but not limited to electronic communications, Chime messages or calls, emails, text messages, notes, meeting minutes, meeting handouts, and investigative reports by, between, and among Respondent's managers, supervisors, and/or agents regarding Christian Smalls, Derrick Palmer, Jordan Flowers, and/or Bryson participating in protests outside Respondent's JFK8 Facility regarding COVID-19 safety concerns; and

    d. Documents mentioning, discussing, or pertaining to employee sentiment regarding greater COVID-19 safety precautions, including but not limited to lists identifying likely or possible protest supporters or organizers and/or employees likely to oppose the protests.

20. Organizational charts and other documents showing Respondent's regional management structure, hierarchy or chain of command for any of Respondent's departments that participate in disciplinary investigations or disciplinary actions (including Human Resources, Operations, Loss Prevention, Learning, and Safety) during the period covered by this subpoena, including documents that show any changes to the reporting protocols and chain of command.

21. Documents regarding the nature and scope of the duties, responsibilities, and function of the Loss Prevention Department/Team, including documents distributed to employees regarding the type of concerns, issues, complaints, or reports that the Loss Prevention Department/Team reviews, investigates, and/or resolves.

22. Documents regarding the nature and scope of the duties, responsibilities, and function of the Operations Department/Team, including documents distributed to employees regarding the type of concerns, issues, complaints, or reports that the Operations Department/Team reviews, investigates, and/or resolves.

23. Documents regarding the nature and scope of the duties, responsibilities, and function of the Safety Department/Team, including documents distributed to employees regarding the type of concerns, issues, complaints, or reports that the Safety Department/Team reviews, investigates, and/or resolves.

24. Documents regarding the nature and scope of the duties, responsibilities, and function of the Learning Department/Team, including documents distributed to employees regarding the type of concerns, issues, complaints, or reports that the Learning Department/Team reviews, investigates, and/or resolves.



R Ex. 1

POSTAL MONEY ORDER

UNITED STATES
POSTAL SERVICE

Serial Number          Year, Month, Day    Post Office    U.S. Dollars and Cents
                       2021-04-13          103021

27415512358                                              $40.00

                         Forty Dollars and 00/100 *************************

                       Amount

Pay to   AMAZON.COM SERVICES LLC                              Clerk.  67

Address    546 GULF AVE.           From  FRANK KEARL, ESQ.

         STATEN ISLAND, NY 10314  Address  161 PORT RICHMOND AVE.

Memo  TO CUSTODIAN OF RECORDS
      RE: CASE NO. 29-CA-261755              STATEN ISLAND, NY 10302

                                    SEE REVERSE WARNING • NEGOTIABLE ONLY IN THE U.S. AND POSSESSIONS

⑆000000800 2⑉        27415512358⑈

| | |
|---|---|
| **From:** | Green, Benjamin <Benjamin.Green@nlrb.gov> |
| **Sent:** | Wednesday, April 14, 2021 4:31 PM |
| **To:** | Cox, Evamaria; Murphy, Christopher J.; Buffalano, Nicole; Phillips, Kelcey J.; Bagley, Claire E.; Frank Kearl; Jackson, Matthew |
| **Subject:** | RE: Amazon's Petition to Revoke Charging Party Subpoena # B-1-1C4SK15 |

[EXTERNAL EMAIL]
Counsel,

To be clear, I have not ordered any restriction with regard to the General Counsel's disclosure to the Charging Party of documents produced by the Respondent in response to General Counsel subpoena B-1-1BUGMIX.  However, if the parties have an agreement regarding the issue, that is fine.  The Respondent has requested a protective order with regard to any documents it ultimately produces in response to charging party subpoena B-1-1C4SK15 (and, presumably, charging party subpoena B-1-1C9GVF7).  That is a different issue which I will address when I rule on the Respondent's petition(s) to revoke the charging party's subpoenas.

Thank you,
Benjamin Green
NLRB-ALJ

---

**From:** Cox, Evamaria <Evamaria.Cox@nlrb.gov>
**Sent:** Wednesday, April 14, 2021 4:17 PM
**To:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>; Green, Benjamin <Benjamin.Green@nlrb.gov>; Buffalano, Nicole <nicole.buffalano@morganlewis.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Bagley, Claire E. <claire.bagley@morganlewis.com>; Frank Kearl <frank.kearl@maketheroadny.org>; Jackson, Matthew <Matthew.Jackson@nlrb.gov>
**Subject:** RE: Amazon's Petition to Revoke Charging Party Subpoena # B-1-1C4SK15

Good afternoon Judge Green,

CAGC requested permission from Respondent to give the documents it produced to the Charging Party.  Respondent declined on the basis that it is seeking a protective order.

CAGC agrees to show the Charging Party documents produced by Respondent for trial preparation.

Thank you,
Evamaria Cox

---

**From:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>
**Sent:** Wednesday, April 14, 2021 2:47 PM
**To:** Green, Benjamin <Benjamin.Green@nlrb.gov>; Buffalano, Nicole <nicole.buffalano@morganlewis.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Bagley, Claire E. <claire.bagley@morganlewis.com>; Frank Kearl <frank.kearl@maketheroadny.org>; Cox, Evamaria <Evamaria.Cox@nlrb.gov>; Jackson, Matthew <Matthew.Jackson@nlrb.gov>
**Subject:** RE: Amazon's Petition to Revoke Charging Party Subpoena # B-1-1C4SK15

Dear Judge Green:

R Ex. 2

The Charging Party mailed subpoena B-1-1C9GVF7 to Respondent via certified mail yesterday.  As counsel, we have not been authorized to, nor have we, accepted service of that subpoena on behalf of Respondent.  As we understand the Board's Rules, service of that subpoena is not complete and the period for filing a petition to revoke does not begin to run until service is complete on Respondent.

Regarding the question you posed to Respondent, we do intend to file a petition to revoke that is substantively different from the one filed in opposition to the revoked subpoena.

Regarding the question you posed to the CAGC, we do not object to the CAGC showing Mr. Kearl documents produced by Respondent for purposes of trial preparation only.  We do object to the CAGC giving copies of, permitting the copying of, or transmitting, documents produced by Respondent to counsel for the Charging Party.

Thank you.

*Chris*
**Christopher J. Murphy**
**Morgan, Lewis & Bockius LLP**
1701 Market Street | Philadelphia, PA 19103-2921
Direct: +1.215.963.5601 | Cell: +1.267.307.1024 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
christopher.murphy@morganlewis.com | www.morganlewis.com
Assistant: Claire Bagley | +1.215.963.5990 | claire.bagley@morganlewis.com



---

**From:** Green, Benjamin <Benjamin.Green@nlrb.gov>
**Sent:** Wednesday, April 14, 2021 2:08 PM
**To:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>; Buffalano, Nicole <nicole.buffalano@morganlewis.com>; Phillips, Kelcey J. <kelcey.phillips@morganlewis.com>; Bagley, Claire E. <claire.bagley@morganlewis.com>; Frank Kearl <frank.kearl@maketheroadny.org>; Cox, Evamaria <Evamaria.Cox@nlrb.gov>; Jackson, Matthew <Matthew.Jackson@nlrb.gov>
**Subject:** RE: Amazon's Petition to Revoke Charging Party Subpoena # B-1-1C4SK15

[EXTERNAL EMAIL]
Counsel,

Charging Party Subpoena number B-1-1C4SK15 will be revoked on the failure to include the $40 witness fee.  However, it is my understanding that the Charging Party has served subpoena B-1-1C9GVF7  on the Respondent.  I presume that subpoena B-1-1C9GVF7 is identical to subpoena B-1-1C4SK15 and was served with the appropriate fee.  To the extent CP subpoena B-1-1C9GVF7 seeks the same documents as  GC subpoena B-1-1BUGMIX, we can reasonably anticipate that those documents will not be revoked and the Respondent should be prepared to produce them to both the GC and Charging Party.   In the meantime, I have the following questions:

For the GC – Is the GC taking the position that it cannot or will not show Mr. Kearl, as counsel for the charging party, documents produced by the Respondent in response to GC subpoena B-1-1BUGMIX?

For the Respondent – Does the Respondent anticipate that the petition to revoke CP subpoena B-1-1C9GVF7 will be any different than the subpoena to revoke CP subpoena B-1-1C4SK15?

Thank you,

R Ex. 2

Benjamin W. Green
NLRB-ALJ

---

**From:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>
**Sent:** Wednesday, April 14, 2021 12:26 PM
**To:** Green, Benjamin <Benjamin.Green@nlrb.gov>
**Cc:** Frank Kearl <frank.kearl@maketheroadny.org>; Buffalano, Nicole <nicole.buffalano@morganlewis.com>; Kelcey Phillips <kelcey.phillips@morganlewis.com>; Bagley, Claire E. <claire.bagley@morganlewis.com>; Cox, Evamaria <Evamaria.Cox@nlrb.gov>
**Subject:** Amazon's Petition to Revoke Charging Party Subpoena # B-1-1C4SK15

Dear Judge Green:

Now that the Charging Party has submitted his opposition to Respondent's petition to revoke the above-referenced subpoena, we respectfully request that you rule on the petition to revoke.

In the event to the petition to revoke is granted due to the Charging Party's failure to tender the required witness fee, please be advised that we intend to file a separate petition to revoke within the time permitted by the Board's Rules and Regulations to the "new" subpoena mailed yesterday to Respondent via certified mail.

Thank you.

*Chris*
**Christopher J. Murphy**
**Morgan, Lewis & Bockius LLP**
1701 Market Street | Philadelphia, PA 19103-2921
Direct: +1.215.963.5601 | Cell: +1.267.307.1024 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
christopher.murphy@morganlewis.com | www.morganlewis.com
Assistant: Claire Bagley | +1.215.963.5990 | claire.bagley@morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential and/or it may include attorney work product. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

R Ex. 3

| | |
|---|---|
| **From:** | Frank Kearl  <frank.kearl@maketheroadny.org> |
| **Sent:** | Wednesday, April 28, 2021 5:52 PM |
| **To:** | Murphy, Christopher J. |
| **Cc:** | Buffalano, Nicole; Phillips, Kelcey J. |
| **Subject:** | Re: Production of Subpoenaed Materials in 29-CA-261755 |

[EXTERNAL EMAIL]
Hello Mr. Murphy,

I am not interested in negotiating a separate protective order, but am happy to comply with the judge's instructions to "not disclose subpoenaed personnel records to other individuals for a different purpose." If you believe a signed certification of compliance following the completion of the case is not sufficient, I am willing to discuss, but I do not want to further delay the delivery of documents.

Thank you,
Frank

On Wed, Apr 28, 2021 at 4:46 PM Murphy, Christopher J. <christopher.murphy@morganlewis.com> wrote:

Good afternoon, Mr. Kearl:

We are reviewing the ALJ's order of late yesterday afternoon.  We appreciate your offer to discuss a proof of compliance mechanism.  Relatedly, we are hopeful that you would consider entering into a separate protective order, which would spell out the parties' obligations with a little greater specificity.  In the interim, we have no objection to you and Mr. Bryson continuing to have access to (but not possession of) materials produced by Respondent to the CAGC for trial prep purposes, consistent with the ALJ's prior direction.

Thank you.

*Chris*

**Christopher J. Murphy**

**Morgan, Lewis & Bockius LLP**

1701 Market Street | Philadelphia, PA 19103-2921

Direct: +1.215.963.5601 | Cell: +1.267.307.1024 | Main: +1.215.963.5000 | Fax: +1.215.963.5001

christopher.murphy@morganlewis.com | www.morganlewis.com

Assistant: Claire Bagley | +1.215.963.5990 | claire.bagley@morganlewis.com

1

R Ex. 3

**From:** Frank Kearl <frank.kearl@maketheroadny.org>
**Sent:** Tuesday, April 27, 2021 4:58 PM
**To:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>; Buffalano, Nicole <nicole.buffalano@morganlewis.com>; Phillips, Kelcey J. <kelcey.phillips@morganlewis.com>
**Subject:** Re: Production of Subpoenaed Materials in 29-CA-261755

[EXTERNAL EMAIL]

Hello again Counsel,

In light of this afternoon's Order, I respectfully request production of the documents that are responsive subpoena B-1-1C9GVF7. Please let me know if you would like to discuss this matter by phone. Furthermore, insofar as you have specific expectations with regards to demonstrating compliance with the protective order, please let me know.

