UNITED STATES U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------- X
Kathy Drew-King, Regional Director of
Region 29 of the National Labor Relations
Board for and on behalf of the National Labor
Relations Board,

          Petitioner,

 -against-

Amazon.com Services LLC,

          Respondent.

------------------------------------------------------- 

**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S (1) MOTION TO TRY PETITION FOR TEMPORARY INJUNCTION UNDER SECTION 10(J) OF THE ACT ON THE BASIS OF ADMINISTRATIVE RECORD, INCLUDING HEARING TRANSCRIPT AND AFFIDAVITS AND (2) MOTION FOR ORDER TO SHOW CAUSE**

1:22-cv-01479-DG-SJB

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 4

    A.    A Temporary Injunction Under Section 10(j) Is An "Extraordinary Remedy" That Should Only Issue Upon Petitioner Carrying *Her* Burden Of Proof Through Competent And Admissible Evidence – Which She Has Not Done And Cannot Do. ............................................... 4

    B.    The Regional Director's Evidentiary Submission Turns On New Evidence From Outside Of The Board's Administrative Record And Which Amazon Has Every Right To Challenge In A Full Evidentiary Hearing After At Least Some Discovery. ............................... 5

    C.    Amazon Should Be Permitted To Supplement The Record. ..................... 7

III. CONCLUSION ............................................................................................................. 9

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*3M Co. v. CovCare, Inc.*,
  537 F. Supp. 3d 385 (E.D.N.Y. 2021) ...................................................................................4

*Drywall Tapers & Pointers of Greater New York, Loc. 1974 of I.B.P.A.T., AFL-CIO v. Loc. 530 of Operative Plasterers & Cement Masons Int'l Ass'n*,
  954 F.2d 69 (2d Cir. 1992)......................................................................................................3

*Dunbar v. Landis Plastics, Inc.*,
  996 F. Supp. 174 (N.D.N.Y. 1998).........................................................................................4

*Garcia v. Yonkers Sch. Dist.*,
  561 F.3d 97 (2d Cir. 2009).......................................................................................................4

*Kreisberg v. HealthBridge Mgmt., LLC*,
  732 F.3d 131 (2d Cir. 2013).....................................................................................................3

*Hoffman ex rel. N.L.R.B. v. Inn Credible Caterers, Ltd.*,
  247 F.3d 360 (2d Cir. 2001).....................................................................................................3

*Paulsen v. Remington Lodging & Hosp., LLC*,
  773 F.3d 462 (2d Cir. 2014).....................................................................................................3

*Silverman v. Major League Baseball Players Relations Committee*,
  880 F. Supp. 246 (S.D.N.Y. 1995) ..........................................................................................3

*Tough Traveler, Ltd. v. Outbound Prod.*,
  60 F.3d 964 (2d Cir. 1995).......................................................................................................7

**Statute**

29 U.S.C. § 160(j)............................................................................................................................3

## I.     INTRODUCTION

Pursuant to the Court's Order dated March 17, 2022, as amended on the record during the hearing before the Court on March 18, 2022, Respondent Amazon.com Services LLC ("Amazon") opposes, in part, the Motion of Petitioner Kathy Drew-King ("Petitioner" or "Regional Director"), on behalf of the National Labor Relations Board ("NLRB" or "the Board") to Try Petition for Temporary Injunction Under Section 10(j) of the Act on the Basis of Administrative Record, Including Hearing Transcript and Affidavits (ECF No. 5).[1]

Put simply, this Court should not endorse or facilitate Petitioner's outrageous scheme to interfere on behalf of the Union in the representation election at Amazon's JFK8 facility, which begins four days from now on March 25, 2022. As outlined in detail herein and in Amazon's responsive papers to the Petition for Temporary Injunction Under Section 10(j),[2] Mr. Bryson was terminated ***23 months ago*** in April 2020 for his vile, offensive, and disparaging verbal attack on a female JFK8 co-worker over a bullhorn and social media broadcasts. Now, just four days before the union representation election at JFK8 – after doing ***nothing for 23 months*** to protect the employee rights Petitioner now first claims have been at risk this whole time – Petitioner files this grossly untimely Petition seeking an extraordinary remedy. In support of its years-late filing,

---

[1] The Court's Order of March 17, 2022 also requested that Amazon respond to Petitioner's Motion for Order to Show Cause. (ECF No. 2). As explained further below and in its contemporaneously filed Memorandum of Law in Opposition to Temporary Injunction, if the Court is not inclined to dismiss the Petition at this stage, Amazon strongly objects to this case being decided on an expedited basis without discovery or a hearing including at least some witness testimony, whether live or by deposition.

