**EXHIBIT D**

**FILED UNDER SEAL**

```
            UNITED STATES DISTRICT COURT
            EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -x
KATHY DREW-KING, REGIONAL DIRECTOR OF
REGION 29 OF THE NATIONAL LABOR
RELATIONS BOARD for and on behalf of THE
NATIONAL LABOR RELATIONS BOARD,

        Petitioner,

                    No. 1:22-cv-01479

    -v-

AMAZON.COM SERVICES LLC,

        Respondent.

- - - - - - - - - - - - - - - -x

              101 Park Avenue
              New York, New York 10178

              May 25, 2022
              10:17 A.M.
```

  VIDEOGRAPHED DEPOSITION of CHRISTIAN SMALLS, taken by THE RESPONDENT, in the above-entitled action, held at the above time and place, taken before CYNTHIA C. LANANNA, a Shorthand Reporter and Notary Public within and for the State of New York.

```
              MAGNA LEGAL SERVICES
                 (866) 624-6221
                www.MagnaLS.com
```



Page 6

```
 1
 2            At this time, we would ask
 3    all Counsel to please enter their
 4    appearance, providing their name,
 5    firm they're with, and the
 6    parties they represent for the
 7    video record.
 8            MR. ROSENBLATT:
 9    Richard Rosenblatt of Morgan
10    Lewis and Bockius on behalf of
11    Defendant Amazon.  Also appearing
12    today is Christopher Murphy and
13    Samantha Ojo, O-J-O, of Morgan
14    Lewis as well as Corporate
15    Counsel from Amazon, Sara Kalis.
16            MR. MEADOWS:  This is
17    Max Meadows from Quinn Emanuel on
18    behalf of the Witness,
19    Christian Smalls, accompanied by
20    Samuel Donohue from Quinn
21    Emanuel.
22            MS. COX:  Evamaria Cox with
23    the National Labor Relations
24    Board on behalf of Petitioner,
25    Kathy Drew-King.  Participating
```

Page 7

```
 1
 2    by phone is Nancy Reibstein on
 3    behalf of the National Labor
 4    Relations Board.
 5            MR. KEARL:  Frank Kearl,
 6    Make the Road New York.  I
 7    represent charging party in the
 8    underlying matter.
 9            THE VIDEOGRAPHER:  Thank
10    you.  Madame Court Reporter
11    Lananna, will you please swear in
12    the Witness at this time, after
13    which we may proceed.  The time
14    on the video monitor, 10:19 A.M.
15    C H R I S T I A N  D.  S M A L L S,
16    the Witness herein, having been first
17    duly sworn by a Notary Public of the
18    State of New York, was examined and
19    testified as follows:
20            THE COURT REPORTER:  State
21    your name for the record, please.
22            THE WITNESS:  Christian D.
23    Smalls.
24            THE COURT REPORTER:  State
25    your address for the record,
```

Page 8

```
 1
 2    please.
 3            THE WITNESS:  135 Seymour
 4    Avenue, Newark, New Jersey 07108.
 5    EXAMINATION
 6    BY MR. ROSENBLATT:
 7        Q. Good morning again, Mr. Smalls.
 8    As I mentioned a moment ago when we
 9    first met, my name is
10    Richard Rosenblatt of Morgan Lewis and
11    Bockius, and I really appreciate you
12    taking time out of what I know is a
13    very busy schedule to appear today for
14    your deposition, okay?
15        A. Okay.
16        Q. Have you ever given a deposition
17    before?
18        A. No.
19        Q. So what I'm -- I'm going to go
20    through some of what I'll call,
21    "testimonial tips," or, "ground rules,"
22    whatever you want to call them, to help
23    our day go as smoothly as possible,
24    okay?
25        A. Sure.
```

Page 9

```
 1              C. SMALLS
 2        Q. One of them is -- and you're
 3    already pretty good at it -- is that
 4    you need to speak your answers.  You
 5    can use, you know, body language, hand
 6    gestures, except for one I would be
 7    offended by.  Other than that, you
 8    can -- you can speak as you normally
 9    would, you can use hand gestures as you
10    normally would, but it's very important
11    for our court reporter that you
12    actually speak your answers; you
13    understand that?
14        A. Yes.
15        Q. Okay.  It's also very difficult
16    for the court reporter to take down
17    um's and things like that, so what I'd
18    ask for you to do is, you know, if the
19    answer is yes or no, articulate that
20    clearly, okay?
21        A. Yes.
22        Q. If you have something more to
23    say as well, obviously continue to talk
24    as you need, okay?
25        A. Absolutely.
```



