UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF NEW YORK

KATHY DREW-KING, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD

           Petitioner

v.

AMAZON.COM SERVICES LLC

           Respondent

No. 1:22-cv-01479

District Judge Diane Gujarati

Magistrate Judge Sanket J. Bulsara

**PETITIONER DREW-KING'S RESPONSE BRIEF TO RESPONDENT AMAZON.COM SERVICES LLC'S BRIEF IN OPPOSITION TO PETITIONER'S AMENDED PETITION FOR TEMPORARY INJUNCTION UNDER SECTION 10(j) OF THE NATIONAL LABOR RELATIONS ACT**

Matthew A. Jackson
Evamaria Cox
National Labor Relations Board
Two MetroTech Center, Suite 5100
Brooklyn, NY 11201
ATTORNEYS FOR PETITIONER

**Table of Contents**

1. Interim Relief is not Moot and the Court Retains Subject-Matter Jurisdiction ....................... 1
2. Injunctive Relief is Just and Proper ................................................................................... 3
3. The ALJ Decision Strongly Bolsters Reasonable Cause ......................................................... 9

i

## Table of Authorities

Cases

*Abbey's Transp. Servs., Inc. v. NLRB*,
  837 F.2d 575 (2d Cir. 1988) ............................................................................................. 1
*Aguayo v. Tomco Carburetor Co.*,
  853 F.2d 744 (9th Cir. 1988) ............................................................................................ 4
*Angle v. Sacks*,
  382 F.2d 655 (10th Cir. 1967) .......................................................................................... 6
*Aqua-Aston Hospitality, LLC d/b/a Aston Waikiki Beach and Hotel Renew*,
  365 NLRB No. 53, slip op. at 1 n.1 .................................................................................. 9
*Bloedorn v. Francisco Foods, Inc.*,
  276 F.3d 270 (7th Cir. 2001) ............................................................................................ 9
*Blyer v. P & W Elec., Inc.*,
  141 F. Supp. 2d 326 (E.D.N.Y. 2001) .............................................................................. 5
*Drew-King v. Deep Distributors of Greater NY, Inc.*,
  194 F. Supp. 3d 191 (E.D.N.Y. 2016) .............................................................................. 3
*Frankl v. HTH Corp.*,
  650 F.3d 1334 (9th Cir. 2011) .......................................................................................... 9
*Gottfried v. Frankel*,
  818 F.2d 485 (6th Cir. 1987) ............................................................................................ 7
*Gottfried v. Mayco Plastics, Inc.*,
  472 F. Supp. 1161 (E.D. Mich. 1979) .............................................................................. 1
*Heinrich Motors, Inc. v. NLRB*,
  403 F.2d 145 (2d Cir. 1968) ......................................................................................... 1, 2
*Hirsch v. Dorsey Trailers, Inc.*,
  147 F.3d 243 (3d Cir. 1998) ............................................................................................. 9
*Hooks v. Ozburn-Hessey Logistics, LLC*,
  775 F. Supp. 2d 1029 (W.D. Tenn. 2011) ........................................................................ 3
*Kaynard v. MMIC, Inc.*,
  1983 WL 2104 (E.D.N.Y. 1983) ...................................................................................... 2
*Kaynard v. Palby Lingerie, Inc.*,
  625 F.2d 1047 (2d Cir. 1980) ....................................................................................... 4, 6
*Mattina v. Ardsley Bus Corp.*,
  711 F. Supp. 2d 314 (S.D.N.Y. 2010) .............................................................................. 3
*Muffley v. Spartan Mining Co.*,
  570 F.3d 534 (4th Cir. 2009) ............................................................................................ 9
*Murphy v. NCRNC, LLC*,
  474 F. Supp. 3d 542 (N.D.N.Y. 2020) ............................................................................. 6
*NLRB v. Burnup & Sims, Inc.*,
  379 U.S. 21 (1964) ............................................................................................................ 9

