UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
Kathy Drew King, *Regional Director of Region 29*
*of the National Labor Relations Board, for and on*
*behalf of the National Labor Relations Board*,

                          Petitioner,

          -against-

Amazon.com Services LLC,

                      Respondent.
-------------------------------------------------------------X

**MEMORANDUM & ORDER**
22-CV-01479 (DG) (SJB)

DIANE GUJARATI, United States District Judge:

      Pending before the Court is the Amended Petition for Temporary Injunction Under

Section 10(j) of the National Labor Relations Act (the "Amended Petition"), filed on July 8,

2022 by Petitioner Kathy Drew King, Regional Director of Region 29 of the National Labor

Relations Board, for and on behalf of the National Labor Relations Board.  *See* Amended

Petition ("Am. Pet."), ECF No. 44.  The Amended Petition relates to the April 2020 discharge

from employment of Gerald Bryson by Respondent Amazon.com Services LLC ("Amazon").

By way of the Amended Petition, Petitioner seeks certain injunctive relief, pursuant to 29 U.S.C.

§ 160(j) ("Section 10(j)"), pending the disposition by the National Labor Relations Board

("NLRB" or "Board") of certain matters before the Board relating to the discharge of Bryson.

      Petitioner alleges that there is reasonable cause to believe that Respondent has engaged in

unfair labor practices affecting commerce in violation of Section 8(a)(1) ("Section 8(a)(1)") of

the National Labor Relations Act ("NLRA") with respect to Bryson, who Petitioner alleges was

unlawfully terminated from employment by Amazon for having engaged in certain protected

concerted activity.  Respondent opposes the Amended Petition, arguing that Bryson was lawfully

terminated for cause – not because of his participation in protected concerted activity.

More specifically, Petitioner alleges that in March and April 2020, Bryson – then an Amazon employee – engaged in certain protected concerted activity by advocating, with his co-workers, for workplace health and safety protections in light of the Covid-19 pandemic and by protesting with his co-workers Amazon's failure to provide greater Covid-19 safety protections to employees, and that Bryson was terminated in April 2020 as a result of his participation in those protected activities.  Petitioner alleges that Respondent's discharge of Bryson and failure and refusal to reinstate him – or to offer to reinstate him – violates Section 8(a)(1) and, therefore, Respondent is depriving Bryson of his rights guaranteed by Section 7 of the NLRA. Respondent, in turn, concedes that Bryson engaged in certain protected activity, but maintains that he was terminated following an investigation by Amazon into his verbal altercation with another Amazon employee in the parking lot of Amazon's JFK8 Fulfillment Center in Staten Island, New York (the "JFK8 Facility" or "JFK8"), during which Bryson and the other employee verbally exchanged insults with one another in connection with the other employee voicing skepticism about the protest in which Bryson was participating.  Petitioner argues that Amazon conducted a sham investigation into the altercation and that the reason given by Amazon for Bryson's termination was pretextual.

Petitioner seeks to have this Court enter an order directing Amazon, pending the final disposition of the matters currently before the Board, to cease and desist from taking certain actions and to take certain actions, including: reinstating Bryson to his position or to a substantially equivalent position; rescinding Bryson's discharge, expunging the adverse employment action from Bryson's employment records, and refraining from relying on the discharge in assessing any future disciplinary actions; and posting physical copies of the order in the JFK8 Facility, distributing electronic copies of the order to employees at the JFK8 Facility,

and reading the order to employees at one or more mandatory meetings.

For the reasons set forth below, and to the extent described below, the Court grants in part and denies in part Petitioner's request for temporary injunctive relief.  The Court finds that there is reasonable cause to believe that an unfair labor practice has been committed by Amazon with respect to the termination of Bryson, and determines that the issuance of an order directing Respondent to cease and desist from taking certain actions and directing Respondent to post, distribute, and read the Court's order to employees at the JFK8 Facility is just and proper, but that the requested affirmative relief specific to Bryson – *i.e.*, directing Respondent to reinstate Bryson to his position or to a substantially equivalent position, rescind Bryson's discharge, expunge the adverse employment action from Bryson's employment records, and refrain from relying on the discharge in assessing any future disciplinary actions – is not warranted under the applicable legal standards governing the granting of relief in this context.

## BACKGROUND

This case arises from Respondent's termination of Gerald Bryson, who was an employee at Respondent's JFK8 fulfillment center.  In Spring 2020, Bryson, along with others, protested Respondent's failure to take certain health and safety measures during the Covid-19 pandemic. In late March 2020, Bryson and others organized and participated in a protest to demand that Respondent provide employees with protective equipment and shut down JFK8 for proper cleaning.  Bryson and others then planned another protest for April 6, 2020 to continue to press their Covid-19 safety concerns.

During the April 6, 2020 protest, Bryson got into a verbal altercation with another Amazon employee, Dimitra Evans, who had called out to Bryson during the protest.  The verbal altercation between Bryson and Evans – which was recorded on video – escalated, with Bryson

and Evans trading insults.[1]  Evans eventually went inside the facility and stopped engaging with

Bryson.  Neither Evans nor Bryson reported this incident to Respondent.

Respondent thereafter commenced an investigation regarding the incident between

Bryson and Evans.  This investigation resulted in Bryson's termination on April 17, 2020.

Evans, on the other hand, received only a written warning for her use of inappropriate language.

On June 17, 2020 – two months after he was discharged from employment by Amazon –

Bryson filed an unfair labor practice charge with the Board in Case No. 29-CA-261755, alleging

that Respondent suspended and subsequently discharged him in violation of Section 8(a)(1).  *See*

Am. Pet. ¶ 3.  On December 22, 2020, Petitioner issued a Complaint and Notice of Hearing in

Case No. 29-CA-261755, alleging that Respondent engaged in unfair labor practices within the

meaning of Section 8(a)(1).  *See* Am. Pet. ¶ 4.  A trial before an Administrative Law Judge (the

"ALJ") was held on various dates in 2021.

In or about April 2021, approximately one year after Bryson was terminated, Amazon's

employees formed a union, the Amazon Labor Union (the "ALU").  *See, e.g.*, Petitioner's

Memorandum of Points and Authorities in Support of Amended Petition for Temporary

Injunction Under Section 10(j) of the NLRA ("Pet. Br.") at 10-11, ECF No. 45; Respondent's

Brief in Opposition to Petitioner's Amended Petition for a Section 10(j) Injunction ("Resp. Br.")

at 8, ECF No. 46-1.  On October 25, 2021, the ALU filed with Region 29 of the Board a petition

for a representation election to determine whether employees at Amazon's four Staten Island

facilities wished to be represented by the ALU for the purposes of collective bargaining.  *See*

Am. Pet. ¶ 8(c).  The ALU withdrew that petition on November 12, 2021 because the ALU did

---

[1]   Familiarity with the specifics of these insults – as reflected in the record before the Court – is
assumed.

not have a sufficient showing of interest to support the processing of the petition.  *See* Am. Pet.

