KATHY DREW KING, Regional Director
of Region 29 of the National Labor Relations
Board, for and on behalf of the NATIONAL
LABOR RELATIONS BOARD

Petitioner

v.

AMAZON.COM SERVICES LLC

Respondent

Case No. 1:22-cv-01479-DG-SJB

# PETITIONER'S MOTION TO CLARIFY ORDER

## I.    INTRODUCTION

Kathy Drew King, Regional Director of Region 29 (Petitioner), of the National Labor Relations Board (NLRB), requests that the Court clarify, in certain respects, its Order granting a temporary injunction in this matter and requiring Respondent Amazon.com Services, LLC (Respondent) to take certain affirmative actions. (ECF No. 55).

On November 18, 2022, the Honorable Judge Gujarati issued an Order partially granting Petitioner's request for a temporary injunction pursuant to Section 10(j) of the National Labor Relations Act (Act) pending the final disposition of the underlying unfair labor practice case, in which an Administrative Law Judge of the NLRB found that Respondent unlawfully discharged employee Gerald Bryson in retaliation for engaging in concerted protest activity that was protected under Section 7 of the Act.  That proceeding is currently pending before the NLRB.

In her Memorandum, Judge Gujarati found that there was reasonable cause to believe that Respondent violated the Act by discharging Bryson in retaliation for his protected concerted activity and that injunctive relief ordering Respondent to cease and desist from discharging employees or engaging in like or related conduct was warranted to ensure that Respondent "will refrain from engaging in unfair labor practices."

In addition, the Court ordered Respondent to take the affirmative steps of posting, distributing, and reading the Court's Order to employees at the JFK8 Facility "as a measure to give employees confidence that Respondent will refrain from engaging in unfair labor practices."

In addition to imposing upon Respondent an affirmative obligation to cease and desist from discharging its employees because they engaged in protected concerted activities and, in any like or related manner, interfering with, restraining, or coercing employees in the exercise of their rights guaranteed by Section 7 of the Act, the Court directed Respondent to take the following affirmative actions, among others:

2(a)(i).    Within seven (7) days from the date of the Court's Order, "Post a copy of this Memorandum & Order, including a Spanish-language version (the translation of which is to be paid for by Respondent and approved by the Regional Director of Region 29 of the NLRB), at the JFK8 Facility **where Respondent customarily posts notices to its employees**; maintain such postings pending the final disposition of the matters before the NLRB in Case No. 29-CA-261755; and grant to agents of the NLRB reasonable access to the JFK8 Facility to monitor compliance with this posting requirement"; and

2(a)(iii).   By December 7, 2022,[1] "Hold one or more meetings at the JFK8 Facility, **scheduled to ensure the widest possible employee attendance**, at which a responsible Respondent official, in the presence of an [NLRB] agent, **shall read** this Memorandum & Order to employees. Such meeting(s) shall be mandatory for all hourly employees at the JFK8 Facility, **shall be held during working hours at times when Respondent customarily holds employee meetings**, and shall be announced in the same manner in

---

[1] The Court granted the Parties' Joint Motion to Alter Judgement to Extend Time for Amazon to comply with the provisions of Court's Order requiring the public reading of the Court's Memorandum and Order, such that Respondent must comply with Section 2(a)(iii) of the Court's Order by no later than December 7, 2022. (ECF No. 58).

**which Respondent customarily announces employee meetings**. Respondent shall ensure that the Spanish-language version of this Memorandum & Order also is read during such meeting(s).

(Emphasis added)

Petitioner seeks to clarify these portions of the Order because Respondent has taken actions, and has declared its intention to take additional actions, that contravene the express language of the Court's Order and that flout the clear intent of the Judge Gujarati's directive.

## II.   CLARIFICATION IS NECESSARY BECAUSE RESPONDENT HAS TAKEN ACTION THAT CONTRAVENES THE COURT'S ORDER

It is evident that Judge Gujarati's unambiguous Order – directing Respondent to take the affirmative steps of posting, distributing and reading the Court's Order – was not intended as a mere empty or symbolic gesture, but is, instead, is an extraordinary remedy meant to speak to the wronged employees "as a measure to give employees confidence that Respondent will refrain from engaging in unfair labor practices."

The actions Respondent has thus far taken and those that it has stated it plans to take in response to the Court's Order not only contravene the clear language of the Order but make a mockery of the very purpose and intention of the injunctive relief and affirmative steps ordered by this Court.   As shown below, Respondent arrogated to itself the authority to change, limit and modify the Court's clear order, propped up by flimsy, transparently false justifications, all designed to diminish the remedial impact of the Judge's Order.

Respondent should not be permitted to alter and water down the import of the Judge's Order.  The Court having found that injunctive relief was just and proper and that Respondent's conduct and equitable principles warranted obligating Respondent to take the affirmative steps of posting, distributing and reading the Court's Memorandum and Order to Respondent's JFK8

employees, it is imperative that Respondent be held to the full force and effect of this Honorable Court's Order.

As the Court is aware, as part of Respondent's multi-national online retail business, Respondent operates a large warehouse and distribution facility known as "JFK8" in Staten Island, New York. The record before the Court establishes that at the JFK8 facility, which is the size of 14 football fields, Respondent employs over 8,000 workers. The aforementioned provisions of the Judge's Order are clearly intended to ensure that the Court's Memorandum and Order is distributed to most, if not all, JFK8 employees both orally and in physical written form so that employees will be assuage employees' fears and provide some assurance that Respondent will not violate their rights.

A. **Respondent Has Not Complied with the Court's Order Requiring Respondent to Physically Post the Court's Order in Locations Where Respondent Customarily Posts Notices to Its Employees**

Judge Gujarati's Order is clear and unambiguous. Written in the plural, the Court ordered Respondent to post the Memorandum and Order in locations "where Respondent *customarily posts notices* to its employees." The Courd did not limit the physical posting requirement only to those locations where Respondent posts other legally required notices at JFK8.

Attached hereto as **Exhibit 1**, Petitioner submits the November 29, 2022, Declaration of Derrick Palmer, a long-time employee of Respondent at JFK8 and an officer of the Amazon Labor Union. Mr. Palmer testifies that on November 25, 2022, he searched for the posting of the Court's Memorandum and Order inside the first-floor break room at JFK8 and only found the Memorandum and Order posted on "a bulletin board behind a microwave and an arcade video game machine, in a part of the room that no one really goes to." (Exh. 1, ¶11). Mr. Palmer attaches to his November 29 Declaration a photo he took on November 25 of the posted Memorandum and Order, which shows that the Court's Memorandum and Order has been posted on a bulletin board alongside various

notices from both Respondent and federal and local government agencies. (Exh. 1, Exh. A). Petitioner avers that the Court did not intend to permit Respondent to feign compliance with its Order by limiting physical posting of the Memorandum and Order to an obscure corner of a single break room within the sprawling JFK8 facility.

Mr. Palmer further testifies that during the course of his employment, Respondent has regularly posted notices to employees regarding various work-related matters, including company confidentiality policies, workplace safety issues, tax compliance, COVID-19 vaccines, overtime pay, and scheduling issues on tables inside the JFK8 break room and inside bathroom stalls at the facility, referred to by Respondent and its employees as "Table Toppers" and "InSTALLments," respectively. (Exh.1, ¶12). In addition, Mr. Palmer testified that Respondent posted on the break room tables and inside bathroom stalls notices encouraging its employees to refrain from supporting the Amazon Labor Union (Id.*)*, a labor organization which, as the Court is aware, has won an NLRB election to become certified as the collective-bargaining representative of JFK8 employees. Presumably, Respondent regularly and customarily posts notices to employees via the Table Toppers and InSTALLments because Respondent wants to ensure that important notices are seen by the widest audience of employees. To conclude otherwise is not rational.

Nevertheless, Mr. Palmer's Declaration establishes that Respondent has failed to post the Court's Memorandum and Order on the break room tables or inside bathroom stalls at JFK8, as required by the plain language of the Order and Respondent's history of distributing notices to its employees. Respondent has refusal to post the Court's Memorandum and Order in accordance with the plain language of the Court's Order has occurred despite Petitioner's efforts to explain that compliance with the Court's Order requires such posting. On November 23, 2022, Petitioner, by her undersigned counsel, emailed Respondent counsel explaining that compliance with the

physical posting provisions of the Court's order mandates posting on break room tables and bathroom stalls and requesting physical posting in that manner because these are locations where Respondent customarily posts notices to employees. Respondent counsel replied that Respondent is "not inclined" to post or distribute the Court's Memorandum and Order as requested. Attached hereto as **Exhibit 2** is a true copy of the November 23 email exchange between Party counsel. On November 28, 2022, Petitioner, by her undersigned counsel, again emailed Respondent counsel to reiterate that posting on break room tables and in bathroom stalls is necessary to comply with the Court's Order, among other matters addressed. On November 29, 2022, Respondent, by its counsel, reiterated its intent not to post the Memorandum and Order as Petitioner requests. Attached hereto as **Exhibit 3** is a true copy of the November 28 and 29 email exchange between Petitioner counsel to Respondent counsel.