Thank you,

Frank

On Fri, Apr 23, 2021 at 3:52 PM Frank Kearl <frank.kearl@maketheroadny.org> wrote:

Hello Mr. Murphy,

I'm afraid I'm going to have to cancel our planned 4pm call. We can just wait to see what Judge Green says on Monday about production.

Thank you,

Frank

On Fri, Apr 23, 2021 at 3:10 PM Murphy, Christopher J. <christopher.murphy@morganlewis.com> wrote:

Great.

2

R Ex. 3

*Chris*

**Christopher J. Murphy**

**Morgan, Lewis & Bockius LLP**

1701 Market Street | Philadelphia, PA 19103-2921

Direct: +1.215.963.5601 | Cell: +1.267.307.1024 | Main: +1.215.963.5000 | Fax: +1.215.963.5001

christopher.murphy@morganlewis.com | www.morganlewis.com

Assistant: Claire Bagley | +1.215.963.5990 | claire.bagley@morganlewis.com



**From:** Frank Kearl <frank.kearl@maketheroadny.org>
**Sent:** Friday, April 23, 2021 2:58 PM
**To:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>
**Cc:** Buffalano, Nicole <nicole.buffalano@morganlewis.com>; Phillips, Kelcey J. <kelcey.phillips@morganlewis.com>
**Subject:** Re: Production of Subpoenaed Materials in 29-CA-261755

[EXTERNAL EMAIL]

That works for me. You can reach me on my cell at 929-265-7692.

On Fri, Apr 23, 2021 at 2:55 PM Murphy, Christopher J. <christopher.murphy@morganlewis.com> wrote:

I can talk at 4.  What number?

*Chris*

**Christopher J. Murphy**

**Morgan, Lewis & Bockius LLP**

1701 Market Street | Philadelphia, PA 19103-2921

R Ex. 3

Direct: +1.215.963.5601 | Cell: +1.267.307.1024 | Main: +1.215.963.5000 | Fax: +1.215.963.5001

christopher.murphy@morganlewis.com | www.morganlewis.com

Assistant: Claire Bagley | +1.215.963.5990 | claire.bagley@morganlewis.com

**From:** Frank Kearl <frank.kearl@maketheroadny.org>
**Sent:** Friday, April 23, 2021 1:51 PM
**To:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>
**Cc:** Buffalano, Nicole <nicole.buffalano@morganlewis.com>; Phillips, Kelcey J. <kelcey.phillips@morganlewis.com>
**Subject:** Re: Production of Subpoenaed Materials in 29-CA-261755

[EXTERNAL EMAIL]

Hello Mr. Murphy,

I can be available any time between 4pm and 6pm this afternoon. Let me know if there is a time in that window that would work for you.

Thank you,

Frank

On Fri, Apr 23, 2021 at 1:34 PM Murphy, Christopher J. <christopher.murphy@morganlewis.com> wrote:

Mr. Kearl;

I neglected to respond to your offer to talk.  Without prejudice to our arguments on the your subpoena or related production issues, I'd be happy to talk with you.

Let me know when you are available.

R Ex. 3

*Chris*

**Christopher J. Murphy**

**Morgan, Lewis & Bockius LLP**

1701 Market Street | Philadelphia, PA 19103-2921

Direct: +1.215.963.5601 | Cell: +1.267.307.1024 | Main: +1.215.963.5000 | Fax: +1.215.963.5001

christopher.murphy@morganlewis.com | www.morganlewis.com

Assistant: Claire Bagley | +1.215.963.5990 | claire.bagley@morganlewis.com



---

**From:** Murphy, Christopher J.
**Sent:** Friday, April 23, 2021 12:25 PM
**To:** 'Frank Kearl' <frank.kearl@maketheroadny.org>; Buffalano, Nicole <nicole.buffalano@morganlewis.com>; Phillips, Kelcey J. <kelcey.phillips@morganlewis.com>
**Subject:** RE: Production of Subpoenaed Materials in 29-CA-261755

Hello, Mr. Kearl.

Respectfully, we will not produce any materials until the pending petition to revoke directed against your subpoena is ruled upon.  We would like to clarify that the scope of protective order we seek would not preclude the Charging Party from introducing admissible subpoenaed documents into the record of this case.

*Chris*

**Christopher J. Murphy**

**Morgan, Lewis & Bockius LLP**

1701 Market Street | Philadelphia, PA 19103-2921

Direct: +1.215.963.5601 | Cell: +1.267.307.1024 | Main: +1.215.963.5000 | Fax: +1.215.963.5001

christopher.murphy@morganlewis.com | www.morganlewis.com

Assistant: Claire Bagley | +1.215.963.5990 | claire.bagley@morganlewis.com

R Ex. 3

**From:** Frank Kearl <frank.kearl@maketheroadny.org>
**Sent:** Friday, April 23, 2021 12:13 PM
**To:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>; Buffalano, Nicole <nicole.buffalano@morganlewis.com>; Phillips, Kelcey J. <kelcey.phillips@morganlewis.com>
**Subject:** Production of Subpoenaed Materials in 29-CA-261755


[EXTERNAL EMAIL]

Hello Counsel,


Pursuant to Judge Green's Order dated April 15, 2021 (attached herein), I respectfully request production of the documents that are responsive to both General Counsel's subpoena B-1-1BUGMIX and subpoena B-1-1C9GVF7. Please let me know if you would like to discuss this matter by phone today.


Sincerely,

Frank Kearl



--

Frank Kearl, Esq.

Staff Attorney

Make the Road New York

161 Port Richmond Ave.

Staten Island, NY 10302

t: 718.727.1222 x 3401

c: 929.265.7692

pronouns: he, him, él

R Ex. 3

DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.

--

Frank Kearl, Esq.

Staff Attorney

Make the Road New York

161 Port Richmond Ave.

Staten Island, NY 10302

t:  718.727.1222 x 3401

c:  929.265.7692

pronouns: he, him, él

--

Frank Kearl, Esq.

Staff Attorney

Make the Road New York

161 Port Richmond Ave.

Staten Island, NY 10302

t:  718.727.1222 x 3401

R Ex. 3

c:  929.265.7692

pronouns: he, him, él

--

Frank Kearl, Esq.

Staff Attorney

Make the Road New York

161 Port Richmond Ave.

Staten Island, NY 10302

t:   718.727.1222 x 3401

c:  929.265.7692

pronouns: he, him, él

--

Frank Kearl, Esq.

Staff Attorney

Make the Road New York

161 Port Richmond Ave.

Staten Island, NY 10302

t:   718.727.1222 x 3401

c:  929.265.7692

pronouns: he, him, él

R Ex. 3

--
Frank Kearl, Esq.
Staff Attorney
Make the Road New York
161 Port Richmond Ave.
Staten Island, NY 10302
t:  718.727.1222 x 3401
c:  929.265.7692
pronouns: he, him, él

R. Ex. 4

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**
**DIVISION OF JUDGES**
**NEW YORK BRANCH OFFICE**

**AMAZON.COM SERVICES LLC**

　　　　　**and**　　　　　　　　　　　　　**Case　29-CA-261755**

**GERALD BRYSON, AN INDIVIDUAL**

<u>**ORDER ON THE RESPONDENT'S PETITION TO REVOKE**
**CHARGING PARTY'S SUBPOENA DUCE TECUM B-1-1C9GVF7**
**AND REQUEST FOR A PROTECTIVE ORDER**</u>

　　　　The Respondent filed a petition to revoke subpoena duces tecum number B-1-1C9GVF7 (Subpoena), which the Charging Party issued to the Respondent's custodian of records on April 13, 2021.[1]  To the extent the Subpoena is not revoked, the Respondent seeks a protective order for any documents which must be produced.

　　　　The complaint alleges that the Respondent violated Section 8(a)(1) of the Act by unlawfully suspending and discharging Charging Party Gerald Bryson because of his protected concerted activities (i.e., protesting the Respondent's failure to provide greater COVID-19 safety protections to employees).

**<u>Petition to Revoke</u>**

　　　　The Subpoena seeks a number of documents which have already been subpoenaed (subpoena duces tecum number B-1-1BUGMIX) from the Respondent by Counsel for the Acting General Counsel (CGC).  On March 24, I issued an order largely denying the Respondent's petition to revoke subpoena B-1-1BUGMIX.  The instant petition to revoke is denied to the extent the Subpoena seeks documents which were requested by subpoena B-1-1BUGMIX and those requests were not revoked by my March 24 order.

　　　　The petition to revoke Subpoena paragraphs 3, 4, and 5 are denied as documents responsive to those paragraphs may include evidence of animus and (for paragraph 5) disparate treatment.

　　　　The Respondent objects to Subpoena paragraphs 11-14, and 19(b) and (c) to the extent they concern certain employees who were openly involved in protected concerted activities with Bryson.  The Respondent asserts that these Subpoena requests do not, as required by the Act, relate to any matter under investigation or in question.  Respondent's counsel also contends that production of these documents will be disproportional to the needs of the case as it will lead to extraneous "mini-trials" regarding the Respondent's treatment of employees not listed in the complaint.  The CGC and Charging Party claim

_____

[1] All dates herein refer to 2021.

R. Ex. 4

that the government's case will be advanced by evidence that the Respondent administered similar discipline to employees, including Bryson, who engaged in the same protected concerted activities.

Evidence concerning an employer's treatment of an alleged discriminatee in comparison to other employees who concertedly engaged in the same protected activity is relevant.  In fact, such evidence may be exculpatory as an employer may defend on the grounds that such nondiscriminatees were known to have engaged in protected concerted activity and, unlike an alleged discriminatee, were subject to no adverse employment action.  Of course, the Respondent has indicated no intent to raise such a defense and I share the concern of Respondent's counsel that the scope of this litigation might expand to involve "mini-trials" (if not full blown *Wright Line* inquiries) regarding adverse employment actions not listed in the complaint.  However, given the Board's broad discovery-type standard of relevance with regard to subpoena requests and its reluctance to quash requests on the grounds that production is bulky and numerous, I will not revoke paragraphs 11-14, and 19(b) and (c) at this time.

With regard to other individual Subpoena requests, I make the following additional rulings:[2]

Subpoena Paragraph 2 – Paragraph 2 shall be limited to policies, procedural, standards, and guidelines, as further described therein, which applied to the JFK8 facility.

Subpoena Paragraph 11 – Paragraph 11 shall be revoked to the extent it seeks documents regarding any transfers or promotions of the named employees.

Subpoena Paragraph 20 – Paragraph 20 shall be limited to organizational charts and other documents, as further described therein, that cover or include the JFK8 facility.

Subpoena Paragraphs 6, 21-24 – Paragraphs 6, 21-24 shall be limited to documents concerning only those members of the Human Resources Department/Team, Loss Prevention Department/Team, Operations Department/Team, Safety Department/Team, and Learning Department/Team who have responsibilities with regard to the JFK8 facility.

**Protective Order**

A protective order with respect to the disclosure of subpoenaed documents may be entered upon good cause and/or to avoid harm.  I will impose a protective order with regard to subpoenaed personnel records (such as employee discipline) of employees other than Bryson.  Counsel for the parties may use subpoenaed personnel records in this proceeding, including the disclosure of such documents to potential witnesses and other

---

[2] To the extent certain paragraphs are not mentioned and specifically limited or revoked, the petition to revoke is denied.

R Ex. 4

individuals as may be necessary prepare for trial and understand the records.[3]  However, counsel shall not disclose subpoenaed personnel records to other individuals for a different purpose.

   It is HEREBY ORDERED that the Respondent's petition to revoke the Subpoena is granted in part and denied in part, as described above, and a protective ordered is entered as described above.