[2] *See* Answer And Defenses Of Respondent Amazon.Com Services LLC To Petitioner's Petition For Temporary Injunction Under Section 10(J) Of The National Labor Relations Act ("Answer"); Memorandum Of Law In Response To Petitioner's Memorandum Of Points And Authorities For Temporary Injunction Under Section 10(J) Of The National Labor Relations Act ("Response to Petition").

1

Petitioner submits a brief twice as long as this Court's rules allow, along with four brand new affidavits rife with hearsay – and has the audacity to ask this Court to rule without permitting Amazon to present testimony relevant to the Petition, or even challenge Petitioner's newly disclosed affidavits. Amazon's due process rights, and the rights of all its JFK8 employees, should not be undercut by a phony crisis manufactured by Petitioner's own intentional strategic delay.

Subject to all evidentiary objections, Amazon does not object to the Court's consideration of the administrative record made in the underlying trial of the unfair labor practice ("ULP") allegations contained in the Board's December 22, 2020 Complaint and March 29, 2021 Amended Complaint.  GC Exs. 1(D), 1(I).  At a minimum, Amazon must be permitted to pose objections to the massive amounts of hearsay that Petitioner sought to introduce under the looser evidentiary rules in NLRB trials. *See* Pet. Mem. at 9-10.[3] Moreover, the Court should take note of the ruling of Board Administrative Law Judge Benjamin Green ("ALJ Green") that much of evidence relied on by Petitioner in the administrative record is "useless" to the consideration of this case.[4]   But subject to protection of these objections, Amazon does not object to consideration of relevant portions of the record.

---

[3] *See, e.g.,* GC Ex. 54, *Now This*, "Amazon and Instacart Workers Are Striking For Better Coronavirus Protections; *see also* GC Exs. 55–61.

[4] On May 25, the ALJ ruled that the evidence relied on in this section of Petitioner's brief was unnecessary and "useless":

> "[W]e don't need animus in this case. Listen, people, you might not like it. I don't really understand why you don't like it, but the fact is that the Respondent's admission did significantly reduce the scope of this proceeding. To the extent that the Respondent is admitting that Mr. Bryson engaged in [PCA] and his altercation with Ms. Evans occurred during the protected activity, for either – for either analysis, that had the effect of significantly reducing the scope of this – the scope of this litigation. ***And the fact that we have the – the altercation on tape rendered a great deal of additional evidence – not irrelevant, just useless***. And so we have a fairly narrow -- we have a barely – fairly narrow issue before us. And I would like the parties to try and focus on it."

Tr. 1794 (emphasis added).

That, however, is the limit to which Amazon can agree.  While Amazon submits that the Court can – and should – deny the Petition on the present state of record, if it is not prepared to do so, more would be required to decide this case.  Amazon objects to the Court deciding this important matter, in which Petitioner seeks an "extraordinary remedy," solely on that inchoate record without supplementation from Amazon on the critical elements applied to *the different legal standards* in *this different case.*  At a minimum, Amazon must also be afforded the opportunity to take discovery of, and cross-examine, Petitioner's affiants, all of whom gave affidavits *outside of* the voluminous administrative record compiled before ALJ Green.[5]  Indeed, the administrative record developed before ALJ Green contains evidence relevant to only one of the three burdens that Petitioner must carry on the late-filed Petition before this Court – whether "reasonable cause" exists to believe that Amazon committed a ULP.  The administrative record, however, does ***not*** address whether Petitioner can establish her additional burdens – (1) that the extraordinary relief sought under Section 10(j) is "just and proper" or (2) that traditional equitable principles support entry of temporary injunctive relief.  In fact, as will be explained in more detail in Amazon's separate Memorandum of Law in Response to Petitioner's Memorandum of Points and Authorities for Temporary Injunction Under Section 10(j) of the National Labor Relations Act ("Response to Petition") (filed contemporaneously with this Opposition), Petitioner clearly wants to proceed on a very limited record because she cannot establish any of the requisite elements to her Petition if the record expands beyond that developed before ALJ Green.

---

[5] Petitioner called both Bryson and Palmer as witnesses in the underlying NLRB trial and both testified at length.  However, Petitioner did not seek to elicit the testimony contained in the affidavits on which she relies herein.

## II.     ARGUMENT

### A.     A Temporary Injunction Under Section 10(j) Is An "Extraordinary Remedy" That Should Only Issue Upon Petitioner Carrying *Her* Burden Of Proof Through Competent And Admissible Evidence – Which She Has Not Done And Cannot Do.