Page 194

```
 1                C. SMALLS
 2       A. Yes.
 3       Q. Thank you.  I'm not sure that I
 4   got an answer -- and if I did, I
 5   apologize -- but why was the section of
 6   the website that identified officers --
 7   why was that deleted in the last week?
 8           MR. MEADOWS:  Objection.
 9       Scope.
10       A. We're making some changes.
11   We're in the process of making some
12   changes.
13       Q. Have the changes been made yet?
14       A. No.
15       Q. Are you still the President?
16   The --
17       A. Interim President.
18       Q. -- Interim President?
19       A. Yes.
20       Q. Is Mr. Palmer still Interim Vice
21   President?
22           MR. MEADOWS:  Objection.
23       Form.  Scope.
24       A. We're making some changes.
25       Q. As of today, is he still the
```

Page 195

```
 1                C. SMALLS
 2   Interim Vice President?
 3       A. We're in the process of making
 4   some changes.
 5       Q. As of today, is Madeline Wesley
 6   still the Treasurer?
 7           MR. MEADOWS:  Objection.
 8       Scope.
 9       A. No.  We're still making some
10   changes.
11       Q. As of today, is Karen Ponce the
12   Secretary?
13           MR. MEADOWS:  Objection.
14       Scope.
15       A. No.
16       Q. The answer's, "no," you said?
17       A. No.  We're still making some
18   changes.
19       Q. And you'd agree with me, would
20   you not, that Mr. Bryson was not
21   identified as Sergeant At Arms on your
22   website, correct?
23           MR. MEADOWS:  Objection.
24       Form.  Foundation.
25       A. Yes, correct.
```

Page 196

```
 1                C. SMALLS
 2       Q. And as of today he's not
 3   identified as Sergeant At Arms on the
 4   website, correct?
 5       A. No.
 6       Q. Was he ever identified on the
 7   website as a, quote, "Security
 8   Officer," close quote?
 9           MR. MEADOWS:  Objection.
10       Form.  Foundation.
11       A. No.
12       Q. How -- strike that.
13           Does Mr. Bryson have a title
14   with the ALU?
15           MR. MEADOWS:  Objection.
16       Form.
17       A. Lead Organizer.
18       Q. Was he ever the Sergeant At
19   Arms?
20           MR. MEADOWS:  Objection.
21       Form.
22       A. Informal.
23       Q. What does that mean?
24       A. You know, we didn't have no
25   election for that title, but informally
```

Page 197

```
 1                C. SMALLS
 2   he would call himself that.
 3       Q. "He would call himself that,"
 4   you said?
 5       A. Yeah.
 6       Q. Did you call him Sergeant At
 7   Arms?
 8           MR. MEADOWS:  Objection.
 9       Form.
10       A. Informally.
11       Q. Is there any written document
12   that refers to him as Sergeant At Arms?
13       A. No.
14           MS. COX:  Objection.  Beyond
15       the scope.
16       Q. Is there any written document
17   that refers to him as a Security
18   Officer?
19       A. No.
20           MR. MEADOWS:  Objection.
21       Form.  Scope.
22       Q. Now, as of last week the ALU's
23   constitution and by-laws were up on its
24   website, correct?
25           MR. MEADOWS:  Objection.
```



Page 198

```
 1                C. SMALLS
 2       Form.  Foundation.
 3       A. Possibly.
 4       Q. Well, did you ever see them
 5   linked onto the website?
 6       A. I never went on the website.
 7       Q. Ever?
 8            MR. MEADOWS:  Objection to
 9       form.
10       A. I have.  I didn't go on it last
11   week though.
12       Q. Was -- were you aware that prior
13   to last week the ALU's constitution and
14   by-laws were posted on the website?
15       A. Yes.
16       Q. You were so aware, correct?
17       A. Yes.
18            MR. MEADOWS:  Objection to
19       form.
20       Q. And are you aware now that
21   those -- the link to that constitution
22   and by-laws is no longer on the
23   website?
24            MR. MEADOWS:  Objection to
25       form.
```