*NLRB v. Electro-Voice, Inc.*,
   83 F.3d 1559 (7th Cir. 1996) ................................................................................. 1, 4
*NLRB v. Jamaica Towing, Inc.*,
   632 F.2d 208 (2d Cir. 1980) .................................................................................. 1, 5
*NLRB v. Jones & Laughlin Steel Corp.*,
   301 U.S. 1 (1937) ......................................................................................................... 4
*NLRB v. Ona Corp.*,
   605 F. Supp. 874 (N.D. Ala. 1985) ............................................................................. 6
*Oaktree Cap. Mgmt., L.P. v. N.L.R.B.*,
   452 F. App'x 433 (5th Cir. 2011) ............................................................................. 10
*Overstreet v. David Saxe Prods., LLC*,
   2019 WL 332406 n.4 (D. Nev. 2019) ......................................................................... 1
*Overstreet v. El Paso Disposal, L.P.*,
   625 F.3d 844 (5th Cir. 2010) ...................................................................................... 9
*Paulsen v. Remington Lodging & Hosp., LLC*,
   773 F.3d 462 (2d Cir. 2014) ............................................................................... 3, 4, 5
*Pye v. Excel Case Ready*,
   238 F.3d 69 (1st Cir. 2001) ......................................................................................... 4
*Schaub v. W. Mich. Plumbing & Heating, Inc.*,
   250 F.3d 962 (6th Cir. 2001) ...................................................................................... 4
*Seeler v. Trading Port, Inc.*,
   517 F.2d 33 (2d Cir. 1975) .......................................................................................... 3
*Sharp v. Webco Indus., Inc.*,
   225 F.3d 1130 (10th Cir. 2000) .................................................................................. 4
*Silverman v. J.R.L. Food Corp.*,
   196 F.3d 334 (2d Cir. 1999) ........................................................................................ 9
*Silverman v. Whittall & Shon, Inc.*,
   1986 WL 15735 (S.D.N.Y. 1986) ............................................................................... 6
*Smithfield Foods*,
   347 NLRB 1266 (2006) ............................................................................................ 10
*Three D, LLC v. NLRB*,
   629 F. App'x 33 (2d Cir. 2015) ................................................................................... 9
*Triple Play Sports Bar & Grill*,
   361 NLRB 308 (2014) ................................................................................................. 9
*Turtle Bay Resorts*,
   353 NLRB 1242 (2009) ............................................................................................ 10

Statutes

U.S.C. § 151 ....................................................................................................................... 7

1. <u>Interim Relief is not Moot and the Court Retains Subject-Matter Jurisdiction</u>

Contrary to Amazon's contention, Bryson's testimony as to why he had not sought alternate employment at the time of his deposition does not moot this injunction request nor divest the Court of subject-matter jurisdiction. (R.Br. 16.)[1] Amazon's unlawful termination of Bryson sent a threatening message to employees considering engaging in protected concerted and Union activities. Offering Bryson reinstatement provides effective interim relief because the offer, even if rejected, sends necessary reassurances to the remaining employees that their rights will be protected.[2] Absent a reinstatement offer to Bryson, employees will be reluctant to engage in protected concerted activities lest they subject themselves to termination for supporting the Union.[3] Even if Bryson may ultimately reject it, ordering a reinstatement offer is necessary to send the message to employees that retaliatory discharges will be addressed and their rights are secure.[4] Even if Bryson does not accept reinstatement, with an offer made and publicized under

---

[1] Petitioner's Memorandum of Points and Authorities, ECF No. 45, is referred to as "P.Br. X." Respondent's Brief in Opposition, ECF No. 47, is referred to as "R.Br. X."
[2] *See Overstreet v. David Saxe Prods., LLC*, 2019 WL 332406, at *9 n.4 (D. Nev. 2019) (assigning little weight to whether the discriminatees wanted their jobs back because reinstatement also "sends a message to other employees that retaliatory discharges will be redressed"); *Gottfried v. Mayco Plastics, Inc.*, 472 F. Supp. 1161, 1166 (E.D. Mich. 1979) (ordering reinstatement despite employer previously offering it because court order "may act to return the work force more nearly to the status quo than the offer already made."), *aff'd*, 615 F.2d 1360 (6th Cir. 1980) (table decision).
[3] *See Abbey's Transp. Servs., Inc. v. NLRB*, 837 F.2d 575, 576 (2d Cir. 1988) (employees are "certain to be discouraged" from engaging in protected activity "if they reasonably believe it will cost them their jobs."); *NLRB v. Jamaica Towing, Inc.*, 632 F.2d 208, 212–13 (2d Cir. 1980) (discharge of activists "remain in [employees'] memories for a long period"); *NLRB v. Electro-Voice, Inc.*, 83 F.3d 1559, 1573 (7th Cir. 1996) ("[T]he employees remaining at the plant know what happened to the terminated employees, and fear that it will happen to them."); *Mayco*, 472 F. Supp. at 1166.
[4] *See David Saxe*, 2019 WL 332406, at *9 n.4. *See also Mayco*, 472 F. Supp. at 1166 (even after employer voluntarily offered reinstatement, reinstatement order necessary to clear inhospitable atmosphere created by employer's unlawful terminations); *Heinrich Motors, Inc. v. NLRB*, 403 F.2d 145, 150 (2d Cir. 1968) (ordering reinstatement has dual purpose protecting discharged employee and demonstrating employer's good faith to other employees).