¶ 8(c).  On December 22, 2021, the ALU filed a second petition for a representation election to

determine whether employees at the JFK8 Facility wished to be represented by the ALU.  *See*

Am. Pet. ¶ 8(d).  An election was thereafter scheduled for March 25, 26, and 28-30, 2022.  *See*

Am. Pet. ¶ 8(d).

On March 17, 2022, months after the trial before the ALJ concluded but before the ALJ

had issued a decision, and only eight days before the ALU election was scheduled to begin,

Petitioner filed the first Petition for Temporary Injunction Under Section 10(j) (the "Initial

Petition") in the instant action.  *See* Initial Petition, ECF No. 1.  In connection with the filing of

the Initial Petition, Petitioner argued that injunctive relief – including in the form of an order

directing Respondent to reinstate Bryson – was necessary in advance of the ALU election.

Petitioner represented that it was "imperative for employees to be reassured of their rights under

the National Labor Relations Act before the representation election has closed" to ensure that

Respondent did not benefit "in the election from the coercive effects of its unfair labor practices

at issue in this case."  *See* ECF No. 12 at 2; *see also* Transcript of March 23, 2022 Oral

Argument at 29-30, ECF No. 49 ("It is important to have this matter decided before the election

in order to ensure employees that they can freely exercise their rights in this election, and

generally, if they choose to support the [ALU] without fear of retaliation knowing that the

Government will protect their rights and act swiftly to achieve justice and restore them to the

workplace if Amazon somehow retaliates against them.  So, in order to have a fair election, we

believe that it's imperative to have Bryson restored to the workplace, or at least for this matter to

be resolved in advance of the election.").

Petitioner requested that the Initial Petition be tried on the official evidentiary record

developed before the ALJ and on the sworn affidavits of Bryson, Derrick Palmer, Tristian Martinez, and Christian Smalls, which Petitioner submitted in support of the Initial Petition, *see* Affidavit of Gerald Bryson, ECF No. 5-14; Affidavit of Derrick Palmer, ECF No. 5-15; Affidavit of Tristian Martinez, ECF No. 5-16; Affidavit of Christian Smalls ("Smalls Aff."), ECF No. 5-17, (collectively, the "Affidavits").  *See generally* Motion to Try Petition on the Basis of Administrative Record, Including Hearing Transcript and Affidavits ("Motion to Try Petition"), ECF No. 5.  Petitioner specifically requested that the Court's "just and proper" determination – which, as discussed further below, is part of a Section 10(j) analysis – be based on the Affidavits, noting that the just and proper issue was not before the ALJ.  *See* Motion to Try Petition at 5-6; *see also* Transcript of March 30, 2022 Status Conference before Magistrate Judge Sanket J. Bulsara at 8, ECF No. 31 ("Our just and proper evidence is limited to four affidavits.").  Petitioner argued that the Affidavits provided evidence to support Petitioner's position that the absence of injunctive relief could lead to irreparable harm.  *See* Motion to Try Petition at 5.  The Affidavits submitted by Petitioner generally concern ALU organizing efforts and Bryson's role in the ALU.  *See generally* Affidavits.  When submitted to the Court, the Affidavits were untested by Respondent and, *inter alia*, contained statements attributed to employees other than the affiants.  *See generally* Affidavits.

In reliance on the Affidavits, Petitioner asserted, *inter alia*, that even after Bryson's termination in April 2020, Bryson remained active in trying to organize JFK8 employees, *see* ECF No. 7 at 19-20; that numerous employees were afraid to openly support the ALU primarily based on Bryson's termination, *see* ECF No. 7 at 2; that "Bryson's termination [was] a specter over the [ALU's] efforts and [was] chilling employees' willingness to freely support the [ALU]," *see* ECF No. 7 at 21; and that "employees still talk[ed] about Bryson's discharge and . . .

expressed their fear of supporting the [ALU] because Amazon fired Bryson and has not reinstated him and their fears have not been allayed by the standard administrative legal proceedings before the Board," *see* ECF No. 7 at 21.  Petitioner further asserted that, without immediate injunctive relief, Respondent's actions would "permanently end employee organizing around working conditions, irreparably harm the national policy protecting workers' right to band together at work, and seriously undermine the Board's remedial power."  *See* ECF No. 7 at 36; *see also* ECF No. 7 at 40-41.[2]

Respondent opposed the Initial Petition, arguing that Bryson was lawfully terminated for having "publicly, viciously, and profanely berated a female coworker over a bullhorn and social media broadcasts on April 6, 2020, after she dared to disagree with his advocacy that Amazon should close its JFK8 facility in the early days of the COVID-19 pandemic."  *See* ECF No. 20 at 1.  Respondent disputed Petitioner's claim that Bryson's termination in 2020 suppressed organizing activity, *see* ECF No. 20 at 3, arguing that, to the contrary, the organizing efforts had "flourished," *see* ECF No. 20 at 6; *see also* ECF No. 20 at 14 (asserting that "the ALU's organizing efforts . . . began long after Bryson's termination and are now in full bloom" and that "[r]ather than having been nipped in the bud, the ALU's organizing activity blossomed after Bryson's termination").  Respondent also took issue with the timing of the filing of the Initial Petition, arguing that the Initial Petition was filed in an attempt by Petitioner to improperly influence the outcome of the then-upcoming election and constituted an "abuse of the federal

---

[2]   Petitioner additionally argued that reinstatement of Bryson "offers the *best chance* of . . . preserving the employees' Section 7 right to engage in protected concerted activity generally, a level playing field in first contract bargaining at JFK8 if the [ALU] wins the election, a renewed campaign at JFK8 if the [ALU] loses the election, and employee free choice in the ongoing campaigns at the other Staten Island facilities," and that "[w]hen the Board issues its final order, likely years from now because of parties' appeal rights, it will likely be *too late*." *See* ECF No. 21 at 3 (emphases in original).

court's civil process." *See* ECF No. 20 at 3-4.  Respondent asserted that Petitioner's filing of the Initial Petition so close in time to the election "engineered a phony emergency." *See* ECF No. 20 at 5.  Respondent further asserted that the facts, principally drawn from the Affidavits, demonstrate "that there has been no harm to either the ALU's organizing efforts or the JFK8 associates' interest in those efforts." *See* ECF No. 20 at 13; *see also* ECF No. 20 at 15 (asserting that union activity and interest increased during the period between Bryson's termination and mid-2021).

In connection with opposing the Initial Petition, Respondent requested discovery and an evidentiary hearing to, *inter alia*, address the Affidavits, arguing that the Affidavits were beyond the record before the ALJ, *see* Opposition to Motion to Try Petition at 6, ECF No. 18, constituted and contained hearsay, *see* Opposition to Motion to Try Petition at 6-7, and remained untested, *see* Opposition to Motion to Try Petition at 6-7 ("None of the affiants have been subject to cross-examination on the content of their affidavits, which forms the sole basis for Petitioner's 'just and proper' argument under the Section 10(j) framework. . . . Amazon must be permitted the opportunity to test the veracity of the affiants through cross-examination.").  Respondent asserted that "a one-sided presentation of only [Petitioner's] cherry-picked evidence . . . would constitute a classic deprivation of due process." *See* Opposition to Motion to Try Petition at 7.