Respondent offered unsupportable, flimsy justifications for its refusal to post the Court's Order in additional locations. Respondent asserts that it is not required to post on the break room tables or inside bathroom stalls because it does not typically post "*legal* notices" in those locations. (Exh. 3) (emphasis added). Respondent's word-play violates the plain language and intent of the Court's Order. First, it is unclear what Respondent means by "legal" notices, and it is not clear that other notices posted in the Table Toppers and InSTALLments were not "legal" notices. Next, the Court does not limit Respondent's obligation to post the Order only to locations where it posts other "legal notices." Instead, the Judge's language is broad – requiring Respondent to post the Court's Memorandum and Order wherever Respondent customarily posts any kind of notices to employees. Respondent is improperly seeking to unilaterally add limitations and restrictions on the Court's broad posting Order. Moreover, Respondent's contention that additional physical posting is unnecessary because Respondent electronically distributed the Order flies in the face of

the Court's requirement that Respondent adequately post physically *and* electronically. Respondent's compliance with the electronic distribution requirements of the Order do not excuse it from fully complying with the physical posting requirements. The Court ordered both, and Respondent's unilateral alteration of the Judge's Order should not be countenanced.

Respondent's recalcitrant refusal to post the Court's Memorandum and Order in locations "where Respondent customarily posts notices to its employees," including on break room tables and inside bathroom stalls, leaves Petitioner with no option but to petition this Court to clarify provision 2(a)(i) of the Court's Order. Petitioner respectfully requests that the Court amend provision 2(a)(i) of the Court's Order to require Respondent to physical post the Memorandum and Order on each table of each break room and inside each bathroom stall at the JFK8 facility. Such clarification of the Court's Order will prevent Respondent from undermining the Court's intent to ensure widespread physical distribution of the Memorandum and Order to JFK8 employees, consistent with Respondent's customary practice of delivering important information to its workforce.

B. **Respondent's Stated Plan to Convene Meetings To Read the Court's Memorandum and Order to Employees Violates the Plain Language and Intent of the Court Order and Is Not Calculated to Ensure the Widest Possible Employee Attendance**

Provision 2(a)(iii) of the Court's Order obligates a representative of Respondent to publicly read the Court's Memorandum and Order to JFK8 employees. Again, written in clear unambiguous language, the Order imposed several important requirements with which Respondent must comply. The Court clearly directs Respondent to conduct mandatory meetings:

1. "**scheduled to ensure the widest possible employee attendance**";

2. "**at which a responsible Respondent official**, in the presence of an [NLRB] agent, **shall read**" the Memorandum & Order to employees; and

3. "held during working hours **at times when Respondent customarily holds employee meetings**."

7

The Order further provides that the NLRB agent's presence at such meetings may be by video, at the option of the NLRB Regional Director.

Respondent's stated plan for its purported Order readings violates the plain language, intent and purpose of each of the aforementioned requirements of the Order. Specifically, Respondent intends to conduct meetings at times that are not "scheduled to ensure the widest possible employee attendance," but instead are designed to minimize attendance, as the meetings have been scheduled at times that are not when Respondent customarily conducts mandatory meetings with its employees. Respondent also does not plan to announce the meetings in the same manner that it customarily announces mandatory staff meetings. Still, Respondent's most flagrant and brazen attempt to thwart the effectiveness of the remedy ordered by the Court is its refusal to actually *read* the Memorandum and Order to its employees. Instead, Respondent has decided that it will just present a pre-recorded audio or audio/video of a Respondent official performing the reading. The Court should not permit Respondent to proceed in this manner.

1. <u>Respondent's Planned Timing of Order-Reading Meetings Does Not Ensure Widest Possible Employee Attendance</u>

Respondent has notified Petitioner that it plans to convene meetings to "read" the Court's Memorandum and Order to employees by an as-yet unidentified Respondent official according to the following schedule:

**Thursday, December 1**: separate, simultaneous meetings in English and Spanish, respectively, at **6:30 a.m., 7:15 a.m., 8:15 a.m., 6:00 p.m., 6:45 p.m., and 7:30 p.m.**

**Saturday, December 3**: separate, simultaneous meetings in English and Spanish, respectively, at **8:15 a.m.**

**Monday, December 5**: separate, simultaneous meetings in English and Spanish, respectively, at **6:30 a.m., 7:15 a.m., 8:15 a.m., 6:00 p.m., 6:45 p.m., and 7:30 p.m.**

Attached hereto as **Exhibit 4** is a true copy of Respondent's proposed schedule.

The times that Respondent proposes to conduct the meetings required by the Court's Order do not "ensure the widest possible employee attendance," as directed by the Court. Instead, Respondent's proposed times appear designed to minimize attendance. In that regard, Respondent's planned meeting times coincide with the "shift swap" periods at JFK8 "when thousands of workers are arriving and leaving the massive JFK8 facility." (Exh. 1, ¶6). Employee Palmer testifies that "There is always chaotic foot traffic in the warehouse during shift swaps," as employees "are rushing to enter and leave the facility at the same time." (Id.) This chaotic time of the workday is not the appropriate time to hold a meeting designed to "ensure the widest possible employee attendance."

Furthermore, Mr. Palmer testifies that, in his experience, many employees do not arrive promptly at the start of their assigned shift and that employees typically use accrued Unpaid Time (UPT) during the current Holiday peak season, to avoid working the mandatory twelve-hour shifts that Respondent demands of JFK8 employees during the current Holiday peak season. (Exh. 1, ¶¶5, 7). Rather, Palmer testifies that employees who use their UPT to miss the beginning part of their shift commonly arrive at the facility by the first break period for the shift, which in the case of Palmer's day shift occurs from 10:00 a.m. to 10:30 a.m. (Exh. 1, ¶¶2, 5, 7). Thus, holding meetings during the beginning of a shift ensures that a significant contingent of late-arriving employees will miss the meetings, which is a far cry from the Court's directive that the meetings be "scheduled to ensure the widest possible employee attendance."

Respondent's planned timing of the meetings directed by the Court also stands at odds with Respondent's customary timing staff-wide meetings. Palmer testifies that Respondent frequently convenes mandatory "all hands" meetings for all workers in the facility, and such meetings have always been conducted during the middle of Palmer's day shift, between the employees' first break

and their lunch break. (Exh. 1, ¶4).  The last "all hands" meeting at JFK8 was in early November 2022.  (Id.)  Palmer cannot recall a single instance where an "all hands" meetings was scheduled during the beginning of his shift. (Id.)  Instead, Respondent typically holds "all hands" meetings in the middle part of the employees' shift because Respondent knows that such scheduling will have far greater employee attendance at a meeting that starts later in their shift, when employees are settled into their assigned workstations, as opposed to close to the chaotic start or end of the shift. (Exh. 1, ¶5).  Here again, Respondent's planned timing of the meetings fails to comply with yet another express provision of the Court's Order requiring that the meetings be scheduled "at times when Respondent customarily holds employee meetings." Respondent has offered no explanation for its insistence on scheduling the meetings during the shift swap, as opposed to its customary timing for "all hands" meetings. (Exh. 3).  When Respondent wants the widest possible employee attendance at meetings, it clearly knows when and how to schedule them.  It's refusal to schedule the Order readings at the same times as it customarily conducts its "all hands" meetings again exposes Respondent's intention to minimize employee attendance, in contravention of this Court's Order.

In sum, Respondent's plan to conduct the Court-ordered meetings at irregular times when employees are frequently not at work and are scrambling to enter and exit the facility appears to be deliberately intended not to "ensure the widest possible employee attendance," and the Court should not countenance such defiance of its Order.  Petitioner respectfully requests that the Court clarify its Order to specifically direct Respondent to conduct meetings during the middle part of its employees' shifts, sometime between the employees' first break and their meal period, in accordance with the time that Respondent customarily schedules mandatory "all hands" meetings

2. <u>The Order Does Not Permit Respondent to Present the Court's Memorandum and Order to Employees via Pre-Recorded Audio or Video</u>

Respondent has notified Petitioner that Respondent will not conduct a live reading of the Court's Memorandum and Order, but instead will only play a pre-recorded "audio or audio / video" of a yet unnamed Respondent official reading the Memorandum and Order. (Exh. 3). There can be no question that Respondent's plan to play a pre-recorded audio or video of the reading blatantly flouts the Court's Order. Nowhere in the Order does the Court state that Respondent is permitted to conduct the required reading via pre-recorded audio or video. Instead, the only video appearance countenanced by the Court's Order is the remote appearance of an NLRB agent, should the NLRB decide that is appropriate. In addition to there being nothing in the plain language of the Court's Order to suggest that Respondent could substitute a live reading the Order with an audio or video recording, Respondent's plan severely undermines the important purpose of the Judge granting the extraordinary remedy of injunctive relief "as a measure to give employees confidence that Respondent will refrain from engaging in unfair labor practices." By presenting a mere recording, Respondent would send a very different message to employees than that which the Court intended – a message of flippant disregard and disdain, not only for employees' rights, but also for the enforcement mechanisms of the NLRB and the authority of this Court. The clear intent of the Court's Order is for a responsible Respondent official to conduct a live, in-person reading, and Respondent must be required to comply.