  .       Dated:   April 27, 2021
               New York, New York

               *S/ Benjamin W. Green*
              _____
               Benjamin W. Green
               Administrative Law Judge

Served by email as follows:

Nicole A. Buffalano, Esq. (nicole.buffalano@morganlewis.com)

Evamaria Cox, Esq. (Evamaria.cox@nlrb.gov)

David Gaston, Esq. (David.Gaston@nlrb.gov)

Matthew Jackson, Esq. (Matthew.Jackson@nlrb.gov)

Frank Kearl, Esq. (frank.kearl@maketheroadny.org)

Christopher J. Murphy, Esq. (christopher.murphy@morganlewis.com)

Kelcey J. Phillips, Esq. (kelcey.phillips@morganlewis.com)

---

 [3]  The Respondent has objected to the possible use of subpoenaed records in different legal forums and different legal proceedings.  Presumably, the Respondent objects to the disclosure of documents that are relevant and would be useful to a legal adversary.  I do not believe the Respondent has a particularly strong confidentially interest in preventing the disclosure of such documents earlier than they would normally be disclosed during the normal course of those proceedings.  Accordingly, I do not grant this partial protective order on that basis.  Rather, I grant the partial protective order on the fairly self-evident confidentially interest a nonparty employee would have with regard to personnel records such as discipline.

R. Ex. 5

| Bates Number | Responsive Paragraph |
|---|---|
| AMZ-BRY000001 - AMZ-BRY000007 | WITHHELD |
| AMZ-BRY000008 - AMZ-BRY000034 | 9(a), 11(a) |
| AMZ-BRY000035 | 9(a) and 9(b) |
| AMZ-BRY000036 | 8, 9(a) |
| AMZ-BRY000037 - AMZ-BRY000042 | 7, 9(a) and (b) |
| AMZ-BRY000043 | 9(b) |
| AMZ-BRY000044 - AMZ-BRY000045 | 9(b) |
| AMZ-BRY000046 - AMZ-BRY000074 | 7, 9(a) and (b) |
| AMZ-BRY000075 | 8, 9(a) |
| AMZ-BRY000076 | 8, 9(a) |
| AMZ-BRY000077 | 9(a) |
| AMZ-BRY000078 - AMZ-BRY000080 | 7, 9(a) and (b) |
| AMZ-BRY000081 | 8, 9(a) |
| AMZ-BRY000082 - AMZ-BRY000086 | 8, 9(a) |
| AMZ-BRY000087 - AMZ-BRY000091 | 8, 9(b) |
| AMZ-BRY000092 | 9(b) |
| AMZ-BRY000093 - AMZ-BRY000096 | 9(b) |
| AMZ-BRY000097 - AMZ-BRY000100 | 9(a) |
| AMZ-BRY000101 - AMZ-BRY000119 | 7, 9(a) and (b) |
| AMZ-BRY000120 | 9(b) |
| AMZ-BRY000121 - AMZ-BRY000122 | 9(b) |
| AMZ-BRY000123 - AMZ-BRY000127 | 7, 9(a) and (b) |
| AMZ-BRY000128 | 8, 9(b) |
| AMZ-BRY000129 | 9(b) |
| AMZ-BRY000130 | 9(b) |
| AMZ-BRY000131 | 9(b) |
| AMZ-BRY000132 | 9(a), 11(a) |
| AMZ-BRY000133 - AMZ-BRY000135 | 9(b) |
| AMZ-BRY000136 | 8, 9(b) |
| AMZ-BRY000137 - AMZ-BRY000141 | 9(a) and 9(b) |
| AMZ-BRY000142 | 8, 9(a) |
| AMZ-BRY000143 | 9(b) |
| AMZ-BRY000144 | 8, 9(b) |
| AMZ-BRY000145 | 8, 9(b) |
| AMZ-BRY000146 | 8, 9(b) |
| AMZ-BRY000147 | 8, 9(a) |
| AMZ-BRY000148 - AMZ-BRY000164 | 9(b), 11(b) |
| AMZ-BRY000165 | 9(b) |
| AMZ-BRY000166 - AMZ-BRY000168 | 9(b) |
| AMZ-BRY000169 | WITHHELD |
| AMZ-BRY000170 - AMZ-BRY000171 | WITHHELD |
| AMZ-BRY000172 | WITHHELD |
| AMZ-BRY000173 | WITHHELD |
| AMZ-BRY000174 | WITHHELD |
| AMZ-BRY000175 | WITHHELD |
| AMZ-BRY000176 - AMZ-BRY000177 | WITHHELD |

R Ex. 5

| AMZ-BRY000178 | WITHHELD |
|---|---|
| AMZ-BRY000179 - AMZ-BRY000181 | WITHHELD |
| AMZ-BRY000182 - AMZ-BRY000183 | WITHHELD |
| AMZ-BRY000184 | WITHHELD |
| AMZ-BRY000185 | WITHHELD |
| AMZ-BRY000186 | WITHHELD |
| AMZ-BRY000187 | WITHHELD |
| AMZ-BRY000188 - AMZ-BRY000197 | 13(d) |
| AMZ-BRY000198 - AMZ-BRY000213 | 16 |
| AMZ-BRY000214 - AMZ-BRY000215 | WITHHELD |
| AMZ-BRY000216 - AMZ-BRY000243 | WITHHELD |
| AMZ-BRY000244 - AMZ-BRY000264 | 16 |
| AMZ-BRY000265 - AMZ-BRY000327 | 16 |
| AMZ-BRY000328 - AMZ-BRY000415 | 17 |
| AMZ-BRY000416 - AMZ-BRY000461 | 16 |
| AMZ-BRY000462 - AMZ-BRY000481 | 16 |
| AMZ-BRY000482 - AMZ-BRY000500 | 16 |
| AMZ-BRY000501 - AMZ-BRY000530 | 16 |
| AMZ-BRY000531 - AMZ-BRY000551 | 16 |
| AMZ-BRY000552 - AMZ-BRY000569 | 16 |
| AMZ-BRY000570 - AMZ-BRY000611 | 16 |
| AMZ-BRY000612 - AMZ-BRY000634 | 16 |
| AMZ-BRY000635 - AMZ-BRY000739 | 16 |
| AMZ-BRY000740 - AMZ-BRY000751 | 16 |
| AMZ-BRY000752 - AMZ-BRY000782 | 16 |
| AMZ-BRY000783 - AMZBRY000796 | 16 |
| AMZ-BRY000797 - AMZ-BRY000817 | 16 |
| AMZ-BRY000818 - AMZ-BRY000843 | 16 |
| AMZ-BRY000844 - AMZ-BRY000862 | 16 |
| AMZ-BRY000863 - AMZ-BRY000904 | 16 |
| AMZ-BRY000905 - AMZ-BRY000929 | 16 |
| AMZ-BRY000930 - AMZ-BRY000951 | 16 |
| AMZ-BRY000952 - AMZ-BRY000973 | 16 |
| AM-BRY000974 - AMZ-BRY000998 | 16 |
| AMZ-BRY000999 - AMZ-BRY001036 | 16 |
| AMZ-BRY001037 - AMZ-BRY001076 | 16 |
| AMZ-BRY001077 - AMZ-BRY001093 | 16 |
| AMZ-BRY001094 - AMZ-BRY001108 | 16 |
| AMZ-BRY001109 - AMZ-BRY001143 | 16 |
| AMZ-BRY001144 - AMZ-BRY001201 | 16 |
| AMZ-BRY001202 - AMZ-BRY001214 | 16 |
| AMZ-BRY001215 - AMZ-BRY001226 | 16 |
| AMZ-BRY001227 - AMZ-BRY001242 | 16 |
| AMZ-BRY001243 - AMZ-BRY001260 | 16 |
| AMZ-BRY001261 - AMZ-BRY001272 | 16 |
| AMZ-BRY001273 - AMZ-BRY001307 | 16 |
| AMZ-BRY001308 | WITHHELD |

CONFIDENTIAL

| | |
|---|---|
| AMZ-BRY001309 | WITHHELD |
| AMZ-BRY001310 | WITHHELD |
| AMZ-BRY001311 - AMZ-BRY001312 | WITHHELD |
| AMZ-BRY001313 - AMZ-BRY001316 | WITHHELD |
| AMZ-BRY001317 - AMZ-BRY001321 | WITHHELD |
| AMZ-BRY001322 - AMZ-BRY001323 | WITHHELD |
| AMZ-BRY001324 - AMZ-BRY001335 | WITHHELD |
| AMZ-BRY001336 - AMZ-BRY001338 | WITHHELD |
| AMZ-BRY001339 - AMZ-BRY001341 | WITHHELD |
| AMZ-BRY001342 - AMZ-BRY001343 | WITHHELD |
| AMZ-BRY001344 | WITHHELD |
| AMZ-BRY001345 | WITHHELD |
| AMZ-BRY001346 - AMZ-BRY001348 | WITHHELD |
| AMZ-BRY001349 | WITHHELD |
| AMZ-BRY001350 | WITHHELD |
| AMZ-BRY001351 - AMZ-BRY001352 | WITHHELD |
| AMZ-BRY001353 | WITHHELD |
| AMZ-BRY001354 | WITHHELD |
| AMZ-BRY001355 - AMZ-BRY001356 | WITHHELD |
| AMZ-BRY001357 - AMZ-BRY001358 | WITHHELD |
| AMZ-BRY001359 | WITHHELD |
| AMZ-BRY001360 | WITHHELD |
| AMZ-BRY001361 | WITHHELD |
| AMZ-BRY001362 | WITHHELD |
| AMZ-BRY001363 | WITHHELD |
| AMZ-BRY001364 | WITHHELD |
| AMZ-BRY001365 | WITHHELD |
| AMZ-BRY001366 - AMZ-BRY001367 | WITHHELD |
| AMZ-BRY001368 - AMZ-BRY001369 | WITHHELD |
| AMZ-BRY001370 - AMZ-BRY001372 | WITHHELD |
| AMZ-BRY001373 | WITHHELD |
| AMZ-BRY001374 | WITHHELD |
| AMZ-BRY001375 | WITHHELD |
| AMZ-BRY001376 | WITHHELD |
| AMZ-BRY001377 - AMZ-BRY001379 | WITHHELD |
| AMZ-BRY001380 - AMZ-BRY001383 | WITHHELD |
| AMZ-BRY001384 | 17 |
| AMZ-BRY001385 | 17 |
| AMZ-BRY001386 | 17 |
| AMZ-BRY001387 | WITHHELD |
| AMZ-BRY001388 | WITHHELD |
| AMZ-BRY001389 | 17 |
| AMZ-BRY001390 - AMZ-BRY001393 | 13(d) |
| AMZ-BRY001394 - AMZ-BRY001395 | 13(d) |
| AMZ-BRY001396 - AMZ-BRY001397 | 13(d) |
| AMZ-BRY001398 - AMZ-BRY001430 | 13(d) |
| AMZ-BRY001431 - AMZ-BRY001457 | 13(d) |

R Ex. 5

| | |
|---|---|
| AMZ-BRY001458 - AMZ-BRY001461 | 13(d) |
| AMZ-BRY001462 - AMZ-BRY001467 | 13(d) |
| AMZ-BRY001468 - AMZ-BRY001469 | 13(d) |
| | |
| | |
| | |
| | |