Because the standard for granting interim relief under Section 10(j) is relevant to whether the Court should try this Petition on the administrative record and affidavits, Amazon provides a short overview of that standard. Injunctive relief pursuant to Section 10(j) is "an extraordinary remedy." *Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 141 (2d Cir. 2013). In deciding whether to grant such an extraordinary remedy, the Court must decide that the "requested relief is just and proper" and that "reasonable cause" exists to believe that "unfair labor practices have been committed." *See, e.g., Hoffman ex rel. N.L.R.B. v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 368 (2d Cir. 2001); 29 U.S.C. § 160(j). In addition, the "just and proper" prong requires applying "traditional equitable principles governing injunctive relief" in the context of federal labor laws. *Hoffman*, 247 F.3d at 368. Consistent with traditional equity practice, a court only should issue a temporary injunction "when it is necessary to prevent irreparable harm or to preserve the status quo." *Paulsen v. Remington Lodging & Hosp., LLC*, 773 F.3d 462, 469 (2d Cir. 2014). The Second Circuit "adheres to a stringent 'irreparable injury' requirement when considering § 10(j) petitions." *Silverman v. Major League Baseball Players Relations Committee*, 880 F. Supp. 246, 255 (S.D.N.Y. 1995) (Sotomayor, J.), *aff'd*. 67 F.2d 1054 (2d Cir. 1995). In evaluating the alleged irreparable injury, "the main focus of a § 10(j) analysis should be on harm to [union] organizational efforts." *Remington*, 773 F.3d at 469.

"A hearing is generally required on a motion for a preliminary injunction." *Drywall Tapers & Pointers of Greater New York, Loc. 1974 of I.B.P.A.T., AFL-CIO v. Loc. 530 of Operative Plasterers & Cement Masons Int'l Ass'n*, 954 F.2d 69, 76 (2d Cir. 1992). Even when dealing with

4

true emergencies—not the phony emergency cynically manufactured entirely by the Petitioner here—courts must hold an evidentiary hearing to resolve material disputed facts. *See, e.g.*, *3M Co. v. CovCare, Inc.*, 537 F. Supp. 3d 385, 395–96 (E.D.N.Y. 2021) ("On a motion for preliminary injunction, where essential facts are in dispute, there must be a hearing . . . and appropriate findings of fact must be made."); *Dunbar v. Landis Plastics, Inc.*, 996 F. Supp. 174, 178 (N.D.N.Y. 1998) ("I agree that it would be inappropriate for me to resolve disputed factual issues on the basis of affidavit evidence alone."). And even in real emergencies – not this contrived one – a court must allow a respondent "sufficient time to marshal his evidence and present his arguments against the issuance of the injunction." *Garcia v. Yonkers Sch. Dist.*, 561 F.3d 97, 105 (2d Cir. 2009).

While "the need for an evidentiary hearing will vary from case to case" in Section 10(j) matters, *Dunbar*, 996 F. Supp. at 178, this case cries out for discovery and an evidentiary hearing. Petitioner relies heavily upon new hearsay affidavits not included in the Board's administrative record. This new evidence goes to the heart of Petitioner's burden to prove that the injunctive relief sought is "just and proper." Rarely has a Section 10(j) case more strongly called for discovery and an evidentiary hearing. That is, of course, unless the Court – as it has every reason to do – denies the Petition outright because even as pleaded, Petitioner falls far short of demonstrating that the "extraordinary remedy" she belatedly seeks is "just and proper" or supported by "reasonable cause."

      **B.**      **The Regional Director's Evidentiary Submission Turns On New Evidence From Outside Of The Board's Administrative Record And Which Amazon Has Every Right To Challenge In A Full Evidentiary Hearing After At Least Some Discovery.**

Petitioner relies heavily upon four non-record affidavits. Petitioner purports to have obtained these affidavits from Charging Party Gerald Bryson on February 25, 2022, and from non-parties Christian Smalls, Derrick Palmer and Tristian Martinez on February 24, 2022, and

November 9 and 10, 2021, respectively. See Petition Exhibits G(i) to G(iv). Petitioner's reliance on this new evidence militates strongly in favor of both discovery and an evidentiary hearing for the following reasons:

- The first time Amazon saw these new affidavits was upon their service in this case on Thursday, March 17, 2022. Petitioner gave Amazon no notice that it intended to rely on extra-record materials.