Page 199

```
 1                C. SMALLS
 2       A. I'm aware now.
 3       Q. And why was that link taken off
 4   the website?
 5            MR. MEADOWS:  Objection.
 6       Scope.
 7            MS. COX:  Objection.  Scope.
 8       A. We're making some changes.
 9       Q. Were you aware that witnesses
10   last week were asked questions about
11   the constitution and by-laws in their
12   depositions?
13            MR. MEADOWS:  Objection to
14       form.
15       A. I was not aware.
16       Q. Did you participate in any
17   conversations or other communications
18   with any of the witnesses who have
19   testified in this case about their
20   testimony?
21       A. No.
22            MR. MEADOWS:  Objection to
23       form.
24       Q. Do you agree with me that there
25   are any number of reasons why an Amazon
```

Page 200

```
 1                C. SMALLS
 2   associate might not want to support the
 3   ALU?
 4            MR. MEADOWS:  Objection to
 5       form.
 6       A. Rephrase that.
 7       Q. Sure.  To your knowledge,
 8   some -- some of the Amazon associates
 9   support the ALU and some don't, right?
10       A. Yes.
11       Q. And there could be any number of
12   reasons why someone doesn't support the
13   ALU, correct?
14            MR. MEADOWS:  Objection to
15       form.
16       A. Yes.
17       Q. For example, someone might just
18   feel that they don't need a union,
19   right?
20            MR. MEADOWS:  Objection to
21       form.
22       A. Yes.
23       Q. They may feel like they don't
24   want to pay dues, correct?
25            MS. COX:  Objection to form.
```

Page 201

```
 1                C. SMALLS
 2       A. Yes.
 3       Q. They may feel that they have
 4   adequate job security such that they
 5   don't need a union, correct?
 6            MR. MEADOWS:  Objection to
 7       form.
 8       A. Yes.
 9       Q. An associate might want to get
10   promoted and they're concerned how
11   support for the union might make them
12   look, right?
13            MR. MEADOWS:  Objection to
14       form.
15       A. I'm not agreeing with that one.
16       Q. Sometimes employees just don't
17   want to get involved, right?
18            MR. MEADOWS:  Objection to
19       form.
20       A. Is that a question?
21       Q. Yeah.  That could be a reason
22   why someone doesn't want to --
23       A. "Get involved," as far as what?
24       Q. The union organizing activity.
25            MR. MEADOWS:  Objection to
```

51 (Pages 198 to 201)



Page 250

C. SMALLS

form.
A. I might have.
Q. When you say you might have, did you?
MR. MEADOWS: Objection to form.
A. If I had to at the time, I would have. Yes.
Q. Do you know if other people did as well?
A. If their schedule aligned, yes.
Q. Do you know a process assistant named Pasqual or otherwise Pat Cioffi, C-I-O-F-F-I?
MR. MEADOWS: Objection to form.
A. Do I know him?
Q. Yeah.
A. I know of him, yes. I'm --
Q. In that press conference we talked about a little bit earlier in the election, he was one of the speakers, correct?
A. Yes.

Page 251

C. SMALLS

MR. MEADOWS: Objection to form.
Q. And do you recall that he stated at the press conference that he was able to flip 400 to 500 nos to yeses?
MR. MEADOWS: Objection to form. Foundation.
Q. Do you remember him saying that?
A. Yeah.
Q. And he said he did it in about three and a half weeks, right?
A. Yes.
MR. MEADOWS: Objection to form. Foundation.
Q. Do you know what three and a half weeks he did it in, roughly?
A. No.
Q. Did -- was he one of the more effective union organizers?
MR. MEADOWS: Objection to form. Foundation.
A. I mean, what do you define by, "effective?"
Q. Well, flipping people to nos to

Page 252

C. SMALLS

yeses.
MR. MEADOWS: Objection to form.
A. We all did that.
Q. Do you know how many signed cards you ultimately submitted to get that second election?
MR. MEADOWS: Objection to form. Foundation. Scope.
A. I don't remember.
Q. Was it over 2,000?
MR. MEADOWS: Objection to form.
A. It could have been.
Q. So if one particular person was able to get 400 to 500 nos to yeses, that's a pretty significant development, right?
MR. MEADOWS: Objection to form.
A. He didn't help sign people up.
Q. But he -- okay, so he got involved later in the game, right?
MR. MEADOWS: Objection to

Page 253

C. SMALLS

form.
A. Flipping nos to yeses.
Q. Yeah, and that was -- was that after the second petition for election was filed?
MR. MEADOWS: Objection to form.
A. That was after we were set to have an election.
Q. So that would have been after December 21st of 2021, correct?
MR. MEADOWS: Objection to form.
A. Yes.
Q. So between December and -- between December 21, 2021, and the time of the election, Mr. Cioffi claimed that he had flipped 400 to 500 nos to yeses, correct?
MR. MEADOWS: Objection to form. Foundation.
A. Yes, that's what he claimed.
Q. And do you have any reason to disagree with what he said?