an injunction, employees will know that Bryson's continued absence from the workplace is a result of his choice, not of Amazon continuing to act unlawfully with impunity.

Critically, despite Amazon's characterization, the record does *not* establish that Bryson would definitively reject a reinstatement offer. (R.Br. 16–17.) In addition to the testimony cited by Amazon, Bryson also testified that caring for his son would not interfere with his ability to work for Amazon and that his daughter-in-law would be able to help at times. (Ex. A at 310:22–311:2.) In addition, that testimony was provided on May 23, 2022, approximately two months ago. Just as Bryson's personal circumstances changed after Amazon discharged him, they may change again by the time Amazon is ordered to offer him reinstatement. Indeed, the Second Circuit has held that a putative rejection of reinstatement, prior to an employer's formal offer, is not dispositive as to whether the employee would indeed accept or reject the official offer.[5]

Amazon's reliance on *Kaynard v. MMIC, Inc.*[6] is unavailing. In *Kaynard*, prior to the court's decision, the employer *had already offered reinstatement* to one of the employees, who then rejected the offer because he was working elsewhere. The district court held that requiring the employer to renew an offer already made rendered such relief moot.[7] Here, Amazon has made no prior offer to Bryson and only speculates that he *may* reject it based on stale testimony.

Further, even assuming reinstatement were rendered moot, a cease-and-desist order is still necessary to enjoin Amazon from engaging in similar future unlawful discrimination. Indeed, from April 1, 2020 to present, there have been over 100 unfair-labor-practice cases in

---

[5] *Heinrich Motors*, 403 F.2d at 150 (employee statements about reinstatement before offer made do not establish whether employee has withdrawn from labor market or waived reinstatement).
[6] 1983 WL 2104 (E.D.N.Y. 1983), *aff'd*, 734 F.2d 950 (2d Cir. 1984).
[7] *Id.* at 2.

2

various stages of adjudication before the Board involving Amazon locations across the country.[8] Amazon is accused of engaging in a litany of unfair labor practices and therefore does not appear to follow established labor law. Accordingly, a cease-and-desist order, even if it is merely a requirement to obey the law (R.Br. 17.), is necessary to enjoin Amazon from engaging in further unlawful acts that might undermine employees' organizing and bargaining efforts.[9]

2.     Injunctive Relief is Just and Proper

Injunctive relief is just and proper when it is necessary to prevent irreparable harm *or* to preserve the status quo.[10] The overall purpose to a § 10(j) injunction "is to guard against harm to the collective bargaining rights of employees."[11] Accordingly, an injunction is appropriate where it will stave off irreparable harm or preserve the status quo that would otherwise be lost by waiting for a final Board order, rendering the Board's final remedy a nullity.[12] The effect on the status quo is an important consideration in determining whether an injunction here is just and proper—i.e., the status quo that existed prior to Amazon's unlawful acts, not the new status quo it has created with Bryson's termination.[13] There is no requirement that a causal connection between the unlawful act and irreparable harm be affirmatively shown.[14] Indeed, the standard is

---

[8] *See* NLRB Online Public Case Search, https://www.nlrb.gov/search/case/Amazon.com?f[0]=case_type:C&date_start=04%2F01%2F2020&date_end=07%2F29%2F2022.
[9] *See Drew-King v. Deep Distributors of Greater NY, Inc.*, 194 F. Supp. 3d 191, 200 (E.D.N.Y. 2016) (cease and desist order restores status quo regarding organizing efforts and is a minimal burden on employer); *Hooks v. Ozburn-Hessey Logistics, LLC*, 775 F. Supp. 2d 1029, 1052 (W.D. Tenn. 2011) (cease-and-desist order appropriate "to prevent irreparable chilling of support for the Union among employees and to protect the NLRB's remedial powers.").
[10] *Paulsen v. Remington Lodging & Hosp., LLC*, 773 F.3d 462, 469 (2d Cir. 2014).
[11] *Id.*
[12] *See Seeler v. Trading Port, Inc.*, 517 F.2d 33, 37–38 (2d Cir. 1975).
[13] *Id.* at 38.
[14] *Cf. Mattina v. Ardsley Bus Corp.*, 711 F. Supp. 2d 314, 327 (S.D.N.Y. 2010) (noting causal connection only between employer's unlawful actions and employee disaffection that allowed court to infer that later irreparable harm is likely).