On March 18, 2022, the Court held a conference to address the injunctive relief sought by Petitioner by way of the Initial Petition.  *See* ECF No. 14.  On March 23, 2022, oral argument was held on the Initial Petition.  *See* ECF No. 26.

By Order dated March 24, 2022, the Court granted in part Respondent's request for discovery, limited to the issue of whether the injunctive relief sought by Petitioner was just and proper, and referred the parties to Magistrate Judge Sanket J. Bulsara for discovery management.

*See* Order dated March 24, 2022.  Judge Bulsara presided over the limited discovery, which took

place between March 30, 2022 and May 25, 2022.  During discovery, the four affiants – Bryson,

Palmer, Martinez, and Smalls – were deposed.[3]  The deposition testimony largely concerned the

formation and organizing efforts of the ALU, Bryson's role in the ALU, and employee interest in

the ALU.

Meanwhile, the election at JFK8 was held and, on April 1, 2022, it was determined that

the ALU had received the majority of the ballots cast.  *See* Am. Pet. ¶ 8(e).  Respondent filed

with the Board objections to the conduct of the election, and the General Counsel of the Board

transferred the matter to the Regional Director for Region 28 of the Board.  *See* Am. Pet. ¶ 8(f).

On April 18, 2022, while discovery was taking place in the instant action and after the

ALU's success in the representation election, the ALJ issued his decision in the underlying case

before the Board.  *See* ALJ Decision, ECF No. 35-1.  In his decision, the ALJ found that

Respondent violated Section 8(a)(1) by discharging Bryson because of his protected concerted

activity,[4] and directed Respondent to, *inter alia*, cease and desist from discharging employees

because of their protected concerted activity, offer Bryson reinstatement to his former position

or, if his position no longer existed, to a substantially equivalent position, and post and distribute

---

[3]   Palmer was deposed on May 18, 2022.  *See* Deposition of Derrick Palmer ("Palmer Depo."),
ECF No. 46-4.  Martinez was deposed on May 20, 2022.  *See* Deposition of Tristian Martinez
("Martinez Depo."), ECF No. 46-5.  Bryson was deposed on May 23, 2022.  *See* Deposition
of Gerald J. Bryson ("Bryson Depo."), ECF No. 46-2.  Smalls was deposed on May 25, 2022.
*See* Deposition of Christian Smalls ("Smalls Depo."), ECF No. 46-3.  The record before the
Court includes those portions of the deposition testimony filed by the parties.

[4]   In reaching this conclusion, the ALJ noted that there was "considerable evidence" that
Respondent's stated reason for discharging Bryson was pretextual, and noted, *inter alia*, that
the evidence demonstrated that Respondent conducted a "skewed investigation" of the April
6, 2020 altercation between Bryson and Evans.  *See* ALJ Decision at 20.  Familiarity with the
ALJ's findings and conclusions is assumed.

to employees notices reflecting the relief granted by the ALJ.  *See* ALJ Decision at 20, 22-23.
There has not been a final disposition of the case before the Board, *see* Am. Pet. ¶ 10, as
Respondent has filed exceptions to the ALJ's decision, *see* Respondent's Exceptions to the
ALJ's Decisions, ECF No. 47-23.

On June 24, 2022, following the close of discovery in the instant action and based on the
developments noted above – including the ALU's success in the election and the issuance of the
ALJ's decision – the Court held a conference.  *See* ECF No. 42.[5]  At the conference, and in light
of Petitioner's prior withdrawal of certain requested relief relating to Bryson's suspension –
which withdrawal was made in a footnote to a letter dated April 20, 2022, *see* ECF No. 35 at 1
n.3 – the Court directed Petitioner to file an amended petition reflecting the relief still being
sought by Petitioner.  *See* ECF No. 42.

On July 8, 2022, Petitioner filed the Amended Petition.  *See* Am. Pet.  The Amended
Petition is substantially similar to the Initial Petition, but accounts for the April 2022 ALU
election victory and the issuance of the ALJ's decision and does not seek relief related to
Bryson's suspension.  *See generally* Am. Pet.

On August 17, 2022, oral argument was held on the Amended Petition.  *See* ECF No. 50.

As set forth above, Petitioner argued in connection with the Initial Petition that injunctive
relief in the form of an order directing Respondent to reinstate Bryson was just and proper
principally because of the then-impending election.  In contrast, Petitioner argues in connection
with the Amended Petition that because "Amazon has challenged the election results and its

---

[5]   In advance of the June 24, 2022 conference, the parties filed a joint status letter.  *See* Joint
Status Letter, ECF No. 40.  Despite Respondent's earlier request for an evidentiary hearing,
Respondent indicated that it likely would not seek an evidentiary hearing but asked for the
opportunity to supplement its position on this issue by June 23, 2022.  *See* Joint Status Letter
at 1-2.  Respondent did not thereafter request an evidentiary hearing.

objections are being litigated[,] . . . it is even more imperative that Bryson be reinstated to show the [ALU's] legitimacy and to allow the [ALU] the opportunity to maintain its level of support through the challenge process if there is to be any chance of a level playing field between Amazon and the nascent [ALU] when they bargain for an initial collective bargaining agreement." *See* Pet. Br. at 12; *see also* Pet. Br. at 16; Petitioner's Response Brief to Respondent's Brief in Opposition ("Pet. Reply") at 4, 6-8, ECF No. 48.  Petitioner argues that absent Bryson's reinstatement, Amazon employees' willingness to act in concert will be irreparably harmed. *See, e.g.*, Pet. Br. at 19-21; *see also* Am. Pet. ¶ 9.  More specifically, Petitioner contends that Bryson's reinstatement would work to protect employees' willingness to engage in activities such as protests concerning workplace safety, *see* Pet. Br. at 20; is necessary to protect employees' interest in and willingness to openly and freely support the ALU and engage in protected concerted activity, *see* Pet. Br. at 17-18; and would restore a "key figure" to JFK8 that would empower the ALU to "level the playing field during first contract bargaining and further protected concerted activity in support of the [ALU's] bargaining goals" and "aid the ongoing campaigns at Respondent's other Staten Island facilities," *see* Pet. Br. at 22.  In support of her position, Petitioner – as with the Initial Petition – relies on the official evidentiary record developed before the ALJ and on the Affidavits.  *See generally* Pet. Br.; Pet. Reply.[6]