Respondent's purported bases for conducting a canned "audio and/or video" presentation, as opposed to the live reading by a responsible representative of Respondent envisioned by the Court's Order, are absurd and plainly fail to provide adequate grounds to allow Respondent to flout the spirit of the Order. First, Respondent claims that it would be "unreasonable to have an individual read a 30-page document 6 times on 2 days and 2 times on a third day." (Exh. 3) This is a clear red herring,

as nothing in the Court's Order requires a single Respondent official to perform the readings even if multiple meetings are scheduled. Respondent may assign different responsible officials to read the Order at various meetings, as there are numerous responsible officials who work at JFK8. To the extent that Respondent is genuinely concerned about its officials suffering from fatigue during the course of the required readings, Respondent may avail itself of the alternative provided by the Court to have an NLRB agent read the Memorandum and Order.

Second, Respondent asserts that playing a recording will ensure "consistent delivery of the message and will ensure that all meetings are of approximately the same length." (Exh. 3). This claim is nonsensical and devoid of merit, as consistent delivery of the Court's Memorandum and Order will be ensured by a complete and faithful reading of the document. Consistency is inherent in the Judge's order, as readers will all read the same words of the Court. Furthermore, there is no requirement that the meetings convened for purposes of complying with the Court's Order be of equal length. Thus, Respondent's arguments in this regard here are plainly of no moment.

Next, Respondent claims, without any substantiation, that it fears the meetings will be "disrupted" by the employees in attendance. Respondent has no basis to believe that employees will heckle or otherwise interfere with the delivery of the reading ordered by the Court, and its baseless suggestion otherwise smacks of Respondent's usual racist dog-whistling and disparagement toward workers. Even if such heckling were likely to occur – which is actually *not* likely because employees will welcome the Court's message reassuring them of their rights – that should not excuse Respondent from complying with the Court's Order requiring a live, in-person reading by a responsible Respondent official or an NLRB agent. Respondent should be expected to administer these meetings in the same manner as it administers other mandatory staff meetings. Thus, if an attendee disrupts one of the Court-ordered meetings, then Respondent should expel the offending

individual from the meeting and ensure that the speaker's message is conveyed clearly and without interruption, as it presumably would do if an employee tried to disrupt any other mandatory staff meeting. Here again, Respondent is improperly attempting to render the readings ordered by the Court different and less momentous than the mandatory staff meetings Respondent customarily conducts, to limit the impact of the Court's Order. Respondent knows that live readings by Respondent representatives would be meaningful to employees and is deliberately trying to dilute the impact of the readings. The Court must not allow this.

Finally, Respondent feebly asserts that "a recording will ensure that the Memorandum and Order are read in their entirety at each meeting." This is nonsense. Respondent can ensure that the Memorandum and Order is read in its entirety simply by requiring its official performing the reading to completely and faithfully read the document, or by allowing an NLRB agent to perform the reading.

Respondent offers no valid basis for its stated plan to disregard the clear intent of the Court's Order directing a live, in-person reading of the Memorandum and Order. Petitioner respectfully urges the Court clarify its Order and direct Respondent to comply with the Order by having one (or more) of its responsible officials read the Court's Order in person to JFK8 employees or allow an NLRB agent to do so in the presence of the Respondent official.

## III.    CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court clarify and/or amend provisions 2(a)(i) and 2(a)(iii) of its November 18, 2022 Order to require that Respondent physically post the Court's Memorandum and Order in all locations where Respondent customarily posts notices to its employees, including on break room tables (Table Toppers) and inside bathroom stalls (InSTALLments) at the JFK8 facility, and schedule meetings for the purpose of

having employees hear a live, in-person reading of the Court's Memorandum and Order during the middle of the employees' shifts (between employees' first break and meal break), in the same manner that it has customarily scheduled "all hands" meetings. As demonstrated above, without such clarification, Respondent's bad faith plan to comply with the Court's Order will deprive thousands of employees the opportunity to receive the remedies ordered by the Court. Petitioner respectfully urges the Court to rule upon this Motion expeditiously in light of Respondent's plan to begin conducting Order reading meetings this Thursday, December 1.

Dated: November 30, 2022.

Matthew A. Jackson
Evamaria Cox
Attorneys for Petitioner
National Labor Relations Board
Two MetroTech Center, Suite 5100
Brooklyn, NY 11201
Telephone: (718) 765-6172
Email: Evamaria.Cox@nlrb.gov

**Exhibit 1**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------- X

KATHY DREW KING,

Regional Director of Region 29 of the National
Labor Relations Board for and on behalf of the          Case No.: 1:22-cv-01479-DG-SJB
National Labor Relations Board**,**

                                           Petitioner,

   v.

AMAZON.COM SERVICES LLC,

                                           Respondent.

--------------------------------------------------------- X

## DECLARATION OF DERRICK PALMER

I, Derrick Palmer, being duly sworn, deposes and states as follows:

1.      I am currently employed at Amazon's JFK8 Fulfillment Center in Staten Island, NY ("JFK8") as a Warehouse Associate. I started working for Amazon in or around July 2015. I have worked at JFK8 since October 2018. Previously, I worked for Amazon at its facility in Robbinsville Township, New Jersey, until I transferred to JFK8 in October 2018.

2.      Amazon is currently using its Mandatory Extra Time ("MET") schedule for the holiday peak season, so I am now scheduled to work from 6:45 a.m. until 6:15 p.m., Wednesday through Saturday. I have a 30-minute paid break from 10:00 a.m. to 10:30 a.m. and a 30-minute unpaid lunch break from 2:00 p.m. to 2:30 p.m.

3.      My work schedule is Wednesday through Saturday which is called the back-half day shift. There are two other full-time day-shift schedules: front-half day working Sunday through Wednesday, and donut day working Monday, Tuesday, Thursday and Friday. There are three

corresponding night shifts that follow the same weekly schedules: front-half night, back-half night, and donut night. There are also reduced time "RT" shifts, where employees only work Thursday through Sunday as well as part time shifts that are only on the weekends.

4.      During the course of my employment, Amazon has scheduled "all hands" meetings for their employees at the JFK8 facility about every three months. As far as I know, the "all hands" meetings are mandatory for all workers in the facility and these meetings have always taken place between the first break and the lunch break in the large breakroom on the first floor of the facility. By scheduling these meetings at that time, Amazon can have the maximum number of employees attending their "all hands" meetings. I do not remember an "all hands" meeting ever being scheduled at the beginning of the workday. The most recent "all hands" meeting was around the beginning of November.

5.      I believe the reason Amazon has historically scheduled their "all hands" meetings between the first break and the lunch break is because they know they will be able to have more workers attend a meeting if it takes place a little later in their shift. Many workers are not yet in the facility at the very start of a shift, but most workers have arrived by the time of the first break. It is also easier to communicate with workers about a mandatory meeting once everyone is at their stations working, instead of when everyone is arriving to and leaving from the facility.

6.      If Amazon needs to schedule public readings of the Judge's Memorandum and Order in this case, I think Amazon should schedule those meetings after the first break and before lunch at the same time as they schedule their "all hands" meetings so there can be maximum attendance. This is because it takes a couple hours for everyone to get to the facility and to get settled into the workday.  Scheduling the meetings at the very beginning of a shift would ensure that not all workers are in attendance. Amazon's proposed readings are scheduled to occur during

the "shift swap" periods in the warehouse, when thousands of workers are arriving and leaving the massive JFK8 facility. There is always chaotic foot traffic in the warehouse during shift swaps, especially during peak season when Amazon is overstaffed and thousands of workers are rushing to enter and leave the facility at the same time.

7.     At the beginning of my shifts during peak season, I know there are many workers arriving late. Over the course of the year, Amazon employees accrue hours of Paid Time Off ("PTO") and Unpaid Time ("UPT") which they can apply to excuse absences from the facility, late arrivals, or early departures. Many workers save their PTO and UPT throughout the year so they can use it at the beginning of their shifts during peak season. The MET schedule has very long workdays and a higher than usual volume of work, so exhaustion and fatigue are big problems for workers. In order to give themselves a little extra rest in the mornings, and to avoid the chaos of shift swap, many workers use UPT or PTO to arrive a little late to their shifts during peak season.

8.     Amazon has also been overstaffed lately, so they have been offering workers Voluntary Time Off ("VTO") at the beginning of shifts so they can get an unpaid day off from work without penalty. Sometimes workers arrive at the facility and then immediately request VTO. Amazon will also sometimes send text messages out to employees offering VTO, sometimes as late as a couple hours before the start of the workday. I don't think Amazon should be allowed to offer VTO to workers on days that the public readings are scheduled.