CONFIDENTIAL

R Ex. 6

| Bates Number | Responsive Paragraph |
|---|---|
| AMZ-BRY001470 - AMZ-BRY001511 | 16 (EWR4) |
| AMZ-BRY001512 - AMZ-BRY001530 | 16 (EWR4) |
| AMZ-BRY001531 - AMZ-BRY001537 | 16 (EWR4) |
| AMZ-BRY001538 - AMZ-BRY001596 | 16 (EWR4) |
| AMZ-BRY001597 - AMZ-BRY001620 | 16 (EWR4) |
| AMZ-BRY001621 - AMZ-BRY001674 | 16 (EWR4) |
| AMZ-BRY001675 - AMZ-BRY001712 | 16 (EWR4) |
| AMZ-BRY001713 - AMZ-BRY001800 | 16 (EWR4) |
| AMZ-BRY001801 - AMZ-BRY001836 | 16 (EWR4) |
| AMZ-BRY001837 - AMZ-BRY001922 | 16 (EWR4) |
| AMZ-BRY001923 | WITHHELD |
| AMZ-BRY001924 | WITHHELD |
| AMZ-BRY001925 | WITHHELD |
| AMZ-BRY001926 | WITHHELD |
| AMZ-BRY001927 | WITHHELD |
| AMZ-BRY001928 | WITHHELD |
| AMZ-BRY001929 - AMZ-BRY001943 | 16 (EWR4) |
| AMZ-BRY001944 - AMZ-BRY002031 | 16 (EWR4) |
| AMZ-BRY002032 - AMZ-BRY002045 | 16 (EWR4) |
| AMZ-BRY002046 - AMZ-BRY002101 | 16 (EWR4) |
| AMZ-BRY002102 - AMZ-BRY002185 | 16 (EWR4) |
| AMZ-BRY002186 - AMZ-BRY002199 | 16 (EWR4) |
| AMZ-BRY002200 - AMZ-BRY002219 | 16 (EWR4) |
| AMZ-BRY002220 - AMZ-BRY002317 | 16 (EWR4) |
| AMZ-BRY002318 - AMZ-BRY002339 | 16 (EWR4) |
| AMZ-BRY002340 - AMZ-BRY002447 | 16 (EWR4) |
| AMZ-BRY002448 - AMZ-BRY002501 | 16 (EWR4) |
| AMZ-BRY002502 - AMZ-BRY002523 | 16 (EWR4) |
| AMZ-BRY002524 - AMZ-BRY002548 | 16 (EWR4) |
| AMZ-BRY002549 - AMZ-BRY002573 | 16 (EWR4) |
| AMZ-BRY002574 - AMZ-BRY002595 | 16 (EWR4) |
| AMZ-BRY002596 - AMZ-BRY002609 | 16 (EWR4) |
| AMZ-BRY002610 - AMZ-BRY002661 | 16 (EWR4) |
| AMZ-BRY002662 - AMZ-BRY002705 | 16 (EWR4) |
| AMZ-BRY002706 - AMZ-BRY002759 | 16 (EWR4) |
| AMZ-BRY002760 - AMZ-BRY002859 | 16 (EWR4) |
| AMZ-BRY002860 - AMZ-BRY002905 | 16 (EWR4) |
| AMZ-BRY002906 - AMZ-BRY002957 | 16 (EWR4) |
| AMZ-BRY002958 - AMZ-BRY003016 | 16 (EWR4) |
| AMZ-BRY003017 - AMZ-BRY003024 | 16 (EWR4) |
| AMZ-BRY003025 - AMZ-BRY003104 | 16 (EWR4) |
| AMZ-BRY003105 - AMZ-BRY003182 | 16 (EWR4) |
| AMZ-BRY003183 - AMZ-BRY003228 | 16 (EWR4) |
| AMZ-BRY003229 - AMZ-BRY003301 | 16 (EWR4) |
| AMZ-BRY003302 - AMZ-BRY003463 | 16 (EWR4) |
| AMZ-BRY003465 - AMZ-BRY003609 | 16 (EWR4) |

R Ex. 6

**CONFIDENTIAL**

| | |
|---|---|
| AMZ-BRY003610 - AMZ-BRY003611 | 16 (BDL3) |
| AMZ-BRY003612 - AMZ-BRY003614 | 16 (BDL3) |
| AMZ-BRY003615 - AMZ-BRY003629 | 16 (BDL3) |
| AMZ-BRY003630 - AMZ-BRY003650 | 16 (BDL3) |
| AMZ-BRY003651 - AMZ-BRY003659 | 16 (BDL3) |
| AMZ-BRY003660 - AMZ-BRY003678 | 16 (BDL3) |
| AMZ-BRY003679 - AMZ-BRY003683 | 16 (BDL3) |
| AMZ-BRY003864 - AMZ-BRY003687 | 16 (BDL3) |

R Ex. 6

**CONFIDENTIAL**

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

R Ex. 6

**CONFIDENTIAL**

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

Case 1:22-cv-01479-DG-SJB   Document 5-11   Filed 03/17/22   Page 49 of 91 PageID #: 4352

CONFIDENTIAL

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

R Ex. 7

| Bates Number | Responsive Paragraph |
|---|---|
| AMZ-BRY003688 - AMZ-BRY003699 | 16 (BDL3) |
| AMZ-BRY003700 - AMZ-BRY003701 | 16 (BDL3) |
| AMZ-BRY003702 - AMZ-BRY003712 | 16 (BDL3) |
| AMZ-BRY003713 - AMZ-BRY003723 | 16 (BDL3) |
| AMZ-BRY003724 - AMZ-BRY003733 | 16 (BDL3) |
| AMZ-BRY003734 - AMZ-BRY003749 | 16 (BDL3) |
| AMZ-BRY003750 - AMZ-BRY003763 | 16 (BDL3) |
| AMZ-BRY003764 - AMZ-BRY003768 | 16 (BDL3) |
| AMZ-BRY003769 - AMZ-BRY003775 | 16 (BDL3) |
| AMZ-BRY003776 - AMZ-BRY003795 | 16 (BDL3) |
| AMZ-BRY003796 - AMZ-BRY003801 | 16 (BDL3) |
| AMZ-BRY003802 - AMZ-BRY003804 | 16 (BDL3) |
| AMZ-BRY003805 - AMZ-BRY003820 | 16 (BDL3) |
| AMZ-BRY003821 - AMZ-BRY003829 | 16 (BDL3) |
| AMZ-BRY003830 - AMZ-BRY003834 | 16 (BDL3) |
| AMZ-BRY003835 - AMZ-BRY003851 | 16 (BDL3) |
| AMZ-BRY003852 - AMZ-BRY003870 | 16 (EWR4) |
| AMZ-BRY003871 - AMZ-BRY003878 | 16 (EWR4) |
| AMZ-BRY003879 - AMZ-BRY003922 | 16 (EWR4) |
| AMZ-BRY003923 - AMZ-BRY003956 | 16 (EWR4) |
| AMZ-BRY003957 - AMZ-BRY004030 | 16 (EWR4) |
| AMZ-BRY004031 - AMZ-BRY004055 | 16 (EWR4) |
| AMZ-BRY004056 - AMZ-BRY004063 | 16 (EWR4) |
| AMZ-BRY004064 - AMZ-BRY004142 | 9(c), 11(c) |
| AMZ-BRY004143 - AMZ-BRY004175 | 9(d), 11(d) |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

R Ex. 7

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

R Ex. 7

| | |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

R Ex. 7

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

R Ex. 7

|  |  |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |
|  |  |

**From:**     Gilbert-Differ, Geoff
**Sent:**     Tuesday, April 7, 2020 10:37 AM
**To:**       Grabowski, Tyler
**Subject:**  FW: altercation during protest 4-6-20

**From:** Chierchio, Paul <pchierch@amazon.com>
**Sent:** Tuesday, April 7, 2020 10:24 AM
**To:** Gilbert-Differ, Geoff <ggeoffr@amazon.com>
**Subject:** altercation during protest 4-6-20

Geoff,
As per your request regarding the verbal altercation that occurred  during the protest.

    At around 1245pm AA Dimitra Evans "edimitra" was sitting curb side by herself across from main entrance next to a handicap spot, smoking a cigarette. During this time one of the protestors Gerald Bryson "gbbryso" started speaking regarding his opinion of what has been going on at Amazon. Ms. Evans engaged with her opinion as if to correct his statements. At no time did she become confrontational towards Mr. Bryson.  At this point he started to become belligerent and agitated towards Ms. Evans. He went from protesting to personally verbally assaulting Ms. Evans character. He stated that she was crackhead numerous times. Referring to smoking her cigarette as a crack-pipe, stating "you on that pipe right now". He then stated about her eyes having that glazed look to them. He continue to become more vocal and boisterous stating "that this is what Amazon is hiring now crackheads". He continued with his verbal assault towards Ms. Evans as she was told by myself to pay no attention and go inside. She complied with my direction. As she was going inside he stated that "I've seen the needle marks on your arms". At no time did Ms. Evans become aggressive towards Mr. Bryson nor engaged in name calling or made any derogatory statements towards Mr. Bryson. After she went inside, he continued with his rant about Amazon hiring crackheads. This lasted for few more seconds to which he continued back to the normal protest statements. My location during this event was on the sidewalk in-front of the main entrance across from where the protestors were located.

Paul Chierchio
Metro One Security
Site Manager-Amazon F.C.
564 Gulf Ave. Staten Island, N.Y.
Cell: 917-636-3829

R-8

AMZ-BRY000174

**amazon**.com.

# Witness Statement Form
Updated August 2018

**NOTE TO ASSOCIATE:** Thank you for taking time to complete this Witness Statement Form. The information you provide will help Amazon to thoroughly investigate the issue that has been brought to our attention. Please indicate on this form below, in Section II, exactly what you saw, heard, and know about the issue you are providing this statement about.

| SECTION I: INFORMATION ABOUT THE PERSON MAKING THIS STATEMENT | | |
|---|---|---|
| Name  Chris Urso | Department/Position | |
| Home Address, City, State, Zip | Home Phone | Work Phone  (    )  Same |

**SECTION II: WITNESS STATEMENT** (Use additional paper or back of form if necessary)

Describe in your own words, what happened and what you observed.  Please make sure to cover the following points:
- List of all the issues, concerns and/or complaints.
- Relevant facts and dates that support the issue.  Be as specific as possible and provide examples.
- Suggestions for obtaining documentation (e.g., memos, e-mails, performance evaluations, etc.) that may include relevant information.
- Attach copies of any relevant documentation to this form.

On april 6 at around 12:45 I was was outside smoking a cig when I heard one associate screaming at another. I am not sure of the mans name but he was screaming at Demi and saying she has track marks all up and down her arms and for everyone to look at her eyes insinuating she was high. He was screaming so loudly that a lot of people heard. I felt bad for her. It went on until she went inside.

Please list any witnesses or individuals who may have information relevant to this investigation.

**ACKNOWLEDGEMENT**

Amazon values the integrity of the investigation process and the importance of conducting an investigation that is timely, thorough, and accurate. Amazon, its supervisors, and HR respect the sensitive and personal nature of the investigation, and intend to keep the investigation as confidential as possible, limiting the disclosure of information to only those people who have a legitimate reason to know.

I understand this statement will be considered part of the official investigation and that this statement I have provided is an honest and accurate account of the case to the best of my knowledge. I further understand that as an Amazon.com associate that I am subject to Amazon's Code of Ethics and am expected to fully cooperate in all investigations. I understand that intentionally concealing or withholding relevant information or providing purposefully or recklessly false or misleading information, or interfering with, impeding, or undermining the investigation may result in corrective action up to and including termination of employment.

| Chris Urso | | 4/6 |
|---|---|---|
| Employee Name (Please Print) | Employee Signature | Date |

For Internal Amazon Use Only

R-9

AMZ-BRY000169

**amazon.com.**

## Witness Statement Form
Updated August 2018

**NOTE TO ASSOCIATE:** Thank you for taking time to complete this Witness Statement Form. The information you provide will help Amazon to thoroughly investigate the issue that has been brought to our attention. Please indicate on this form below, in Section II, exactly what you saw, heard, and know about the issue you are providing this statement about.

### SECTION I: INFORMATION ABOUT THE PERSON MAKING THIS STATEMENT

| Name DEMi EvanS | Department/Position AFE 2 | |
|---|---|---|
| Home Address, City, State, Zip | Home Phone | Work Phone ( ) |

### SECTION II: WITNESS STATEMENT (Use additional paper or back of form if necessary)

Describe in your own words, what happened and what you observed. Please make sure to cover the following points:
- List of all the issues, concerns and/or complaints.
- Relevant facts and dates that support the issue. Be as specific as possible and provide examples.
- Suggestions for obtaining documentation (e.g., memos, e-mails, performance evaluations, etc.) that may include relevant information.
- Attach copies of any relevant documentation to this form.