- None of the affiants have been subject to cross-examination on the content of their affidavits, which forms the sole basis for Petitioner's "just and proper" argument under the Section 10(j) framework. While these affidavits contain numerous admissions that clearly undermine Petitioner's claims of irreparable harm and provide, by themselves, grounds for the Court to deny Petitioner's requested relief,[6] to the extent that the Court does not deny the Petition outright without a hearing, Amazon must be permitted the opportunity to test the veracity of the affiants through cross-examination. Otherwise, the Court cannot assess the weight, if any, to accord, the content of the affidavits.

- The affidavits are hearsay. The affiants are all available for deposition and, if necessary, for testimony in an evidentiary hearing. In fact, according to the affidavits and the admissions of Petitioner's counsel, the affiants all reside within the jurisdiction of this Court and have been actively engaged in campaigning on behalf of the Amazon Labor Union ("ALU") in advance of the upcoming representation election supervised by the Board. Further, as acknowledged by her counsel during the telephonic conference on Friday, March 18, 2022, Petitioner has had sole control over the timing of the filing of the Petition. Had Petitioner filed this Petition at an appropriate time (i.e., any time over the preceding 23-plus months), Amazon would have had a reasonable period of time to conduct discovery regarding the allegations contained in the affidavits. In fact, the Regional Director cannot credibly explain why she obtained two of the declarations on November 9 and 10, 2021, but then waited *5 months* to file her Petition.[7] Similarly, the Regional

---

[6] The Petitioner's affidavits make clear that a union election is scheduled to start in four days, running from March 25-30, 2022. The CGC's own last-minute affiants – the union organizers, including Bryson and Smalls – directly contradict her central theme that Bryson's termination has somehow impeded this organizing effort. (Smalls Aff. ¶ 2; Bryson Aff. ¶ 13).

[7] When the Court asked precisely this question during the telephonic conference on March 18, 2022, counsel for the Petitioner offered explanations about the process by which Regional Office 29 of the NLRB had to seek authority from the NLRB's headquarters in Washington, D.C. What he never explained is why the Regional Office waited so long to seek such approval. And that is because the obvious reason for the massive delay is that an early filing would not have generated the same headline-grabbing impact just days before the

6

Director cannot explain why Amazon should be denied the right to challenge the affiants simply because she waited – and waited some more – to file her Petition.

- Much of the content of the affidavits is anonymous double hearsay. For example, Affiant Derrick Palmer stated: "Sometime in October 2021, I had about one or two employees tell me that they spoke to Amazon managers and that there was no point in joining the ALU. I do not know the employees' names." (Palmer Aff. ¶ 36). Bryson attested: "I have had conversations and sometimes arguments with 'smart aleck' people who told me things like 'you are so smart, talking about a union that is probably not gonna be and you have no job, without a determination on your case.' I do not recall these workers [sic] names who told me this." (Bryson Aff. ¶ 6). Any such double hearsay is inherently unreliable and should be dismissed out of hand. Notably, this double hearsay goes to the heart of the "just and proper" element – whether the JFK8 associates were "chilled" in the exercise of union organizing activity. At the very least, were the Court to provide these affidavits any evidentiary weight, the Court should allow Amazon the opportunity to challenge the veracity of this hearsay and potentially present additional testimony either from the anonymous witnesses or others that dispute the untested allegations in the affidavits.

    **C.    Amazon Should Be Permitted To Supplement The Record.**

What Petitioner proposes – a one-sided presentation of only her cherry-picked evidence – would constitute a classic deprivation of due process. In addition to being able to challenge Petitioner's evidence, the Court should permit Amazon to supplement the record with evidence that challenges every element of the Petitioner's case. As discussed at the conference on March 18, 2022, the compressed schedule created by Petitioner's untimely filing has, by design, prevented Amazon from presenting such supplemental evidence at the same time as having to rapidly prepare for the conference on March 18 and respond to Petitioner's three motions by 5:00 pm on March 21, 2022 – all while preparing for the largest manual representation election conducted by the NLRB in years.

While Amazon has not had a full opportunity to chart out all of the areas of the record it

---

upcoming union election at Amazon's JFK8 facility. A quick Google search of "nlrb amazon bryson injunction" well demonstrates that the Board already has abused its statutory authority and this Court's civil process in furtherance of that goal.

7

might supplement, some areas may include:

- Evidence from Petitioner regarding the extent of the ALU's showing of interest to support the two union representation elections now scheduled to be supervised by the Board at Amazon's JFK8 and LDJ5 facilities and seeking to explore the veracity of Petitioner's contention that Amazon employees at those sites are so fearful of their job security that they will not support the ALU.