MAGNA Legal Services

Page 282

```
 1              C. SMALLS
 2    him, "are you aware?"
 3        A. No. I am now.
 4        Q. And the ALU is continuing its
 5    efforts to organize at JFK8, correct?
 6           MR. MEADOWS: Objection to
 7        form.
 8        A. Yes. We won the election.
 9        Q. Right, and your goal is to get a
10    contract, right?
11           MR. MEADOWS: Objection to
12        form.
13        A. Yes.
14        Q. And one of the things that you
15    think might help you get a contract is
16    political support, correct?
17           MR. MEADOWS: Objection to
18        form. Scope.
19        A. No, not sure what will help.
20    We're still organizing.
21        Q. You'll -- you'll do whatever it
22    takes to get that first contract,
23    right? Whatever, legally, you can do
24    to get that first contract, right?
25           MR. MEADOWS: Objection to
```

Page 283

```
 1              C. SMALLS
 2        form. Scope.
 3        A. Yes.
 4           MR. ROSENBLATT: Now -- mark
 5        this as Exhibit 10. Smalls 10.
 6           (Whereupon, Social Media Post
 7        was marked as Smalls Exhibit 10 for
 8        identification as of this date.)
 9        Q. Mr. Smalls, again, showing you
10    another tweet from what appears to be
11    from your Twitter account; is that
12    correct?
13        A. Yes.
14        Q. We've marked as Smalls 10
15    appears to be a tweet from the
16    @Shut_downAmazon Twitter handle, May 5,
17    2022, at 3:24 P.M.; do you see that?
18        A. Yes.
19        Q. And you -- you stated,
20        "Just met the President lol he
21    said I got him in trouble,"
22        And there's a -- I guess that's
23    a devil emoji. I'm not sure what it
24    is.
25        A. Yes.
```

Page 284

```
 1              C. SMALLS
 2        Q. And then it says,
 3        "Goooooooooooood,"
 4        A lot of Os before the D. Can't
 5    count them all. That is a tweet that
 6    you sent out, right?
 7        A. Yes.
 8           MR. MEADOWS: Objection to
 9        form.
10        Q. And you had the -- this is a
11    reference to the privilege or the honor
12    that you had to meet President Biden in
13    the Oval Office recently?
14           MR. MEADOWS: Objection to
15        form.
16        A. Yes.
17        Q. And you said he told you you had
18    gotten him in trouble. Did he say how
19    you got him in trouble?
20           MS. COX: Objection. Scope.
21           MR. MEADOWS: Scope.
22           MR. KEARL: I'm going to
23        instruct you not to answer. This
24        is not related to the just and
25        proper inquiry.
```

Page 285

```
 1              C. SMALLS
 2           MS. COX: And I join in the
 3        objection.
 4           MR. ROSENBLATT: It
 5        absolutely -- the NLRB, in its
 6        effort to establish just and
 7        proper, said that the ALU could
 8        use support, including the
 9        reinstatement of Mr. Bryson, to
10        further obtaining the first
11        contract. We're entitled to
12        explore the -- the things that
13        the ALU is doing in order to get
14        support for a first contract, and
15        I will tell you that we're almost
16        done, so I don't have much in
17        this line of questioning, so I'd
18        ask that Mr. Smalls answer the
19        question of did he tell you how
20        you got him in trouble?
21           MR. KEARL: I'm going to
22        instruct him to answer yes or no.
23        A. Yes.
24        Q. What did he tell you?
25           MR. KEARL: I'm going to
```



C. SMALLS

instruct him not to answer, because it is completely irrelevant to the just and proper inquiry.

MR. ROSENBLATT: At least you're not asserting executive privilege.

Q. But did he tell you that you got him in trouble when he said, "Amazon, we're coming to get you," or something to those -- to that effect?