3

whether there is *likely future* irreparable harm that can be *prevented* by an injunction, not present irreparable harm.[15] The Second Circuit recognizes that the discharge of employee activists naturally "risk[s] a serious adverse impact" on employee interest in protected activity absent interim relief.[16] To require a causal connection to actual irreparable harm would render § 10(j) relief meaningless because the irreparable harm would be complete and a Board order in due course would be just as effective. Even assuming some causal connection must be drawn in the first instance, that is satisfied here because there is evidence that employees stated their reluctance to support the Union given Bryson's termination.

Granting an injunction here will both restore the proper status quo and prevent irreparable harm to the Union's status and its representational efforts. It will reestablish the Union's legitimate level of employee support as it prepares for bargaining at JFK8 and organizing other facilities. Employees have a "clear" right to engage in concerted activities for the purpose of organizing and bargaining through their chosen representatives.[17] Section 7 of the Act grants employees the decision "to bargain collectively through representatives of their own choosing" and make that choice "without restraint or coercion by their employer."[18] The Second Circuit and other courts have recognized that the discriminatory discharge of an employee activist may effectively chill concerted activities absent interim relief.[19]

---

[15] *See Paulsen*, 773 F.3d at 469.

[16] *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047, 1053 (2d Cir. 1980). *Henderson v. Bluefield Hosp. Co.* (R.Br. 18–19), is contrary to the Second Circuit's just and proper standard, which infers irreparable harm when an employee activist is unlawfully terminated.

[17] *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 33 (1937).

[18] *Id.* at 24, 33.

[19] *See Palby Lingerie*, 625 F.2d at 1053; *Pye v. Excel Case Ready*, 238 F.3d 69, 74–75 (1st Cir. 2001); *Schaub v. W. Mich. Plumbing & Heating, Inc.*, 250 F.3d 962, 971 (6th Cir. 2001); *Electro-Voice*, 83 F.3d at 1572–73; *Aguayo v. Tomco Carburetor Co.*, 853 F.2d 744, 749 (9th Cir. 1988), *overruled on other grounds by Miller v. Cal. Pac. Med. Ctr.*, 19 F.3d 449 (9th Cir. 1994); *Sharp v. Webco Indus., Inc.*, 225 F.3d 1130, 1135 (10th Cir. 2000).

4

Bryson's termination continued to have a negative effect on employees and their willingness to support the Union throughout the campaign, including fears to wear Union-branded shirts and masks while at work. (Ex. B at 87:2–13, 128:6–13, 151:23–25, 152:12–13, 153:13–15.). Even with significant employee turnover, Bryson was consistently at the JFK8 bus stop talking to employees about the Union and telling his story, thereby interacting with thousands of people over time. (Ex. B at 149:12–150:7.) Long-time employees reserved judgement on whether to support the Union, waiting to see if Bryson would be reinstated. (Ex. A at 214:22–215:22; 216:12–17.) This is unsurprising, as the discharge of a key activist like Bryson "remain[s] in [the employees'] memories for a long period."[20]

The fact that the Union won the election at JFK8 does not negate the chill on some employees or show that it has dissipated. Out of a unit of 8,325 employees eligible to vote, only 4,852 cast ballots, or approximately 58%.[21] It is reasonable to infer, and consistent with the Second Circuit's recognition of the predictable effect of retaliatory discharges, that some of the 3,473 employees who did not vote did so out of fear of retaliation because unlawful discharges "will chill, if not destroy" employee interest and participation in collective action.[22] Critically, despite ongoing ALU activity around the country, the Union's support on Staten Island appears to be falling.[23] Soon after the successful election at JFK8, the Union lost an election at a sister-warehouse on Staten Island, referred to as "LDJ5."[24] Amazon has also refused to recognize and bargain with the Union and is challenging the JFK8 results. Accordingly, there is a wider,