---

[6]   Make the Road New York, a non-profit organization that represents Bryson in the underlying case before the NLRB – and that represented Bryson, Palmer, and Martinez at their depositions in the instant action, *see* Bryson Depo. at 2, 5; Palmer Depo. at 7; Martinez Depo. at 7 – and the ALU have each filed a motion for leave to file an *amicus curiae* brief in support of Petitioner's request for injunctive relief.  *See* ECF Nos. 30, 53.  Courts have noted that "[t]here is no governing standard, rule or statute prescribing the procedure for obtaining leave to file an amicus brief in the district court, and so deciding whether to permit an individual to act as amicus curiae lies in the firm discretion of the district court."  *See Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20-CV-10832, 2021 WL 4555352, at *5 (S.D.N.Y. Oct. 4, 2021) (quotation marks omitted).  Courts permit the filing of *amicus curiae* submissions when "they are of aid to the court and offer insights not available from the parties."  *See Auto. Club*

In response to Petitioner's just and proper arguments, Respondent argues, *inter alia*, that the record is devoid of evidence that Bryson's termination caused harm to the ALU's organizing efforts or that the ALU will falter without Bryson's reinstatement.  *See* Resp. Br. at 3-4.[7] Respondent further argues that there is no evidence that Bryson's protests evolved into the ALU organizing campaign a year later or that Bryson had a leadership role in the ALU.  *See* Resp. Br. at 21-22.  Respondent contends that Petitioner would have sought Bryson's reinstatement sooner had the Board truly believed that Bryson's reinstatement was integral to the protection of employee rights during the ALU's organizing campaign.  *See* Resp. Br. at 22.

## STANDARD OF REVIEW

Section 8(a)(1) of the NLRA in relevant part provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in [Section 7]."  29 U.S.C § 158(a)(1).  Section 7 of the NLRA in relevant part provides that employees "shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."  29 U.S.C. § 157.

Pursuant to Section 10(j) of the NLRA, the Board "shall have power, upon issuance of a

---

*of N.Y., Inc. v. Port Auth. of N.Y. & N.J.*, No. 11-CV-06746, 2011 WL 5865296, at *1 (S.D.N.Y. Nov. 22, 2011).  Here, each of the parties to this action is represented by able counsel and, having reviewed the respective proposed *amicus curiae* briefs, the Court concludes that the briefing does not assist the Court.  Accordingly, the motions for leave to file *amicus curiae* briefs, ECF Nos. 30 and 53, are denied.

[7]  Indeed, at oral argument, Respondent asserted that ALU organizers would explain to Amazon associates who Bryson was and what had happened to him in order to bolster the ALU's organizing efforts.  *See* Transcript of August 17, 2022 Oral Argument ("Aug. 17, 2022 Tr.") at 25-26.

complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition [a] United States district court . . . for appropriate temporary relief or restraining order . . . and [the court] shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper."  29 U.S.C. § 160(j).  Section 10(j) "gives federal district courts the power to grant temporary injunctive relief, pending the NLRB's resolution of an unfair labor practice charge."  *Fernbach ex rel. N.L.R.B. v. Raz Dairy, Inc.*, 881 F. Supp. 2d 452, 460-61 (S.D.N.Y. 2012) (quotation marks omitted).  Notably, injunctive relief under Section 10(j) is "an extraordinary remedy."  *See Kreisberg v. HealthBridge Mgmt., LLC*, 732 F.3d 131, 141 (2d Cir. 2013) (quotation marks omitted), *cert. denied sub nom. HealthBridge Mgmt., LLC v. Kreisberg*, 574 U.S. 1066 (2014).

The two-prong standard for Section 10(j) injunctive relief in this Circuit is well established.  *See HealthBridge Mgmt., LLC*, 732 F.3d at 141; *see also Paulsen v. Remington Lodging & Hosp., LLC*, 773 F.3d 462, 468-69 (2d Cir. 2014); *Ley v. Wingate of Dutchess, Inc.*, 182 F. Supp. 3d 93, 101 (S.D.N.Y. 2016).  "*First*, the court must find reasonable cause to believe that an unfair labor practice has been committed.  *Second*, the court must find that injunctive relief is just and proper."  *Remington Lodging & Hosp., LLC*, 773 F.3d at 468-69.

In considering whether a petitioner has demonstrated reasonable cause to believe that an unfair labor practice has been committed, the district court "does not need to make a final determination whether the conduct in question constitutes an unfair labor practice."  *Hoffman ex rel. N.L.R.B. v. Inn Credible Caterers, Ltd.*, 247 F.3d 360, 365 (2d Cir. 2001); *see also Raz Dairy, Inc.*, 881 F. Supp. 2d at 461.  Rather, "reasonable cause to support such a conclusion is sufficient."  *Inn Credible Caterers, Ltd.*, 247 F.3d at 365; *see also Raz Dairy, Inc.*, 881 F. Supp. 2d at 461 ("The [NLRB's] Regional Director is not required to show that an unfair labor practice

occurred, or that the precedents governing the case are in perfect harmony, but only that there is reasonable cause to believe that a Board decision finding an unfair labor practice will be enforced by a Court of Appeals." (alteration accepted) (quoting *Kaynard v. Mego Corp.*, 633 F.2d 1026, 1032-33 (2d Cir. 1980))). District courts must afford "significant deference" to the NLRB Regional Director's determinations regarding reasonable cause. *See Remington Lodging & Hosp., LLC*, 773 F.3d at 469 (citing *Inn Credible Caterers, Ltd.*, 247 F.3d at 365). Where factual issues are in dispute, the district court "should draw all inferences in favor of the NLRB" and "should sustain the NLRB's version of the facts as long as it is 'within the range of rationality.'" *Blyer ex rel. N.L.R.B. v. P & W Elec., Inc.*, 141 F. Supp. 2d 326, 329 (E.D.N.Y. 2001) (quoting *Mego Corp.*, 633 F.2d at 1031). Indeed, "even on issues of law, the district court should be hospitable to the views of the [NLRB's] General Counsel, however novel." *Murphy v. Cayuga Med. Ctr. of Ithaca*, 715 F. App'x 108, 109 (2d Cir. 2018) (quoting *Mego Corp.*, 633 F.2d at 1031); *see also Inn Credible Caterers, Ltd.*, 247 F.3d at 365 ("In this Circuit, when considering § 10(j) petitions, we give considerable deference to the NLRB Regional Director. As we have noted, with respect to issues of fact, the Regional Director should be given the benefit of the doubt . . . and on questions of law, the Board's view should be sustained unless the court is convinced that it is wrong." (quotation marks omitted)); *Silverman v. Major League Baseball Player Rels. Comm., Inc.*, 67 F.3d 1054, 1059 (2d Cir. 1995) ("Appropriate deference must be shown to the judgment of the NLRB, and a district court should decline to grant relief only if convinced that the NLRB's legal or factual theories are fatally flawed."); *HealthBridge Mgmt., LLC*, 732 F.3d at 141 ("Generally, a preliminary injunction involves no preliminary determination by a government enforcement agency, is resolved on the merits by a district court, and is issued pursuant to the court's equitable power rather than a specific statute. By contrast,

14

§ 10(j) petitions come from a unique statutory scheme that requires . . . deference to the NLRB, which resolves the underlying unfair labor practice complaint on the merits and makes an initial determination, prior to the filing of a petition, to file such a complaint."). Moreover, where, as here, the ALJ has ruled in the underlying matter before the NLRB, the district court must accord appropriate deference to the ALJ's decision. *See Silverman v. J.R.L. Food Corp.*, 196 F.3d 334, 337-38 (2d Cir. 1999); *see also Blyer ex rel. N.L.R.B. v. Jung Sun Laundry Grp. Corp.*, No. 10-CV-02975, 2010 WL 4722286, at *7 (E.D.N.Y. Nov. 15, 2010) (noting that, where the ALJ has ruled, "federal courts should accord the ALJ's factual and legal conclusions reasonable deference in adjudicating the Board's petition").