9.     To the best of my recollection, before every prior "all hands" meeting at JFK8, I have received a message on the screen at my workstation directing me to leave my station and report to the breakroom for a mandatory meeting. Amazon management can send a message that pops up on every screen at every workstation in order to share information with workers. I believe

this message is called a "Fan" message, but I do not know why it is called that. I believe I have received a "Fan" message before every "all hands" meeting at JFK8.

10.     The beginning of the scheduled shifts at JFK8 are always a very hectic time with lots of foot traffic, so notifying workers about a mandatory meeting, especially one taking place at an unusual time, will be difficult. At the beginning of my shift, it usually takes more than 30 minutes, sometimes up to one hour after I clock in, before I am assigned to a workstation. The beginning of the day usually has a stand-up meeting with small teams and then there is a queue of workers waiting in the stand-up area of the facility so they can be assigned to a station by a manager or a Process Assistant. During peak season this year I have often been in very long lines waiting for a workstation. I do not believe that I would be at a workstation within 30 minutes of the start of my shift, and therefore I don't think I would be likely to receive a "Fan" message before a meeting scheduled to take place 30 minutes after the start of my shift.

11.     On Saturday, November 25, 2022, I went to the first-floor breakroom to try to find a posting of the Judge's Memorandum and Order from this case. There is a bulletin board behind a microwave and an arcade video game machine, in a part of the room that no one really goes to, where I found the Memorandum and Order tacked to the wall. I took a picture of the bulletin board that day, and a copy of that photo is attached hereto as **Exhibit A**.

12.     There are many places within the JFK8 facility where Amazon shares notices with its employees. In my opinion, the most effective locations where workers can see and read these notices would be next to Amazon's weekly "InSTALLments" fliers, which are posted in every bathroom of the JFK8 facility, and on table-topper stands on the tables in the breakrooms. Amazon has shared information in these two places about the company's confidentiality policies, workplace safety issues, tax forms, COVID-19 vaccines, overtime pay, break changes, and MET schedules.

Amazon has also used the InSTALLments and table-topper stands, along with their video screens located throughout the facility, to share anti-union information, to encourage workers to vote against the Amazon Labor Union in the representation election, and to disparage the Amazon Labor Union and its leadership.

13.     About once a week, JFK8 employees receive an email called "InSITES" that contains our weekly schedules along with other information from the company. On Friday, November 25, 2022, I received an InSITES email that contained MET schedules for upcoming shifts at JFK8 including those shifts on December 1, 3, and 5, 2022. A copy of that email is attached hereto as **Exhibit B**. This schedule shows that on Thursday, December 1, 2022 – under Outbound/PCF MET Peak Schedule, Day Shift (Outbound/Ship Dock), on row DB1 – I am scheduled to work from "0645 – 1815".

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 29, 2022
       Staten Island, New York

_____
Derrick Palmer

# EXHIBIT A



# EXHIBIT B


**AMAZON FULFILLMENT**



# JFK8 inSITES


THANKS TO YOU

## A note from the JFK8 Leadership Team





## This Week at JFK8:

| | |
|---|---|
| Page 1 | Happy Thanksgiving |
| Page 2 | Peak Parking Lot Rules |
| Page 3 | Lets Get Ready For Peak! |
| Page 4 | Upcoming Peak Site Activities |
| Page 5-6 | Inbound MET Peak Schedule |
| Page 7 | PCF MET Peak Schedule |
| Page 8 | Outbound / PCF MET Peak Schedule |
| Page 9 | Outbound MET Peak Schedule |
| Page 10 | Giving Back |
| Page 11 | Learning – Virtual Away Team | Talent & Development Hub |
| Page 12 | WHS Safety Message |
| Page 13 | DEI Message |
| Page 14 | Affinity Sign Up |
| Page 15 | November Calendar |
| Page 16-19 Parents | Brightside | Twill | Resource for Living | A Message for Expecting |






# Parking Lot Peak Changes



## To allow for better flow in the parking lot during PEAK, some changes have been made.



Amazonians, this is not a drop off point. This is a high traffic area and we want to ensure everyone's safety. Please inform your drivers, including Lyft & Uber, to drive to the associate drop off area near the parking garage.

**Not a Drop Off Zone**

➢ **Please abide all parking lot rules and speed limits.**

➢ **To avoid congestion, use the parking garage and park in the first open space available.**

➢ **Please utilize the proper Associate drop off areas to avoid traffic jams**






## This year, as a team we are looking forward to Peak Season:

- Take care of my physical and mental health

- Look out for my fellow employees

- Improve safety, new technology, and team culture by providing feedback where I can

- Celebrate - our customers, our teams, all that we have accomplished together.

- Have Fun!!










 **Peak 2022 Upcoming Site Events** 

### • Caught Being Safe
Managers will identify and highlight associates following Safety guidelines

### • JFK8 Leader Of The Week
Nominate a manager who shines bright

### • Tier 3 Recognition
Will recognize all Tier 3 with a meal and custom swag

### • Breakroom Games
Bingo, Minute to win it, and Karaoke

### • Guess That Manager
Will provide an engagement opportunity for associates to connect with leadership

### • Hide The Peccy
Peccy's will be hidden in various locations of the FC

### • Mystery Prizes
Associates will be selected a random to receive Snappy prizes

### • 12 Days of Giving
Leadership Parade through the building to give out snappy prizes at random

### • Hopeful Holidays
Associates will submit a letter of their wish this season

### • Weekly Dress Up Themes and Spirit Days 99



# This Week at JFK8...

# Inbound  MET Peak Schedule

| Key |
| --- |
| Extra Hours |
| Extra Day |



PEAK 2022

### Inbound

| Week of 11-20 | 11-20 SUN | 11-21 MON | 11-22 TUES | 11-23 WED | 11-24 THUR | 11-25 FRI | 11-26 SAT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| DA5 | 06:15 - 16:45 | 06:15 - 16:45 | 06:15 - 16:45 | 06:15 - 16:45 | | | |
| DA6 | 06:15 - 16:45 | 06:15 - 16:45 | 06:15 - 16:45 | 06:15 - 16:45 | | 06:15 - 17:45 | |
| DA7 | 06:15 - 16:45 | 06:15 - 16:45 | 06:15 - 16:45 | 06:15 - 16:45 | | | 06:15 - 17:45 |
| DB1 | | | | 06:15 - 16:45 | | 06:15 - 17:45 | 06:15 - 17:45 |
| DB2 | | | | 06:15 - 16:45 | | 06:15 - 17:45 | 06:15 - 17:45 |
| DB3 | | | | 06:15 - 16:45 | | 06:15 - 17:45 | 06:15 - 17:45 |
| DC1 | | 06:15 - 16:45 | 06:15 - 16:45 | | | 06:15 - 17:45 | |
| DC7 | | 06:15 - 16:45 | 06:15 - 16:45 | | | 06:15 - 17:45 | 06:15 - 17:45 |
| DN2 | 06:15 - 16:45 | | | | | 06:15 - 17:45 | 06:15 - 17:45 |
| DL4 | 06:15 - 16:45 | 06:15 - 16:45 | 06:15 - 16:45 | | | | 06:15 - 17:45 |
| PT | 06:15 - 16:45 | | | | | | 06:15 - 17:45 |
| NA5 | 17:45 - 04:30 | 17:45 - 04:30 | 17:45 - 04:30 | 17:45 - 04:30 | | | |
| NA6 | 17:45 - 04:30 | 17:45 - 04:30 | 17:45 - 04:30 | 17:45 - 04:30 | | | |
| NA7 | 17:45 - 04:30 | 17:45 - 04:30 | 17:45 - 04:30 | 17:45 - 04:30 | | 17:45 - 05:30 | 17:45 - 05:30 |
| RT1 | | | | | | 17:45 - 06:15 | 17:45 - 06:15 |
| RT2 | | | | | | 17:45 - 06:15 | 17:45 - 06:15 |
| RT3 | | | | | | 17:45 - 06:15 | 17:45 - 06:15 |
| RT4 | | | | | | 17:45 - 06:15 | 17:45 - 06:15 |