On Monday 4/6/20, I went outside on lunch break and was having a cigarette. There was a protestor with a girl protesting. I asked the blonde Security girl if we were having another protest and she said no. The Guy protestor who was wearing a pinkish do rag and sneakers chimed in on my conversation with the lady Security. I told him to go away and then he started saying that amazon is a cesspool and people shouldnt be working in this environment. I said to him that Amazon is the only place thats open and having people work in this pandemic, and that we are lucky to be employed. He went off on me, telling me that IM a Bitch and that I live in the streets etc.., He called me the "N" word in which I dont know Why.. (Im white) and I told

Please list any witnesses or individuals who may have information relevant to this investigation.

Witness— 3 Men (one was Paul) From Security   1 Lady (Shes blonde)

### ACKNOWLEDGEMENT

Amazon values the integrity of the investigation process and the importance of conducting an investigation that is timely, thorough, and accurate. Amazon, its supervisors, and HR respect the sensitive and personal nature of the investigation, and intend to keep the investigation as confidential as possible, limiting the disclosure of information to only those people who have a legitimate reason to know.

I understand this statement will be considered part of the official investigation and that this statement I have provided is an honest and accurate account of the case to the best of my knowledge. I further understand that as an Amazon.com associate that I am subject to Amazon's Code of Ethics and am expected to fully cooperate in all investigations. I understand that intentionally concealing or withholding relevant information or providing purposefully or recklessly false or misleading information, or interfering with, impeding, or undermining the investigation may result in corrective action up to and including termination of employment.

| D. Evans | | 4/6/20 |
|---|---|---|
| Employee Name (Please Print) | Employee Signature | Date |

For Internal Amazon Use Only

AMZ-BRY000170

R-10

amazon.com.

**Witness Statement Form**
Updated August 2018

**NOTE TO ASSOCIATE:** Thank you for taking time to complete this Witness Statement Form. The information you provide will help Amazon to thoroughly investigate the issue that has been brought to our attention. Please indicate on this form below, in Section II, exactly what you saw, heard, and know about the issue you are providing this statement about.

| SECTION I: INFORMATION ABOUT THE PERSON MAKING THIS STATEMENT | | |
|---|---|---|
| Name Demi Evans | Department/Position HFE 2 | |
| Home Address, City, State, Zip | Home Phone | Work Phone ( ) |

**SECTION II: WITNESS STATEMENT** (Use additional paper or back of form if necessary)

Describe in your own words, what happened and what you observed. Please make sure to cover the following points:
- List of all the issues, concerns and/or complaints.
- Relevant facts and dates that support the issue. Be as specific as possible and provide examples.
- Suggestions for obtaining documentation (e.g., memos, e-mails, performance evaluations, etc.) that may include relevant information.
- Attach copies of any relevant documentation to this form.

him to back off. He kept making slurs and comments towards
me and said on his microphone to get this Lady inside. I got
up from where I was sitting, walked towards entrance door. He
Made a comment, I responded and he threatened me that he
Would Shut me up. I have witnesses that were there and they
were security. 3 men, 1 Lady

Please list any witnesses or individuals who may have information relevant to this investigation.

**ACKNOWLEDGEMENT**

Amazon values the integrity of the investigation process and the importance of conducting an investigation that is timely, thorough, and accurate. Amazon, its supervisors, and HR respect the sensitive and personal nature of the investigation, and intend to keep the investigation as confidential as possible, limiting the disclosure of information to only those people who have a legitimate reason to know.

I understand this statement will be considered part of the official investigation and that this statement I have provided is an honest and accurate account of the case to the best of my knowledge. I further understand that as an Amazon.com associate that I am subject to Amazon's Code of Ethics and am expected to fully cooperate in all investigations. I understand that intentionally concealing or withholding relevant information or providing purposefully or recklessly false or misleading information, or interfering with, impeding, or undermining the investigation may result in corrective action up to and including termination of employment.

| D-Evans | [signature] | 4/6/20 |
|---|---|---|
| Employee Name (Please Print) | Employee Signature | Date |

For Internal Amazon Use Only

**AMZ-BRY000171**

**From:**          Bertone, Kaydee
**Sent:**          Monday, April 6, 2020 7:46 PM
**To:**            Grabowski, Tyler
**Subject:**       Monday, April 6, 2020


Monday, April 6, 2020


AA was outside sitting on the curb across from the main entrance smoking a cigarette and made a comment to the man protesting in the hot pink durag. AA said: "Why don't you just go home, and stop wasting everyone's time." He responded with "show yourself" She then said, "I'm right here, were all here to make money and collect a paycheck, if you don't want one then go home." He then called her a "gutter bitch" and said to look at her "eye cylinders they all black and sunk in" he then asked if she had kids or a family. Then before she could say anything else said he said "probably not because you're a crackhead, and that she should get tested and to check her for track marks." He also stated that amazon employs crackheads and kept telling her to "shut up and go inside." She said make me shut up and he said "come here and I'll make you." FLSD Joel Rimler then told her not to worry about it that he wasn't worth it and that she should just go inside and she did. Even after she went inside he continued to bash her for twenty minutes repeating the same insults.


Kaydee Bertone

Security Supervisor


Jonathan Parrilla

Security Guard

R-
11

AMZ-BRY000172

**From:**                Curlej, Maciej
**Sent:**                 Monday, April 6, 2020 6:10 PM
**To:**                   Grabowski, Tyler
**Subject:**           Maciej statement 4/6/20

On 4/6/20 as I was outside auditing and enforcing social distancing policy, there was a group of 4 people protesting in front of the building. Associate Dimitra Evens was on her break outside of the main entrance sitting on the walkway curb. As the protestors were publicizing they opinions that the site should close down Dimitra expressed her opposing belief and she commented to them that she is glad that Amazon is remaining open and she needs/wants her job. She continued by saying that she need her job and is glad that the site is open and told the group of protesters to leave if they don't want to work. One of the protestors Gerald Bryson did not agree with her opinion and told her to "shut up", called her a "stupid nigga".  She told him to "get the fuck out of here if you don't want to work", at that point protester Gerald responded to her by saying " shut up bitch" and continiue to make additional remarks and calling her "bitch" and "cunt".  At that point I called the site GM Sai Kotha to inform him of the situation, as I was on the phone Gerald continiue with his remarks and at one point I observed him approaching Dimitra in what could be perceived as an aggressive behavior. At that time Dimitra started walking back into the building.


Maciej Curlej
**Senior Operations Manager IB JFK8**
*North American Fulfillment*
**e:** curlejm@amazon.com **| p:** (732) 598-4818

amazonfulfillment

R-12

**AMZ-BRY000173**

**amazon**.com.

# Witness Statement Form
**Updated August 2018**

**NOTE TO ASSOCIATE:**  Thank you for taking time to complete this Witness Statement Form.  The information you provide will help Amazon to thoroughly investigate the issue that has been brought to our attention.  Please indicate on this form below, in Section II, exactly what you saw, heard, and know about the issue you are providing this statement about.

| SECTION I:  INFORMATION ABOUT THE PERSON MAKING THIS STATEMENT | |
|---|---|
| Name<br>Shaianna Donaldson | Department/Position<br>HR |
| Home Address, City, State, Zip | Home Phone | Work Phone<br>(    ) |

| SECTION II:  WITNESS STATEMENT  (Use additional paper or back of form if necessary) |
|---|

Describe in your own words, what happened and what you observed.  Please make sure to cover the following points:
- List of all the issues, concerns and/or complaints.
- Relevant facts and dates that support the issue.  Be as specific as possible and provide examples.
- Suggestions for obtaining documentation (e.g., memos, e-mails, performance evaluations, etc.) that may include relevant information.
- Attach copies of any relevant documentation to this form.

On 4/6/2020 around 12:47 PM, I went outside the main entrance to pickup a delivery, when I overheard a protestor yelling at an associate. The protestor called the associate a "crackhead", said she's a "druggie", "Amazon needs to drug test her right now", and said "she has track marks all over her face and arms." The associate who was smoking a cigarette, quickly went inside the building following the protestor's remarks. She said something to the effects of, leave me alone and why are you even speaking to me on her way in.

Please list any witnesses or individuals who may have information relevant to this investigation.

**ACKNOWLEDGEMENT**
Amazon values the integrity of the investigation process and the importance of conducting an investigation that is timely, thorough, and accurate. Amazon, its supervisors, and HR respect the sensitive and personal nature of the investigation, and intend to keep the investigation as confidential as possible, limiting the disclosure of information to only those people who have a legitimate reason to know.
I understand this statement will be considered part of the official investigation and that this statement I have provided is an honest and accurate account of the case to the best of my knowledge. I further understand that as an Amazon.com associate that I am subject to Amazon's Code of Ethics and am expected to fully cooperate in all investigations. I understand that intentionally concealing or withholding relevant information or providing purposefully or recklessly false or misleading information, or interfering with, impeding, or undermining the investigation may result in corrective action up to and including termination of employment.

| Shaianna Donaldson | Shaianna Donaldson | 04/06/2020 |
|---|---|---|
| Employee Name (Please Print) | Employee Signature | Date |

For Internal Amazon Use Only

**AMZ-BRY000175**

**From:**            GSOC@amazon.com
**Sent:**            Saturday, April 11, 2020 12:30 AM
**To:**              GSOC
**Subject:**         WIM-SEV3-JFK8-HARASSMENT-ON SITE-STATUS: NEW

| **Facility Name:** JFK8 | **Facility Type:** Robotics FC |
|---|---|
| **Country:** United States | **Address:** 546 Gulf Avenue, Staten Island, NY 10314 |
| **Occurred: LOCAL**<br>**Date:** 04/06/2020<br>**Time:** 1248 EDT | **Occurred: PST/PDT**<br>**Date:** 04/06/2020<br>**Time:** 0948 PDT |
| **Reported: LOCAL**<br>**Date:** 04/10/2020<br>**Time:** 2109 EDT | **Reported: PST/PDT**<br>**Date:** 04/10/2020<br>**Time:** 1809 PDT |
| **Source of Report:** Geoff Gilbert-Differ - Regional Loss Prevention Mgr. | |

### Summary of Incident:

On April 6, 2020, at approximately 1330hrs, Sr. Operations Manager (SOM) Maciej informed me, Regional Loss Prevention Manager Geoff Gilbert-Differ of an incident which occurred at approximately 1250hrs at JFK8.  It was reported that POI had used abusive, harassing and bullying language towards Victim.  POI was at the time engaged in a protest in the parking lot, outside the front entrance of JFK8.  Victim was on lunch break in the parking lot at the time of the event.

I conducted video review of this incident, which showed Victim sitting on a curb observing POI and one other individual engaging protest with signs.  POI was using a bull horn.  An apparent verbal interaction between POI and Victim occurred.  Victim was observed initially interacting with POI from a seated position on the curb, with POI responding using their bull horn, approximately 20 feet apart.  Victim stood up and walked from camera left-right on camera 1600, before proceeding to the main entrance.  On camera 1886, Victim can be seen reacting to something apparently shouted by POI.  Victim and POI again had a verbal exchange, before victim entered JFK8 via the main entrance.

I reviewed statements from Victim, SOM Curlej, Sr. Human Resources Assistant (SHRA) Shaianna Donaldson, Process Assistant (PA) Christopher Urso, Metro One Security Supervisor Kaydee Bertone and Metro One Security Manager Paul Chierchio.  All reported hearing POI verbally abusing Victim.  Words reported as used by POI included racially abusive words, comments about Victim's physical appearance, references to Victim being a drug abuser and sexual terms of abuse.

I reviewed a capture of a Facebook live video showing POI, apparently just after the event, in which POI refers to an "argument" they had with Victim who POI referred to as a "plant".  POI talked of this getting "out of hand" and of "being pushed to the limit and having "no choice".  POI referred to Amazon hiring "the scum of the earth", "junkies", referring to an associate, believed to be Victim, who "looked like [gender identifier removed] was on fentanyl or something else".  POI described language used consistent Victim's account of the exchange.  POI also used physical descriptions consistent with abusive terms witnessed during the event with Victim.

POI's badge has been suspended pending further investigation.

### Media On-Site:

- No

### Recommended Next Steps:

- Seek to Understand to be conducted by site HR together with site Loss Prevention team
- Loss Prevention recommends termination of employment for POI for bullying and harassment of Victim

R-
14

**AMZ-BRY000182**

This is preliminary information. If the GSOC has misinterpreted or did not include key information that is relevant to your team for this incident or if you would like to handle an issue separate from this email, please contact GSOC via SIM Ticket or email: GSOC@amazon.com.