- Evidence explaining why Petitioner sat back and declined to pursue this extraordinary relief any time in the preceding 23 months if she was genuinely concerned that Bryson's April 2020 termination was having a negative impact on the Section 7 rights of the employees. *Tough Traveler, Ltd. v. Outbound Prod.*, 60 F.3d 964, 968 (2d Cir. 1995) (A failure to act quickly "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury.").

- Evidence of the robust union organizing activity that has blossomed at JFK8 since the ALU formed in April 2021 and in the prior year, all of which occurred after Bryson's termination. Such evidence, of course, would grossly undercut Petitioner's baseless argument that Amazon's employees at JFK8 are afraid to support the ALU because, two years ago, Amazon terminated Bryson's employment following his vile, offensive, and profane verbal assault on a female co-worker over a bullhorn in front of the main entrance to the JFK8 facility at midday.

- Evidence that JFK8 workers openly wear ALU paraphernalia at work, solicit aggressively in breakrooms, actively disrupt employer meetings regarding the election and voluntarily participate in the ALU's extensive social media and publicity efforts.

8

>   This is not the conduct of a workforce cowed into submission because Bryson was terminated almost two years ago. Such evidence would undermine the entire foundation of the Petitioner's request for injunctive relief – that Bryson's continued absence from the workplace is somehow chilling the associates support for the ALU.

- Evidence explaining why Petitioner squirreled away her affidavits in support of this relief for months, only to spring them in this filing a week before the JFK8 union election.

While the Court can – and should – deny outright the Petitioner's request for a temporary injunction as thoroughly improper and inadequately supported upon her initial filing, if the Court has any inclination to consider it further, the Court should schedule a hearing at a time that would permit Amazon to obtain some focused discovery from Petitioner and the affiants and give it a reasonable opportunity to supplement the record with competent evidence of its own. Accordingly, the Court should deny Petitioner's Motion to hear this case solely on the one-sided record upon which she relies and afford Amazon a reasonable opportunity to challenge the Petitioner's evidence and to create a record of its own.

### III. <u>CONCLUSION</u>

The Court should deny the Motions (ECF Nos. 2 and 5). In the event the Court does not deny the Petition outright, the Court should order the parties to submit a proposed scheduling order that provides for (1) production by Petitioner of documents directed to new matters outside the Board's administrative record, including, without limitation, the reasons for the Petitioner's extraordinary delay in bringing the Petition and regarding Petitioner's claims of irreparable harm and, relatedly, the extent of the support of the ALU at JFK8 and LDJ5, (2) a reasonable time after the production of documents to complete depositions of the four affiants, Gerald Bryson, Derrick Palmer, Tristan Martinez, and Christian Smalls, and (3) a date for an evidentiary hearing that

9

accommodates the need for discovery.  To the extent the parties cannot agree on a schedule, the Court should direct the parties to appear at a conference for the purposes of entering a scheduling order.

| | |
|---|---|
| Dated: March 21, 2022 | Respectfully submitted,<br><br>By:  */s/ Douglas T. Schwarz*<br>Douglas T. Schwarz<br>MORGAN, LEWIS & BOCKIUS LLP<br>101 Park Avenue<br>New York, NY 10178<br>Phone: 212-309-6000<br>Fax: 212-309-6001<br>douglas.schwarz@morganlewis.com<br><br>-and-<br><br>Richard G. Rosenblatt (*pro hac vice* pending)<br>MORGAN, LEWIS & BOCKIUS LLP<br>502 Carnegie Center<br>Princeton, NJ 08540-6289<br>Phone: 609-919-6600<br>Fax: 608-919-6701<br><br>Christopher J. Murphy (*admitted pro hac vice*)<br>MORGAN, LEWIS & BOCKIUS LLP<br>1701 Market Street<br>Philadelphia, Pennsylvania 19103-2921<br>Phone: 215-963-5000<br>Fax: 215-963-5001<br><br>-and-<br><br>Kelcey J. Phillips (*pro hac vice* forthcoming)<br>MORGAN, LEWIS & BOCKIUS LLP<br>1111 Pennsylvania Avenue, NW<br>Washington, DC 20004-2541<br>Phone: 202-739-3000<br>Fax: 202-739-3001<br><br>*Attorneys for Respondent* |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21 day of March, 2022, a true and correct copy of the foregoing Memorandum of Law in Opposition to Petitioner's (1) Motion to Try Petition for Temporary Injunction Under Section 10(J) of the Act on The Basis Of Administrative Record, Including Hearing Transcript and Affidavits And (2) Motion for Order to Show Cause was served via the Court's ECF filing system upon all counsel of record.

*/s/ Douglas T. Schwarz*
Douglas T. Schwarz