MR. KEARL: Objection. Form. Objection. Scope. I'm going to instruct my client to answer yes or no.

MS. COX: And I join in the objection.

A. Yes.

Q. Did he tell you -- sorry. Hard for me to imagine how the leader of the free world could get in trouble, but did he tell you with whom he got in trouble?

A. No.



C. SMALLS

MR. MEADOWS: Objection. Form. Scope.

Q. On that day did you also meet with Vice President Kamala Harris?

MR. KEARL: Objection. Form. Objection. Scope.

A. Yes.

Q. Did you also meet with Secretary of Labor Marty Walsh?

MR. MEADOWS: Objection to form and scope.

A. Yes.

Q. And you also met with Senator Sanders, and you testified in front of Senator Sanders that same day?

MR. MEADOWS: Objection to form.

A. Yes.

Q. Did -- I'm sorry. Did President Biden suggest you had gotten him in trouble for any other reason other than his quote, "Amazon, we're coming after you," or something like that?



C. SMALLS

MR. KEARL: Objection. Form. Objection. Scope. I'm going to instruct the Witness to answer yes or no.

A. No.

Q. At that meeting was there any -- any representative of the business community present at the Oval Office?

MR. MEADOWS: Objection to form, foundation, scope. You can answer that yes or no, to the extent you know.

A. No.

Q. So the answer was, "no?"

MR. ROSENBLATT: Mark that as Smalls 11.

(Whereupon, New York Times Podcast Transcript was marked as Smalls Exhibit 11 for identification as of this date.)

Q. Mr. Smalls, we're showing you -- strike that.

Do you recall doing a podcast as part of the New York Times The Daily?



C. SMALLS

A. Yes.

Q. And that was with the New York Times podcaster Michael Barbaro?

MR. MEADOWS: Objection to form.

Q. Do you recall that?

A. Yes.

Q. And also on the podcast were Jodi Kantor, K-A-N-T-O-R, and Karen -- I believe it's pronounced Weise, W-E-I-S-E, of the New York Times?

MR. MEADOWS: Objection to form.

Q. Do you remember that?

A. Yes.

Q. And also Mr. Palmer was present during the podcast, right?

A. Yes.

Q. I have the podcast, but what I have here is a transcription from the New York Times, the podcast.

MR. MEADOWS: Objection to form.

MR. ROSENBLATT: It wasn't a



Page 298

ERRATA

PAGE  LINE  CHANGE

Page 299

ACKNOWLEDGEMENT
STATE OF NEW YORK)
        :SS
COUNTY OF _____)
  I, CHRISTIAN D. SMALLS, hereby certify
that I have read the transcript of my
testimony taken under oath on May 25,
2022, that the transcript is a true,
complete and correct record of what was
asked, answered and said during my
testimony under oath, and that the
answers on the record as given by me are
true and correct, except for the
corrections or changes in form or
substance, if any, noted in the attached
Errata Sheet.

_____
CHRISTIAN D. SMALLS
Signed and subscribed to
before me, this _____ day
of _____, _____.

_____
Notary Public

Page 300

INDEX OF WITNESSES

EXAMINATION BY              PAGE
MR. ROSENBLATT              8

INDEX OF EXHIBITS

NAME  DESCRIPTION              PAGE
1   AFFIDAVIT               42
2   2021 SPREADSHEET        107
3   2022 SPREADSHEET        139
4   SOCIAL MEDIA POST       158
5   SOCIAL MEDIA POST       171
6   SOCIAL MEDIA POST       228
7   SOCIAL MEDIA POST       233
8   TIKTOK VIDEO            276
9   TIKTOK VIDEO            277
10  SOCIAL MEDIA POST       283
11  NEW YORK TIMES PODCAST  288
    TRANSCRIPT

Page 301

CERTIFICATE
  I, CYNTHIA C. LANANNA, a shorthand
reporter and Notary Public within and
for the State of New York, do hereby
certify:
   That the Witness(es) whose testimony
is hereinbefore set forth was duly sworn
by me, and the foregoing transcript is a
true record of the testimony given by
such Witness(es).
   I further certify that I am not
related to any of the parties to this
action by blood or marriage, and that I
am in no way interested in the outcome
of this matter.



Cynthia C. Lananna, a
Court Reporter and Notary
Public
Date: June 7, 2022