---

[20] *Jamaica Towing*, 632 F.2d at 213.
[21] NLRB Online Public Case Search, https://www.nlrb.gov/case/29-RC-288020.
[22] *Blyer v. P & W Elec., Inc.*, 141 F. Supp. 2d 326, 330–31 (E.D.N.Y. 2001).
[23] *Paulsen*, 773 F.3d at 470 (Court is not free to ignore changed circumstances when considering appropriateness of injunction).
[24] NLRB Online Public Case Search, https://www.nlrb.gov/case/29-RC-290053.

ongoing impact of Bryson's discharge on the employees' § 7 rights. Ordering Amazon to reinstate Bryson now offers the best chance to preserve the employees' right to engage in protected concerted activities, level the playing field in first contract bargaining at JFK8, and ensure employee free choice in ongoing campaigns at other facilities.[25] When the Union needs employees to rally in support of its bargaining positions at JFK8 or organize a strike at a facility facing safety concerns or being organized, employees will remember that such public activity was exactly what Bryson was fired for and that he remains out of work. Faced with that possibility, no employee in their "right mind" would step forward to publicly show their support.[26] Reinstating Bryson now sends a signal to the employees that if they engage in protected activity and face retaliation, they will be timely protected by the Board and the courts.[27] Otherwise, Amazon will defeat the employees' rights by virtue of its illegal conduct, the Board's order will be a nullity, the intent of Congress will be frustrated, and injustice will result.

Amazon presses the inflammatory theory that by seeking injunctive relief, Petitioner was trying to improperly influence the election at JFK8. (R.Br. 22.) In fact, the opposite is true. Petitioner's sole motivation was to ensure the *employees'* free choice in the election, which was necessary to prevent the effect of Amazon's illegal firing of Bryson from improperly influencing

---

[25] *See Angle v. Sacks*, 382 F.2d 655, 661 (10th Cir. 1967) ("reinstatement will as nearly as is now possible restore the conditions prevailing before the discharges and so prevent a frustration of the ultimate administrative action."), *cited with approval by Palby Lingerie*, 625 F.2d at 1053.
[26] *Silverman v. Whittall & Shon, Inc*., 1986 WL 15735, at *1 (S.D.N.Y. 1986).
[27] *See Murphy v. NCRNC, LLC*, 474 F. Supp. 3d 542, 561 (N.D.N.Y. 2020) (ordering interim reinstatement of activists, noting "'[w]ithout timely interim relief, [the Employer's] illegal actions will irreparably harm … the employees' right to choose union representation . . . [The Employer] will forever benefit from its illegal conduct.'"); *NLRB v. Ona Corp*., 605 F. Supp. 874, 886 (N.D. Ala. 1985) (interim reinstatement of single discriminatee in large unit will send "affirmative signal").

that choice. Contrary to Amazon's claim, the Petitioner did not seek interim relief to help the Union win the election. The Board's goal in seeking interim relief is to allow *employees* to exercise their statutory rights without coercion and prevent irreparable harm pending a Board decision. There is nothing nefarious about the Board using its statutory authority to enable a fair election in which employees can make their choice free from intimidation and coercion. Indeed, the Board was fulfilling its Congressional mandate by preserving employee free choice in an election—one of the Board's primary purposes as established by the Act.[28] And now, the Union's victory at JFK8 does not magically vindicate employees' rights while the cloud of unremedied unfair labor practices loom. Nor does it end the Board's interest in continuing to protect *employees'* rights to enjoy the benefit of their choice of bargaining representative and engage in protected concerted activities both with the Union and separate from it. However, those types of activities are exactly what Bryson was terminated for, so the status quo has not been restored and injunctive relief is necessary to balance the scales that Amazon unlawfully tipped in its favor.[29]

Amazon's fixation with the passage of time is misplaced. (R.Br. 21–22.) The passage of time is significant only if the harm has been realized and the parties cannot be returned to the status quo, such that a final Board order is likely to be as effective as interim relief.[30] Critically,

---

[28] 28 U.S.C. § 151. ("It is declared to be the policy of the United States to . . . protect[] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing").