If a district court finds reasonable cause to believe that an unfair labor practice has been committed, the court "then must apply traditional rules of equity to determine whether the relief requested is 'just and proper.'" *See P & W Elec., Inc.*, 141 F. Supp. 2d at 329 (first citing *Inn Credible Caterers, Ltd.*, 247 F.3d at 365; then citing *Mego Corp.*, 633 F.2d at 1033); *see also Murphy v. NCRNC, LLC*, 474 F. Supp. 3d 542, 548 (N.D.N.Y. 2020) (citing *Cayuga Med. Ctr. of Ithaca*, 715 F. App'x at 111). Injunctive relief under Section 10(j) is just and proper "when it is necessary to prevent irreparable harm or to preserve the status quo." *Inn Credible Caterers, Ltd.*, 247 F.3d at 368 (collecting cases). "While this standard preserves traditional equitable principles governing injunctive relief," courts must be "mindful to apply them in the context of federal labor laws." *See id.*

"The principal purpose of a § 10(j) injunction is to guard against harm to the collective bargaining rights of employees." *Remington Lodging & Hosp., LLC*, 773 F.3d at 469; *see also id.* ("[T]he main focus of a § 10(j) analysis should be on harm to organizational efforts."). Consistent with that purpose, the appropriate test for whether harm is irreparable in the context

of Section 10(j) cases is "whether the employees' collective bargaining rights may be undermined" by the asserted unfair labor practices and "whether any further delay may impair or undermine such bargaining in the future." *HealthBridge Mgmt., LLC*, 732 F.3d at 142 (quoting *Inn Credible Caterers, Ltd.*, 247 F.3d at 369). The "status quo" for purposes of the just and proper analysis "is not the illegal status quo which has come into being as a result of the unfair labor practices being litigated," but rather, "the status quo as it existed before the onset of unfair labor practices." *Wingate of Dutchess, Inc.*, 182 F. Supp. 3d at 101 (quoting *Seeler v. Trading Port, Inc.*, 517 F.2d 33, 38 (2d Cir. 1975)).

## DISCUSSION

For the reasons set forth below, the Court concludes that there is reasonable cause to believe that an unfair labor practice has been committed by Respondent in connection with its termination of Bryson, and determines that the issuance of an order directing Respondent to cease and desist from taking certain actions and directing Respondent to post, distribute, and read the Court's order to employees at the JFK8 Facility is just and proper, but that the requested Bryson-specific relief is not warranted.

**I.    There is Reasonable Cause to Believe that an Unfair Labor Practice has been Committed**

Petitioner asserts that strong support exists for a finding that there is reasonable cause to believe that Amazon violated Section 8(a)(1) of the NLRA. *See* Pet. Br. at 12-15.[8] In support of this position, Petitioner asserts that *Wright Line, a Division of Wright Line, Inc.*, 251 N.L.R.B. 1083 (1980), provides the applicable standard for determining whether an unfair labor practice

---

[8]   Petitioner presents her view of the facts in the Amended Petition and supporting documents, *see generally* Am. Pet.; *see* Pet. Br. at 4-12, and asks the Court to consider the findings and legal conclusions of the ALJ, *see* Pet. Br. at 12-15.

has been committed.  *See* Aug. 17, 2022 Tr. at 35; *see also* Pet. Br. at 13.  Under the two-step *Wright Line* analysis, "the Board's General Counsel must first present evidence that proves that protected conduct was a motivating factor in the discharge."  *See N.L.R.B. v. G & T Terminal Packaging Co.*, 246 F.3d 103, 116 (2d Cir. 2001); *see also N.L.R.B. v. Newark Elec. Corp.*, 14 F.4th 152, 169 (2d Cir. 2021).  "If this burden of persuasion is met, the employer may avoid liability only if it demonstrates by a preponderance of the evidence that it would have reached the same decision absent the protected conduct."  *G & T Terminal Packaging Co.*, 246 F.3d at 116 (quotation marks omitted); *see also Newark Elec. Corp.*, 14 F.4th at 169.  If an employer's asserted reasons for the discharge are shown to be pretextual, the employer has failed to meet its burden.  *See Abbey's Transp. Servs., Inc. v. N.L.R.B.*, 837 F.2d 575, 579 (2d Cir. 1988); *N.L.R.B. v. Matros Automated Elec. Const. Corp.*, 366 F. App'x 184, 187 (2d Cir. 2010).

As noted above, the Court must give deference to the NLRB's legal theories unless convinced that they are wrong.  *See Inn Credible Caterers, Ltd.*, 247 F.3d at 365; *see also Major League Baseball Player Rels. Comm., Inc.*, 67 F.3d at 1059.  Because the Court is not convinced that the position of Petitioner that *Wright Line* is the appropriate standard is wrong, the Court defers to Petitioner's view that *Wright Line* provides the applicable standard here.  Indeed, courts have applied *Wright Line* in cases involving alleged violations of Section 8(a)(1).  *See, e.g.*, *Bozzuto's Inc. v. N.L.R.B.*, 927 F.3d 672, 683 (2d Cir. 2019); *G & T Terminal Packaging Co.*, 246 F.3d at 116.

Drawing all factual inferences in favor of the NLRB and sustaining the NLRB's version of the facts – as the Court must, given that the NLRB's version is "within the range of rationality," *see P & W Elec., Inc.*, 141 F. Supp. 2d at 329 (quotation marks omitted) – the Court concludes that the record amply supports the conclusion that there is reasonable cause to believe

that Bryson was terminated in violation of Section 8(a)(1).  Indeed, when viewed in light of the required deference, the record evidence before the Court amply supports Petitioner's position that Bryson was engaged in protected activity, that Bryson's protected conduct was a motivating factor in his discharge, and that Respondent's stated reason for discharging Bryson was pretextual.[9]

Moreover, the ALJ's findings and conclusion that Respondent violated Section 8(a)(1) confirm that a finding of reasonable cause is warranted.  In analyzing whether Respondent violated Section 8(a)(1) by discharging Bryson because of his protected concerted activity, the ALJ considered both the *Wright Line* standard advanced by Petitioner, as well as the alternative standard from *N.L.R.B. v. Burnup & Sims, Inc.*, 379 U.S. 21 (1964), advanced by Respondent. *See* ALJ Decision at 11-20.[10]  The ALJ – who presided over a trial and heard numerous days of witness testimony, *see* Am. Pet. ¶ 5(a) – concluded that a violation had been committed under both *Wright Line* and *Burnup & Sims*.  In connection with his *Burnup & Sims* analysis, the ALJ concluded that Respondent failed to carry its burden at step two of the three-step analysis, finding that the evidence failed to indicate that Respondent had an honest, good-faith belief that

---

[9]  The video of the altercation between Bryson and Evans, *see* ECF No. 47-3, lends support to the conclusion that there is reasonable cause to believe that Respondent engaged in an unfair labor practice.