### Inbound

| Week of 11-27 | 11-27 SUN | 11-28 MON | 11-29 TUES | 11-30 WED | 12-1 THUR | 12-2 FRI | 12-3 SAT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| DA5 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | | |
| DA6 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | | 06:15 - 17:45 | |
| DA7 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | | | 06:15 - 17:45 |
| DB1 | 06:15 - 17:45 | | | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 |
| DB2 | | 06:15 - 17:45 | | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 |
| DB3 | | | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 |
| DC1 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | | 06:15 - 17:45 | 06:15 - 17:45 | |
| DC7 | | 06:15 - 17:45 | 06:15 - 17:45 | | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 |
| DN2 | 06:15 - 17:45 | 06:15 - 17:45 | | | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 |
| DL4 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | 06:15 - 17:45 | | | 06:15 - 17:45 |
| PT | 06:15 - 17:45 | | | | | | 06:15 - 17:45 |
| NA5 | 17:45 - 05:30 | 17:45 - 05:30 | 17:45 - 05:30 | 17:45 - 05:30 | 17:45 - 05:30 | | |
| NA6 | 17:45 - 05:30 | 17:45 - 05:30 | 17:45 - 05:30 | 17:45 - 05:30 | | 17:45 - 05:30 | |
| NA7 | 17:45 - 05:30 | 17:45 - 05:30 | 17:45 - 05:30 | 17:45 - 05:30 | | | 17:45 - 05:30 |
| RT1 | 17:45 - 05:30 | | | | 17:45 - 05:30 | 17:45 - 05:30 | 17:45 - 05:30 |
| RT2 | | 17:45 - 05:30 | | | 17:45 - 05:30 | 17:45 - 05:30 | 17:45 - 05:30 |
| RT3 | | | 17:45 - 05:30 | | 17:45 - 05:30 | 17:45 - 05:30 | 17:45 - 05:30 |
| RT4 | | | | 17:45 - 05:30 | 17:45 - 05:30 | 17:45 - 05:30 | 17:45 - 05:30 |



JFK8 inSITES
A note from your GM

# This Week at JFK8...

# Inbound MET Peak Schedule

PEAK 2022

| Key |
| --- |
| Extra Hours |
| Extra Day |

## Inbound

| Week of 12-4 | 12-4 | 12-5 | 126 | 12-6 | 12-8 | 12-9 | 12-10 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | SUN | MON | TUES | WED | THUR | FRI | SAT |
| DA5 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | |
| DA6 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | 06:15-17:45 | |
| DA7 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | | 06:15-17:45 |
| DB1 | 06:15-17:45 | | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DB2 | | | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DB3 | | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DC1 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | 06:15-17:45 | 06:15-17:45 | |
| DC7 | | | | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DN2 | 06:15-17:45 | 06:15-17:45 | | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DL4 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | | | 06:15-17:45 |
| PT | 06:15-17:45 | | | | | | 06:15-17:45 |
| NA5 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | | |
| NA6 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | | 17:45-05:30 | |
| NA7 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | | | 17:45-05:30 |
| RT1 | 17:45-05:30 | | | | | 17:45-05:30 | 17:45-05:30 |
| RT2 | | 17:45-05:30 | | | | 17:45-05:30 | 17:45-05:30 |
| RT3 | | | 17:45-05:30 | | | 17:45-05:30 | 17:45-05:30 |
| RT4 | | | | | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 |

## Inbound

| Week of 12-11 | 12-11 | 12-12 | 12-13 | 12-14 | 12-15 | 12-16 | 12-17 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | SUN | MON | TUES | WED | THUR | FRI | SAT |
| DA5 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | |
| DA6 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | 06:15-17:45 | |
| DA7 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | | 06:15-17:45 |
| DB1 | 06:15-17:45 | | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DB2 | | 06:15-17:45 | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DB3 | | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DC1 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | 06:15-17:45 | 06:15-17:45 | |
| DC7 | | 06:15-17:45 | 06:15-17:45 | | 06:15-17:45 | 06:15-17:45 | |
| DN2 | 06:15-17:45 | 06:15-17:45 | | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DL4 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | | 06:15-17:45 |
| PT | 06:15-17:45 | | | | | | 06:15-17:45 |
| NA5 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | | |
| NA6 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | | 17:45-05:30 | |
| NA7 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | | | 17:45-05:30 |
| RT1 | 17:45-05:30 | | | | | 17:45-05:30 | 17:45-05:30 |
| RT2 | | 17:45-05:30 | | | | 17:45-05:30 | 17:45-05:30 |
| RT3 | | | 17:45-05:30 | | | 17:45-05:30 | 17:45-05:30 |
| RT4 | | | | | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 |

## Inbound

| Week of 12-18 | 12-18 | 12-19 | 12-20 | 12-21 | 12-22 | 12-23 | 12-24 |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | SUN | MON | TUES | WED | THUR | FRI | SAT |
| DA5 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | |
| DA6 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | 06:15-17:45 | |
| DA7 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | | 06:15-17:45 |
| DB1 | 06:15-17:45 | | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DB2 | | 06:15-17:45 | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DB3 | | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DC1 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | 06:15-17:45 | 06:15-17:45 | |
| DC7 | | 06:15-17:45 | 06:15-17:45 | | 06:15-17:45 | 06:15-17:45 | |
| DN2 | 06:15-17:45 | 06:15-17:45 | | | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 |
| DL4 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | 06:15-17:45 | | | 06:15-17:45 |
| PT | 06:15-17:45 | | | | | | 06:15-17:45 |
| NA5 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | | |
| NA6 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | | 17:45-05:30 | |
| NA7 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 | | | 17:45-05:30 |
| RT1 | 17:45-05:30 | | | | | 17:45-05:30 | 17:45-05:30 |
| RT2 | | 17:45-05:30 | | | | 17:45-05:30 | 17:45-05:30 |
| RT3 | | | 17:45-05:30 | | | 17:45-05:30 | 17:45-05:30 |
| RT4 | | | | | 17:45-05:30 | 17:45-05:30 | 17:45-05:30 |


# This Week at JFK8...

# PCF  MET Peak Schedule



| Key |
|---|
| **Extra Hours** |
| **Extra Day** |



| Day Shift (PCF ONLY) | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Week of 11-27** | 11-27 | 11-28 | 11-29 | 11-30 | 12-1 | 12-2 | 12-3 |
| | SUN | MON | TUES | WED | THUR | FRI | SAT |
| DA5 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | | | |
| DA6 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | | | |
| DA7 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | | | |
| DB1 | 0645 - 1815 | | | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 |
| DB2 | | 0645 - 1815 | | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 |
| DB3 | | | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 |
| DC1 | | 0645 - 1815 | 0645 - 1815 | | 0645 - 1815 | 0645 - 1815 | |
| DC7 | | 0645 - 1815 | 0645 - 1815 | | 0645 - 1815 | 0645 - 1815 | |
| DN2 | 0645 - 1815 | | | | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 |
| DL4 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | | | | 0645 - 1815 |
| PT | 0645 - 1815 | | | | | | 0645 - 1815 |

| Night Shift (PCF ONLY) | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Week of 11-27** | 11-27 | 11-28 | 11-29 | 11-30 | 12-1 | 12-2 | 12-3 |
| | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
| NA5 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | | | |
| NA6 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | | | |
| NA7 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | | | |
| RT1 | 1815 - 0600 | 1815 - 0600 | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |
| RT2 | 1815 - 0600 | 1815 - 0600 | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |
| RT3 | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |
| RT4 | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |



# This Week at JFK8...

# Outbound/PCF  MET Peak Schedule

| Key |
|-----|
| Extra Hours |
| Extra Day |



| Day Shift (Outbound/Ship Dock) | | | | | | |
|---|---|---|---|---|---|---|
| **Week of 11-27** | **11-27** | **11-28** | **11-29** | **11-30** | **12-1** | **12-2** | **12-3** |
| | SUN | MON | TUES | WED | THUR | FRI | SAT |
| DA5 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | | | |
| DA6 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | | | |
| DA7 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | | | |
| DB1 | | | | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 |
| DB2 | | | | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 |
| DB3 | | | | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 |
| DC1 | | 0645 - 1815 | 0645 - 1815 | | 0645 - 1815 | 0645 - 1815 | |
| DC7 | | 0645 - 1815 | 0645 - 1815 | | 0645 - 1815 | 0645 - 1815 | |
| DN2 | 0645 - 1815 | | | | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 |
| DL4 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | | | | 0645 - 1815 |
| PT | 0645 - 1815 | | | | | | 0645 - 1815 |

| Night Shift (Outbound/Ship Dock) | | | | | | |
|---|---|---|---|---|---|---|
| **Week of 11-27** | **11-27** | **11-28** | **11-29** | **11-30** | **12-1** | **12-2** | **12-3** |
| | SUN | MON | TUES | WED | THUR | FRI | SAT |
| NA5 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | | | |
| NA6 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | | | |
| NA7 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | | | |
| RT1 | 1815 - 0600 | | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |
| RT2 | | 1815 - 0600 | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |
| RT3 | | | 1815 - 0600 | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |
| RT4 | | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |



## This Week at JFK8...

# Outbound MET Peak Schedule



| Key |
| --- |
| Extra Hours |
| Extra Day |

**PEAK 2022**

### Night Shift (Outbound/PCF/Ship Dock)

| Week of 12-4 | 12/4/2022 SUN | 12/5/2022 MON | 12/6/2022 TUES | 12/7/2022 WED | 12/8/2022 THUR | 12/8/2022 FRI | 12/10/2022 SAT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| NA5 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | | | |
| NA6 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | | | |
| NA7 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | | | |
| RT1 | 1815 - 0600 | | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |
| RT2 | | 1815 - 0600 | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |
| RT3 | | | 1815 - 0600 | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |
| RT4 | | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |

### Day Shift (Outbound/PCF/Ship Dock)

| Week of 12-11 | 12/11/2022 SUN | 12/12/2022 MON | 12/13/2022 TUES | 12/14/2022 WED | 12/15/2022 THUR | 12/16/2022 FRI | 12/17/2022 SAT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| DA5 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | | | |
| DA6 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | | | |
| DA7 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | | | |
| DB1 | | | | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 |
| DB2 | | | | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 |
| DB3 | | | | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 |
| DC1 | | 0645 - 1815 | 0645 - 1815 | | 0645 - 1815 | 0645 - 1815 | |
| DC7 | | 0645 - 1815 | 0645 - 1815 | | 0645 - 1815 | 0645 - 1815 | |
| DN2 | 0645 - 1815 | | | | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 |
| DL4 | 0645 - 1815 | 0645 - 1815 | 0645 - 1815 | | | | 0645 - 1815 |
| PT | 0645 - 1815 | | | | | | 0645 - 1815 |

### Night Shift (Outbound/PCF/Ship Dock)

| Week of 12-11 | 12/11/2022 SUN | 12/12/2022 MON | 12/13/2022 TUES | 12/14/2022 WED | 12/15/2022 THUR | 12/16/2022 FRI | 12/17/2022 SAT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| NA5 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | | | |
| NA6 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | | | |
| NA7 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | | | |
| RT1 | 1815 - 0600 | | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |
| RT2 | | 1815 - 0600 | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |
| RT3 | | | 1815 - 0600 | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |
| RT4 | | | | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 | 1815 - 0600 |






Issue No. 47 | November 23nd 2022


# LEARNING



**Welcome to the
Talent & Development Hub!**

**This area is dedicated for associates
interested in signing up for CRITICAL
ROLES in their department and to
help their career development
Visit the Hub located next to
the Learning Zone**

## *VIRTUAL AWAY TEAM!*




Away Team

## OMA2: Jan 15, 2023
## SAT3:  Feb 19, 2023
Start dates vary, based on position







### Want to have a direct hand in making history?

Be a Virtual Away Team member! You will train a new
hire at OMA2 and/or SAT3 remotely from your current
site. This is a 3 week assignment open to associates all
over North America. Available roles: IB Dock Clerk, IB
Stow/Receive Problem Solve, ICQA Problem Solve, OB
SLAM/Kickout Operator and ICQA Data Analyst.

To apply: Log-in to A to Z and locate the NACF
Assimilation Hub under "Resources". Choose one of
the roles marked VIRTUAL for OMA2 and/or SAT3.

Questions about the program
Email: vcr-pool@amazon.com





# WHS | Safety Message



**Take Care of Yourself During Peak**

The Safety/AMCARE team is here to make sure you are supported during Peak 2022. Make sure to use all of the resources available to you:

Tell your manager right away if you experience an injury, illness, discomfort, or fatigue and go to the AMCARE Office.

First aid providers in AMCARE can provide onsite injury or illness support and self-care resources for you to get back to feeling your best.

The WorkingWell App library has a collection of wellness information to support you at work and at home.

Questions? Speak to a manager.

---

### Hydration

**<u>Did</u>** you know staying hydrated is one of the best things you can do for your body when it's cold? Yes, even when it's cold outside!

It's important to drink water throughout the day and limit caffeinated drinks like soda, coffee, and tea. If you are thirsty, you are already dehydrated, so drink a little water, often.

We have water and electrolyte drinks readily available, and if you start to feel ill, let a manager know right away.



**All Affinity Group Meetings will be paused as we prepare for PEAK season! Please feel free to still sign up anytime as activities will resume early 2023!**





# Diversity
# Equity
# Inclusion



**Your voices were heard! Please help us with your feedback again!**

## What is D.E.I?

*Diversity*: The presence of differences within a given setting. In the workplace, that can mean differences in race, ethnicity, gender, gender identity, sexual orientation, age and socioeconomic class.

*Equity*: The act of ensuring that processes and programs are impartial, fair and provide equal possible outcomes for every individual.

*Inclusion*: The practice of ensuring that people feel a sense of belonging in the workplace. This means that every employee feels comfortable and supported by the organization when it comes to being their authentic selves.



We work with people that are different from us, inside and out. These differences give us more ideas. DEI is about learning from and embracing these differences.

**DEI makes us Stronger Together.**

## What are Pronouns?



**Pronouns** are the terms used when referring to someone without using their name.

Examples of common pronouns include **she/her, he/him** or gender-neutral pronouns such as **they/them.**

Using a person's preferred pronouns makes them feel respected and valued, and **affirms their identity**.

## Why does DEI matter?

Because learning about each other makes it easier for us to solve problems and **do great work together.**

Great work means **happy customers** and bigger **opportunities** for all Amazonians.








# Want more control of your finances?

## A new Amazon benefit can help - *for free!*

Get help with money needs such as:

- ✓ Accessing emergency cash
- ✓ Paying down loans and bills
- ✓ Improving your credit score
- ✓ Saving for a car or big purchase



## Call **888-409-0030**
(Weekdays, 10 a.m.–7 p.m. ET)

This confidential service is paid for by Amazon, so there's no cost to you!



**amazon | benefits**



**twill THERAPEUTICS**

PROVIDED BY **amazon | benefits**






Stop Your Negative
Thoughts

Build Optimism and
Mindfulness

Reduce Stress and
Anxiety

Gain Confidence and
Self Esteem

**Twill Therapeutics** provides mental health tools that can be access 24/7 by all Amazonians.  Twill can be used as part of your daily mental health and well-being routine to address in the moment health concerns.

### How can Twill help you?

- *Unlimited access to thousands of science backed tools and activities to help you* ***cope with life's challenge***

- *Interactive programs focused on developing skills and habits to help you* ***conquer negative thoughts, build confidence, and cope with stress.***

- *Conversations with a* ***clinician-trained digital assistant*** *to personalize your experience.*

- *Option to engage with other users in the* ***community*** *to receive and provide support.*

## Want to learn more/sign up?
## https://amazonus.therapeutics.twill.health



# Do you know about these
## amazonbenefits



## Resources for Living®



*Everyday support and mental health resources*

ResourcesforLiving.com/Amazon or
call 1-833-721-2323, TTY: 711

**On-demand support:**
When you're in crisis or just need to talk, Care Partners provide 24/7 confidential support *Each person gets three free counseling sessions - virtual or in person - per year.*

Self-paced options: Resources for Living has a full range of interactive self-care programs on their website, including myStrength, a self-paced app that offers personalized support.
Visit the Resources for Living site

## On Resources for Living you can also find:

**Legal Support | Financial Resources | Child and Elder care | Identity theft and fraud resolution program**



All these resources in one place
24/7 Confidential support
1-833-721-2323, TTY: 711

 

## brightline

### Brightline:
### A new mental health benefit for kids, caregivers

Members of Premera Blue Cross or Aetna medical plans with covered dependents now have access to Brightline, a new mental health benefit for kids 18 months to 17 years old. Choose from on-demand resources for parents and caregivers including virtual visits with therapists and coaches.

Visit hellobrightline.com/amazon, or call 1-888-224-7332.

Out of pocket costs vary.



# Did you know about this
## amazonbenefit

## Leave Benefits for expecting parents









Amazon offers **20 weeks** of fully paid leave for birthing mothers, including four weeks before the baby is born.

Amazon offers **six weeks** of fully paid leave to supporting parents and adoptive parents.

Our **Leave Share** program allows employees to **give six weeks** of paid parental leave to a spouse or partner whose jobs don't provide paid leave.

With flexible scheduling and part-time options, our **Ramp Back** program helps employees through the challenge of coming back to work after a new baby.

Employees are eligible if they have one year of continuous service and are regularly scheduled to work at least 30 hours per week before their child arrives.

Our parental leave benefits are a part of our broader benefits package that we provide hourly employees to improve health and well-being. This includes health care that starts on day one for employees and their families, 401(k) plans with company match, and fully-funded college tuition.

**Exhibit 2**

| From: | Murphy, Christopher J. |
|---|---|
| To: | Jackson, Matthew |
| Cc: | Rosenblatt, Richard G. |
| Subject: | RE: Order Posting |
| Date: | Wednesday, November 23, 2022 2:05:18 PM |

**CAUTION:** The sender of this message is external to the NLRB network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to nlrbirc@nlrb.gov.

Matt:

I had a chance to discuss briefly with the Amazon folks.  They are not inclined to post/distribute as described below.  I'm happy to explain our reasons if you want to chat.