---

**Tell us how we are doing. Was this notification helpful?**



2

R-14



**Global Workplace Incident Management (WIM) Reporting Template**
Version 2.1 |Global Security Operations Center (GSOC)

*Please check the box at the beginning of each section to ensure completion! | Check for updates on the WIM Wiki!*

☐ This is an **initial** WIM Report          ☐ This is an **update** to a WIM Report

### ☐ Contacts

**WHO SHOULD RECEIVE THE OFFICIAL WIM NOTIFICATION SENT BY THE GSOC?**
If additional space is needed, please use the "Additional Notes" section at the end of this document.

| | Name or Email Group | Login/Email Alias | Title | | Name or Email Group | Login/Email Alias | Title |
|---|---|---|---|---|---|---|---|
| 1 | | | | 9 | | | |
| 2 | | | | 10 | | | |
| 3 | | | | 11 | | | |
| 4 | | | | 12 | | | |
| 5 | | | | 13 | | | |
| 6 | | | | 14 | | | |
| 7 | | | | 15 | | | |
| 8 | | | | 16 | | | |

### ☐ General Information

| | | | |
|---|---|---|---|
| Site or Facility: | | Proximity: | Event Category: |
| Address or Incident Location (If Off-Site): | | | |
| Time Incident Occurred (Local Time): | | | |
| Reported By: | | Login: | Phone Number: |
| **If a conference call is Immediately necessary, please call the GSOC at +1-206-266-6066** | | | |
| Conference Call Request: | | Requested Conference Call Time: | |
| **EMEA ONLY** | | | |
| PROVIDE DATE/TIMES FOR THE FOLLOWING 3 (THREE) FIELDS | | Date/Time Loss Prevention (LP) Informed: | |
| Date/Time Remote Support Started by LP: | | Date/Time LP On-Site: | |

### ☐ Not a member of Loss Prevention?

If you are NOT a member of Loss Prevention (LP), the GSOC will forward this form to the appropriate LP team, Site Security Facilitator, or Facility Manager. For locations in North America, the GSOC will use the LP On-Call Program.

| | | |
|---|---|---|
| Has Loss Prevention already been notified? | LP Name: | |
| CCTV Video Footage Reviewed? | Notes: | |
| Witness Statements taken? | Notes: | |
| Persons of Interest (POI) still on-site? | Notes: | |

### ☐ Personnel Involved

If more space is required, use the "Additional Notes" section at the end of the document. The individuals involved are reported to the GSOC for record keeping purposes, but the GSOC will not publish the name or any identifiers of individuals involved in a GSOC notification.

| Name | Login | Role | Title |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**AMZ-BRY000179**



**Global Workplace Incident Management (WIM) Reporting Template** Version 2.1 |Global Security Operations Center (GSOC)

*Please check the box at the beginning of each section to ensure completion! | Check for updates on the WIM Wiki!*

| ☐ Event Information | | | |
|---|---|---|---|
| **Police / EMS Contacted** | | Who contacted EMS/Police? | |
| If yes, date/time arrived on site | | If yes, date/time departed the site | |
| | | | |
| **Injuries Reported:** | | | |
| Number of people injured | | Transported by EMS: | |
| Conscious at time of departure? | | AED Used? | |
| | | | |
| **Media Onsite:** | | | |
| | | | |

| ☐ Summary of Incident |
|---|
| **Provide a brief summary of the incident and interview recap below. Remove all names, gender and ethnic identifiers of POI(s) and Victim(s) only. Replace identifiers with POI1, POI2, Victim1, Victim2, etc. or "they" or "them" verbiage when appropriate. When replacing a gender identifier with "they" or "them" in a direct quote, place brackets [] around [they] or [them]. Reports containing errors or needing content modification will be forwarded back to the author for corrections prior to publication.** |
| |

**AMZ-BRY000180**

**amazon** Global Security
*prepare. secure. protect.*

**Global Workplace Incident Management (WIM) Reporting Template**
Version 2.1 | Global Security Operations Center (GSOC)
*Please check the box at the beginning of each section to ensure completion! | Check for updates on the* <u>*WIM Wiki*</u>*!*

☐ **Recommended Next Steps**

☐ **WIM Team Guidance / Support**

☐ **Additional Notes**

**AMZ-BRY000181**

R-
15

**From:** Grabowski, Tyler [grabtyle@amazon.com]
**Sent:** 4/10/2020 11:36:29 AM
**To:** jfk8-lp@amazon.com; jfk8-security@amazon.com; JFK8-HR@amazon.com [jfk8-hr@amazon.com]
**Subject:** Suspend Badge - Gerald Bryson (gbbryso)

Team,

Please suspend the following associates badge until further notice



AMZ-BRY001376

| | |
|---|---|
| **From**: | Grabowski, Tyler [grabtyle@amazon.com] |
| **Sent**: | 4/7/2020 9:09:14 AM |
| **To**: | Campbell, Bradley [bccampb@amazon.com] |
| **CC**: | jfk8-hrbp@amazon.com |
| **Subject**: | JFK8 4.6.20 Incident/Potential Threats |
| **Attachments**: | Monday, April 6, 2020.msg; Maciej statement 4_6_20 .msg; FW_ altercation during protest 4-6-20.msg; Christopher Urso Statement 4.6.pdf; Dimitra Evans Statement 4.6.pdf; Shaianna Donaldson 4.6 Incident Statement.doc |

Bradley

Please see the attached statements gathered in regards to the incident that occurred outside of the JFK8 main entrance during OB Lunch today.

Statements:
Dimitra Evans – Victim
Shaianna Donaldson (HR) – Witness
Christopher Urso (OB PA) – Witness
Maciej Curlej (IB Sr Ops) – Witness
Kaydee Bertone (Security) – Witness
Paul Chierchio (Site Security Manager) – Witness

According to Dimitra Evans(edimitra), she was outside smoking a cigarette on her break while there were protestors making comments about how Amazon should close down. Dimitra made a comment speaking positive about Amazon stating that it allowed associates the opportunity to continue working and earning a check. One of the protestors Gerald Bryson(gbbryso) appeared angered by what Dimitra had said and began make inappropriate and vulgar remarks at the associate. The situation then got to the point at which Gerald told Dimitra to shut up, to which she responded to him "make me". Dimitra then claims Gerald said "come over here and I will make you shut up".

The statement allegedly made by Gerald toward Dimitra about "Making her shut up" is included in Dimitra and Kaydee's statements. The other witnesses heard the vulgar comments but did not recall hearing the alleged threat.

The situation was witnessed by security who then advised Dimitra to go inside and walk away, which she did.

AMZ-BRY001361

| | |
|---|---|
| **From:** | Grabowski, Tyler [/O=AMAZON/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=2AC9ED9126C34EE4BD3D4B79F1EC85F4-GRABTYLE] |
| **Sent**: | 4/10/2020 2:02:34 PM |
| **To**: | Campbell, Bradley [bccampb@amazon.com]; Hernandez, Christine [hrnanch@amazon.com] |
| **CC**: | jfk8-hrbp@amazon.com |
| **Subject**: | RE: Gerald STU Template |
| **Attachments**: | Gerald Bryson Investigation Recap.docx; Gerald Bryson Allegations.xlsx |

Bradley/Christine,

Please see the attached notes from the STU conversation as well as the excel sheet with each of the allegations and which statements confirmed them.

Let me know if you have any questions

Thank you

---

**From:** Campbell, Bradley <bccampb@amazon.com>
**Sent:** Friday, April 10, 2020 1:06 PM
**To:** Grabowski, Tyler <grabtyle@amazon.com>; Hernandez, Christine <hrnanch@amazon.com>
**Subject:** RE: Gerald STU Template

I think that it is good.  A couple of items:

Are those all of the actual statements he allegedly made from witness statements?  Make sure each is captured.  And don't forget to make a chart to be very clear when we explain this for others.  Also make sure that you tell him that his badge is suspended due to the investigation.  I would also be prepared if he fully denies everything to ask if he posted anything about the incident on social media.

---

**From:** Grabowski, Tyler <grabtyle@amazon.com>
**Sent:** Friday, April 10, 2020 10:26 AM
**To:** Hernandez, Christine <hrnanch@amazon.com>; Campbell, Bradley <bccampb@amazon.com>
**Subject:** Gerald STU Template

Bradley and Christine,

Please let me know your thoughts on the follow guide I was going to utilize in my conversation with Gerald.  I know this conversation will just be to conduct the STU but I have included potential feedback verbiage if the situation does progress to this point.

Hi Gerald, I wanted to touch base with you regarding an incident that occurred on Monday 4/6 while you were on site.

AMZ-BRY001339

Do you recall having an interaction with another employee outside the front of the building?  What can you tell me about the incident?

How did the interaction start? What prompted you and this individual to engage each other?

What did you say to the other individual?

What was the tone of the interaction, did you have an escalated tone/were you yelling? Did the other individual have an escalated tone/were you yelling?

Did you make any reference towards the other individual's appearance pertaining to drug use? What was said?

Did you call the individual a bitch?

Did you call the individual a cunt?

Did you call the individual a stupid nigger?

When engaging the individual any point did you tell them to shut up?

What happened when you told the individual to shut up?

Did you tell the individual that if they came over to you that you would make them shut up?

How did the interaction end?

Is there anyone that witnessed the situation?

Are there any other details you can recall from the interaction?

Are there any questions that I can answer for you at this time?  Thank you for your time, the site will continue to investigate the situation and will touch base with you once the investigation has concluded.

**Details of Incident**

R-
18

The following feedback pertains to Amazon's Standards of Conduct.  Abusive, vulgar, or harassing language to a supervisor, fellow associate, or vendor is prohibited and classified as a Category 2 violation of the Standards of Conduct.   Harassment is unwanted conduct that affects one's dignity at work. It is personally offensive and creates an intimidating, hostile, degrading, humiliating or offensive work environment.  On 4/6/2020, you were reported to be in violation of this policy by making vulgar and derogatory comments towards another employee.

**Areas of Improvement**

Amazon is committed to providing a work environment that promotes the health, safety, and productivity of its associates.  Associates are expected to treat each other, contractors, customers, and visitors with courtesy and professionalism.  Amazon will not tolerate Abusive, vulgar, or harassing language or behavior. You are expected to be in compliance with the Standards of Conduct policy at all times while working in the Fulfillment Center.  This feedback has resulted in separation of employment.

AMZ-BRY001341

Investigation Recap: Conversation with Gerald Bryson

**Do you recall having an interaction with another employee outside the front of the building?  What can you tell me about the incident?**

"Yes, there was a group peacefully protesting in the parking lot and this person came and sat on the side of some cars.  I did not see her at first and I heard someone say shut the f up, she told me to leave because she doesn't want this place shut down. I told her to go somewhere else and responded by saying your mother.  She looked like she was drugged out and so I started saying she looks like she is on drugs right now and told a safety member that they need to test her"

**How did the interaction start? What prompted you and this individual to engage each other?**

While peacefully protesting she said shut the fuck up (Gerald claims he strayed in neutral zone in between the parking lot and building where there is a walkway, maintaining social distancing and out of the way of anyone)

**What did you say to the other individual?**

After she told Gerald to shut up he said fuck off and told someone to take her and test her for drugs. She mouthed off saying "what are you going to do, I aint going inside what are you going to do about it? She then turned around before entering the building and said to Gerald, what are you going to do about it?  Gerald stated that he called the individual a bitch and claims she utilized inappropriate language but he could not recall specifics

**What was the tone of the interaction, did you have an escalated tone/were you yelling? Did the other individual have an escalated tone/were you yelling?**

Gerald claims that he was not yelling but did use the bullhorn to call her a bitch, he claims he walked away from her and kept the 6 feet.  He used the bullhorn to say where you at when he first heard a comment telling him to shut up but did not know where it came from.  She was sitting between cars smoking cigs, and once she stood up Gerald told her "I'm out here for all of us" and claims she responded by saying fuck off so Gerald responded to her saying you fuck off.