[29] Amazon also maliciously suggests that the Board's attempts to seal non-party deposition testimony is further evidence of the Board playing favorites. However, the request for a protective order was filed because Amazon, despite the Magistrate Judge's orders, went beyond the scope of discovery and sought testimony relevant to Amazon's election objections case before the Board—testimony that was wholly irrelevant to the instant proceeding. Instead, Amazon used these proceedings to flout the Board's administrative processes for conducting election objections hearings.

[30] *See Gottfried v. Frankel*, 818 F.2d 485, 495 (6th Cir. 1987).

7

here, a large portion of delay is laid directly at Amazon's feet. Delays in completing the administrative trial were due to Amazon's obstinate failure to provide subpoenaed documents and its contumacious defiance of the ALJ's and Board's Orders requiring production of those documents.[31] And, it was appropriate for Petitioner to wait for the administrative trial prior to seeking 10(j) relief despite that trial delay because it now gives the Court "the benefit of a record developed over . . . days of hearings" and makes "the District Court's task in evaluating the propriety of interim relief much easier, and much more likely to be carried out accurately." Waiting for the administrative record also enabled discovery to be limited to the "just and proper" issues, facilitating a more expedited injunction proceeding.

      Further, the need for Bryson's interim reinstatement did not ripen until his early protected concerted activity evolved into the ALU organizing campaign, upon which he continued to work as an activist for the Union. The Petitioner's supplementary § 10(j) investigation demonstrated that Bryson's discharge continued to have a chilling impact despite the Union moving towards an election. Accordingly, in order to ensure a free and fair election would be held on March 25, 2022, and to protect employee rights beyond the results of the election, Petitioner filed the Petition as soon as practicable on March 17, 2020, a month after the election was scheduled. And now, given the ALU's election victory, Amazon's challenges to it, and the prospect of maintaining support for first contract bargaining, there is still a need to provide, via reinstatement and cease-and-desist orders, assurances to employees that they may exercise their statutory collective-bargaining rights without unlawful retaliation. Where injunctive relief may still fulfill

---

[31] By order dated December 27, 2021, ALJ Green closed the administrative record and stated that Respondent "should be aware that the question is no longer whether evidentiary sanctions will be imposed [on Amazon], but what those sanctions will be." ECF No. 21-1.

its statutory purpose, as here, courts have repeatedly granted injunctions despite similar passage of time.[32]

3.  The ALJ Decision Strongly Bolsters Reasonable Cause

The ALJ's decision is strong evidence that there is reasonable cause to believe Amazon violated the Act by terminating Bryson, despite Amazon's unconvincing claims to the contrary. (R.Br. 23.) Indeed, the ALJ's decision is "part of the record and cannot be ignored."[33] Amazon attacks the ALJ's analysis under *Burnup & Sims*,[34] but although the ALJ evaluated that as one of two alternate theories, that case is inapposite because there is no mistake of fact that Bryson engaged in misconduct.[35] However, even applying *Burnup*, the threshold inquiry is whether Amazon conducted a good-faith investigation into the alleged serious misconduct.[36] Amazon cannot make this showing because it conducted a sham, bad-faith investigation of Bryson's alleged serious misconduct.[37] More importantly, under the correct mixed-motive *Wright Line*

---

[32] *See, e.g., Frankl v. HTH Corp.*, 650 F.3d 1334, 1363–65 (9th Cir. 2011) (granting relief where § 10(j) petition was filed almost three years after the first unfair-labor-practice charge); *Bloedorn v. Francisco Foods, Inc.*, 276 F.3d 270, 299–300 (7th Cir. 2001) (injunction ordered on appeal even though more than two years had passed since the violation; interim relief remained "a vital means of preserving the Board's ultimate ability to provide meaningful redress for the wrongs alleged."). *See also Overstreet v. El Paso Disposal, L.P.*, 625 F.3d 844, 856 (5th Cir. 2010) (19 months between initial complaint and 10(j) petition); *Muffley v. Spartan Mining Co.*, 570 F.3d 534, 544–45 (4th Cir. 2009) (18 months between issuance of complaint and request for 10(j) relief); *Hirsch v. Dorsey Trailers, Inc.*, 147 F.3d 243, 248–49 (3d Cir. 1998) (14 months between issuance of complaint and 10(j) petition).
[33] *Silverman v. J.R.L. Food Corp.*, 196 F.3d 334, 335 (2d Cir. 1999).
[34] *NLRB v. Burnup & Sims, Inc.*, 379 U.S. 21 (1964).
[35] *See Triple Play Sports Bar & Grill*, 361 NLRB 308, 313 n.20 (2014) (*Burnup & Sims* used only in cases where there is mistake of fact, not mistake of law), *aff'd sub nom., Three D, LLC v. NLRB*, 629 F. App'x 33 (2d Cir. 2015).
[36] *See Aqua-Aston Hospitality, LLC d/b/a Aston Waikiki Beach and Hotel Renew*, 365 NLRB No. 53, slip op. at 1 n.1, 6 (2017).
[37] *See id.*, slip op. at 6–7 (violation under *Burnup* where employer's failure to interview identified witnesses, refusal to inform discriminatee of his accuser's identity, and failure to elicit discriminatee's version of events were inconsistent with good-faith investigation).