[10]  Under the *Burnup & Sims* standard, "[Section] 8(a)(1) is violated if it is shown that the discharged employee was at the time engaged in a protected activity, that the employer knew it was such, that the basis of the discharge was an alleged act of misconduct in the course of that activity, and that the employee was not, in fact, guilty of that misconduct."  *Burnup & Sims, Inc.*, 379 U.S. at 23; *see also id.* (noting that "the Board has ruled that [Section] 8(a)(1) is violated if an employee is discharged for misconduct arising out of a protected activity, despite the employer's good faith, when it is shown that the misconduct never occurred").

Bryson engaged in serious misconduct warranting discharge. *See* ALJ Decision at 16.[11] And, when applying the *Wright Line* standard, the ALJ concluded that Bryson was engaged in protected concerted activity, that Bryson's discharge was a result of animus toward his protected concerted activity, and that Respondent's stated reason for Bryson's discharge was pretextual. *See* ALJ Decision at 19-20.[12] According the ALJ's factual and legal conclusions reasonable deference, *see Jung Sun Laundry Grp. Corp.*, 2010 WL 4722286, at *7, the ALJ's decision further supports a finding that reasonable cause exists to believe that Respondent violated Section 8(a)(1).

Respondent argues that Petitioner has failed to demonstrate reasonable cause because Petitioner "merely urges the Court to defer to the ALJ's decision without scrutiny" and that the ALJ's decision "is not only rife with error, but it relies on novel modifications of the controlling legal standards." *See* Resp. Br. at 23-24. Respondent's arguments regarding the purported errors in the ALJ's decision are unavailing. Respondent's primary argument with respect to the ALJ's decision appears to be that *Burnup & Sims* provides the controlling standard in this case and that the ALJ improperly modified the *Burnup & Sims* standard in conducting his analysis. *See* Resp. Br. at 23. As noted above, however, the Court defers to Petitioner's view that *Wright Line* provides the controlling standard in this case and concludes – based on the record before the Court when viewed with the appropriate deference to the NLRB – that Petitioner has

---

[11] The ALJ additionally explained that, had the *Burnup & Sims* analysis progressed to step three, the ALJ would also have found a violation given the ALJ's conclusion that the evidence indicates that Bryson did not engage in dischargeable misconduct. *See* ALJ Decision at 18-19.

[12] Having found that the evidence indicated that Respondent's stated reason for discharging Bryson was a pretext for Bryson's protected concerted activity, the ALJ concluded that Respondent could not establish a *Wright Line* defense. *See* ALJ Decision at 20.

demonstrated reasonable cause to believe that Respondent violated Section 8(a)(1).

Respondent's remaining arguments regarding various purported errors in the ALJ's decision, *see* Resp. Br. at 24, fail to suggest that a finding of reasonable cause under *Wright Line* is inappropriate here.

The Court concludes that there is reasonable cause to believe that an unfair labor practice has been committed.

## II.   Issuance of an Order Directing Respondent to Cease and Desist from Taking Certain Actions and Directing Respondent to Post, Distribute, and Read the Court's Order to Employees at the JFK8 Facility is Just and Proper, But Bryson-Specific Affirmative Relief is Not Warranted

Petitioner seeks an order from the Court requiring, *inter alia*, that Respondent, pending the final disposition of the matters before the Board: (1) cease and desist from discharging employees because they engaged in protected concerted activity and from, in any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by Section 7 of the NLRA; (2) post, distribute, and read the order to employees at the JFK8 Facility; (3) offer, in writing, Bryson immediate reinstatement to his former position, or, if his position no longer exists, to a substantially equivalent position; and (4) expunge the adverse employment action from Bryson's employment records.  *See* Am. Pet. at 7-9.  In light of the record before the Court, including facts developed during discovery, and in light of the role of the Court in deciding a petition for Section 10(j) temporary injunctive relief, the Court concludes, for the reasons that follow, that issuance of an order directing Respondent to cease and desist from taking certain actions and directing Respondent to post, distribute, and read the Court's order to employees at the JFK8 Facility is just and proper, but that Bryson-specific affirmative relief is not warranted.

A.     **Issuance of an Order Directing Respondent to Cease and Desist from Taking Certain Actions and Directing Respondent to Post, Distribute, and Read the Court's Order to Employees at the JFK8 Facility is Warranted Based on the Record Before the Court**

Based on the record before the Court, the Court concludes that issuance of an order directing Respondent to cease and desist from discharging employees because they engaged in protected concerted activity and from, in any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by Section 7 of the NLRA and directing Respondent to post, distribute, and read the Court's order to employees at the JFK8 Facility is just and proper.

As an initial matter, cease and desist orders are appropriate in order to prevent employers from engaging in unfair labor practices. *See Drew-King v. Deep Distribs. of Greater NY, Inc.*, 194 F. Supp. 3d 191, 200-01 (E.D.N.Y. 2016); *see also Mattina ex rel. N.L.R.B. v. Kingsbridge Heights Rehab. & Care Ctr.*, No. 08-CV-06550, 2008 WL 3833949, at *25 (S.D.N.Y. Aug. 14, 2008) (noting that an injunction requiring an employer to cease and desist from engaging in clear violations of the NLRA "is clearly 'proper' insofar as it simply reconfirms [an employer's] existing obligations" under the NLRA), *aff'd*, 329 F. App'x 319 (2d Cir. 2009).  Respondent's suggestion to the contrary, *see* Resp. Br. at 17, is unpersuasive.  Indeed, courts have issued cease and desist orders that contain substantially similar directives to those sought by Petitioner here. *See, e.g.*, *P & W Elec., Inc.*, 141 F. Supp. 2d at 333; *Deep Distribs. of Greater NY, Inc.*, 194 F. Supp. 3d at 202.  Further, courts have included the reading and posting of court orders within the temporary injunctive relief awarded under Section 10(j).  *See, e.g.*, *NCRNC, LLC*, 474 F. Supp. 3d at 563 (referring to reading and posting of the court's order as "traditional remedies . . . [that are] appropriate"); *Deep Distribs. of Greater NY, Inc.*, 194 F. Supp. 3d at 203; *Wingate of Dutchess, Inc.*, 182 F. Supp. 3d at 107; *Raz Dairy, Inc.*, 881 F. Supp. 2d at 470; *see also Novelis*

21

*Corp. v. N.L.R.B.*, 885 F.3d 100, 105, 110 (2d Cir. 2018).  Such measures are employed as appropriate means for giving employees assurances that their rights will be protected.