*Chris*

**Christopher J. Murphy**
**Morgan, Lewis & Bockius LLP**
1701 Market Street | Philadelphia, PA 19103-2921
Direct: +1.215.963.5601 | Cell: +1.267.307.1024 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
christopher.murphy@morganlewis.com | www.morganlewis.com
Assistant: Rose Ruoff | +1.215.963.5099 | rose.ruoff@morganlewis.com

---

**From:** Jackson, Matthew <Matthew.Jackson@nlrb.gov>
**Sent:** Wednesday, November 23, 2022 1:38 PM
**To:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>
**Subject:** RE: Order Posting

[EXTERNAL EMAIL]

**CAUTION:** This email and any attachments may contain Controlled Unclassified Information (CUI). National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

Chris:

Re Physical Posting:
The NLRB believes that compliance would require physical distribution of the Memorandum and Order in the break rooms at JFK8, similar to the manner in which Amazon distributed "table top" bulletins as part of its campaign in opposition to the Union during the pre-election period at JFK8.

We also believe that physical posting should include posting inside bathroom stalls at JFK8, similar to the manner in which Amazon distributed "INSTALLments" bulletins during the pre-election period.

**Does Amazon agree to physically post the Memorandum and Order in the bathroom stalls and**

**distribute them in the break rooms**, in addition to posting them alongside other employment related notices (e.g., minimum wage postings)?

I will get back to you shortly re the letter to the Court you requested.

-Matt

**From:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>
**Sent:** Wednesday, November 23, 2022 11:26 AM
**To:** Jackson, Matthew <Matthew.Jackson@nlrb.gov>
**Subject:** Re: Order Posting

**CAUTION:** The sender of this message is external to the NLRB network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to nlrbirc@nlrb.gov.

I can talk at 12 if you are available.

**From:** Jackson, Matthew <Matthew.Jackson@nlrb.gov>
**Sent:** Wednesday, November 23, 2022 10:15:04 AM
**To:** CHRISTOPHER.MURPHY@MORGANLEWIS.COM <christopher.murphy@morganlewis.com>
**Subject:** RE: Order Posting

[EXTERNAL EMAIL]

**CAUTION:** This email and any attachments may contain Controlled Unclassified Information (CUI). National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

Chris:

Following up on your question below, I can confirm that the NLRB's position is that physical posting and electronic distribution of the Court's Order only (and not the preceding Memorandum) sufficiently complies with the Order.

Regards,

**Matt Jackson**
Field Attorney

**From:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>
**Sent:** Tuesday, November 22, 2022 5:44 PM
**To:** Jackson, Matthew <Matthew.Jackson@nlrb.gov>
**Subject:** RE: Follow Up Call

> **CAUTION:** The sender of this message is external to the NLRB network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to nlrbirc@nlrb.gov.

Can you clarify one thing before the call?  Regarding the posting, we intend to post the order only, consistent with the scope of the reading.  Agreed?

*Chris*
**Christopher J. Murphy**
**Morgan, Lewis & Bockius LLP**
1701 Market Street | Philadelphia, PA 19103-2921
Direct: +1.215.963.5601 | Cell: +1.267.307.1024 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
christopher.murphy@morganlewis.com | www.morganlewis.com
Assistant: Rose Ruoff | +1.215.963.5099 | rose.ruoff@morganlewis.com

-----Original Appointment-----
**From:** Jackson, Matthew <Matthew.Jackson@nlrb.gov>
**Sent:** Tuesday, November 22, 2022 5:33 PM
**To:** Murphy, Christopher J.
**Subject:** Accepted: Follow Up Call
**When:** Wednesday, November 23, 2022 1:00 PM-1:30 PM (UTC-05:00) Eastern Time (US & Canada).
**Where:**

[EXTERNAL EMAIL]

> **CAUTION:** This email and any attachments may contain Controlled Unclassified Information (CUI). National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

DISCLAIMER

This e-mail message is intended only for the personal use of the recipient(s) named above. This message may be an attorney-client communication and as such privileged and confidential and/or it may include attorney work product. If you are not an intended recipient, you may not review, copy or distribute this message. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

**Exhibit 3**

| From: | Murphy, Christopher J. |
| To: | Jackson, Matthew |
| Cc: | Rosenblatt, Richard G. |
| Subject: | RE: Details of Physical Distribution of Court"s Memo and Order and Proposed Communication Schedule |
| Date: | Tuesday, November 29, 2022 2:34:45 PM |

**CAUTION:** The sender of this message is external to the NLRB network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to nlrbirc@nlrb.gov.

Matt:

Please see my highlighted inline responses to the issues you raise.

*Chris*
**Christopher J. Murphy**
**Morgan, Lewis & Bockius LLP**
1701 Market Street | Philadelphia, PA 19103-2921
Direct: +1.215.963.5601 | Cell: +1.267.307.1024 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
christopher.murphy@morganlewis.com | www.morganlewis.com
Assistant: Rose Ruoff | +1.215.963.5099 | rose.ruoff@morganlewis.com

**From:** Jackson, Matthew <Matthew.Jackson@nlrb.gov>
**Sent:** Monday, November 28, 2022 3:38 PM
**To:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>
**Cc:** Sara Kalis <sbkalis@amazon.com>; Rosenblatt, Richard G.
<richard.rosenblatt@morganlewis.com>; Cox, Evamaria <Evamaria.Cox@nlrb.gov>
**Subject:** RE: Details of Physical Distribution of Court's Memo and Order and Proposed
Communication Schedule

[EXTERNAL EMAIL]

**CAUTION:** This email and any attachments may contain Controlled Unclassified Information (CUI). National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

Hello Chris,

The NLRB has reviewed the Spanish translation of the full District Court Memorandum and Order, and we confirm that no material changes that affect the meaning of the document need to be made.  Our translator spotted a few minor corrections, but we do not believe it is necessary for you to re-post the corrected Spanish version.  Thank you.

However, in regard to physical posting of the Court's Decision and Order, we would like to again reiterate our position that compliance requires posting the Decision and Order on "table toppers"

(the free-standing plexiglass stands used to display Amazon's announcements and information) placed on each table in each breakroom at JFK8, as well as in the "InSTALLments" within each bathroom stall in employee bathrooms at the Facility.  These are locations where Amazon regularly posts and distributes notices, including work-related announcements and information and materials expressing Amazon's opposition to unionization.  Compliance with the portion of the Court's Order requiring Amazon to post the Memorandum and Order "where Respondent customarily posts notices to its employees" includes posting on breakroom tables and in InSTALLments because that is a method of dissemination that Amazon regularly, customarily uses to reach its employees. Please let me know if Amazon will re-consider its position with respect to distributing the Court's Memorandum and Order on breakroom tables and InSTALLments.  ==Amazon is not inclined to reconsider its position on this issue for the following reasons, among others.  Amazon does not post legal notices in table toppers or InSTALLments; the Memorandum and Order are posted where legal notices are posted.  The table toppers or InSTALLments are not closed and the contents can be removed, defaced or disposed of.  Placing copies of the Memorandum and Order in those locations won't increase distribution or access (employees have already received 2 direct electronic communications providing them immediate 24/7 access to those documents), it will simply impose an unmanageable compliance and logistics burden.==

In addition, we still have concerns about the timing and method by which you have said that Amazon intends to conduct the Order Reading meetings.  Based on information gathered from employees who work on varying shifts and days, we continue to believe that the times you've selected are not calculated to ensure the widest possible attendance by employees, as required by the Court's Order, because they occur at the beginning and/or end of employees' shifts, during times when they are more likely to be absent in comparison to a time at during the middle of the shift.  We believe that compliance requires conducting the Order Reading meetings mid-shift.  We propose that meetings be held between the first scheduled break and the meal period for the day shift and between the first scheduled break and meal period for the night shift on two different dates on or before 12/7.  This timing would align with our understanding of the timing of Amazon's last "All Hands" meetings held on about 11/1/22, in order to comply with the provision of the Court's Order requiring Amazon to convene the meetings "at times when Respondent customarily holds employee meetings."  Please tell me if Amazon is willing to change its plans regarding the timing of these meetings in light of our concerns.  ==Amazon is not inclined to reconsider its position on this issue for the following reasons, among others.  The meetings scheduled by the Company will start 45 minutes into the start of the shift. This start time was selected to address your concern regarding late arriving employees.  Every employee scheduled on the 3 workdays Amazon proposes to conduct meetings will have the chance to attend a meeting.==

Also, I want to again reiterate here our position that compliance requires a live reading of the Court's Memorandum and Order, and not a pre-recorded video of the reading.  The Order plainly requires a responsible Amazon official (or an NLRB agent) to read the Memorandum and Order at the meeting, not at a separate location to be later displayed at the meeting, and the only video appearance at these meetings contemplated by the Court's Order is the remote participation of an NLRB agent.  A video presentation clearly violates the language and intention of a reading by an Amazon representative.  Please let me know whether Amazon intends to comply with the Court's Order by conducting live readings, as required.  ==Amazon is not inclined to reconsider its position on==

this issue for the following reasons. ==Amazon plans to have a responsible person present for the duration of each meeting. Amazon plans to play an audio or audio/video recording of the Memorandum and Order at each meeting because: (1) it is unreasonable to have an individual read a 30 page document 6 times on 2 days and 2 times on a third day; (2) playing a recording will insure consistent delivery of the message and will ensure that all meetings are of approximately the same length; (3) Amazon expects some level of disruption by attendees. Rather than subject a live reader to a "heckler's veto" (or worse), Amazon can continue to play a recording without potential interruption; and (4) a recording will ensure that the Memorandum and Order are read in their entirety at each meeting.==

In the event that you fail to revise your current stated plan of compliance, the NLRB will consider raising each of the above issues with the Court in advance of Amazon's requirement to submit an affidavit of compliance.