**Did you make any reference towards the other individual's appearance pertaining to drug use? What was said?**

Gerald stated that he made several comments pertaining to the individual appearing to be on drugs. Such as "Why are you out here doing drugs, your eyes are all up you look like you're on drugs now". Gerald stated that he told safety that they need to drug test her right now and that Amazon is hiring druggies.

**Did you call the individual a bitch?**

Yes

**Did you call the individual a cunt?**

No, Gerald stated that he does not speak like this

R-
18

AMZ-BRY001342

**Did you call the individual a stupid nigger?**

No this was not said, Gerald stated he would not say this as he is black.  "I know she wanted me to make commented about her sexuality because she is a dyke but I did not go there"

**When engaging the individual any point did you tell them to shut up?**

Yes

**What happened when you told the individual to shut up?**

Gerald claims she responded by telling him to make her shut up at which point he yelled out to safety to drug test this girl and get her away.

**Did you tell the individual that if they came over to you that you would make them shut up?**

No, I told the safety team to take her inside

**How did the interaction end?**

A member of Safety that was outside along with security told her to go inside

**Is there anyone that witnessed the situation?**

There was another female that witnessed the conversation but Gerald was unable to identify who the female was

**Are there any other details you can recall from the interaction?**

She got aggressive and was trying to instigate something but safety/security made her go inside.

R-
18

Investigation Recap: Conversation with Dimitra Evans

**How did the interaction start? What prompted you and this individual to engage each other?**

Dimitra was outside the front of the building smoking a cigarette when she made a comment to one of the security guards stating that she did not know there was another protest going on.  When she made this comment one of the male participants in the protest (Gerald) potentially heard and then engaged her.  The conversation went back and forth with Dimitra stating that employees should be happy Amazon is open and allowing them to earn a paycheck.  Dimitra claims that Gerald asked her where she is from to which she responded "your mother".  This upset Gerald and he began using inappropriate language.

**Did you use any inappropriate language or make any inappropriate gestures?**

Dimitra denies saying anything inappropriately when engaging Gerald (No curse words or derogatory statement).  Dimitra stated that she may have flipped Gerald off in response to some of the comments he made but cannot recall specifically if this happened.

**What was the tone of the interaction, did you have an escalated tone/were you yelling? Did the other individual have an escalated tone/were you yelling?**

Dimitra claims that Gerald was utilizing the megaphone when speaking to her and that others in the area would have heard the inappropriate comments.  Dimitra claims that that while she was walking away, Gerald utilized the megaphone and said "I'm going to make you shut up"  at which point Dimitra turned back towards Gerald responded "Make me shut up"

**How did the interaction end?**

Paul from security advised Dimitra to go inside and ignore the comments being made

**Is there anyone that witnessed the situation?**

Members of the security team including Kaydee witness the interaction

R-
19

| | |
|---|---|
| **From:** | Grabowski, Tyler [/O=AMAZON/OU=EXCHANGE ADMINISTRATIVE GROUP |
| | (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=2AC9ED9126C34EE4BD3D4B79F1EC85F4-GRABTYLE] |
| **Sent:** | 4/15/2020 9:53:00 AM |
| **To:** | Campbell, Bradley [bccampb@amazon.com]; Hernandez, Christine [hrnanch@amazon.com] |
| **CC:** | jfk8-hrbp@amazon.com |
| **Subject:** | RE: Gerald STU Template |
| **Attachments:** | Dimitra Evans Investigation Recap.docx |

Please see the attached outline of my conversation with Dimitra in regards to the incident with Gerald.  Let me know if there are any questions


Thank you


**From:** Grabowski, Tyler
**Sent:** Friday, April 10, 2020 5:03 PM
**To:** Campbell, Bradley <bccampb@amazon.com>; Hernandez, Christine <hrnanch@amazon.com>
**Cc:** jfk8-hrbp@amazon.com
**Subject:** RE: Gerald STU Template


Bradley/Christine,


Please see the attached notes from the STU conversation as well as the excel sheet with each of the allegations and which statements confirmed them.

Let me know if you have any questions


Thank you


**From:** Campbell, Bradley <bccampb@amazon.com>
**Sent:** Friday, April 10, 2020 1:06 PM
**To:** Grabowski, Tyler <grabtyle@amazon.com>; Hernandez, Christine <hrnanch@amazon.com>
**Subject:** RE: Gerald STU Template


I think that it is good.  A couple of items:

Are those all of the actual statements he allegedly made from witness statements?  Make sure each is captured.  And don't forget to make a chart to be very clear when we explain this for others.  Also make sure that you tell him that his badge is suspended due to the investigation.  I would also be prepared if he fully denies everything to ask if he posted anything about the incident on social media.


**From:** Grabowski, Tyler <grabtyle@amazon.com>
**Sent:** Friday, April 10, 2020 10:26 AM

R-
20

**To:** Hernandez, Christine <hrnanch@amazon.com>; Campbell, Bradley <bccampb@amazon.com>
**Subject:** Gerald STU Template

Bradley and Christine,

Please let me know your thoughts on the follow guide I was going to utilize in my conversation with Gerald.  I know this conversation will just be to conduct the STU but I have included potential feedback verbiage if the situation does progress to this point.

Hi Gerald, I wanted to touch base with you regarding an incident that occurred on Monday 4/6 while you were on site.

Do you recall having an interaction with another employee outside the front of the building?  What can you tell me about the incident?

How did the interaction start? What prompted you and this individual to engage each other?

What did you say to the other individual?

What was the tone of the interaction, did you have an escalated tone/were you yelling? Did the other individual have an escalated tone/were you yelling?

Did you make any reference towards the other individual's appearance pertaining to drug use? What was said?

Did you call the individual a bitch?

Did you call the individual a cunt?

Did you call the individual a stupid nigger?

When engaging the individual any point did you tell them to shut up?

What happened when you told the individual to shut up?

Did you tell the individual that if they came over to you that you would make them shut up?

R-20

AMZ-BRY001371

How did the interaction end?


Is there anyone that witnessed the situation?


Are there any other details you can recall from the interaction?


Are there any questions that I can answer for you at this time?  Thank you for your time, the site will continue to investigate the situation and will touch base with you once the investigation has concluded.

**Details of Incident**

The following feedback pertains to Amazon's Standards of Conduct.  Abusive, vulgar, or harassing language to a supervisor, fellow associate, or vendor is prohibited and classified as a Category 2 violation of the Standards of Conduct.   Harassment is unwanted conduct that affects one's dignity at work. It is personally offensive and creates an intimidating, hostile, degrading, humiliating or offensive work environment.  On 4/6/2020, you were reported to be in violation of this policy by making vulgar and derogatory comments towards another employee.

**Areas of Improvement**

Amazon is committed to providing a work environment that promotes the health, safety, and productivity of its associates.  Associates are expected to treat each other, contractors, customers, and visitors with courtesy and professionalism.  Amazon will not tolerate Abusive, vulgar, or harassing language or behavior. You are expected to be in compliance with the Standards of Conduct policy at all times while working in the Fulfillment Center.  This feedback has resulted in separation of employment.

AMZ-BRY001372

Investigation Recap: Conversation with Dimitra Evans

**How did the interaction start? What prompted you and this individual to engage each other?**

Dimitra was outside the front of the building smoking a cigarette when she made a comment to one of the security guards stating that she did not know there was another protest going on.  When she made this comment one of the male participants in the protest (Gerald) potentially heard and then engaged her.  The conversation went back and forth with Dimitra stating that employees should be happy Amazon is open and allowing them to earn a paycheck.  Dimitra claims that Gerald asked her where she is from to which she responded "your mother".  This upset Gerald and he began using inappropriate language.

**Did you use any inappropriate language or make any inappropriate gestures?**

Dimitra denies saying anything inappropriately when engaging Gerald (No curse words or derogatory statement).  Dimitra stated that she may have flipped Gerald off in response to some of the comments he made but cannot recall specifically if this happened.

**What was the tone of the interaction, did you have an escalated tone/were you yelling? Did the other individual have an escalated tone/were you yelling?**

Dimitra claims that Gerald was utilizing the megaphone when speaking to her and that others in the area would have heard the inappropriate comments.  Dimitra claims that that while she was walking away, Gerald utilized the megaphone and said "I'm going to make you shut up"  at which point Dimitra turned back towards Gerald responded "Make me shut up"

**How did the interaction end?**

Paul from security advised Dimitra to go inside and ignore the comments being made

**Is there anyone that witnessed the situation?**

Members of the security team including Kaydee witness the interaction

R-
20

**CONFIDENTIAL**

| Allegation | Dimitra Evans (Tier 1 AA) - Victim | Shaianna Donaldson (HR) – Witness | Christopher Urso (OB PA) – Witness | Maciej Curlej (IB Sr Ops) – Witness | Kaydee Bertone (Security) – Witness | Paul Chierchio (Site Security Manager) – Witness | Gerald Bryson POI (Tier 1 AA) - | Validated on Facebook Live broadcast |
|---|---|---|---|---|---|---|---|---|
| Gerald told Dimitra she looked like she was on drugs and that someone should test her | X | X | X | X | X | X | X | X |
| Gerald called Dimitra a Bitch | X | X | | | X | | X | |
| Gerald called Dimitra a Cunt | X | | | X | | | | |
| Gerald called Dimitra a Dumb Nigger | X | | | X | | | | |
| Gerald told Dimitra that if she came over to him he would make her shut up | X | | | | X | | Bryson claims he told her to shut up only. | |

1                                                        Gerald Bryson Allegations

R-21

On 4/17/20 I contacted Gerald Bryson by phone along with Senior Operations Manager Sergiy Sushalskyy to follow up on an investigation involving the associate.  I explained to Gerald that the site had concluded the investigation and based on the findings he would be receiving feedback for violating policy.  Sergiy then proceeded to read the following feedback to Gerald:

***Details of Incident***

*The following feedback pertains to Amazon's Standards of Conduct.  Abusive, vulgar, or harassing language to a supervisor, fellow associate, or vendor is prohibited and classified as a Category 2 violation of the Standards of Conduct.   Harassment is unwanted conduct that affects one's dignity at work. It is personally offensive and creates an intimidating, hostile, degrading, humiliating or offensive work environment.  On 4/6/2020, you were reported to be in violation of this policy by making vulgar and derogatory comments towards another employee.*

***Areas of Improvement***

*Amazon is committed to providing a work environment that promotes the health, safety, and productivity of its associates.  Associates are expected to treat each other, contractors, customers, and visitors with courtesy and professionalism.  Amazon will not tolerate abusive, vulgar, or harassing language or behavior. You are expected to be in compliance with the Standards of Conduct policy at all times while working in the Fulfillment Center.  These actions result in separation of employment.*

After delivering the feedback verbally, Gerald asked Sergiy and I "What so does this mean I'm fired".  I explained that based on the violation of policy it was resulting in separation of employment.  Gerald stated that Amazon is ridiculous and began to mention how the female associate had instigated the situation by making inappropriate comments.  Gerald wanted to know why he was being fired and claimed that no action was being taken against the female associate.  I informed Gerald that the site conducted an investigation and reviewed the actions of all individuals involved in accordance with policy but could not discuss other employees' situations with him.  Gerald asked for a copy of the termination document which has been sent to his personal email address (jcream1963@gmail.com).  No further questions or comments were made by Gerald and the conversation ended.

**AMZ-BRY000178**

Acknowledged by associate on April 17, 2020, 5:18:59 PM - Delivered by Lyerly,Sherman (lyerls)



# Supportive Feedback Document
# Behavioral - First Written



**Associate Name:** Evans,Dimitra (edimitra)
**Manager Name:** Chen,Calvin (DC1-0730)
**Created On:** April 17, 2020, 5:18:59 PM

## Summary

Your recent job performance is not meeting Behavioral expectations. Meeting performance standards is a critical component of your job. This document provides specific details about your performance and how you are not meeting expectations. In addition, this document describes the steps you and your manager will take to assist you in improving your performance. As a part of this conversation we are interested in understanding what barriers you think need to be removed, or what improvements can be made which would potentially assist you in improving your performance.