9

analysis, also applied by the ALJ and not substantively challenged by Amazon, there is strong cause to believe that Bryson's discharge was unlawful.

Amazon falsely asserts that because the Board is seeking Bryson's reinstatement, the Board somehow condones the rude and profane statements he and Dimitra Evans exchanged on April 6, 2020. But, the key inquiry is whether Amazon routinely tolerates conduct and speech that is similar or worse than anything Bryson said. (P.Br. 9–10.) The Board does not seek to curb Amazon's ability to lawfully discipline its employees. However, Amazon cannot prove that it would have discharged Bryson absent his protected concerted activity because it has tolerated and handed down lighter discipline to employees whose actions were equivalent to or far worse than Bryson's, including Evans.[38] (P.Br. 9–10, 14.) Accordingly, it is not the substance of Bryson's misconduct that is truly at issue, but whether Amazon treated similarly-situated employees differently based on the fact that, among the comparators, Bryson is the only employee who also publicly led § 7 activity. The evidence here shows that Amazon did indeed treat Bryson more harshly compared to other employees who had done far worse, and that it would not have taken the same action against Bryson in the absence of his protected activity.

---

[38] *See, e.g. Turtle Bay Resorts*, 353 NLRB 1242, 1243 (2009) (discharge for cursing unlawful because activist's punishment was more severe than others' with similar infractions), *aff'd and incorporated by reference*, 355 NLRB 706 (2010), *enforced sub nom.*, *Oaktree Cap. Mgmt., L.P. v. N.L.R.B.*, 452 F. App'x 433 (5th Cir. 2011); *Smithfield Foods*, 347 NLRB 1266, 1266–67 (2006) (Board did not condone employee's sexually harassing and offensive behavior but termination was unlawful under *Wright Line* because employer did not terminate other employees for first offense of sexual harassment).

Dated on July 29, 2022.

                                                                            */s/ Matthew A. Jackson*
                                                                            */s/ Evamaria Cox*
Matthew A. Jackson
Evamaria Cox
National Labor Relations Board
Two MetroTech Center, Suite 5100
Brooklyn, NY 11201
Telephone: (718) 765-6172
Email: Matthew.Jackson@nlrb.gov
Email: Evamaria.Cox@nlrb.gov

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KATHY DREW KING, Regional Director of Region 29 of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD<br><br>                       Petitioner<br><br>v.<br><br>AMAZON.COM SERVICES LLC<br><br>                       Respondent | CERTIFICATE OF SERVICE<br><br>Case No. 1:22-cv-01479-DG-SJB |

      The Petitioner hereby certifies that on July 29, 2022, Petitioner's Response Brief to Respondent's Brief in Opposition to Petitioner's Amended Petition for Temporary Injunction was served via ECF Filing on:

Christopher Murphy, Esq.
Richard Rosenblatt, Esq.
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA 19103-2921
christopher.murphy@morganlewis.com
richard.rosenblatt@morganlewis.com

Kelcey Phillips, Esq.
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave., NW,
Washington, DC 20004
kelcey.phillips@morganlewis.com

Douglas T. Schwarz, Esq.
Samantha Ojo, Esq.
Morgan, Lewis & Bockius, LLP
101 Park Avenue
New York, NY 10178-0060
douglas.schwarz@morganlewis.com
samantha.ojo@morganlewis.com

Dated: July 29, 2022

                                                                   /s/ Evamaria Cox
                                                     Evamaria Cox
                                                     National Labor Relations Board
                                                     Two MetroTech Center, Suite 5100
                                                     Brooklyn, NY 11201
                                                     Telephone: (718) 765-6172
                                                     Email: Evamaria.Cox@nlrb.gov