In this case, Petitioner argues that a cease and desist order is necessary to prevent Amazon from engaging in future unfair labor practices – conduct that might undermine employee organizing and bargaining efforts.  *See* Pet. Reply at 2-3.  Petitioner additionally argues that the reading and posting of the order will further inform and reassure employees of their rights.  *See* Pet. Br. at 23.  In light of the Court's finding that there is reasonable cause to believe that an unfair labor practice has been committed and in consideration of the relevant equitable principles, the Court concludes that a cease and desist order is warranted to ensure that Respondent refrains from engaging in unfair labor practices.  Moreover, the Court concludes that directing Respondent to post, distribute, and read the Court's order to employees at the JFK8 Facility is warranted as a measure to give employees confidence that Respondent will refrain from engaging in unfair labor practices.[13]

### B.   Bryson-Specific Affirmative Relief is Not Warranted Based on the Record Before the Court

Based on the record before the Court, the Court concludes that interim Bryson-specific affirmative relief is not warranted.  Although courts often grant interim reinstatement for unlawfully discharged employees under Section 10(j), *see Deep Distribs. of Greater NY, Inc.*, 194 F. Supp. 3d at 201; *Wingate of Dutchess, Inc.*, 182 F. Supp. 3d at 105, such relief is not warranted in all circumstances, *see, e.g.*, *Fernbach ex rel. N.L.R.B. v. Recycling*, No. 17-CV-

---

[13] Respondent's argument that certain of Bryson's testimony concerning Bryson's potential reinstatement renders the Amended Petition moot and the Court without subject matter jurisdiction over this action, *see* Resp. Br. at 15-18, is without merit, particularly given that Petitioner seeks the appropriate relief of issuance of an order directing Respondent to cease and desist from taking certain actions and directing Respondent to post, distribute, and read such order to employees at the JFK8 Facility.

05694, 2017 WL 4286327, at *5 (S.D.N.Y. Sept. 26, 2017).  Indeed, in this Circuit, injunctive relief under Section 10(j) is only warranted when "necessary to prevent irreparable harm or to preserve the status quo."  *See HealthBridge Mgmt., LLC*, 732 F.3d at 142 (quotation marks omitted).  In conducting this inquiry, the focus is on harm to the organizational efforts and collective bargaining rights of employees.  *See Remington Lodging & Hosp., LLC*, 773 F.3d at 469.

Petitioner argues that Bryson-specific affirmative relief is necessary, both to prevent irreparable harm and to preserve the status quo that existed prior to Respondent's alleged unlawful acts.  *See* Pet. Br. at 15-25; Pet. Reply at 3-9.  With respect to irreparable harm, Petitioner argues, *inter alia*: that absent Bryson's reinstatement, employee confidence and support for the ALU will diminish over time, which will affect employee willingness to stand by the ALU during the challenge process and to support the collective bargaining process, *see, e.g.*, Pet. Br. at 17-18; that "[t]he termination of a visible employee activist like Bryson can create a leadership void sufficient to derail the concerted activities and the [ALU's] bargaining position and progression towards a first contract," *see* Pet. Br. at 19; and that Bryson's continued absence from the workplace may discourage employees from engaging in concerted efforts, including those concerning workplace safety, thereby "permanently frustrating the employees' right to concertedly act for mutual aid and protection," *see* Pet. Br. at 19-21.

With respect to the status quo, Petitioner asserts that an injunction will "reestablish the [ALU's] legitimate level of employee support as it prepares for bargaining at JFK8 and organizing other facilities."  *See* Pet. Reply at 4.  In arguing that an injunction is necessary to restore the status quo as it existed before Bryson's termination, Petitioner does not appear to argue that employee engagement must be restored to the levels that existed at the time of

Bryson's termination, which was approximately one year before the ALU was formed and before organizing in support of the ALU had occurred.  Instead, Petitioner appears to argue that, had Bryson not been terminated, the ALU would have received a greater level of employee support than it currently receives, and Bryson's reinstatement is necessary to enable the ALU to receive this greater, legitimate level of support.  *See, e.g.*, Pet. Br. at 16-17; Pet. Reply at 4; *see also* Aug. 17, 2022 Tr. at 38 ("[T]he [ALU] has been deprived of its legitimate level of support, even though it has gained the amount of support sufficient to win this election.").  In support of this theory, Petitioner relies on the Affidavits, which pre-date the April 2022 ALU election victory, and deposition testimony from May 2022 concerning ALU organizing efforts and Bryson's role in those efforts, which testimony Petitioner claims supports the content of the Affidavits.  *See, e.g.*, Aug. 17, 2022 Tr. at 6-7; *see also* Aug. 17, 2022 Tr. at 30, 38.

Given the unique circumstances of this case, the Court concludes that the Bryson-specific affirmative relief requested by Petitioner is not warranted.  Petitioner has not presented evidence demonstrating that Bryson's termination continues to have any appreciable effect on the ALU's efforts or on employee willingness to engage in protected concerted activity.  Furthermore, given that Bryson was terminated approximately one year before the ALU was formed, this case is distinguishable from cases where union activists were terminated contemporaneous with their union activity and a diminution of union support was shown to exist following the termination. Based on the specific facts and circumstances of this case, and in light of the relevant equitable principles, the Court cannot conclude that the Bryson-specific affirmative relief sought by Petitioner is necessary to protect the rights and organizational efforts of Amazon employees.

Notably, although Petitioner had the opportunity, through, *inter alia*, depositions taken during discovery, to supplement and update the information contained in the late 2021/early

2022 Affidavits – which Petitioner identified as Petitioner's primary evidence in support of her just and proper arguments in connection with the Initial Petition, *see* Motion to Try Petition at 5-6; *see also* Transcript of March 30, 2022 Status Conference before Magistrate Judge Sanket J. Bulsara at 8 – Petitioner failed to develop the record in support of Petitioner's argument that Bryson's termination has had an ongoing effect on employee willingness to support the ALU or to engage in protected concerted activity following the successful ALU election.  And Petitioner has failed to offer sufficient concrete, non-speculative evidence to support a determination that Bryson's termination had an appreciable effect on employee engagement during ALU organization efforts prior to the election.[14]  Therefore, even were the Court to accept what appears to be Petitioner's view as to the relevant "status quo" for purposes of the just and proper analysis – *i.e.*, a time when the "legitimate" level of ALU support could be realized – the Court would be unable to conclude on the present record that current support for the ALU is lower than it otherwise would have been had Bryson not been terminated, or that employee rights will be irreparably harmed by Bryson's continued absence.[15]

  To the contrary, the record reflects that Amazon employees have, since Bryson's termination, engaged in protected activity in earnest by supporting the ALU.  Based on the

---

[14] During his deposition, Bryson only specifically identified one employee by (first) name when questioned about Amazon employees who had asked Bryson when he would be returning to work, *see* Bryson Depo. at 214; *see also* Bryson Depo. at 212, and the record reflects that Bryson does not know if or how this employee voted in the ALU election, *see* Bryson Depo. at 217.  Palmer testified that some employees refused to take an ALU tee-shirt or mask because they were afraid to be fired like Bryson and Smalls (who also was terminated from employment with Amazon in 2020, *see* Pet. Br. at 6); however, Palmer testified that he could not recall, even in general terms, how many employees had done so and that he could not identify even one such employee by name.  *See* Palmer Depo. at 86-89.