We are also requesting information regarding how Amazon intends to announce the Order Reading meetings to employees in order to ensure that Amazon complies with the provision of the Court's Order requiring that the meetings "be announced in the same manner in which Respondent customarily announces employee meetings." ==Amazon will advise employees of the meetings at the start of their shifts.==

If you prefer to discuss these issues over the phone, please let me know when you would be available to speak.

Thank you,

**Matt Jackson**
Field Attorney
National Labor Relations Board
Region 29
2 MetroTech Center, 5th Floor
Brooklyn, NY 11201
(718) 765-6202

---

**From:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>
**Sent:** Friday, November 25, 2022 1:30 PM
**To:** Jackson, Matthew <Matthew.Jackson@nlrb.gov>
**Cc:** Sara Kalis <sbkalis@amazon.com>; Rosenblatt, Richard G. <richard.rosenblatt@morganlewis.com>
**Subject:** RE: Details of Physical Distribution of Court's Memo and Order and Proposed Communication Schedule

**CAUTION:** The sender of this message is external to the NLRB network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to

nlrbirc@nlrb.gov.

Confirming our call of moments ago, Amazon will attach the Spanish and English versions of the Memo and Order to the email notification its sends to associates later today. Also, Amazon will electronically distribute and physically post the Spanish language version provided to you earlier today. Given that we obtained a professional, third-party translation, we don't expect that the translation contains any material mistranslations (or any other sort of error). If your review discloses any material issue, please contact me at your earliest convenience.

Thank you.

*Chris*
**Christopher J. Murphy**
**Morgan, Lewis & Bockius LLP**
1701 Market Street | Philadelphia, PA 19103-2921
Direct: +1.215.963.5601 | Cell: +1.267.307.1024 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
christopher.murphy@morganlewis.com | www.morganlewis.com
Assistant: Rose Ruoff | +1.215.963.5099 | rose.ruoff@morganlewis.com

**From:** Jackson, Matthew <Matthew.Jackson@nlrb.gov>
**Sent:** Friday, November 25, 2022 11:04 AM
**To:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>
**Subject:** Re: Details of Physical Distribution of Court's Memo and Order and Proposed Communication Schedule

[EXTERNAL EMAIL]

**CAUTION:** This email and any attachments may contain Controlled Unclassified Information (CUI). National Archives and Records Administration (NARA) regulations at 32 CFR Part 2002 apply to all executive branch agencies that designate or handle information that meets the standards for CUI.

Thank you, Chris.

**From:** Murphy, Christopher J. <christopher.murphy@morganlewis.com>
**Sent:** Friday, November 25, 2022 10:53:44 AM
**To:** Jackson, Matthew <Matthew.Jackson@nlrb.gov>
**Cc:** Sara Kalis <sbkalis@amazon.com>; Rosenblatt, Richard G. <richard.rosenblatt@morganlewis.com>
**Subject:** Details of Physical Distribution of Court's Memo and Order and Proposed Communication Schedule

**CAUTION:** The sender of this message is external to the NLRB network. Please use care when clicking on links and responding with sensitive information. Forward suspicious emails to

Matt:

As we discussed a short while ago, below is the electronic distribution and physical posting Amazon will accomplish today.  I've also attached a soft copy of the Spanish translation of the Memo and Order. Please let me know ASAP if you have any edits to that document.

- Electronic distribution of electronic notice by EOD 11/25/22
  - Post 30-page Memo and Order on A to Z in English and Spanish
  - Email notification of the posting on A to Z
  - Text notification of the posting on A to Z
- Physical posting of Memo and Order by EOD 11/25/22
  - Post 30-page Memo and Order on A to Z in English and Spanish
  - Staple all 30 pages and post in the 3 breakrooms near other legal-compliance notices (i.e. OSHA, etc.)

You asked whether Amazon would consider attaching the Memo and Order in English and Spanish to the email going to associates.  I'll check with Amazon and get back to you.  You also indicated that the Region may not consider Amazon's plan to be full compliance with the Court's order because Amazon is not further distributing/posting the Memo and Order in English and Spanish in the manner previously requested.

We also discussed the logistics of the reading of the Memo and Order in English and Spanish next week.  I've attached a draft schedule consistent with our discussion.  As I indicated, a responsible Amazon representative would be present at each reading.  For the reasons we discussed, Amazon would prefer to play a prerecorded reading of the Memo and Order in English to the English language meetings and in Spanish to the Spanish language meetings.  You expressed the Region's opposition to that approach.  I'll share your perspective on this with Amazon.

*Chris*
**Christopher J. Murphy**
**Morgan, Lewis & Bockius LLP**
1701 Market Street | Philadelphia, PA 19103-2921
Direct: +1.215.963.5601 | Cell: +1.267.307.1024 | Main: +1.215.963.5000 | Fax: +1.215.963.5001
christopher.murphy@morganlewis.com | www.morganlewis.com
Assistant: Rose Ruoff | +1.215.963.5099 | rose.ruoff@morganlewis.com

DISCLAIMER
This e-mail message is intended only for the personal use
of the recipient(s) named above. This message may be an
attorney-client communication and as such privileged and
confidential and/or it may include attorney work product.
If you are not an intended recipient, you may not review,
copy or distribute this message. If you have received this
communication in error, please notify us immediately by
e-mail and delete the original message.

# Exhibit 4

| Session | Day | Date | Language | Time |
|---------|-----|------|----------|------|
| Day Shift - Inbound | Thursday | 12/1/2022 | English | 06:30 - 0700 |
| Day Shift - Inbound | Thursday | 12/1/2022 | Spanish | 06:30 - 0700 |
| Day Shift -Outbound 1 | Thursday | 12/1/2022 | English | 07:15 - 07:45 |
| Day Shift -Outbound 1 | Thursday | 12/1/2022 | Spanish | 07:15 - 07:45 |
| Day Shift -Outbound 2 | Thursday | 12/1/2022 | English | 08:15 - 08:45 |
| Day Shift -Outbound 2 | Thursday | 12/1/2022 | Spanish | 08:15 - 08:45 |
| Night Shift - Inbound | Thursday | 12/1/2022 | English | 18:00 - 18:30 |
| Night Shift - Inbound | Thursday | 12/1/2022 | Spanish | 18:00 - 18:30 |
| Night Shift -Outbound 1 | Thursday | 12/1/2022 | English | 18:45 - 19:15 |
| Night Shift -Outbound 1 | Thursday | 12/1/2022 | Spanish | 18:45 - 19:15 |
| Night Shift -Outbound 2 | Thursday | 12/1/2022 | English | 19:30 -20:00 |
| Night Shift -Outbound 2 | Thursday | 12/1/2022 | Spanish | 19:30 -20:00 |
| Day Shift - Part Time | Saturday | 12/3/2022 | English | 08:15 - 08:45 |
| Day Shift - Part Time | Saturday | 12/3/2022 | Spanish | 08:15 - 08:45 |
| Day Shift - Inbound | Monday | 12/5/2022 | English | 06:30 - 0700 |
| Day Shift - Inbound | Monday | 12/5/2022 | Spanish | 06:30 - 0700 |
| Day Shift -Outbound 1 | Monday | 12/5/2022 | English | 07:15 - 07:45 |
| Day Shift -Outbound 1 | Monday | 12/5/2022 | Spanish | 07:15 - 07:45 |
| Day Shift -Outbound 2 | Monday | 12/5/2022 | English | 08:15 - 08:45 |
| Day Shift -Outbound 2 | Monday | 12/5/2022 | Spanish | 08:15 - 08:45 |
| Night Shift - Inbound | Monday | 12/5/2022 | English | 18:00 - 18:30 |
| Night Shift - Inbound | Monday | 12/5/2022 | Spanish | 18:00 - 18:30 |
| Night Shift -Outbound 1 | Monday | 12/5/2022 | English | 18:45 - 19:15 |
| Night Shift -Outbound 1 | Monday | 12/5/2022 | Spanish | 18:45 - 19:15 |
| Night Shift -Outbound 2 | Monday | 12/5/2022 | English | 19:30 -20:00 |
| Night Shift -Outbound 2 | Monday | 12/5/2022 | Spanish | 19:30 -20:00 |