## Communication History

The following is a summary of your behavioral feedback:

| Level | Count | Most Recent |
|-------|-------|-------------|

## Details of Current Incident/Specific Concerns

The following feedback pertains to Amazon's Standards of Conduct. These behaviors are violations of Amazon's Standards of Conduct policy, &quot;Inappropriate Language or Behavior&quot; and is considered a Category 2 violation of the Standards of Conduct. It was found that you used inappropriate language while engaging another employee in the parking lot on 4/6/20.

## Areas of Improvement Required by Associate

The Standards of Conduct strive to establish a collaborative, non-hostile work environment. The acts of inappropriate behavior creates a hostile atmosphere and may offend others. You are expected to be in compliance with the Standards of Conduct policy at all times while working in the Fulfillment Center. Continued violation of this policy may result in further corrective action, up to and including termination.

## Associate Comments

<br><br><br><br><br>

**Associate Signature:** Acknowledged by Evans,Dimitra (BadgeID: 11975067)          **Date:** April 17, 2020, 5:18:59 PM


**Manager Signature:** Acknowledged by Lyerly,Sherman (BadgeID: 11682239)          **Date:** April 17, 2020, 5:18:59 PM

AMZ-BRY000148





Executive Summary

On 4.6.2020, a small protest occurred at JFK8 in Staten Island, NY.  During the protest, at least three AAs came into our parking lot with a bullhorn to verbally protest and engage with working AAs while on their lunch break.  A verbal altercation occurred between AA Gerald Bryson (T1), who was participating in the protest, and AA Dmitra Evans (T1) when she defended Amazon. By his own admission, Bryson escalated the altercation by calling Evans a "bitch" on the bullhorn and accusing her of drug use.  Evans admits to responding with "your mother" before returning into the building as observed by five witnesses, including HR, Sr. Operations and Loss Prevention. Three of the witness statements describe his behavior as "screaming, belligerent, verbally assaulting, and aggressive."   Bryson continued to protest and joined AA Jordan Flowers (T1) on a Facebook Live broadcast where he described the event that had just occurred.  He stated, "It got out of hand" when Amazon "sent out a plant" and is hiring "the scum of the earth."  Bryson uses the same language on the video that witnesses state was used during the altercation, but does not name her on the video.

Note:  While the NRLA may protect the protest activity that Bryson engaged in, he loses that protection due to this behavior.

**Strikes unlawful because of misconduct of strikers**. *Strikers who engage in serious misconduct in the course of a strike may be refused reinstatement to their former jobs. This applies to both economic strikers and unfair labor practice strikers. Serious misconduct has been held to include, among other things, violence and threats of violence. Sect 7 NRLA The Right to Strike.*

After review and agreement with Legal, ER, Regional Operations, Senior Ops and HR Leadership, we are in alignment for the termination of AA Gerald Bryson and a Final Written Warning for AA Dmitra Evans.

**Text for Termination:**

**Details of Incident**

The following feedback pertains to Amazon's Standards of Conduct.  Abusive, vulgar, or harassing language to a supervisor, fellow associate, or vendor is prohibited and classified as a Category 2 violation of the Standards of Conduct.   Harassment is unwanted conduct that affects one's dignity at work. It is personally offensive and creates an intimidating, hostile, degrading, humiliating or offensive work environment.  On 4/6/2020, you were reported to be in violation of this policy by making vulgar and derogatory comments towards another employee.

**Areas of Improvement**

Amazon is committed to providing a work environment that promotes the health, safety, and productivity of its associates.  Associates are expected to treat each other, contractors, customers, and visitors with courtesy and professionalism.  Amazon will not tolerate abusive, vulgar, or harassing language or behavior. You are expected to be in compliance with the Standards of Conduct policy at all times while working in the Fulfillment Center.  These actions result in separation of employment.

There are 26 cases at JFK8 where similar bullying or harassing behavior resulted in in a final written warning or termination.  Considering the precedent set by these 26 cases, there are six similar in nature where demeaning words are used that are not of a sexual nature.  Four of those resulted in termination and two resulted in a FWW.

AMZ-BRY000184



🔍 Search      How it works ⌄      Start a GoFundMe                    Sign in    |    Share      **Donate**

# Lead Protester Organizer Supporter

$**5,000** goal

   **Share**

   **Donate now**

 Become the first supporter
Your donation matters

**GOFUNDME GUARANTEE**

In the rare case something isn't right, we will work with you to determine if misuse occurred.

Gerald Bryson is organizing this fundraiser.

My name is Gerald Bryson i am one of the Amazon protester's and the 2nd person to be fired by Amazon during the co-vid-19 pandemic I was terminated from Amazon on My Day Off (JFK8 Staten Island Warehouse) for Protesting the unsafe conditions  Amazon had and still has in the Co -vid -19  Pandemic they refused to practice safe

R-29

conditions until myself and others protested them no mask or gloves or social distancing was observed from amazon when asked what they intended to do they told us they would get back to us and never did, we wanted safer conditions in place so we didn't bring the virus home to our families,friends,and general population of New York City and New Jersey amazon didnt care about our safety until we protested and the world found out how dirty they really are  i a long with others are still fighting them all the way to the courts to get our jobs back which were unfairly taken away from us false charges were used to terminate us i will continue to fight for whats right and for my job but i am now in need of financial support the money will be used for organizing events protest and protesting signs, transportation, food and water during protest,  meetings and other non violent gatherings to  bring justice to myself and all others that have been affected by Amazon in their bid to look innocent of their crimes its hard to deal with this problem with out a job during a pandemic and with out the support of others at this time and i am truely grateful for any assistance that may be provided here my goal is to expose Amazon to the world  with your help, they

are the definition of modern day slavery to all people and their commercials are nothing but white washed fences of lies so i ask you one more time please help me if you can and thank you for your support



# Be the first to help

Your early support will go a long way and

R-29

Fundraiser by Gerald Bryson - Lead Protester Organizer Supporter

help inspire others to donate.

**Donate now**

## Organizer

---

 **Gerald Bryson**
Organizer
Staten Island, NY

[ Contact ]

## Comments

---

**Please donate and share words of encouragement.**    Continue

---

Created July 16, 2020    |    ◯ Community & Neighbors

R-
29

Fundraiser by Gerald Bryson : Lead Protester Organizer Supporter

 Report fundraiser



**#1 FUNDRAISING PLATFORM**

More people start fundraisers on GoFundMe than on any other platform.

Learn more



**GOFUNDME GUARANTEE**

In the rare case something isn't right, we will work with you to determine if misuse occurred. Learn more



**EXPERT ADVICE, 24/7**

Contact us with your questions and we'll answer, day or night.

Learn more



**FUNDRAISE FOR**

Medical

Emergency

Memorial

Education

Nonprofit

**LEARN MORE**

How GoFundMe works

Why GoFundMe

Common questions

Success stories

Supported countries

Team fundraising

Donate button

Support COVID-19 fundraisers

**RESOURCES**

Help center

Blog

GoFundMe Stories

Press center

Careers

About

Choose your language

English (US) ⌄

R-29

© 2010-2021 GoFundMe     Terms     Privacy     Legal



R-
29

 Centers for Disease
Control and Prevention



## COVID-19

Keep a Safe Distance to Slow the Spread.

Updated Nov. 17, 2020　　　Print

Limiting close face-to-face contact with others is the best way to reduce the spread of coronavirus disease 2019 (COVID-19).

# What is social distancing?

Social distancing, also called "physical distancing," means keeping a safe space between yourself and other people who are not from your household.

To practice social or physical distancing, stay at least 6 feet (about 2 arm lengths) from other people who are not from your household in both indoor and outdoor spaces.

Social distancing should be practiced in combination with other everyday preventive actions to reduce the spread of COVID-19, including wearing masks, avoiding touching your face with unwashed hands, and frequently washing your hands with soap and water for at least 20 seconds.

# Why practice social distancing?

COVID-19 spreads mainly among people who are in close contact (within about 6 feet) for a prolonged period. Spread happens when an infected person coughs, sneezes, or talks, and droplets from their mouth or nose are launched into the air and land in the mouths or noses of people nearby. The droplets can also be inhaled into the lungs. Recent studies indicate that people who are infected but do not have symptoms likely also play a role in the spread of COVID-19. Since people can spread the virus before they know they are sick, it is important to stay at least 6 feet away from others when possible, even if you—or they—do not have any symptoms. Social distancing is especially important for people who are at higher risk for severe illness from COVID-19.

If you are sick with COVID-19, have symptoms consistent with COVID-19, or have been in close contact with someone who has COVID-19, it is important to stay home and away from other people until it is safe to be around others.

COVID-19 can live for hours or days on a surface, depending on factors such as sunlight, humidity, and the type of surface. It may be possible that a person can get COVID-19 by touching a surface or object that has the virus on it and then touching their own mouth, nose, or eyes. However, this is not thought to be the main way the virus spreads. Social distancing helps limit opportunities to come in contact with contaminated surfaces and infected people outside the home.

Although the risk of severe illness may be different for everyone, anyone can get and spread COVID-19. Everyone has a role to play in slowing the spread and protecting themselves, their family, and their community. In addition to practicing everyday steps to prevent COVID-19, keeping space between you and others is one of the best tools we have to avoid being exposed to this virus and slowing its spread in communities.

# Tips for Social Distancing

When going out in public, it is important to stay at least 6 feet away from other people and wear a mask to slow the spread of COVID-19. Consider the following tips for practicing social distancing when you decide to go out.

- **Know Before You Go:** Before going out, know and follow the guidance from local public health authorities where you live.

R-63

- **Prepare for Transportation:** Consider social distancing options to travel safely when running errands or commuting to and from work, whether walking, bicycling, wheelchair rolling, or using public transit, rideshares, or taxis. When using public transit, try to keep at least 6 feet from other passengers or transit operators – for example, when you are waiting at a bus station or selecting seats on a bus or train. When using rideshares or taxis, avoid pooled rides where multiple passengers are picked up, and sit in the back seat in larger vehicles so you can remain at least 6 feet away from the driver. Follow these additional tips to protect yourself while using transportation.

- **Limit Contact When Running Errands:** Only visit stores selling household essentials in person when you absolutely need to, and stay at least 6 feet away from others who are not from your household while shopping and in lines. If possible, use drive-thru, curbside pick-up, or delivery services to limit face-to-face contact with others. Maintain physical distance between yourself and delivery service providers during exchanges and wear a mask.

- **Choose Safe Social Activities:** It is possible to stay socially connected with friends and family who don't live in your home by calling, using video chat, or staying connected through social media. If meeting others in person (e.g., at small outdoor gatherings, yard or driveway gathering with a small group of friends or family members), stay at least 6 feet from others who are not from your household. Follow these steps to stay safe if you will be participating in personal and social activities outside of your home.

- **Keep Distance at Events and Gatherings:** It is safest to avoid crowded places and gatherings where it may be difficult to stay at least 6 feet away from others who are not from your household. If you are in a crowded space, try to keep 6 feet of space between yourself and others at all times, and wear a mask. Masks are especially important in times when physical distancing is difficult. Pay attention to any physical guides, such as tape markings on floors or signs on walls, directing attendees to remain at least 6 feet apart from each other in lines or at other times. Allow other people 6 feet of space when you pass by them in both indoor and outdoor settings.

- **Stay Distanced While Being Active:** Consider going for a walk, bike ride, or wheelchair roll in your neighborhood or in another safe location where you can maintain at least 6 feet of distance between yourself and other pedestrians and cyclists. If you decide to visit a nearby park, trail, or recreational facility, first check for closures or restrictions. If open, consider how many other people might be there and choose a location where it will be possible to keep at least 6 feet of space between yourself and other people who are not from your household.

Many people have personal circumstances or situations that present challenges with practicing social distancing to prevent the spread of COVID-19. Please see the following guidance for additional recommendations and considerations:

- Households Living in Close Quarters: How to Protect Those Who Are Most Vulnerable
- Living in Shared Housing
- People with Disabilities
- People Experiencing Homelessness

## More Information

How to Protect Yourself

Cleaning and Disinfecting Your Home

Gatherings and Community Events

Last Updated Nov. 17, 2020

R-63