[15] Contrary to Petitioner's contention, *see* Pet. Br. at 20, the record does not suggest that Bryson's termination has led to a chilling of employee willingness to engage in protests related to Respondent's Covid-19 measures.

record before the Court, it appears that employee interest in the ALU has grown robustly since its formation, leading to the ALU's success in the election.  Indeed, the ALU had an "army of organizers" working inside and outside of JFK8, *see* Bryson Depo. at 83-85, Amazon employees wore ALU tee-shirts and lanyards around JFK8, *see* Bryson Depo. at 54, and, ultimately, the ALU won the election, *see* Am. Pet. ¶ 8(e).  And the record reflects that, since winning the election, the ALU has continued its organizing efforts by moving from "working out of a SUV/apartment" to new offices, *see* ECF No. 47-21, commencing organizing efforts in Albany, New York, *see* ECF No. 47-22, and having Smalls meet with public officials – including the President of the United States, the Vice President of the United States, and the United States Secretary of Labor, *see* Smalls Depo. at 283-87; ECF No. 47-20.  The history of employee organizing efforts around the ALU – which, again, was formed approximately one year *after* Bryson was terminated – strongly cuts against Petitioner's contention that Amazon employees' willingness to engage in protected concerted activities will be irreparably harmed absent Bryson's reinstatement.  *See* Pet. Br. at 19-23.

The weight of the record evidence does not suggest that Bryson's reinstatement will have anything more than a nominal, if any, effect on Amazon employees.  Bryson does not hold an official position at the ALU.  *See, e.g.*, ECF No. 47-7 at 4305.  And, notably, the record indicates that Bryson typically must explain to employees who he is, why he is organizing, and that he was fired by Amazon, *see* Smalls Aff. ¶ 4, which suggests that Bryson's reinstatement would not affect employees' willingness to organize.

In sum, Petitioner has failed to demonstrate that Bryson-specific affirmative relief would affect employee willingness to engage in organizing, collective bargaining, or other protected activities.  Petitioner has failed to demonstrate that Bryson's continued non-reinstatement will

cause irreparable harm to employees' concerted activities, the ALU's status at JFK8, or the ALU's bargaining position.  Petitioner has additionally failed to demonstrate that current levels of employee engagement are any lower than they would otherwise have been had Bryson not been terminated, and therefore that any "status quo" must be restored.  Tellingly, despite the fact that Petitioner had the opportunity during post-election depositions during discovery to solicit evidence regarding any ongoing impact of Bryson's termination, the record does not contain adequate concrete, non-speculative evidence to suggest that employee engagement has been hindered as a result of Bryson's absence or that the ALU would be in a stronger position were Bryson to be reinstated.

Based on the record before the Court, it appears that Petitioner overstates the effect that Bryson's non-reinstatement has had, and will have, on Amazon employees' willingness to engage in protected concerted activity.

* * *

For the foregoing reasons, the Court declines to order interim Bryson-specific affirmative relief but concludes that issuance of an order directing Respondent to cease and desist from discharging employees because they engaged in protected concerted activity and from, in any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by Section 7 of the NLRA and directing Respondent to post, distribute, and read the Court's order to employees at the JFK8 Facility is appropriate under traditional equitable principles, as applied in this context, and will serve to protect Amazon employees' rights pending the final disposition of the case before the Board.

## CONCLUSION

For the reasons set forth above, the Amended Petition for Temporary Injunction Under Section 10(j) of the National Labor Relations Act, ECF No. 44, is GRANTED in part and DENIED in part.

Accordingly, it is hereby ORDERED that, pending the final disposition of the matters before the National Labor Relations Board in Case No. 29-CA-261755, Respondent, its officers, agents, representatives, employees, attorneys, successors, and assigns, and all persons acting in concert or participation with them, shall:

(1) Cease and desist from:

    (a) Discharging employees because they engaged in protected concerted activity; and

    (b) In any like or related manner interfering with, restraining, or coercing employees in the exercise of the rights guaranteed to them by Section 7 of the National Labor Relations Act.

(2) Take the following affirmative actions:

    (a) Within seven (7) days from the date of this Memorandum & Order:

        (i) Post a copy of this Memorandum & Order, including a Spanish-language version (the translation of which is to be paid for by Respondent and approved by the Regional Director of Region 29 of the NLRB), at the JFK8 Facility where Respondent customarily posts notices to its employees; maintain such postings pending the final disposition of the matters before the NLRB in Case No. 29-CA-261755; and grant to agents of the NLRB reasonable access to

the JFK8 Facility to monitor compliance with this posting

requirement;

(ii)    Distribute electronic copies of this Memorandum & Order, in

English and Spanish, to employees at the JFK8 Facility via those

websites, applications, or other electronic platforms that

Respondent customarily uses to communicate with employees; and

(iii)    Hold one or more meetings at the JFK8 Facility, scheduled to

ensure the widest possible employee attendance, at which a

responsible Respondent official, in the presence of an NRLB

agent, shall read this Memorandum & Order to employees.[16]  Such

meeting(s) shall be mandatory for all hourly employees at the

JFK8 Facility, shall be held during working hours at times when

Respondent customarily holds employee meetings, and shall be

announced in the same manner in which Respondent customarily

announces employee meetings.  Respondent shall ensure that the

Spanish-language version of this Memorandum & Order also is

read during such meeting(s).

(b)  Within twenty (20) days from the date of this Memorandum & Order, file with

the Court and serve upon Petitioner a sworn affidavit from a responsible

Respondent official that sets forth with specificity how Respondent has

complied with the terms of this Memorandum & Order.

---

[16]  At Respondent's option, the Memorandum & Order may be read by an agent of the NLRB in the presence of a responsible Respondent official.  At the option of the Regional Director of Region 29 of the NLRB, the NLRB agent's presence may be by video.

* * *

The Amended Petition having been GRANTED in part and DENIED in part, the Clerk of

Court is directed to close this case.

SO ORDERED.

/s/ Diane Gujarati
DIANE GUJARATI
United States District Judge

Dated: November 18, 2022
Brooklyn, New York